mR

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

FILED

JAN 10 2017
1-10-17
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

|  |  |  |
|---|---|---|
| FEDERAL TRADE COMMISSION, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | |
| | ) | **17-cv-00194** |
| CREDIT BUREAU CENTER, LLC, | ) | **Judge Matthew F. Kennelly** |
| a limited liability company, formerly known as | ) | **Magistrate Judge Maria Valdez** |
| MYSCORE LLC, also doing business as | ) | |
| EFREESCORE.COM, CREDITUPDATES.COM, | ) | |
| and FREECREDITNATION.COM, | ) | |
| | ) | |
| MICHAEL BROWN, | ) | |
| individually and as owner and manager of | ) | |
| CREDIT BUREAU CENTER, LLC, | ) | |
| | ) | |
| DANNY PIERCE, individually, and | ) | |
| | ) | |
| ANDREW LLOYD, individually, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR PERMANENT INJUNCTION
## AND OTHER EQUITABLE RELIEF

Plaintiff, the Federal Trade Commission ("FTC"), for its Complaint alleges:

1.      The FTC brings this action under Section 13(b) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 53(b); Section 5 of the Restore Online Shoppers' Confidence Act

("ROSCA"), 15 U.S.C. § 8404; and Section 621(a)(1) of the Fair Credit Reporting Act

("FCRA"), 15 U.S.C. § 1681s(a)(1), to obtain temporary, preliminary, and permanent injunctive

relief, rescission or reformation of contracts, restitution, the refund of monies paid, disgorgement

of ill-gotten monies, and other equitable relief for Defendants' acts or practices in violation of

Section 5(a) of the FTC Act, 15 U.S.C. § 45(a); and in violation of Section 4 of ROSCA, 15

- 1 -

U.S.C. § 8403; and in violation of Section 612(g) of the FCRA, 15 U.S.C. § 1681j(g), and the

Free Annual File Disclosures Rule, 16 C.F.R. Part 610 ("Free Reports Rule"), recodified at 12

C.F.R. §§ 1022.130-1022.138.

## JURISDICTION AND VENUE

2.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a),

and 1345, and 15 U.S.C. §§ 45(a), 53(b), 1681s(a)(1), and 8404(a).

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2), (b)(3), (c)(2), and

(d), and 15 U.S.C. § 53(b).

## PLAINTIFF

4.      The FTC is an independent agency of the United States Government created by

statute. 15 U.S.C. §§ 41-58. The FTC enforces Section 5(a) of the FTC Act, 15 U.S.C. § 45(a),

which prohibits unfair or deceptive acts or practices in or affecting commerce. The FTC also

enforces ROSCA, 15 U.S.C. §§ 8401 *et seq.*, which prohibits certain methods of negative option

marketing on the Internet. The FTC also enforces Section 612(g) of the FCRA, 15 U.S.C.

§ 1681j(g), and the Free Reports Rule, 16 C.F.R. Part 610, recodified at 12 C.F.R. §§

1022.130-1022.138, which require certain prominent disclosures in advertisements for free credit

reports.

5.      The FTC is authorized to initiate federal district court proceedings, by its own

attorneys, to enjoin violations of the FTC Act, ROSCA, the FCRA, and the Free Reports Rule,

and to secure such equitable relief as may be appropriate in each case, including rescission or

reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-

gotten monies. 15 U.S.C. §§ 53(b), 56(a)(2)(A), 1681s(a)(1), and 8404(a).

## DEFENDANTS

6.     Defendant Credit Bureau Center, LLC, formerly known as MyScore LLC, and also doing business as eFreeScore.com, CreditUpdates.com, and FreeCreditNation.com ("Credit Bureau Center"), is a Delaware limited liability company with its registered address at 1209 Orange Street, Wilmington, Delaware 19801.  Credit Bureau Center transacts or has transacted business in this district and throughout the United States.

7.     Defendant Michael Brown ("Brown") is the owner and manager of Credit Bureau Center.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Credit Bureau Center, including the acts and practices set forth in this Complaint. Defendant Brown, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.  Among other things, Defendant Brown has controlled the processing of payments from consumers victimized by Defendants' practices, and has controlled the payment of Credit Bureau Center's affiliate marketers.

