UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

FEDERAL TRADE COMMISSION,

                            Plaintiff,

    -vs-

CREDIT BUREAU CENTER, LLC, *et al.*,

                            Defendants.

**Case No. 17-cv-194**

## MEMORANDUM IN SUPPORT OF FEE PETITION

Barclay Damon LLP, The Law Offices of Parker MacKay (Parker MacKay), and Taft Stettinius & Hollister LLP ("Taft") (collectively, "Petitioners") have petitioned this court for the payment of fees from $150,000.00 of assets of Defendant Michael Brown, held in client trust accounts pursuant to an agreement with the Federal Trade Commission, which agreement is in itself pursuant to the Temporary Restraining Order in this action, entered January 11, 2017 [Docket No. 16] and the Preliminary Injunction ordered by this Court on February 21, 2017 [Docket No. 59]. This Memorandum is submitted in support of that Petition.

### FACTS

The exhaustive nature of this litigation is well known to the Court and to all counsel and need not be stated in detail herein. Nevertheless, the amount of fees sought by Petitioners is not insignificant, even compared to the $2.2 million already seized by the Receiver, and so a summary of Petitioners' activities is appropriate. (The invoices submitted as exhibits to each of the Petitioners' declarations provide more detail.) Upon engagement by Defendants Michael Brown and Credit Bureau Center, LLC in late January 2017, Petitioners:

1

- Reviewed the Federal Trade Commission's initial filings in this action, which included sixteen (16) docket entries numbering hundreds, if not thousands, of pages;

- Drafted a memorandum and supporting papers opposing the FTC's Motion for a Preliminary Injunction;

- Prepared for and appeared at an initial oral argument concerning that Motion;

- Moved to seal exhibits containing proprietary information of Credit Bureau Center, LLC and Michael Brown;

- Prepared for and examined witnesses during a two-day evidentiary hearing concerning that Motion, including research concerning various evidentiary issues ancillary to that Motion;

- Handled communications between the Receiver and their clients; and

- Attempted a negotiated settlement of this matter which nearly reached fruition until the FTC believed that Petitioners' clients were in contempt of the Preliminary Injunction.

Accordingly, Petitioners have spent large, but appropriate, amounts of time working on this action. Barclay Damon seeks $82,407.10 in attorneys' fees and costs. The Law Offices of Parker MacKay seeks $29,719.36 in attorneys' fees and costs. Taft seeks $26,992.80 in attorneys' fees and costs. The total amount sought by Petitioners is $139,119.26, all of which may be paid from monies currently held in client trust accounts; the $2.2 million held by the Receiver will not be affected.

## ARGUMENT

This Court has set out its standard for a fee petition in *Farooq v. Portfolio Recovery, LLC,* 2016 U.S. Dist. LEXIS 66180, Case No. 15-C-6106 (May 19, 2006):

> The fee applicant bears the burden of establishing entitlement to an award and the appropriate attorney time expended as well as the attorney's appropriate hourly rates. The product of the reasonably-expended hours and the hourly rates is commonly called the "lodestar."
>
> The hourly rate used in calculating the lodestar is determined based on the market rate for counsel's services. The party seeking fees has the burden of proving the attorneys' market rates. The presumptive market rate is the rate the attorney could earn for comparable work from fee-paying clients. A fee petitioner may

> demonstrate an attorney's market rate by showing that clients have actually paid that rate. Alternatively, the appropriate market rate can be determined by the rate that lawyers of similar ability and experience in the community normally charge for similar cases. Once the fee petitioner provides evidence establishing the attorneys' market rate, the opposing party has the burden of demonstrating why a lower rate should be awarded.
>
> Hours not reasonably expended are excluded from the lodestar. Upon determining the lodestar, the court may then increase or decrease it based on, among other things, the degree of success obtained by the party seeking fees.

*Farooq*, 2016 U.S. Dist. LEXIS 66180 at *3-4 (internal citations omitted).