8.     Defendant Danny Pierce ("Pierce") is an individual who resides in Belleville, New Jersey.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Pierce is an affiliate marketer responsible for fake rental property ads on Craigslist and fake landlord emails used to attract consumers to eFreeScore.com, CreditUpdates.com, and FreeCreditNation.com, and has personally received over $2.1 million from Credit Bureau Center for driving consumer traffic to the websites. Defendant Pierce, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

9.      Defendant Andrew Lloyd ("Lloyd") is an individual who resides in Beaver, Pennsylvania.  At all times material to this Complaint, acting alone or in concert with others, he has formulated, directed, controlled, had the authority to control, or participated in the acts and practices set forth in this Complaint.  Defendant Lloyd is an affiliate marketer responsible for fake rental property ads on Craigslist and fake landlord emails used to attract consumers to eFreeScore.com, CreditUpdates.com, and FreeCreditNation.com, and has registered numerous Internet domains used to generate the Craigslist ads, receive responses from consumers to the ads, and send replies to consumers from the purported landlords.  Defendant Lloyd, in connection with the matters alleged herein, transacts or has transacted business in this district and throughout the United States.

## COMMERCE

10.      At all times material to this Complaint, Defendants have maintained a substantial course of trade in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

11.      Since at least January 2014, Defendants have deceptively advertised, marketed, promoted, and sold credit monitoring services to consumers throughout the United States. Defendants use fake ads and landlord emails offering apartments and houses for rent to lure consumers to websites offering purportedly "free" credit scores and reports.  When consumers visit the websites, Defendants deceive them into signing up for a negative option seven-day trial of a credit monitoring service, after which many consumers are charged $29.94 monthly without their authorization.  Defendants' scheme has generated more than 500 consumer complaints and has caused millions of dollars of consumer loss.

<u>Defendants' Fake Ads for Rental Properties</u>

12.     Defendants Credit Bureau Center and Brown (collectively "Credit Bureau Center
Defendants") operate websites offering consumers purportedly "free" credit scores and reports,
including <u>eFreeScore.com</u> and <u>CreditUpdates.com</u>.  To attract consumers to their websites, the
Credit Bureau Center Defendants work together with Defendants Pierce and Lloyd, who are
affiliate marketers.  The Credit Bureau Center Defendants pay commissions to Defendant Pierce
for the consumer traffic that he and Defendant Lloyd drive to the websites.

13.     Defendants Pierce and Lloyd, acting on behalf of the Credit Bureau Center
Defendants, place advertisements on the Internet, typically on Craigslist, offering houses or
apartments for rent on favorable terms.  The ads are fake.  The advertised properties either do not
exist, or are properties that Defendants have no authority to offer for rent.  The ads are designed
to generate responses from consumers, whom Defendants then target for enrollment in a negative
option continuity plan.

14.     Defendants' ads for rental properties typically include a caption, for example,
"$1005/2br – Enjoy panoramic views of everything around! (Evanston)," followed by one or
more pictures purporting to show the interior and/or exterior of the property, and a detailed
written description of its alleged features.  One of Defendants' ads on Craigslist, for example,
posted in May 2016, described the unit as follows:

> 2 Bedrooms, 2 Full Bathrooms, and has been fully renovated
> throughout; brand new High Efficiency CAC and Furnace, brand
> new hot water heater, hardwood floors refinished, new linoleum in
> the Kitchen as well as Pantry, whole inside painted, all three toilets
> remodeled (light fixtures, paint, sink countertops, faucets, tile),

- 5 -

kitchen remodeled -- brand new, never used stainless steel appliances (fridge, gas stove/oven, dishwasher), new countertop; gas heat, brand new/never used Washer/Drier, remote control interior light system, built-in smoke alarm system, chandler [sic] in master bedroom, new electric circuit breaker, whole lower level paneled, two fireplaces (one ledge stone and one Tennessee brick), constructed in the wall aquarium, constructed in the wall glass bookcase, quite big walk-in cupboards, really big built in shed/studio, new blinds throughout, incredibly large screen porch overlooking the city.

The ads represent that the property, as pictured and described therein, is currently available for rent. The ads identify the geographic area where the property is located, but typically do not provide the exact address or a telephone number for inquiries. Consumers who are interested in the property must respond to the ad by email.