**A.     Counsel Are Entitled to Attorneys' Fees and Disbursements.**

"To begin with, the Court clearly has the authority to carve out from frozen assets funds to be used for attorneys' fees." *FTC v. American Tax Relief, LLC,* 751 F.Supp.2d 972, 987 (N.D. Ill. 2010). In that case, the receiver had seized funds held in a lawyer's client trust account, and the court ordered the receiver to restore the assets to that account. *Id.* Indeed, it is the norm in the Seventh Circuit to exempt a retainer to be used for attorneys' fees from an asset freeze and to allow such funds to be held in an attorney's client trust account. *See FTC v. Amy Travel Svc., Inc.*, 875 F.2d 564, 575 (7th Cir. 1989); *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1022 (7th Cir. 1988); *FTC v. Windermere Big Winn Int'l, Inc.*, 1999 U.S. Dist. LEXIS 12259 (N.D. Ill. Aug 2, 1999) at *18 ("[C]ourts in this circuit have allowed the payment of reasonable attorney's fees out of frozen assets.").

"Such provisions are necessary to enable defendants to obtain representation in order to defend against the FTC's charges." *FTC v. QT Inc.*, 467 F.Supp.2d 863, 866 (N.D. Ill. 2006). Even though payment of attorneys' fees might diminish the amount available for consumer redress, the Seventh Circuit ***requires*** the interests of defense counsel to be balanced against those of consumers. *Id.* at 867 (emphasis added).

**B.      The Market Rates Sought by Counsel Are Reasonable and Customary.**

Each attorney seeking payment has submitted a declaration establishing that the rates sought are reasonable and customary in his own marketplace and that his clients customarily pay such rates. This satisfies one of the forms of evidence mentioned in *Farooq*, namely, that counsel may "demonstrate an attorney's market rate by showing that clients have actually paid that rate."

Extrinsic evidence also supports the rates sought by counsel. Some courts in the Seventh Circuit use the "Laffey Matrix" to evaluate fee petitions; this Court, however, has disapproved of the Laffey Matrix. *Wells v. City of Chicago*, 925 F. Supp. 2d 1036, 10140 (2013). Accordingly, even though the Laffey Matrix would support the rates sought by counsel, counsel do not rely upon it in this petition. Instead, counsel submit a summary of a fee survey of American Lawyer ("AmLaw") 200 firms in Upstate New York (where two of the law firms representing Defendants are based) and in Chicago. The rates sought by Barclay Damon and The Loaw Offices of Parker MacKay are reasonable market rates in Upstate New York, and are certainly well below market rates in this District. The rates sought by Taft are below market rates in this District. *See* Declaration of Gregory Zini dated June 2, 2017 at ¶ 7 and at Ex. B thereto.

Finally, recent caselaw supports the rates sought by counsel. Although this case is not a civil rights case, this Court has referred to civil rights litigation in evaluating fee petitions in other non-civil rights cases. *E.g. Farooq.*, *supra* (citing the civil rights cases of *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and *Missouri v. Jenkins*, 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989)). In one such civil rights case, *Jiminez v. City of Chicago*, 2012 U.S. Dist. LEXIS 162322 (Nov. 14, 2012), this Court approved a rate of $450 per hour for an attorney with eighteen years of experience. Mr. Rubin has significantly more

experience than that, and seeks a lower rate of $425 per hour.  Mr. Zini has a very slightly higher amount of experience, and seeks a considerably lower rate of $295 per hour.  In *Jiminez,* the Court approved rates of $300 per hour and $275 per hour for less-experienced attorneys; it is respectfully submitted that given the five years of time that have passed since *Jiminez*, Mr. MacKay's sought rate of $295 per hour is appropriate in 2017.

**C.     The Hours Expended by Counsel Were Reasonable.**

As is described above, to say that this litigation has been exhaustive would nearly be an understatement.  Counsel have spent hundreds of hours reviewing documents, conducting research, preparing for hearings, taking testimony, and attempting a negotiated resolution of this matter.  Counsel have not sought payment for time spent on administrative tasks or tasks delegable to non-lawyers.  (*Cf. Farooq* at *10.)

**CONCLUSION**

Counsel spent an appropriate amount of time litigating and attempting to settle this matter, and seek rates either slightly below or far below rates normally charged in this District.  The Court should permit counsel to withdraw and distribute $139,119.26 from the retainer accounts.

DATED:     Buffalo, New York                          /s/Gregory Zini
           June 2, 2017                     Gregory Zini
                                            BARCLAY DAMON LLP
                                            The Avant Building, Suite 1200
                                            200 Delaware Avenue
                                            Buffalo, New York 14202
                                            (716) 858-3750
                                            gzini@barclaydamon.com