15. Defendants' ads convince consumers looking for housing that the advertised properties exist and are currently available for rent through the person who posted the ad. Deceived by the ads, many consumers respond by email seeking more information and/or to schedule a tour of the property.

Defendants' Fake Landlord Emails

16. Consumers who respond to Defendants' fake ads for rental properties receive fake landlord emails promoting the properties and directing consumers to the Credit Bureau Center Defendants' websites.

17.     The fake landlord email aims to boost the consumer's interest in the rental opportunity. The email typically states, for example, that the consumer is the "second" person to respond to the ad, even though the same message is sent to all consumers who respond. The first prospective tenant has withdrawn, according to the email, "So we give the opportunity to you." The email typically also includes statements touting the rental property's amenities, such as, "We just finished all new renovations and are now prepared to lease with flexible terms," "All utilities are priced into the lease along with garage parking spaces," and "You have the option to customize your paint color and flooring prior to your arrival."

18.     Defendants use the fake landlord email to artificially create demand for credit reports and scores and promote themselves as the trusted source of supply. The email falsely states that the advertised property is still available for rent, and that the consumer can set up an appointment to tour the property on one condition. In order to tour the property, the email explains, the consumer must obtain a copy of his or her credit report and score and bring it to the tour. The email instructs the consumer to click on a link included in the email to obtain the report. The email adds reassuring statements such as "[a]ll of our tenants use this site because it is widely trusted," and "[a]ll you need to do is fill out the form and you get your report." As an extra incentive, the email often states that, if the consumer's credit score exceeds a certain level, such as 650, the landlord will waive the security deposit.

19.     Typical of Defendants' fake landlord emails is the following, sent in April 2016 to a consumer who responded to one of Defendants' fake rental property ads in Chicago:

**From:** "Delores L" <larkin@attractingtoured.xyz>
**Date:** April 12, 2016 at 6:13:49 PM CDT
**To:** ▮▮▮▮▮▮▮
**Subject: RE: 2BR in Logan Square**

Hello ▮▮▮▮.

Thank you for your interest in the property listed for rent. You were the second to reach out from the ad. The first prospective tenant no longer had to move because of his work situation. So we give the opportunity to you. We are now ready to lease with flexible terms and just completed all new renovations. We will work together with you on move in date, lease security deposit and length.

I understand that you desire the precise address of the property but we do want not to disclose the address before you are qualified. We have had a string of break-ins, squatters and thefts at our other properties. We want to prevent that with this property due to the renovations that have cost a lot of money. You will be the first to move in with the renovations.

All utilities are priced into the lease along with garage parking spaces. The appliances in the kitchen and laundry room were just installed. You have the option to choose your paint color and flooring prior to your move in

If you want us to schedule you for a tour, then please visit the link below and get your report. All of our tenants use this site because it is widely trusted. All you need to do is fill out the form and you get your report We aren't interested in specifics of your report, it's more of a formality to ensure you have rental history. You can get your report by CLICKING HERE

Keep in mind that you only have to bring your report to the tour. We'll also waive your security deposit if we see that your rating is above 650+.

Once you let me know that you have your report ready, then I can personally schedule a showing of the place.

Thanks again,
Delores

20.     The fake landlord emails induce consumers to click on links that take them to websites operated by the Credit Bureau Center Defendants. Based on the emails, consumers believe they are visiting the websites to obtain their credit reports and scores as instructed by the landlord so they can tour the rental property.

The Credit Bureau Center Defendants' Websites

21.     Clicking on the link in the fake landlord emails takes consumers to the Credit Bureau Center Defendants' websites offering purportedly "free" credit scores and reports, including eFreeScore.com and CreditUpdates.com, which are materially similar. On the websites, consumers are routed through a succession of four webpages to obtain their credit scores and reports: a landing page followed by three webpages marked as steps 1 through 3.

22.    <u>Landing Page</u>.  The first webpage consumers see upon arrival at the Credit Bureau Center Defendants' websites is the landing page.  Across the top of the landing page, in large bold letters, is the statement: "Get Your Free Credit Score and Report as of [current date]." Within this statement, the words "Free Credit Score" appear in bright orange.  Below that is a large box captioned "START HERE" with spaces for consumers to enter their name, email address, and zip code.  After providing this information, consumers proceed by clicking a large orange button labeled "YOUR SCORE - NOW!"

23.    The <u>eFreeScore.com</u> landing page appears on a mobile device as shown in subparagraphs a. through f. below.  Subparagraph a shows the page as it appears when it first loads.  Subparagraph b shows the button consumers must click to proceed.  Subparagraphs c through f show the page as it would appear if a consumer were to scroll down the page:



a.



b.



c.

### Delivered in
### *Seconds*

## BENEFITS

### INSTANTLY

access your credit score
from TransUnion

### SECURE

online delivery for your
convenience



d.

Checking your credit will NOT harm your
score!

**McAfee SECURE**

### Why do I need to check my Credit Score?

Good credit scores are your
passport to competitive interest
rates for mortgages, cars, credit
card offers, insurance premiums,



e.

### Why do I need to check my Credit Score?

Good credit scores are your
passport to competitive interest
rates for mortgages, cars, credit
card offers, insurance premiums,
and more. Strong scores are worth
money because they can save you
in excess costs.

Credit Score

Credit FAQs | View Sample

Home | About Us | Contact Us | Privacy

f.

Home | About Us | Contact Us | Privacy
Policy | Terms & Conditions
Member Login

Copyright © 2016 eFreeScore.com -
X0.0148-1.2.16-i-d623924d

Monitoring services may take up to 3
days to become active so this service
within your membership may not be
available during the whole 7-day trial
period. The credit scores we offer may
not be the same scoring model used by a
lender or other credit score sites so view
this score only for educational purposes.
Experian, Equifax, and Transunion
trademarks remain property of their
respective holders, and are only used to
directly describe the products and the
source of the credit data being provided.

Credit scores and rankings shown above
are examples only.

** After verification of your identity, your
score is available for secure online
delivery in seconds.

24.     Nowhere does this page disclose that consumers attempting to obtain their "free" credit report and score, in order to tour the property they seek to rent, will be enrolled in an unrelated credit monitoring program, and charged $29.94 monthly, unless and until they cancel the service.

25.     When accessed on a desktop computer, the landing page includes small print stating, "7-day trial ends [date]" and, separately, "Monthly membership of $29.94 automatically charged after trial." These statements are much smaller and fainter than the large, bold text above them stating, "Get Your Free Credit Score and Report as of [date]." These small print statements do not inform consumers that the referenced 7-day trial and monthly charges are connected to a separate credit monitoring service, and that consumers must sign up for this service in order to obtain the promised free credit score and report. Exhibit 1 hereto shows the landing page for eFreeScore.com as it appears on a desktop computer screen. Exhibit 2 hereto shows the full content of the same landing page as it appears on a desktop computer screen, including the portion of the page that consumers would have to scroll down to see.

26.     Consumers who enter the requested information and click the large "YOUR SCORE - NOW!" button find themselves on a second webpage requesting more personal information. This webpage lists three steps: (1) Complete, (2) Confirm, and (3) Verify, with the first step, "Complete," highlighted, followed by the words "Account Setup" in bold.

27.     Step 1. To complete Step 1, consumers must enter their name, address, email address, and phone number, and then create a username and password. Below the spaces for this information, there is a large orange button labeled "Submit & Continue." Exhibit 3 hereto shows the "Step 1" webpage for eFreeScore.com as it appears on a desktop computer screen.

28.    Step 2.  Consumers who enter their account information and click the "Submit &
Continue" button are taken to another webpage listing the same three steps as the previous
webpage.  Here, the second step, "Confirm," is highlighted.  The stated purpose of this webpage
is to confirm consumers' identity before providing the free credit score and report.  At the top, in
large bold letters, the webpage states, "Your credit score is ready once we confirm your
identity!" followed by a check mark and the words "Located Credit File" in green.  Below that is
the bold heading "Verification and Payment Information," followed by a line of text that states,
"Tell us which card you would like to use for your $1.00 refundable processing fee and
membership."  Under that are spaces for consumers to enter their credit or debit card
information.  Consumers advance to the next webpage by pressing another large orange "Submit
& Continue" button.  An ineffective disclosure in small print, below the spaces for card
information, is not adequate to inform consumers that their cards will be charged an additional
$29.94 per month after a 7-day trial.  Exhibit 4 hereto shows the "Step 2" webpage for
eFreeScore.com as it appears on a desktop computer screen.

29.    Step 3.  Consumers who fill in their card information and click "Submit &
Continue" are taken to another webpage listing the same three steps as previous webpages.
Here, the third step, "Verify," is highlighted.  This webpage requires consumers to enter their
birthdate and Social Security number.  Consumers then proceed by clicking the "Submit and
Continue" button to access their credit score and report.  Exhibit 5 hereto shows the "Step 3"
webpage for eFreeScore.com as it appears on a desktop computer screen.

30.    After completing Steps 1 through 3, many consumers obtain their credit reports
and scores, and resume their pursuit of the rental opportunity, without realizing they have been
automatically signed up for a negative option seven-day trial of the Credit Bureau Center

- 12 -

Defendants' credit monitoring service. After seven days, unless consumers discover and take affirmative steps to cancel the service, the Credit Bureau Center Defendants' charge $29.94, every month, to the credit or debit card consumers entered on the Step 2 webpage described above.

<u>Consumer Complaints and Refund Requests</u>

31.     After getting their credit report and score from the Credit Bureau Center Defendants, consumers find it impossible to schedule the promised tour of the rental property advertised on Craigslist. Consumers who attempt to contact the purported landlord to submit their credit report/score receive no response, or their email messages are returned as undeliverable. That is because the original rental ad and the landlord email are fake—they function solely to drive consumer traffic to the Credit Bureau Center Defendants' websites offering "free" credit reports and scores.

32.     Many consumers do not know they have been enrolled in the Credit Bureau Center Defendants' credit monitoring service until they discover a $29.94 charge on their bank or credit card statement. Some consumers do not notice the recurring charges for several billing cycles.

33.     Many consumers have complained to the Credit Bureau Center Defendants, the Better Business Bureau, and law enforcement agencies about Defendants' practices. Among other things, many consumers have reported in their complaints:

    a.     that they believed the advertisements for rental properties and the emails from the purported landlords were genuine;

    b.     that they clicked on the links to the Credit Bureau Center Defendants' websites, and provided the information requested on the websites, solely

to obtain their credit reports and scores in order to pursue the rental

opportunity;

c.     that they did not expect or authorize the Credit Bureau Center Defendants

to place monthly charges of $29.94 on their credit or debit cards; and

d.     that they were highly alarmed to discover they had disclosed their Social

Security numbers, birthdates, and other personal information to a business

advertising fake rental opportunities and charging consumers without

authorization.

34.     In numerous instances, consumers also have reported the above complaints to the

Credit Bureau Center Defendants' customer service representatives.

35.     In numerous instances, the Credit Bureau Center Defendants have denied refunds

or given only partial refunds to consumers who reported they did not knowingly enroll in the

Credit Bureau Center Defendants' credit monitoring service.

## VIOLATIONS OF THE FTC ACT

36.     Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts

or practices in or affecting commerce."

37.     Misrepresentations or deceptive omissions of material fact constitute deceptive

acts or practices prohibited by Section 5(a) of the FTC Act.

## COUNT I

### (Against all Defendants)

38.     In numerous instances in connection with the marketing of credit reports and

scores, Defendants have represented, directly or indirectly, expressly or by implication, that:

a. a residential property described in an online ad is currently available for rent from someone consumers can contact through that ad; and

b. the property will be shown to consumers who obtain their credit reports and scores through the Credit Bureau Center Defendants' website.

39. In truth and in fact, in numerous instances in which Defendants have made the representations set forth in Paragraph 38 of this Complaint:

a. the residential property described in the online ad is not currently available for rent from someone consumers can contact through that ad; and

b. the property is not shown to consumers who obtain their credit reports and scores through the Credit Bureau Center Defendants' website.

40. Therefore, Defendants' representations as set forth in Paragraph 38 of this Complaint are false and misleading and constitute deceptive acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## COUNT II

### (Against the Credit Bureau Center Defendants)

41. In numerous instances, the Credit Bureau Center Defendants have represented, directly or indirectly, expressly or by implication, that they are offering consumers their credit scores and reports for free.

42. In numerous instances in which the Credit Bureau Center Defendants have made the representation set forth in Paragraph 41 of the Complaint, the Credit Bureau Center Defendants have failed to disclose, or failed to disclose adequately to consumers, material terms and conditions of the offer, including:

a. That the Credit Bureau Center Defendants will automatically enroll consumers in a negative option continuity plan with additional charges;

b. That consumers must affirmatively cancel the negative option continuity plan before the end of a trial period to avoid additional charges;

c. That the Credit Bureau Center Defendants will use consumers' credit or debit card information to charge consumers monthly for the negative option continuity plan;

d. The costs associated with the negative option continuity plan; and

e. The means consumers must use to cancel the negative option continuity plan to avoid additional charges.

43. The Credit Bureau Center Defendants' failure to disclose or disclose adequately the material information described in Paragraph 42, above, in light of the representation described in Paragraph 41, above, constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE
## RESTORE ONLINE SHOPPERS' CONFIDENCE ACT

44. In 2010, Congress passed the Restore Online Shoppers' Confidence Act, 15 U.S.C §§ 8401 *et seq.*, which became effective on December 29, 2010. Congress passed ROSCA because "[c]onsumer confidence is essential to the growth of online commerce. To continue its development as a marketplace, the Internet must provide consumers with clear, accurate information and give sellers an opportunity to fairly compete with one another for consumers' business." Section 2 of ROSCA, 15 U.S.C. § 8401.

45. Section 4 of ROSCA, 15 U.S.C. § 8403, generally prohibits charging consumers for goods or services sold in transactions effected on the Internet through a negative option

feature, as that term is defined in the Commission's Telemarketing Sales Rule ("TSR"), 16 C.F.R. § 310.2(w), unless the seller (1) clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information, (2) obtains the consumer's express informed consent before making the charge, and (3) provides a simple mechanism to stop recurring charges. *See* 15 U.S.C. § 8403.

46.     The TSR defines a negative option feature as: "in an offer or agreement to sell or provide any goods or services, a provision under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w).

47.     As described in Paragraphs 11 to 35 above, the Credit Bureau Center Defendants have advertised and sold their credit monitoring service to consumers through a negative option feature as defined by the TSR. *See* 16 C.F.R. § 310.2(w).

48.     Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, a violation of ROSCA is a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## COUNT III

### Failure to Disclose All Material Terms

### (Against the Credit Bureau Center Defendants)

49.     In numerous instances, the Credit Bureau Center Defendants have charged or attempted to charge consumers for the Credit Bureau Center Defendants' credit monitoring service through a negative option feature while failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information.

50.     The Credit Bureau Center Defendants' acts or practices, as described in Paragraph 49 above, constitute a violation of Section 4(1) of ROSCA, 15 U.S.C. § 8403(1), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

## COUNT IV

### Failure to Obtain Consumers' Express Informed Consent

### (Against the Credit Bureau Center Defendants)

51.     In numerous instances, the Credit Bureau Center Defendants have charged or attempted to charge consumers for the Credit Bureau Center Defendants' credit monitoring service through a negative option feature while failing to obtain consumers' express informed consent before charging their credit card, debit card, bank account, or other financial account for the Credit Bureau Center Defendants' credit monitoring service.

52.     The Credit Bureau Center Defendants' acts or practices, as described in Paragraph 51 above, constitute a violation of Section 4(2) of ROSCA, 15 U.S.C. § 8403(2), and are therefore a violation of a rule promulgated under Section 18 of the FTC Act, 15 U.S.C. § 57a.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT AND THE FREE REPORTS RULE

53.     The Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x ("FCRA"), was enacted in 1970, became effective on April 25, 1971, and has been in force since that date.

54.     In 2003, Congress passed the Fair and Accurate Credit Transactions Act of 2003 ("FACT Act"), Pub. L. 108-159, 117 Stat. 1952 (December 4, 2003). Section 211 of the FACT Act amended Section 612 of the FCRA, 15 U.S.C. § 1681j, to require nationwide consumer reporting agencies to provide all consumers with a copy of their credit report once during any twelve-month period, upon request of the consumer and without charge. Section 211 directed

the FTC to promulgate a rule establishing a "centralized source" through which consumers could request their reports.

55.     In 2004, the FTC issued the Free Annual File Disclosures Rule, 16 C.F.R. Part 610 ("Free Reports Rule"). The rule set forth requirements for establishing the centralized source, including a dedicated website through which consumers could order their free reports. That website, AnnualCreditReport.com, has been operating since 2004.

56.     In 2009, Congress passed the Credit Card Accountability Responsibility and Disclosure Act of 2009, Pub. L. 111-24, 123 Stat. 1734 (May 22, 2009) ("Credit CARD Act"). Section 205 of the Credit CARD Act amended Section 612 of the FCRA to prevent deceptive marketing of credit reports. As amended, Section 612(g) provides, in part:

> Subject to rulemaking pursuant to section 205(b) of the Credit CARD Act of 2009, any advertisement for a free credit report in any medium shall prominently disclose in such advertisement that free credit reports are available under Federal law at: 'AnnualCreditReport.com' (or such other source as may be authorized under Federal law)."

15 U.S.C. § 1681j(g)(1). To carry out this section, Congress directed the FTC to promulgate a rule requiring specific disclosures in advertisements for free credit reports. Credit CARD Act § 205(b). Accordingly, in 2010, the FTC amended the Free Reports Rule to require certain disclosures in advertisements for free credit reports. 16 C.F.R. § 610.4.

57.     In 2011, following passage of the Dodd-Frank Act, the Consumer Financial Protection Bureau republished the Free Reports Rule at 12 C.F.R. §§ 1022.130-138. The FTC continues to enforce Section 612(g) of the FCRA and the Free Reports Rule pursuant to Section

- 19 -

621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1).  Pursuant to Section 621(a)(1), "a violation of any requirement or prohibition imposed under [the FCRA] shall constitute an unfair or deceptive act or practice in commerce, in violation of Section 5(a) of the [FTC] Act."  15 U.S.C. § 1681s(a)(1).

58.    Under the Free Reports Rule, 16 C.F.R. § 610.4, recodified at 12 C.F.R. § 1022.138, "free credit report" means "a file disclosure prepared by or obtained from, directly or indirectly, a nationwide consumer reporting agency (as defined in Section 603(p) of the FCRA), that is represented, either expressly or impliedly, to be available to the consumer at no cost if the consumer purchases a product or service, or agrees to purchase a product or service subject to cancellation."

59.    The Free Reports Rule, 16 C.F.R. § 610.4, recodified at 12 C.F.R. § 1022.138, requires, *inter alia*, that any website offering free credit reports must display a prominent disclosure, across the top of each page that mentions free credit reports, and across the top of each page of the ordering process, which states:

> THIS NOTICE IS REQUIRED BY LAW. Read more at consumerfinance.gov/learnmore.
> You have the right to a free credit report from AnnualCreditReport.com or 877-322-8228, the ONLY authorized source under federal law.

The disclosure must include a clickable button to "Take me to the authorized source" and clickable links to AnnualCreditReport.com and consumerfinance.gov/learnmore.  The disclosure must appear in the specific location, format, size, and color specified in the rule.  12 C.F.R. §§ 1022.138(b)(4)(i)-(viii).

## COUNT V

### (Against the Credit Bureau Center Defendants)

60.     In numerous instances, the Credit Bureau Center Defendants have operated websites offering free credit reports, including eFreeScore.com and CreditUpdates.com, without displaying across the top of each page that mentions free credit reports, and across the top of each page of the ordering process, the prominent disclosure required by the Free Reports Rule, 12 C.F.R. § 1022.138, to inform consumers of their right to obtain a free credit report from AnnualCreditReport.com or (877) 322–8228.

61.     The Credit Bureau Center Defendants' acts or practices, as described in Paragraph 60 above, violate Section 612(g)(1) of the FCRA, 15 U.S.C. § 1681j(g)(1), and the Free Reports Rule, 12 C.F.R. § 1022.138.

## CONSUMER INJURY

62.     Consumers have suffered and will continue to suffer substantial injury as a result of Defendants' violations of the FTC Act, ROSCA, the FCRA, and the Free Reports Rule.  In addition, Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## THIS COURT'S POWER TO GRANT RELIEF

63.     Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), empowers this Court to grant injunctive and such other relief as the Court may deem appropriate to halt and redress violations of any provision of law enforced by the FTC.  The Court, in the exercise of its equitable jurisdiction, may award ancillary relief, including rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies, to prevent and remedy any violation of any provision of law enforced by the FTC.

## PRAYER FOR RELIEF

Wherefore, Plaintiff FTC, pursuant to Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), Section 5 of ROSCA, 15 U.S.C. § 8404, Section 621(a)(1) of the FCRA, 15 U.S.C. § 1681s(a)(1), the Free Reports Rule, 12 C.F.R. § 1022.138, and the Court's own equitable powers, requests that the Court:

A.     Award Plaintiff such preliminary injunctive and ancillary relief as may be necessary to avert the likelihood of consumer injury during the pendency of this action and to preserve the possibility of effective final relief, including but not limited to, temporary and preliminary injunctions, an order freezing assets, immediate access, and appointment of a receiver;

B.     Enter a permanent injunction to prevent future violations of the FTC Act, ROSCA, the FCRA, and the Free Reports Rule by Defendants;

C.     Award such relief as the Court finds necessary to redress injury to consumers resulting from Defendants' violations of the FTC Act, ROSCA, the FCRA, and the Free Reports Rule, including but not limited to, rescission or reformation of contracts, restitution, the refund of monies paid, and the disgorgement of ill-gotten monies; and

D.    Award Plaintiff the costs of bringing this action, as well as such other and

additional relief as the Court may determine to be just and proper.

Respectfully submitted,

DAVID C. SHONKA
Acting General Counsel

Dated: January 10, 2017

GUY G. WARD
SAMUEL A.A. LEVINE
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
(312) 960-5634 [telephone]
(312) 960-5600 [facsimile]
gward@ftc.gov
slevine1@ftc.gov

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION

1

# EXHIBIT 1



Exhibit 1

**2**

# EXHIBIT 2

 

## Get Your Free Credit Score
### and Report as of December 21, 2016

7-day trial ends Dec. 28, 2016          Monthly membership of $29.84          For questions or to cancel
                                        automatically charged after trial      just call (800) 604-1938



| SAMPLE SCORE | START HERE | BENEFITS |
|---|---|---|

**INSTANTLY**
access your credit score from TransUnion

**SECURE**
online delivery for your convenience

YOUR SCORE - NOW!

Checking your credit will NOT harm your score!



**Why do I need to check my Credit Score?**
Good credit scores are your passport to competitive interest rates for mortgages, cars, credit card offers, insurance premiums, and more. Strong scores are worth money because they can save you in excess costs.



Credit FAQs | View Sample

Home | About Us | Contact Us | Privacy Policy | Terms & Conditions          Member Login

Copyright © 2016 eFreeScore.com - X0 0701-1.2 16-I-D045B3b5

Monitoring services may take up to 3 days to become active so this service within your membership may not be available during the whole 7-day trial period. The credit scores we offer may not be the same scoring model used by a lender or other credit score sites so view this score only for educational purposes. Experian, Equifax, and Transunion trademarks remain property of their respective holders. and are only used to directly describe the products and the source of the credit data being provided.

Credit scores and rankings shown above are examples only

** After verification of your identity your score is available for secure online delivery in seconds

Exhibit 2

**3**

# EXHIBIT 3



Exhibit 3

**4**

# EXHIBIT 4



Exhibit 4

**5**

# EXHIBIT 5

 FreeScore (/)

 Trans**Union**.

🔒 Your privacy and security are 100% protected.

① **Complete** ② **Confirm** ③ **Verify**

# Verification Information

All Fields Required

**All the information you provide is transmitted over a safe and secure connection.**

Date of Birth:

| Month | Day | Year |
|-------|-----|------|

Social Security Number:



🔒

 **McAfee SECURE**

 **Norton** SECURED
powered by VeriSign

(https://www.mcafeesecure.com /RatingVerify?ref=www.efreescore.com)



## Secure Site

We are committed to protecting your information

### What is a good Credit Score?

Most experts agree that a credit score of 720 or higher is what you should aim for to have an excellent credit score. About 60% of people have a credit score 700 or higher. You can see your percentile rank when you view your credit score.

### Will I find errors on my credit report?

Errors are very commonly found on credit reports due to data input errors, incorrectly reported accounts, or even identity theft. You should review and monitor your TransUnion, Equifax, and Experian credit reports to make sure they are accurate.

## We are Here to Help

Call us toll Free at (800) 934-1938

Phone Hours (Pacific Time)
Everyday: 5 AM - 9 PM

All Rights Reserved. Privacy Policy (/site/page/privacy.html) | Terms & Conditions (/site/page/terms.html)

Copyright © 2016 eFreeScore.com - X0.0200-1.2.16-i-e7ce3c60

Exhibit 5