IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

FEDERAL TRADE COMMISSION,      )

              Plaintiff,      )

     -vs-                      ) No. 17-cv-00194

CREDIT BUREAU CENTER,          )

LLC, a limited liability      )

company, formerly known       )

as MYSCORE LLC, also          )

doing business as             )

EFREESCORE.COM,               )

CREDITUPDATES.COM, and        )

FREECREDITNATION.COM;         )

MICHAEL BROWN,                )

individually and as owner     )

and manager of CREDIT         )

BUREAU CENTER, LLC; DANNY     )

PIERCE, individually; and     )

ANDREW LLOYD,                 )

individually,                 )

            Defendants.      )

DEPOSITION OF DOUGLAS M. McKENNEY

DECEMBER 14, 2017

Job No. 27222

EXHIBIT
F

© StenoWorks
The Court Reporting Store



**EcoScribe Solutions**

www.EcoScribeSolutions.com

888.651.0505

1              IN THE UNITED STATES DISTRICT COURT

2                 NORTHERN DISTRICT OF ILLINOIS

3                       EASTERN DIVISION

4    FEDERAL TRADE COMMISSION,      )

5                    Plaintiff,     )

6        -vs-                       ) No. 17-cv-00194

7    CREDIT BUREAU CENTER,          )

8    LLC, a limited liability       )

9    company, formerly known        )

10   as MYSCORE LLC, also           )

11   doing business as              )

12   EFREESCORE.COM,                )

13   CREDITUPDATES.COM, and         )

14   FREECREDITNATION.COM;          )

15   MICHAEL BROWN,                 )

16   individually and as owner      )

17   and manager of CREDIT          )

18   BUREAU CENTER, LLC; DANNY      )

19   PIERCE, individually; and      )

20   ANDREW LLOYD,                  )

21   individually,                  )

22                 Defendants.      )

23         DEPOSITION OF DOUGLAS M. McKENNEY

24               DECEMBER 14, 2017
        Job No. 27222

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 2..5

**Page 2**

```
 1
 2                  * * * * * * *
 3          The deposition of DOUGLAS M. McKENNEY,
 4   called for examination, taken pursuant to the
 5   Federal Rules of Civil Procedure of the United
 6   States District Courts pertaining to the taking of
 7   depositions, taken before SUSAN K. TODAY, C.S.R.
 8   No. 84-2212, a Notary Public within and for the
 9   County of DuPage, State of Illinois, and a
10   Certified Shorthand Reporter of said state, at
11   Suite 2800, 111 East Wacker Drive, Chicago,
12   Illinois, on December 14, 2017, commencing at
13   9:19 a.m.
14
15                  * * * * * * *
16
17
18
19
20
21
22
23
24
```

**Page 3**

```
 1   PRESENT:
 2       UNITED STATES FEDERAL TRADE COMMISSION,
 3       (230 South Dearborn Street, Room 3030,
 4       Chicago, Illinois  60604-1505,
 5       312-960-5612), by:
 6       MR. GUY G. WARD,
 7       gward@ftc.gov,
 8       MR. SAMUEL A.A. LEVINE,
 9       slevine1@ftc.gov,
10           appeared on behalf of the Plaintiff;
11
12   COCHELL PC,
13       (216 South Loop W, Suite 470,
14       Houston, Texas  77054,
15       346-800-3500), by:
16       MR. STEPHEN R. COCHELL,
17       srcochell@gmail.com,
18           appeared on behalf of the Defendants.
19
20   ALSO PRESENT:
21       MR. MICHAEL BROWN.
22
23   REPORTED BY:  SUSAN K. TODAY, C.S.R., R.P.R.
24           License No. 84-2212.
```

**Page 4**

```
 1               I N D E X
 2   WITNESS                        EXAMINATION
 3   DOUGLAS M. McKENNEY
 4       By Mr. Cochell                   6
 5
 6
 7
 8
 9
10               E X H I B I T S
11   NUMBER                       MARKED FOR ID
12   McKENNEY DEPOSITION EXHIBIT
13       No. 1                         41
14       No. 2                         50
15       No. 3                         54
16       No. 4                         55
17       No. 5                         57
18       No. 6                         60
19       No. 7                         69
20       No. 8                         75
21       No. 9                         79
22       No. 10                        85
23       No. 11                        88
24       No. 12                        92
```

**Page 5**

```
 1          I N D E X   (Continued)
 2               E X H I B I T S
 3   NUMBER                       MARKED FOR ID
 4   McKENNEY DEPOSITION EXHIBIT
 5       No. 13                        93
 6       No. 14                        95
 7       No. 15                        96
 8       No. 16                       101
 9       No. 17                       109
10       No. 18                       112
11       No. 19                       113
12       No. 20                       115
13       No. 21                       117
14       No. 22                       119
15       No. 23                       122
16       No. 24                       126
17       No. 25                       130
18       No. 26                       137
19       No. 27                       141
20       No. 28                       143
21       No. 29                       150
22       No. 30                       152
23       No. 31                       153
24       No. 32                       158
```

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 6..9

Page 6

1    MR. COCHELL:  Swear the witness.
2         (WHEREUPON, the witness was duly
3         sworn.)
4         DOUGLAS M. McKENNEY,
5    called as a witness herein, having been first duly
6    sworn, was examined and testified as follows:
7              EXAMINATION
8    BY MR. COCHELL:
9    Q.   If you would, please state your full
10   name and business address for the record.
11   **A.   It's Douglas Matthew McKenney.  And**
12   **business address is 230 South Dearborn in Chicago,**
13   **Illinois, 60604.**
14   Q.   And what is your employment?
15   **A.   I'm an investigator for the Federal**
16   **Trade Commission.**
17   Q.   Okay.  Is that like an official title,
18   investigator?
19   **A.   Yes.**
20   Q.   Do they have like senior investigator or
21   junior investigator or investigator rank I, II,
22   III, that sort of thing?
23   **A.   No, I don't believe so.**
24   Q.   Okay.  So it's just one position called

Page 7

1    investigator, is that correct, for the FTC?
2    **A.   Correct.**
3    Q.   How long have you served in that
4    capacity?
5    **A.   It'll be 11 years in about a week or**
6    **two.**
7    Q.   Okay.  I'll ask you this, sir:  What did
8    you do in preparation for your deposition today?
9    **A.   I reviewed my declarations, the three**
10   **declarations that I have submitted in this case,**
11   **and then also reviewed the transcript from my**
12   **testimony at the PI hearing.**
13   Q.   Okay.  And of course you were in
14   attendance at yesterday's deposition of CBC and
15   Michael Brown; is that correct?
16   **A.   Correct.**
17   Q.   Okay.  As an investigator, can you tell
18   me what your duties are?
19   **A.   My duties include investigating**
20   **companies or persons suspected of engaging in**
21   **deceptive business practices in violation of the**
22   **FTC act and other rules or laws that the FTC**
23   **enforces.**
24   Q.   And how old are you, sir?

Page 8

1    **A.   I am 35.**
2    Q.   Okay.  And with respect to your
3    educational level, how far did you get in school?
4    **A.   I completed my Bachelor's degree in**
5    **political science.**
6    Q.   Okay.  Like probably most lawyers in the
7    Bar.
8         And after that did you attend any
9    further education?
10   **A.   No, I did not.**
11   Q.   Where did you go to school?
12   **A.   University of Nebraska in Lincoln.**
13   Q.   Okay.  So you were a Huskers fan?
14   **A.   Yeah, unfortunately.**
15   Q.   Okay.  And were you born and raised in
16   Nebraska?
17   **A.   Yes.**
18   Q.   Okay.  So how did you come to Chicago?
19   **A.   I was hired by the Federal Trade**
20   **Commission as a paralegal specialist in 2004 when I**
21   **graduated college.**
22   Q.   And so did you have any paralegal
23   training?
24   **A.   No.  The paralegal position isn't --**

Page 9

1    **it's sort of like an investigator-in-training**
2    **position and it's a temporary position for -- that**
3    **can be renewed -- I'm sorry -- that can last up**
4    **until four years.  And from that position I was**
5    **promoted to investigator.**
6    Q.   And when did that occur?
7    **A.   In 2006.**
8    Q.   So you served about a year and a half or
9    up --
10   **A.   A little over two years as a paralegal**
11   **specialist.**
12   Q.   All right.  And then as a paralegal
13   specialist did you have any formal training to
14   perform that job?
15   **A.   Yes.  The FTC -- typically we have an**
16   **annual training session for investigators as well**
17   **as paralegals.  It's out in Washington, D.C.  And**
18   **so, you know, I've gone to those trainings, you**
19   **know, throughout my career.**
20   Q.   Okay.  How long do they last?
21   **A.   Two to three days.**
22   Q.   Okay.  And then is there any -- so you
23   would attend like training for the paralegals on an
24   annual basis.  Was the training any different than

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 10..13

Page 10

1  for the investigators versus the paralegals?
2      A.   It's the same.  Paralegals and
3  investigators are together.
4      Q.   Okay.  And so other than that training
5  during the time that you've been employed for the
6  FTC, have you had any other training in principles
7  of investigation or law enforcement?
8      A.   Yes, I have.
9      Q.   Okay.  Tell me about that.
10      A.   The trainings that I have completed
11  cover -- have covered analyzing financial records,
12  which include bank documents, training on how to
13  capture websites, various software tools that we
14  use -- that the agency uses to either capture
15  websites or to track like website traffic, training
16  on how to -- training on the FTC's complaint
17  database, training on like how to conduct --
18  general trainings on how to conduct investigations.
19      Q.   Okay.  Anything else?
20      A.   No.
21      Q.   Okay.  And with respect to trainings on
22  analyzing financial records, can you tell me more
23  about -- is that just like a one-day course or was
24  it a half-day course or multiple days?

Page 11

1      A.   I've done training on how to analyze
2  financial records in different sort of like -- at
3  different times.  Those have been either as part of
4  the annual investigator and paralegal training from
5  Washington and I also did an online course recently
6  on how to analyze financial records.
7      Q.   Okay.  With respect to capturing web
8  systems -- I think that's what you said.
9      A.   Website.
10      Q.   Website, okay.  Right.  So how long did
11  that training last?  When did you have it?
12      A.   I think I've had it throughout my entire
13  duration at the agency.  I've been with the FTC for
14  a number of years to where we've used different
15  software programs to capture websites.  New ones
16  get introduced so I'll have the training on the new
17  tools.
18          It's sort of like this evolving process
19  of learning how to use the software programs to
20  capture websites.
21      Q.   So as a new tool comes out, a new
22  software application or program, you would take
23  maybe an hour or two training or you'd speak with a
24  salesperson and they'd show you how to do it and

Page 12

1  it's become more efficient over the years, is that
2  a fair statement, with these programs?
3      A.   The trainings would be about an hour or
4  two when we would have it.  There were follow-up
5  trainings associated with that same product.  It
6  would also be an hour or two.
7          But yeah, the programs themselves, the
8  goal is to make our jobs easier.  So we're always
9  looking for programs that can accomplish the task
10  and present the websites in a way that mirrors how
11  we viewed them on the screen.
12      Q.   Sure.  Let me ask you this:  With
13  respect to this case what software applications did
14  you use to capture websites?
15      A.   Used Adobe, Snagit, S-n-a-g-i-t, all one
16  word.  Also used Camtasia, C-a-m-t-a-s-i-a.  Those
17  I believe are the three that I've used.
18      Q.   So you used Adobe, Snagit, and Camtasia?
19      A.   Yes.
20      Q.   With respect to Adobe, is there a
21  particular version or specialized program like, you
22  know, Adobe Acrobat Pro, for doing different
23  functions?  Is there something specific that you
24  used?

Page 13

1      A.   I believe the program that we have is
2  Adobe Acrobat, the professional license.
3      Q.   Okay.  With respect to your training on
4  tracking of sites, what did you use in this case?
5      A.   I used -- the Internet browsers that I
6  used to view the websites have web developer tools.
7  I believe it's usually if you just press F12 on the
8  keyboard you can get to those tools that are built
9  into the browser to where you can view tracking
10  information, the cookies that are placed on the
11  computer as you're going through different
12  websites.
13      Q.   Okay.  And so do you recall which
14  Internet browsers were at issue in this case?
15      A.   I used Internet Explorer and Mozilla
16  Firefox.  I may have used Google Chrome.  But
17  typically I'll use Internet Explorer and Mozilla
18  Firefox.
19          With respect to viewing it on mobile
20  devices, it would be -- if it's an iPhone, it would
21  be Safari, and also used Google Chrome on the
22  Galaxy -- the Samsung Galaxy cell phone we have.
23      Q.   The FTC complaint database, can you tell
24  me about that?

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 14..17

Page 14

1      A.   Yes.  It's called Consumer Sentinel.
2  And the complaint database, it holds the complaints
3  that are reported directly to the FTC either by
4  phone, by mail, by -- or I'm sorry -- by consumers
5  who go directly to, like, the FTC's website to
6  report a complaint there.
7           We also receive complaints from other
8  government and regulatory agencies as well as like
9  Better Business Bureaus will also feed complaints
10  into Consumer Sentinel.
11      Q.   With respect to Sentinel in this case,
12  what -- did you do a search?  Is there like -- when
13  you do a search, it'll come back with a list of
14  like all the hits.  Are you familiar with that
15  experience in Internet searching?
16      A.   Yes.  So if I run a search in Sentinel,
17  I can use different words in order to bring out
18  different results, which would just give us a list
19  of the complaints that are in the system that match
20  what I searched on.
21      Q.   So you can search by name, by company,
22  is that correct, as well as other search terms?
23      A.   You can put in name, address, phone
24  number, yeah.

Page 15

1      Q.   Okay.  Did you do a search in this case
2  for CBC and Michael Brown using Sentinel?
3      A.   Just on those terms CBC and Michael
4  Brown or other terms?
5      Q.   Let's just start with those terms.
6      A.   Not on CBC, the acronym CBC.
7      Q.   Okay.  Credit Bureau Center?
8      A.   I may have.  I'm not -- I don't know if
9  I did on Credit Bureau Center.
10      Q.   So how did you go about using Sentinel
11  in this case?  Can you describe that?
12      A.   I searched on complaints -- is there --
13  I'm sorry.  Is there a certain time period that you
14  would like to know?
15      Q.   Actually, let me just -- I'll save that
16  for a little bit later because I think it'll fit
17  with some other questions I have in mind.
18      A.   Okay.
19      Q.   Just to tie up what we are talking about
20  with the investigative techniques that you used, or
21  your educational background, you said you had some
22  training in how to conduct investigations.
23      A.   Uh-huh.
24      Q.   I assume that there would be like maybe

Page 16

1  an hour or maybe two hours of specific time devoted
2  at each annual session on how to conduct an
3  investigation or principles of investigation.  Is
4  that a fair statement?
5      A.   I would say it's more for the entirety
6  of the investigation where the trainings will cover
7  how to conduct an investigation on certain topics
8  of fraud that may be relevant at that specific time
9  that the conference is being held.
10      Q.   Sure.  So your training is on the broad
11  scope of all the cases or potential cases involving
12  deceptive and misleading practices.  So you might
13  have an Internet case, you might have, you know, a
14  series of cases, or they might train you on -- what
15  kinds of things other than -- is everything related
16  to the Internet or do you have specific subject
17  matter areas that you are focusing on at like, say,
18  your last annual seminar?
19      A.   It can cover how to conduct a robo call
20  investigation, Do Not Call enforcement, it can
21  cover Internet cases involving affiliate marketing,
22  CAN-SPAM Act cases.  It can cover advance fee loan
23  cases, general like telemarketing fraud, cross
24  border fraud cases as well.

Page 17

1      Q.   I see.  So it's a very broad spectrum of
2  cases that may come up.  Like I always think of
3  funeral home cases where people have bought stuff
4  from funeral -- like caskets and it turns out that
5  the casket doesn't have the right material.
6           I mean, you would have training in those
7  sorts of categories, general categories of cases;
8  is that fair to say?
9      A.   Yes.
10      Q.   So when you conduct an investigation --
11  well, let me sort of backtrack and go back to sort
12  of the format of how I typically do depositions.
13           I would like to find out a little bit
14  more about your personal experience as well as the
15  training we've just discussed.
16           What have you -- is Chicago the only
17  place that you've been stationed for the FTC?
18      A.   Yes.
19      Q.   Okay.  And with respect to the trainings
20  that you have already mentioned today, have you had
21  any other training in law enforcement other than
22  for the FTC?  Like have you been trained in
23  criminal law enforcement?
24      A.   No.

Page 18

1    Q.   Okay.  Do you hold any licenses as an
2  investigator?
3    A.   No.
4    Q.   Have you applied for any licenses as an
5  investigator?
6    A.   No.
7    Q.   How many times have you had your
8  deposition taken?
9    A.   I believe this is the second.
10   Q.   Okay.  And with respect to your
11 organization, within the FTC you are currently
12 stationed in Chicago; is that correct?
13   A.   Correct.
14   Q.   How many FTC investigators are in
15 Chicago?
16   A.   Two more.  Two others.
17   Q.   Okay.  And at any particular time how
18 many cases are you investigating?
19   A.   I would say between four to eight.
20   Q.   Are all of these -- how are these cases
21 assigned to you?
22      MR. WARD:  Objection if you're going to get
23 into internal discussions with Mr. McKenney.
24

Page 19

1  BY MR. COCHELL:
2    Q.   Okay.  Well, how do you -- with respect
3  to cases, are you -- when you are assigned a case,
4  are these cases earmarked for potential litigation?
5      MR. WARD:  Objection.  That's outside the
6  scope of his duties.  I mean, he's an investigator.
7  Whether or not --
8  BY MR. COCHELL:
9    Q.   Let me ask it a different way.  Of the
10 cases that you're assigned, these four to eight
11 cases, are there any cases that you've been
12 assigned that have not gone to litigation?
13   A.   In the history of my career with the
14 FTC?
15   Q.   Let's talk about the last five years.
16   A.   I honestly don't know.
17   Q.   Okay.
18   A.   There are some cases that I work on as
19 an investigator that are referred to other FTC
20 offices.  So some cases -- some investigations that
21 I may work on, I'm not sure if the ones that have
22 been referred to other offices are ultimately
23 brought to litigation -- or have been brought to
24 litigation.

Page 20

1    Q.   Sure.  As to the cases that you carry
2  and are concluded by you or in your office here, do
3  those typically go to litigation?
4    A.   Yes.
5    Q.   Okay.  And as an investigator do you
6  have a separate chain of command, meaning separate
7  from the lawyers, the staff lawyers, that you work
8  with?
9    A.   I report to an assistant regional
10 director and the regional director.
11   Q.   So the staff attorneys are colleagues
12 during -- do you work with the staff attorneys
13 during an investigation?
14   A.   Yes.
15   Q.   So they are your colleagues; is that a
16 fair statement?
17   A.   Yes.
18   Q.   Okay.  With respect to -- so in the last
19 five years, sitting here today, as to the cases you
20 investigated here in Chicago and weren't referred
21 out, all of those cases went to litigation; is that
22 a fair statement?
23      MR. WARD:  Object to the form; misrepresents
24 testimony.

Page 21

1  BY THE WITNESS:
2    A.   I said I don't know.
3  BY MR. COCHELL:
4    Q.   You don't know?
5    A.   I don't know.
6    Q.   Okay.  Would you say that a high
7  percentage of those cases went to litigation?
8    A.   Yes.
9    Q.   And again, for the last five years, when
10 those cases went to litigation, did all of them
11 seek disgorgement of profits from companies or
12 individuals?
13      MR. WARD:  Objection; outside the scope of his
14 testimony.
15 BY MR. COCHELL:
16   Q.   You can answer.
17   A.   I don't know.
18   Q.   Would you say that a high percentage of
19 the cases that go to litigation that you've
20 investigated in the last five years, would you say
21 there's a high percentage of those cases that seek
22 disgorgement of profits from companies or
23 individuals?
24      MR. WARD:  Objection; outside the scope of his

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 22..25

Page 22

1  testimony.
2  BY MR. COCHELL:
3      Q.  You can answer.
4      **A.  I don't know.**
5      Q.  How many cases do you close a year over
6  the last five years -- three to five years?  What's
7  your average?
8      MR. WARD:  Object to the form of the question;
9  ambiguous.
10  BY MR. COCHELL:
11     Q.  Do you understand the term close?
12     **A.  Can you, I guess, clarify what you mean**
13  **by close?**
14     Q.  Yeah.  It's brought to a conclusion,
15  meaning a consent decree or a dismissal of some
16  sort.
17     **A.  In a year?**
18     Q.  Yes, sir.
19     **A.  Three to five maybe.**
20     Q.  With respect to -- if you have a problem
21  in a case that involves acquiring data, do you have
22  resources in Washington or elsewhere to assist you
23  in accessing data in computers that -- or programs
24  that have been turned over to the FTC?

Page 23

1      **A.  Yes, we do.  We have a litigation**
2  **support team in Washington that we will consult**
3  **with who can do a lot of the technical tasks that**
4  **would either take up too much time or that I simply**
5  **do not know how to do.**
6      Q.  With respect to the database in this
7  case, was there a request by you or someone in your
8  office for the folks in Washington, D.C. to assist
9  you in acquiring data in a usable format from the
10  database that was turned over by CBC?
11     MR. WARD:  Object to the form of the question;
12  compound and potentially because you're getting
13  into the area of work product.
14  BY MR. COCHELL:
15     Q.  Okay.  You can answer.
16     MR. WARD:  Well, that question you can answer.
17  BY THE WITNESS:
18     **A.  Can you clarify which database you're**
19  **referring to?**
20  BY MR. COCHELL:
21     Q.  Yes.  It's the one that's been sent to
22  my office two times, what we refer to as the CBC
23  database.
24     **A.  The CRM?**

Page 24

1      Q.  I thought it was --
2      **A.  The customer database?**
3      Q.  Yes.  Yeah.
4      **A.  I'm sorry.  What was the original**
5  **question?**
6      Q.  The question is, was a request made to
7  assist you in acquiring data in a usable format
8  from the CRM as you called it?
9      **A.  Yes.  I don't have software on my**
10  **computer in my office that can actually view SQL**
11  **files.  So I put in a request with the litigation**
12  **support team in Washington to analyze the customer**
13  **database and essentially make sense of it or at**
14  **least tell me what is in the database.**
15     Q.  Okay.  And if I understand it correctly,
16  the end result of what you got was some spread
17  sheets, specifically I believe eight spread sheets,
18  that have been turned over in discovery in this
19  case?
20     **A.  Yes.  The analyst who reviewed the SQL**
21  **file provided us with a list of tables that were**
22  **contained within the customer database and from**
23  **that list of tables identified ones that contained,**
24  **you know, several rows of data and several columns**

Page 25

1  **of data and produced those in Excel spread sheets**
2  **to where we could view them locally on our**
3  **machines.**
4      Q.  Okay.  And if I understand it correctly,
5  the information or the spread sheets that you
6  received and have turned over in discovery do not
7  permit you to analyze revenue streams from
8  particular affiliates or co-branding partners; is
9  that correct, sir?
10     MR. WARD:  Object to the form of the question;
11  it assumes facts not in evidence.
12  BY MR. COCHELL:
13     Q.  You can answer.
14     **A.  The ones that we received from the**
15  **analyst cannot -- it cannot total the amount of**
16  **money made by particular affiliates.**
17     Q.  Okay.  Did you request the IT people in
18  D.C. to try to analyze the revenue streams from
19  different sources of either affiliates or
20  co-branding partners?
21     MR. WARD:  Object to that.  That's work
22  product.
23     MR. COCHELL:  I respectfully disagree.  I'm
24  asking him about what he did in this case.  I think

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER        Job 27222
Douglas McKenney                                         Pages 26..29

Page 26

1  that's fair game.
2      MR. WARD:  You're asking him to reveal
3  specifically what the FTC is interested in looking
4  at in its evidence and that's work product.
5      MR. COCHELL:  Okay.  Well, I guess we'll agree
6  to disagree.
7  BY MR. COCHELL:
8      Q.  So in any event, with respect to -- have
9  you ever had a case where the FTC has gone to your
10  knowledge to an outside firm to analyze data in a
11  database or part of a program that was at issue in
12  a case that the FTC brought?
13     **A.  I'm sorry.  Can you repeat the question**
14  **again?**
15     Q.  Yeah.  You know, has there ever been a
16  situation where the FTC has gone to an outside firm
17  with expertise to analyze a database to your
18  knowledge?
19     **A.  Yes.**
20     Q.  Okay.  With respect to this kind of
21  case, have you ever been involved in investigating
22  a case involving credit reporting and monitoring
23  companies?
24     **A.  No.  This is the first case.**

Page 27

1      Q.  So would you agree with me that there's
2  a fairly substantial industry that's developed
3  around credit reporting and monitoring services?
4      MR. WARD:  Objection; outside the scope of his
5  testimony and role in this case.
6  BY THE WITNESS:
7      **A.  I don't know.**
8  BY MR. COCHELL:
9      Q.  Okay.  Would it be fair to say that as
10  an investigator one of your goals is to identify
11  all the individuals or companies that are
12  potentially culpable or who violated, you know, one
13  of the acts that the FTC enforces?
14     **A.  Yes.**
15     Q.  And so when you go into a case, you're
16  looking for people who have, just to put it
17  plainly, either made money that they shouldn't have
18  made or who have somehow benefitted from the
19  alleged deceptive or misleading practices; is that
20  correct, sir?
21     **A.  Yes.**
22     Q.  And then part of the mission is to try
23  to obtain redress or financial compensation for
24  consumers who were injured by these activities?

Page 28

1      MR. WARD:  Objection; outside the scope of his
2  testimony and role in this case.
3  BY MR. COCHELL:
4      Q.  Is that one of your goals as an
5  investigator, to assist the FTC or to investigate
6  and find facts that support a case basically
7  against those individuals?
8      **A.  Yes.**
9      MR. WARD:  Same objection.
10  BY MR. COCHELL:
11     Q.  With respect to your approach to
12  investigation, is it fair to say that your job or
13  your role is to be objective and impartial in
14  reviewing facts that you find in a case?
15     **A.  Yes.**
16     Q.  You don't approach cases with a
17  predisposition a complaint has been made, therefore
18  there must be something wrong?  Is that your
19  approach?  I mean, you never assume that somebody
20  is guilty just because of a complaint being made,
21  correct?
22     **A.  Correct.**
23     Q.  Okay.  And you wait for the facts to be
24  discovered before you draw any conclusions; is that

Page 29

1  correct?
2      **A.  Correct.**
3      Q.  Okay.  With respect to this particular
4  case, when did you start the investigation in this
5  case?
6      **A.  I believe March of 2016.**
7      Q.  Was that in early March or late March?
8      **A.  I don't know.**
9      Q.  Okay.  And what prompted you to start an
10  investigation?
11     MR. WARD:  Objection.  You're getting into an
12  area of work product and law enforcement privilege
13  and other privileges.
14     MR. COCHELL:  Okay.  Are you directing the
15  witness not to answer?
16     MR. WARD:  Well, it's -- I think you perhaps
17  could inquire about what type of things
18  Mr. McKenney looked at, all of which is in his
19  declarations that have been filed in this case.
20     But if you're going to ask about
21  internal discussions within the FTC where
22  Mr. McKenney was directed to do certain things or
23  not do certain things, that would be an area that's
24  privileged and I would direct him not to answer.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 30..33

Page 30

1 BY MR. COCHELL:
2    Q.   Okay.  I guess what I'm trying to figure
3 out is what facts did you initially start to
4 investigate?  What is it that prompted you to
5 investigate in this case?  Was there a specific
6 complaint that was filed, a series of complaints?
7 Did you talk to a consumer?  I mean, what was the
8 first thing that you actually did in this case to
9 investigate?
10    **A.   I learned of scams that were being --**
11 **that were using Craigslist as the medium for**
12 **reaching out to consumers.  Based on that I**
13 **was -- I then searched in our Consumer Sentinel**
14 **database and looked for complaints involving**
15 **Craigslist and came across complaints that had been**
16 **filed against eFreeScore and CreditUpdates.  And**
17 **there were a significant number of complaints that**
18 **prompted me to then look further at the comments**
19 **that had been filed by the consumers in their**
20 **complaints.**
21    Q.   Okay.  So have you ever been -- in your
22 capacity as an FTC investigator, have you ever been
23 involved in the last five years, since 2012, in a
24 case where the FTC sent a cease-and-desist letter

Page 31

1 to a company or to an individual to cease their
2 activities?
3    **A.   Yes.  The cases weren't cease-and-desist**
4 **letters.  They were, I believe, referred to as**
5 **notice letters essentially saying we've looked**
6 **maybe at your website or we -- you know, we noticed**
7 **potential violations of, you know -- potential**
8 **violations or potential problems with your website**
9 **or language on your website.**
10    Q.   How many times have you participated in
11 that sort of notice letter?
12    MR. WARD:  Objection to the form.  It's
13 ambiguous.
14 BY MR. COCHELL:
15    Q.   Do you understand the question?
16    **A.   So maybe two or three times.**
17    Q.   Okay.  That's over the last five years?
18    **A.   Yes, I believe so.**
19    Q.   Okay.  And are you the individual that
20 signs those notice letters or is that done by a
21 staff attorney?
22    **A.   I do not sign the letters.  I don't**
23 **remember if it's the staff attorney or the, like,**
24 **regional director of our office.**

Page 32

1    Q.   Okay.  And then the notice letters, do
2 they typically invite people to come in and talk
3 about their websites or try to resolve the
4 situation short of litigation?
5    **A.   I don't remember.**
6    Q.   Have you ever been the investigator in
7 an FTC case in the last five years where the FTC
8 went to court and simply asked the court to enjoin
9 deceptive and misleading practices without seeking
10 other relief?
11    MR. WARD:  Objection; outside the scope of his
12 testimony and role in this case.
13 BY MR. COCHELL:
14    Q.   You can answer the question.
15    **A.   Can you repeat the question?**
16    Q.   Yeah.  I'm trying to find out if you've
17 ever been in a case where -- in the last five
18 years -- where the FTC filed a federal action in
19 federal court to enjoin deceptive and misleading
20 practices but did not seek damages, disgorgement, a
21 receivership.
22    MR. WARD:  Objection to the question being
23 outside the scope of his testimony and role in this
24 case.

Page 33

1 BY THE WITNESS:
2    **A.   I don't know.**
3 BY MR. COCHELL:
4    Q.   Okay.  Sitting here today you can't
5 recall one way or the other?
6    **A.   Correct.**
7    Q.   Okay.  You think probably you've never
8 had occasion to be in a case where they just seek
9 an injunction and nothing else?
10    MR. WARD:  Objection to the form,
11 misrepresents the testimony.
12 BY THE WITNESS:
13    **A.   I don't know.**
14 BY MR. COCHELL:
15    Q.   Okay.  All right.  Do you have any --
16 are you required to adhere to any particular
17 policies or procedures regarding investigative
18 technique in certain cases?
19    MR. WARD:  Objection to the form of the
20 question; ambiguous.
21 BY MR. COCHELL:
22    Q.   Are you familiar with the U.S.
23 Attorney's Office and U.S. Attorney's Manual?  Have
24 you ever seen or heard of it?

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 34..37

Page 34

1    A.   No.

2    Q.   Do you have like a manual or a set of
3    documents that, like, you keep by your desk that
4    the agency issues that says, hey, you know, in
5    a Section 5 case, you know, you should follow these
6    particular policies and procedures in conducting
7    your investigation, or words to that effect?

8    A.   We have certain rules that govern like
9    how we can -- how we should conduct investigations
10   maybe involving like social media practices or --
11   you know, that's the one I can think of off the top
12   of my head.  I know that there are other rules that
13   are in place for, you know, when to -- like how we
14   can conduct undercover work, such as recording
15   phone conversations, things of that nature.

16   Q.   Okay.  All right.  Did you perform any
17   undercover work in this case?

18   A.   Yes.

19   Q.   Tell me about that.  What did you do?

20   A.   I went to -- onto Craigslist and looked
21   for ads that appeared to be related to this scheme
22   I'll say from that contacted the e-mail address
23   on the Craigslist post and then received a reply
24   back from the landlord --

Page 35

1    Q.   Okay.

2    A.   -- and then went to the website from the
3    link that was presented in the landlord e-mail.

4    Q.   Okay.  Anything else?

5    A.   I went to the various MyScore CBC
6    websites to capture those websites, both the main
7    websites as well as the landing pages from the
8    landlord e-mail.

9    Q.   Did you actually sign up for the credit
10   monitoring services on any of these websites?

11   A.   I was able to sign up on the -- I think
12   it's CreditScores123.com that was part of --
13   related to the contempt action.

14   Q.   Okay.

15   A.   And I believe that's the Credit Data
16   Partners website.

17        I could not sign up on the MyScore
18   pages, which were CreditUpdates and eFreeScore,
19   because it asked for a Social Security number.

20   Q.   Okay.  Have you ever yourself signed up
21   personally for a credit score or credit monitoring
22   service?

23        MR. WARD:  Objection; outside the scope of his
24   testimony and role in this case.  Mr. McKenney's

Page 36

1    personal life is not at issue.

2    BY MR. COCHELL:

3    Q.   You can answer the question.

4    A.   I requested my credit reports from the
5    free website, the annual CreditReport.com, and I've
6    given permission to others to pull my credit score
7    relating to financial transactions, such as either
8    applying for a credit card or for applying for a
9    mortgage.

10   Q.   Sure.  But you've never gone to like
11   Experian or like Credit Bureau Center or companies
12   like that and said I want to have a credit
13   monitoring service and get alerts and get credit
14   reports and all that?  You've never done that?

15        MR. WARD:  Objection to the form;
16   misrepresents testimony.

17   BY THE WITNESS:

18   A.   Correct, I've never done it.

19   BY MR. COCHELL:

20   Q.   Okay.  You can understand how
21   particularly in the last couple years people might
22   be interested in signing up for those monitoring
23   services; is that a fair statement?

24        MR. WARD:  Objection to the question.  It's

Page 37

1    outside the scope of Mr. McKenney's testimony and
2    role in this case.

3    BY MR. COCHELL:

4    Q.   You can answer.

5    A.   I'm fairly aware that these services are
6    out there based on the OPM.gov breach.

7    BY MR. COCHELL:

8    Q.   Yeah.  With respect to this case, if I
9    understand it correctly, your declarations contain
10   all of the websites that you were able to capture
11   involving eFreeScore or CreditUpdates?

12   A.   I'm sorry.  Can you repeat the question?

13        MR. COCHELL:  Why don't you read it back.

14        (WHEREUPON, the record was read

15        by the reporter as requested.)

16        MR. WARD:  Objection; assumes facts not in
17   evidence.  His declaration says what it says.  I
18   don't think it says that.  And if you want him to
19   testify about his declaration, maybe we should put
20   it in front of him.

21        MR. COCHELL:  I'm asking for the witness'
22   recollection.

23        MR. WARD:  Well, you want him to recite back
24   to you what it's in his declaration filed with the

Page 38

1   court?
2       MR. COCHELL: I'm asking him to answer a
3   question. If he can answer it, he can answer it.
4   If he can't answer it, then he can't answer it.
5   BY MR. COCHELL:
6       Q.   You understand -- I mean, you were here
7   when the so-called rules of depositions were taken.
8   If I ask a question that you don't understand, ask
9   me to repeat it, which you've done. If you would
10  like me to rephrase it, I'll do that. And if there
11  is a question that you can't answer, just tell me
12  that. Okay? And that's without looking at a
13  document.
14      **A.   Right. My issue with answering the**
15  **question is how you have phrased it.**
16      Q.   Okay.
17      **A.   Are you saying the -- as attached -- the**
18  **websites that are attached to my declaration --**
19      Q.   Right.
20      **A.   -- or are you saying --**
21      Q.   I mean, in your declaration did you
22  attach all the websites that you found for
23  eFreeScore and CreditUpdates?
24      **A.   No.**

Page 39

1       Q.   Okay. All right. With respect to the
2   negative option -- let me back up.
3       You heard testimony yesterday and I
4   think you've probably -- have you reviewed the
5   pleadings in this case as they've been filed?
6       **A.   Not all of them.**
7       Q.   In yesterday's testimony I believe
8   Mr. Brown testified that the websites that were
9   referenced and attached to the FTC's complaint in
10  this case were activated on December 1, 2016.
11      MR. WARD: Objection to the --
12  BY MR. COCHELL:
13      Q.   Do you recall that?
14      MR. WARD: Objection to the question,
15  misrepresents the testimony.
16  BY MR. COCHELL:
17      Q.   Do you recall that testimony?
18      **A.   I do but it's not 2016. It's 2015.**
19      Q.   Okay. All right. So those websites
20  were activated December 1st of 2015, is that what
21  you're saying?
22      MR. WARD: Objection. It assumes facts not in
23  evidence.
24  BY THE WITNESS:

Page 40

1       **A.   That's what the testimony was yesterday,**
2   **was that it was December 2015 to January 2016.**
3   BY MR. COCHELL:
4       Q.   Okay. Do you agree or disagree as to
5   when those websites were activated from -- that you
6   referred to -- that were referred to in the FTC
7   complaint? When they activated, the ones that
8   are the subject of the complaint?
9       MR. WARD: Objection to the form; lack of
10  firsthand knowledge.
11  BY MR. COCHELL:
12      Q.   If you know.
13      **A.   I don't know. We began our**
14  **investigation in March of 2016. I believe the**
15  **first time I went to one of the**
16  **eFreeScore/CreditUpdates website was at the very**
17  **end of March 2016.**
18      Q.   So you've never tried to determine when
19  the websites were actually active -- activated?
20      MR. WARD: Objection to the form; assumes
21  facts not in evidence.
22  BY THE WITNESS:
23      **A.   Can you rephrase the question?**
24

Page 41

1   BY MR. COCHELL:
2       Q.   Sure. Did you ever determine when the
3   websites that are referred to in the FTC complaint
4   were activated and were on the Internet available
5   to consumers?
6       **A.   Which websites?**
7       Q.   Okay. Let's take a look at your
8   complaint -- or not your complaint -- the FTC's
9   complaint.
10      (WHEREUPON, a certain document was
11      marked McKenney Deposition Exhibit
12      No. 1, for identification, as of
13      12/14/2017.)
14  BY MR. COCHELL:
15      Q.   The complaint by the FTC in this case at
16  Paragraph I believe 11 -- no, wait a minute -- 21
17  refers to the Credit Bureau Center defendants'
18  websites, including eFreeScore.com and
19  CreditUpdates.com, which are allegedly materially
20  similar.
21      Do you see that in Paragraph 21?
22      **A.   I see it on Page 21.**
23      Q.   Okay.
24      **A.   I'm sorry --**

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 42..45

Page 42

1    Q.   Page 8, Paragraph 21.
2    **A.   I was confused.  Okay.**
3    Q.   So have you -- and then it shows the
4    eFreeScore -- on Paragraph 23 it shows the
5    eFreeScore.com landing page.
6         Did you determine when this particular
7    Internet ad was activated and put on the Internet?
8         MR. WARD:  Objection to the form of the
9    question; assumes facts not in evidence.
10   BY THE WITNESS:
11   **A.   The first time I visited the website was**
12   **at the end of March 2016.**
13   BY MR. COCHELL:
14   Q.   Okay.  So you've never taken steps to
15   see when it actually became active on the Internet
16   for consumers to see; is that fair to say?
17   **A.   Correct.**
18   Q.   Okay.  And that would be true for the
19   CreditUpdates.com website; is that correct, sir?
20        MR. WARD:  Objection to the form of the
21   question.  You're talking about Paragraph 23 of the
22   FTC's complaint?  These are mobile sites for one
23   thing.
24        MR. COCHELL:  Are you coaching the witness or

Page 43

1    are you making an objection?
2         MR. WARD:  No.  Honestly, I want the
3    question --
4         MR. COCHELL:  I know you want the question to
5    be phrased a different way.
6         MR. WARD:  Well, you can't ask misleading
7    questions and suggest that there's something in
8    Paragraph 23 that's not there.
9         MR. COCHELL:  I didn't refer to Paragraph 23.
10        MR. WARD:  Yes, you did.
11        MR. COCHELL:  I asked -- okay.  I'm not going
12   to continue this.
13   BY MR. COCHELL:
14   Q.   With respect to the CreditUpdates.com
15   website that is the subject of this complaint, did
16   you determine when that site was active on the web?
17        MR. WARD:  Objection to the form of the
18   question; ambiguous.
19   BY MR. COCHELL:
20   Q.   Answer the question, please, sir.
21   **A.   Can you specify as to which website**
22   **you're referring to?**
23   Q.   Well, okay.
24   **A.   Because -- I'm sorry.  Because there's**

Page 44

1    **the desktop version and then there's the mobile**
2    **version and then there's eFreeScore.com and then**
3    **there's CreditUpdates.com.**
4    Q.   Okay.  I think I used the term
5    CreditUpdates.com.  Okay?
6    **A.   Okay.**
7    Q.   Can you answer the question with that
8    information?
9    **A.   On the desktop?**
10   Q.   On the desktop, yeah.
11   **A.   The first time I reviewed the site was**
12   **in March of -- late March 2016.**
13   Q.   So you did not -- my question though
14   is -- and let me just restate it.  Did you
15   determine when this website became active and
16   available to consumers on the Internet?
17        MR. WARD:  Objection to the form of the
18   question; ambiguous.
19   BY THE WITNESS:
20   **A.   I don't remember.**
21   BY MR. COCHELL:
22   Q.   Is there a difference between a
23   website -- is there a difference in trying to
24   determine the activation date for a mobile website

Page 45

1    versus a -- for a mobile website -- a mobile
2    version of a website versus a desktop version, do
3    you know?
4    **A.   I don't know if you can determine an**
5    **activation date on a particular website.  What**
6    **you're referring to are landing pages.**
7         During the course of the investigation
8    we -- I'm sorry -- I looked to see when the
9    CreditUpdates.com and eFreeScore.com domain names
10   were registered by a particular domain registrar,
11   which would give me an activation date for when the
12   domain names were actually registered.
13        But as far as like when the websites
14   came on line, I don't necessarily know if there's a
15   way to determine that.
16   Q.   Okay.  When did you learn for the first
17   time that there was something called a white label
18   business conducted by CBC?
19        MR. WARD:  Objection to the form of the
20   question; assumes facts not in evidence.
21   BY MR. COCHELL:
22   Q.   Go ahead.
23   **A.   After the -- I believe it was after the**
24   **TRO filing.**

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER Job 27222
Douglas McKenney Pages 46..49

Page 46

1 Q. Okay. And what did you do, if anything,
2 to determine if there was a white label business?
3   MR. WARD: Objection to the form of the
4 question; ambiguous.
5 BY THE WITNESS:
6  **A. I don't know.**
7 BY MR. COCHELL:
8  Q. Did you do anything?
9   MR. WARD: Same objection.
10 BY THE WITNESS:
11  **A. I don't remember.**
12 BY MR. COCHELL:
13  Q. Okay. With respect -- you've seen in --
14 there is a contention by Mr. Brown that 55 percent
15 of CBC's business was unrelated to Mr. Pierce's
16 activities. Are you familiar with that contention?
17  **A. Yes.**
18  Q. What have you done, if anything, to
19 determine if that is accurate or inaccurate?
20   MR. WARD: Objection; work product.
21 BY MR. COCHELL:
22  Q. Have you taken any steps to determine if
23 that's accurate or inaccurate, just to be clear for
24 the record?

Page 47

1   MR. WARD: Objection based on the work
2 product. It just concerns me that this is getting
3 into the area of work product.
4   MR. COCHELL: I understand but I would like an
5 answer to my question. Are you directing him not
6 to answer?
7   MR. WARD: This one you can answer.
8 BY THE WITNESS:
9  **A. Can you -- sorry. Can you repeat the**
10 **question?**
11   MR. COCHELL: Repeat the question.
12   (WHEREUPON, the record was read
13   by the reporter as requested.)
14 BY THE WITNESS:
15  **A. I have reviewed the Offerit database**
16 **which kept track of affiliate sales, and in that**
17 **database Danny Pierce's affiliate ID is contained**
18 **within it as well as the number of sales that were**
19 **attributable to him as well as the other affiliates**
20 **that were contained within that Offerit database.**
21 **After the filing -- the TRO filing we**
22 **received access to the LinkTrust database and in**
23 **that LinkTrust database obtained information as to**
24 **the number of sales that were attributable to the**

Page 48

1 **affiliates contained within that database.**
2 BY MR. COCHELL:
3  Q. And so there's something called a
4 LinkTrust database; is that correct, sir?
5  **A. Yes.**
6  Q. And do you have any information about
7 how many affiliates were listed in the LinkTrust
8 database?
9  **A. More than 50 I believe.**
10  Q. Okay. And so less than 100 but more
11 than 50; is that a fair statement?
12  **A. I believe it's more -- I don't believe**
13 **it's within the range of 50 to 100.**
14  Q. Do you think it's more or less?
15  **A. I believe it's more.**
16  Q. Okay. But you don't know how much
17 more -- how many more?
18  **A. Correct.**
19  Q. Okay. Did you ever talk to anyone with
20 personal knowledge of the use of the LinkTrust
21 database to determine how that database was used by
22 CBC?
23  **A. No, I did not talk personally to anyone.**
24  Q. Do you have any information from anybody

Page 49

1 about the purpose and use of the LinkTrust
2 database?
3  **A. I sat in on Mr. Brown's testimony at the**
4 **PI hearing in which I believe he discussed the**
5 **LinkTrust database as well as I believe the**
6 **receiver did, Brick Kane -- B-r-i-c-k K-a-n-e -- I**
7 **believe also discussed the LinkTrust database.**
8  Q. Prior to this lawsuit were you familiar
9 with the practice by companies generally with
10 co-branding Internet sites?
11  **A. Yes.**
12  Q. What is co-branding?
13   MR. WARD: Objection; outside the scope of his
14 testimony in this case.
15 BY MR. COCHELL:
16  Q. Go ahead.
17  **A. It's where you would allow another**
18 **company to put their name on the front end of the**
19 **website but the services are actually provided by**
20 **the back-end company.**
21  Q. And what is your understanding of the
22 term white label program?
23   MR. WARD: Objection; outside the scope of his
24 testimony and role as a witness.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER     Job 27222
Douglas McKenney     Pages 50..53

Page 50

1  BY MR. COCHELL:
2     Q.  Go ahead.
3     **A.  I believe with white label you remove**
4  **all references to the back-end company.**
5    MR. COCHELL:  Why don't we take a break and I
6  will start back up in about five minutes or so.
7        (WHEREUPON, a recess was had
8         from 10:32 a.m. to 10:41 a.m.)
9  BY MR. COCHELL:
10    Q.  Mr. McKenney, I would like to just show
11 you what has been marked as Exhibit 2 for
12 identification and ask you, sir, if you recognize
13 that document.
14       (WHEREUPON, a certain document was
15       marked McKenney Deposition Exhibit
16       No. 2, for identification, as of
17       12/14/2017.)
18 BY MR. COCHELL:
19    Q.  I'm not saying that this is an official
20 document of the FTC but it's for just illustrating
21 how searches are done.
22     Let me just represent to you that if
23 someone put in search terms for credit score or
24 some of the other terms that -- free credit report

Page 51

1  or credit scores, it might come up with this sort
2  of document No. 2 where it has the hits, so to
3  speak, from the Internet for the search terms put
4  in.
5      You recognize this, right?
6    MR. WARD:  Objection to the form of the
7  question; it's ambiguous.
8  BY MR. COCHELL:
9     Q.  Do you recognize this sort of results
10 that you'd get if you were doing an Internet
11 search?
12    **A.  If I went onto Google and typed in "free**
13 **credit score," I would say that this looks like a**
14 **Google search result page from that search.**
15    Q.  Sure.  Okay.  Now, and this is typical
16 of -- let me just ask you this:  When you
17 investigate a case, this document, Exhibit 2, or a
18 Google search page, you're not looking to determine
19 whether the two or three or four lines for each
20 hit, so to speak -- like it says at the top
21 "Registration - Discover Credit Scorecard" it has
22 like three lines underneath it at the very top.  Do
23 you see that?
24    **A.  Yes.**

Page 52

1     Q.  Okay.  When you're investigating, you're
2  not looking to see if there's any misleading
3  information or deceptive information on the Google
4  hit; you are looking -- you would access the actual
5  website itself to determine if there's any
6  misleading information there; is that correct, sir?
7     **A.  In other investigations that I have**
8  **conducted I've looked at Google search result pages**
9  **and looked at the words that are presented on the**
10 **page, like the key words, or possibly the -- what**
11 **are referred to as like banner ads in the search**
12 **results pages.**
13    Q.  Sure.
14    **A.  Those banner ads could contain deceptive**
15 **words.  But I would also then go to the particular**
16 **website from the Google search results page to**
17 **review that as well.**
18    Q.  Well, in this sort of document -- or in
19 this sort of hits, so to speak, in Exhibit 2 you're
20 not expecting to see a negative option disclosure;
21 is that a fair statement?
22   MR. WARD:  Objection to the form of the
23 question; outside the scope of his testimony as a
24 witness.

Page 53

1  BY MR. COCHELL:
2     Q.  You can answer the question.
3    MR. WARD:  He's not testifying as to legal
4  issues.  This has been covered in the preliminary
5  injunction hearing and the judge actually ruled on
6  some of these issues.
7    MR. COCHELL:  Please just give me your
8  objection rather than side bar.
9  BY MR. COCHELL:
10    Q.  Can you answer that question?
11    **A.  Can you repeat that question?**
12    Q.  Let me put it a different way.  When you
13 go to this sort of page, you're looking to --
14 consumers are looking not to get the full deal
15 contained in two or three lines; they're looking to
16 see what's available and then they access the full
17 website; is that correct?
18   MR. WARD:  Objection to the form of the
19 question; assumes facts not in evidence.  Also
20 outside the scope of his testimony and role in this
21 case.
22   MR. COCHELL:  Okay.  That's not really an
23 objection, a form objection.
24   MR. WARD:  Well, I'm making a series of

Page 54

1  objections.
2      MR. COCHELL:  I know you're making it and it's
3  cluttering up the record.
4  BY MR. COCHELL:
5      Q.   So, sir --
6      MR. WARD:  You're trying to ask him what
7  consumers expect?
8  BY MR. COCHELL:
9      Q.   Are you able to say -- have you ever
10  seen a full negative option disclosure on this sort
11  of Google search, Exhibit 2?
12     MR. WARD:  Objection to the form of the
13  question; ambiguous.
14  BY MR. COCHELL:
15     Q.   Can you answer the question?  Have you
16  ever seen one?
17     **A.   I don't know if I have.**
18     Q.   Okay.  I would like to show you Exhibit
19  3 for identification.
20         (WHEREUPON, a certain document was
21          marked McKenney Deposition Exhibit
22          No. 3, for identification, as of
23          12/14/2017.)
24

Page 55

1  BY MR. COCHELL:
2      Q.   And ask you, sir, if you recognize that
3  document.
4      **A.   I don't recognize this.**
5      Q.   Do you know if -- all right.  That's No.
6  3, Scorepull.com?
7      **A.   Yes.**
8      Q.   Okay.  I would like to show you No. 4.
9          (WHEREUPON, a certain document was
10          marked McKenney Deposition Exhibit
11          No. 4, for identification, as of
12          12/14/2017.)
13  BY MR. COCHELL:
14     Q.   I show you Exhibit 4 for identification
15  and ask you, sir, if you can identify that
16  document.
17     **A.   It might be a website capture that I did**
18  **from the eFreeScore.com website, but without a date**
19  **or any sort of information about the file I can't**
20  **say with certainty if it's something that I did or**
21  **not.**
22     Q.   Fair enough.  With respect to -- there
23  is an allegation in the complaint that mobile sites
24  for -- I'll give you a specific paragraph to look

Page 56

1  at.  Do you have the complaint there?
2      **A.   Yes.**
3      Q.   Okay.  You've made distinctions or there
4  are distinctions in the complaint between mobile
5  and desktop applications, is that correct, sir, as
6  to the nature of the allegations for violations of
7  the act?
8      **A.   Distinctions between the what?  The**
9  **mobile and desktop websites?**
10     Q.   Yes.
11     **A.   Yes.**
12     Q.   One of the distinctions is that the
13  mobile website did not contain a negative option
14  disclosure on the landing pages.
15     MR. WARD:  Objection; assumes facts not in
16  evidence.
17  BY THE WITNESS:
18     **A.   On Page 1 of the landing page for the**
19  **mobile captures it did not contain the seven-day**
20  **trial and the cost of the monthly membership on**
21  **Page 1 of the landing page.**
22  BY MR. COCHELL:
23     Q.   And that was because the mobile site was
24  partially cut off, or do you know one way or the

Page 57

1  other why it didn't have it?
2      **A.   I can't say why the mobile version of**
3  **the website rendered differently than on the**
4  **desktop.**
5      Q.   Okay.  Do you know what percentage of
6  customers signed up for membership through a mobile
7  application?
8      **A.   I don't know.**
9      Q.   Okay.  Would you -- never mind.
10         Now, there was testimony yesterday and
11  there are apparently letters or e-mails that were
12  sent by Mr. Pierce's organization to potential
13  customers.  Do you recall that testimony?
14     **A.   Yes.**
15     Q.   Let me just show you what has been
16  marked as Exhibit 5.
17         (WHEREUPON, a certain document was
18          marked McKenney Deposition Exhibit
19          No. 5, for identification, as of
20          12/14/2017.)
21  BY MR. COCHELL:
22     Q.   Do you recognize that document?
23     **A.   Yes.**
24     Q.   And this has some control numbers DE3.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER          Job 27222
Douglas McKenney                                          Pages 58..61

Page 58

1  Do you know what DE stands for?
2      A.   No, I don't.
3      Q.   Do you know how many customers received
4  this version of this e-mail?
5      A.   No.
6      Q.   And inviting your attention to the
7  portion of the document with the paragraph
8  starting, "When you are ready to schedule a tour,
9  please not that you are responsible for the
10 following."
11         Do you see that?
12     A.   No, I don't.
13     Q.   In the middle of the page, the fourth
14 paragraph down.  Okay.  Do you see that?
15     A.   Okay.  Yeah.
16     Q.   Then underneath it there's a bullet,
17 "Your updated credit report that you can find
18 here.  This is a soft pull so it will not affect
19 your credit score.  We require a recent credit
20 report no matter what situation.  This is not
21 negotiable and we do not accept from those free
22 sites."
23         Do you see that?
24     A.   Yes.

Page 59

1      Q.   Okay.  So customers reviewing this
2  document would know that they cannot get a -- they
3  cannot submit a credit report from a free site; is
4  that correct?
5      MR. WARD:  Objection; form and lack of
6  personal knowledge.
7  BY THE WITNESS:
8      A.   I don't know what a consumer would
9  expect.
10 BY MR. COCHELL:
11     Q.   Okay.  And you don't know how many of
12 the consumers who are -- who signed up for the
13 service actually got this particular version of
14 this e-mail, correct?
15     A.   I don't know if this e-mail was ever
16 sent.  At the bottom -- it just says "name" at the
17 very bottom of it, so it suggests that it could be
18 a draft.
19     Q.   Okay.  Fair enough.  I would like to
20 show you what has been marked as Exhibit 6 for
21 identification and ask you, sir, if you recognize
22 that document.
23
24

Page 60

1          (WHEREUPON, a certain document was
2          marked McKenney Deposition Exhibit
3          No. 6, for identification, as of
4          12/14/2017.)
5  BY MR. COCHELL:
6      Q.   Do you recognize this, sir?
7      A.   I don't recognize this specific
8  printout.  To me it looks like it could be
9  CreditUpdates' website, the CreditUpdates website.
10     Q.   Okay.
11     A.   And it says January 18, 2017.  So it was
12 from after the TRO was filed.
13     Q.   Okay.  Let me ask you this:  With
14 respect to the -- so this looks -- are you able to
15 say based on your investigation that this appears
16 to be the CreditUpdates website?
17     A.   I mean, it looks sort of similar to the
18 ones that I reviewed but it's only the top half of
19 the page.  It doesn't contain any of the other
20 portion of the -- like the bottom half of the page.
21 So yeah, I can't say with certainty.
22     Q.   Okay.  So what's the bottom half of the
23 page that you think is missing?
24     A.   That I think is missing?

Page 61

1      Q.   Yeah.
2      A.   There were additional text below this
3  along with the picture of a woman.  And I
4  believe if we reviewed Exhibit 1 of the -- if we
5  reviewed the complaint, it contains what the bottom
6  half of the page looks like.
7      Q.   Okay.  Well, let's take a look at this
8  one.  This appears similar but maybe not identical.
9  Is that a fair -- would you agree with that?
10     A.   Which one are you referring to?
11     Q.   Exhibit 6.
12     A.   In comparison to what?
13     Q.   I guess, you know, I'm looking at the
14 complaint and Exhibit 1 of the complaint looks
15 pretty identical to me.  Can you see this
16 (indicating)?  And this is for eFreeScore and it's
17 virtually identical to Exhibit 6.
18         So I'm referring to Deposition Exhibit 1
19 and Exhibit 1 attached to the complaint, Exhibit 1.
20     MR. WARD:  Objection to the form of the
21 question; assumes facts not in evidence.
22 BY THE WITNESS:
23     A.   I mean, the trial period in Exhibit 1 is
24 different.  It's a seven-day trial.  This one says

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER          Job 27222
Douglas McKenney                                          Pages 62..65

Page 62

1  14-day trial.
2  BY MR. COCHELL:
3      Q.   Okay.  But you were referring to a
4  picture -- you were saying this is only half of the
5  document.  So I'm a little perplexed.  So if you
6  could just clarify in fact Deposition Exhibit 6 has
7  the same format although it may not have some of
8  the same dates as Exhibit 1 to Deposition Exhibit
9  1.
10     MR. WARD:  Objection to the form of the
11 question; assumes facts not in evidence and it's
12 ambiguous.
13 BY THE WITNESS:
14     A.   If you go to Exhibit 2 of the complaint,
15 which is Exhibit 1 of this deposition but Exhibit 2
16 of the complaint, it has what I was discussing.
17 BY MR. COCHELL:
18     Q.   Okay.  But Exhibit 1 to Deposition
19 Exhibit 1 appears to be very similar but for the
20 dates to Deposition Exhibit 6?
21     MR. WARD:  Objection; form, ambiguous.
22 BY THE WITNESS:
23     A.   I mean, I think the size of Exhibit 6 is
24 larger than what's presented with Exhibit 1.  With

Page 63

1  Exhibit 1, when I captured the website I did so
2  using the screen capture program.  That's why you
3  see the URL at the top of the page.  And so this
4  is -- sorry.  Just to clarify, this is Exhibit 1 of
5  Exhibit 1 of the deposition.
6      MR. WARD:  No.  Of the complaint.
7      THE WITNESS:  I'm sorry.  Exhibit 1 of the
8  complaint, yeah, which is Exhibit 1.
9      MR. WARD:  Sorry.
10     MR. COCHELL:  No problem.
11 BY THE WITNESS:
12     A.   Whereas this here (indicating) appears
13 to be if you just went in and did a print from the
14 browser.  So this would be -- I assume that there's
15 probably more pages to this than what's given here.
16 BY MR. COCHELL:
17     Q.   You're talking about Deposition Exhibit
18 6?
19     A.   Yes.
20     Q.   Okay.  Let's just go back to Exhibit 1.
21 I mean, this particular screen capture, I guess it
22 all depends on whether -- what a consumer can see
23 and what they can't see is dependent on the size of
24 their screen, right?

Page 64

1      A.   It's not dependent on the size of the
2  screen.  It's dependent on the setting on the
3  browser for how far zoomed in it is, if it's at 100
4  percent or if it's 200.  They could have the
5  content on the screen blown up larger or smaller
6  and capture this.  This is done at 100 percent.
7      Q.   Okay.  So you're saying this is 100
8  percent, but if you were on a larger screen you can
9  see it better, can't you?
10     A.   I don't know.  Maybe.
11     Q.   All right.  So let's just go back to
12 Exhibit 6.  This talks about a 14-day trial that
13 ends February 1st, 2017.  Do you see that, that
14 section?
15     A.   Yes.
16     Q.   Okay.  And then it talks about a monthly
17 membership of 29.94, which is automatically charged
18 after the trial, correct?
19     A.   Yes.
20     Q.   And then for questions or to cancel just
21 call 800-720-6627; is that correct?
22     A.   Correct.
23     Q.   And this is the first page that
24 consumers see when they access the

Page 65

1  CreditUpdates.com site; is that correct?
2      MR. WARD:  Objection; assumes facts not in
3  evidence; misrepresents the prior testimony.
4  BY THE WITNESS:
5      A.   It's the first page that they come to if
6  they're referred from the landlord e-mail, the link
7  that's contained in the landlord e-mail.
8  BY MR. COCHELL:
9      Q.   All right.  So you agree with me this is
10 the first thing they see?
11     MR. WARD:  Objection.  Same objection.
12 BY THE WITNESS:
13     A.   This version of -- well, I can't say
14 specifically this page because this is done on
15 January 18th, 2017, which is after the court
16 filing, the TRO filing in the case.
17 BY MR. COCHELL:
18     Q.   Okay.  With respect to -- now, let me
19 ask you something.  The size of the font, do you
20 have any sense of what the size of the font is for
21 the three parts of the "14-day trial," "monthly
22 membership," "for questions"?  I mean, do you know
23 what size font was entered?
24     A.   No, I do not.

Page 66

1    Q.   Okay.  And I note that there's -- "Free
2  Credit Score" is in a lighter color than the rest
3  of the banner saying "Get Your Free Credit Score
4  and Report as of January 18, 2017."
5    MR. WARD:  Objection.  There is no color on
6  Exhibit 6.
7    MR. COCHELL:  It's a lighter color than the
8  rest of the banner.
9  BY MR. COCHELL:
10   Q.   And is that correct or not?
11   **A.   When I viewed the websites, the "Free**
12 **Credit Score" was an orange color, like a dark**
13 **orange color.**
14   Q.   So it's in a distinctive different color
15 than "Get Your"..."And Report As of" the date?
16   MR. WARD:  Objection to the form of the
17 question; ambiguous.
18 BY MR. COCHELL:
19   Q.   Isn't that correct, sir?
20   **A.   Yes.**
21   Q.   All right.  So the consumer then goes to
22 the next page which talks about privacy and
23 security are 100 percent protected; is that
24 correct?

Page 67

1    A.   Are you looking at -- I'm sorry.  Can
2  you repeat?
3    Q.   Deposition Exhibit 6, second page of the
4  document.  That would be the next page that they
5  would access if they were interested in pursuing
6  membership?
7    **A.   Yes.  If the consumer puts their name,**
8  **e-mail, ZIP, and selected the "Your Score Now"**
9  **button, they would be taken to Page -- a page**
10 **similar to this.**
11   Q.   Okay.  Now, if you're on a mobile site,
12 the consumer is able to enlarge the print while
13 filling out the form; is that correct?  They can
14 enlarge the screen so they can read it easier or
15 more easily?
16   **A.   Yes.  I mean, you can increase the size**
17 **by using your fingers to enlarge the text on the**
18 **page, yes.**
19   Q.   Okay.  And then the text appears before
20 they create their user name and password on this
21 particular form, Page 2 of Deposition Exhibit 6; is
22 that correct?
23   **A.   Correct.**
24   Q.   Okay.  Then if they completed that page,

Page 68

1  then they would go to the next page; is that
2  correct, sir?
3    MR. WARD:  Objection; lack of foundation.
4  BY THE WITNESS:
5    **A.   Yes.  They would go to a page similar to**
6  **this.**
7  BY MR. COCHELL:
8    Q.   Okay.  And then once completing that
9  page -- well, let me ask you this:  Where it says
10 at the very bottom "Payment Information," it
11 states, "When you place your order here, you will
12 begin your membership in CreditUpdates.com.  You
13 will be billed 29.95 every month you continue your
14 membership.  If you wish to cancel, just call us at
15 (800) 720-6627 to stop your membership."
16     That's what it says on this form,
17 correct?
18   **A.   That's what it says on this page, yes.**
19   Q.   And then it says "Submit and Continue"?
20   **A.   That's what it says on this page, yes.**
21   Q.   And this would be consistent with the
22 disclosure requirements in ROSCA; is that correct,
23 sir?
24   MR. WARD:  Objection.  That's outside the

Page 69

1  scope of his testimony.  He is not testifying as a
2  legal expert.
3    MR. COCHELL:  Fair enough.
4  BY MR. COCHELL:
5    Q.   Going on to the next page, that would be
6  Social Security information and month, date, and
7  year in the next page of Deposition Exhibit 6,
8  correct, sir?
9    **A.   Yes, correct.**
10   Q.   And then that would complete the
11 process, is that correct, for signing up if you
12 know?
13   **A.   I don't know.**
14   Q.   Okay.  Fair enough.  Any other pages to
15 this particular document that you've got there,
16 Deposition Exhibit 6?
17     Okay.  Let me show you the next one in
18 order, assuming I can find it.  This would be No. 7
19 I believe.
20     (WHEREUPON, a certain document was
21     marked McKenney Deposition Exhibit
22     No. 7, for identification, as of
23     12/14/2017.)
24

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 70..73

Page 70

1 BY MR. COCHELL:
2    Q.   Do you recognize that document?
3    A.   Yes.
4    Q.   Okay.  And have you seen other documents
5 similar to Deposition Exhibit 7 during your
6 investigation?
7      MR. WARD:  Object to form; ambiguous.
8 BY MR. COCHELL:
9    Q.   You can answer.
10    A.   I have seen the welcome to
11 CreditUpdates.com or eFreeScore.com e-mails from a
12 couple other consumers.
13    Q.   Okay.  Did you determine whether this
14 was a routine business practice of Credit Bureau
15 Center?
16      MR. WARD:  Objection; lack of firsthand
17 knowledge.
18 BY MR. COCHELL:
19    Q.   As an investigator, did you conclude
20 that this was a regular business practice of CBC?
21    A.   I did not make a conclusion as to that.
22    Q.   Okay.  All right.  I notice that that
23 one -- does that have the color in it for
24 CreditUpdates?

Page 71

1    A.   (Indicating).
2    Q.   Okay.  That's good.
3      So in this particular document people
4 are advised immediately -- do you know what the
5 timing of these were?  Were they sent the same day
6 as the signup?  Were they sent sometime after?
7      MR. WARD:  Object to the form, vague.
8 BY THE WITNESS:
9    A.   I believe with this particular consumer
10 it was sent, you know, within a day.
11 BY MR. COCHELL:
12    Q.   Okay.  And so depending on their trial
13 period, whether it's 7 or 14 days or longer, they
14 would get this -- as far as you know as an
15 investigator, a consumer would get this notice,
16 Deposition Exhibit 7, within a day of signing up?
17      MR. WARD:  Object to the question; it
18 misrepresents his testimony.
19 BY MR. COCHELL:
20    Q.   Is that fair or not?
21    A.   You know, I can speak about just this
22 particular consumer.
23    Q.   Okay.  Fair enough.  Would it surprise
24 you to know that it was sent promptly within a day

Page 72

1 of somebody signing up, Exhibit 7, or something
2 similar to it?
3      MR. WARD:  Object to the form; calls for
4 conjecture.
5 BY THE WITNESS:
6    A.   Again, I can speak about this particular
7 consumer, that they received it because I actually
8 spoke to the consumer.
9 BY MR. COCHELL:
10    Q.   Okay.  So in this case at least as far
11 as this consumer is concerned, this consumer was
12 advised that she would get daily monitoring and
13 e-mail alerts to her credit report, she could
14 review the factors that went into her credit score,
15 get an updated credit report, and have access to
16 coupons and discount?
17      MR. WARD:  Objection; lack of firsthand
18 knowledge.
19 BY MR. COCHELL:
20    Q.   Is that correct, sir?
21    A.   That's what it says in this e-mail.
22    Q.   All right.  And let me ask you this:  I
23 mean, do you have any facts or do you know of any
24 facts that people didn't get own requests and

Page 73

1 updated credit report and score, credit score?
2    A.   I'm sorry.  Can you repeat the question?
3    Q.   Yeah.  If somebody got signed up for the
4 service, for a credit report or a credit score, did
5 they get the service if they requested it?
6      MR. WARD:  Objection; lack of firsthand
7 knowledge.
8 BY THE WITNESS:
9    A.   You know, I don't know.
10 BY MR. COCHELL:
11    Q.   So sitting here today, you have no facts
12 that suggested that people did not receive their
13 service if they requested it from CBC?
14      MR. WARD:  Object to the form of the question.
15 It's ambiguous.
16      Do you want him to review all his
17 testimony in this case?
18      MR. COCHELL:  No.  I want him to give me an
19 answer based on what he knows sitting here today as
20 an investigator in this case.
21 BY THE WITNESS:
22    A.   I spoke to a consumer who received an
23 e-mail alert about his report.  I'm not sure if --
24 you know, I don't know if consumers received the

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 74..77

Page 74

1  credit score or the credit report.
2  BY MR. COCHELL:
3      Q.   All right.  So let me just sort of recap
4  here.  As the investigator in this case, you don't
5  know one way or the other what the business
6  practice was by CBC with respect to the welcoming
7  consumers to membership at CBC?  You don't know
8  whether they sent letters like Deposition Exhibit 7
9  as a regular business practice?  You don't know one
10  way or the other, correct?
11     A.   Correct.
12     Q.   All you can do is say I have one or two
13  examples of this and that's all I can testify to,
14  correct?
15     A.   Correct.  That I have firsthand
16  knowledge of.
17     Q.   Okay.  All right.  At the PI hearing,
18  the preliminary injunction hearing, you
19  testified -- let me just -- I'm happy to show you
20  the testimony if you want to see it, but you were
21  asked the question by Mr. Zini, "Did you ever send
22  any correspondence to CBC regarding the Fair Credit
23  Reporting Act?"  You answered, "Did I personally?"
24  Question, "Yes."  And then your answer was, "In my

Page 75

1  capacity as an investigator, no."
2      Did you ever send any correspondence to
3  CBC in either a personal or investigative capacity
4  regarding the Fair Credit Reporting Act?
5      A.   No.
6      Q.   Okay.  And you have no personal interest
7  in this case; you've never signed up for CBC's
8  services or have any relatives that signed up for
9  it; is that correct?
10     A.   I have personally not signed for CBC
11  services.  I can't speak as to my relatives.
12     Q.   You don't know one way or the other?
13     A.   I don't.
14     Q.   Okay.  Fair enough.  With respect to
15  some of the ads in this case -- pardon me.  I would
16  like to show you No. 8 for identification and ask
17  you, sir, if you recognize that document, or that
18  type of document.
19          (WHEREUPON, a certain document was
20          marked McKenney Deposition Exhibit
21          No. 8, for identification, as of
22          12/14/2017.)
23  BY THE WITNESS:
24     A.   Yes, I do recognize this.

Page 76

1  BY MR. COCHELL:
2      Q.   Okay.  What do you recognize it to be?
3      A.   A Craigslist ad for an ad that I located
4  for the Austin, Texas, area for a supposed house
5  that was available for rent that was posted in the
6  Austin, Texas, area.
7      Q.   Okay.  And does this -- on its face does
8  this ad look fake to you?
9      A.   No.
10     Q.   Do you know if this listing was -- is
11  this one of the Pierce postings on -- that he had
12  on his website that consumers responded to?
13     A.   Can you repeat the question, or clarify?
14     Q.   Yeah.  Do you know if one of the
15  consumers, you know, that are involved -- that
16  became members of CBC were -- saw this ad on the
17  Pierce website?  Do you know one way or the other?
18     A.   I don't know if a consumer saw this
19  particular Craigslist ad.
20     Q.   But this is very similar to the
21  Craigslist ads that they saw, correct?
22     A.   Yes.
23     Q.   Okay.  Now, generally speaking, I mean,
24  when you investigated these claims, you saw similar

Page 77

1  ads that came -- that were listed on Pierce's
2  website that people started complaining about,
3  correct?
4      MR. WARD:  Objection to the form of the
5  question; assumes facts not in evidence.
6  BY MR. COCHELL:
7      Q.   Do you understand the question?
8      A.   I don't understand what you mean by
9  Pierce's websites.
10     Q.   Well, he had a website that was
11  different from CBC's website, correct?
12     A.   That wasn't Pierce's website.
13     Q.   Whose was it?
14     A.   It was Michael Brown's page.  It was on
15  eFreeScore.com and CreditUpdates.com, which are
16  Michael Brown's pages.
17     Q.   Are you saying that these particular
18  ads, like Exhibit 8, appeared on CBC's website?
19     A.   No.  This is from Craigslist.
20     Q.   This is from Craigslist, right?
21     A.   Right.
22     Q.   Maybe I had it wrong.  If I did, I
23  apologize.
24     And these were posted by Mr. Pierce,

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 78..81

Page 78

1 correct, or his company?
2    **A.   Correct.**
3    Q.   Okay. And with respect to these
4 particular ads, do you know if Mr. Pierce copied
5 these listings from the MLS? Do you have any facts
6 that lead to a conclusion one way or the other?
7    **A.   With this particular example, no. I did**
8 **find other Craigslist ads where the text of the**
9 **property description also matched other**
10 **descriptions of property on other like real estate**
11 **websites.**
12    Q.   All right. With respect to the -- so
13 based on your investigation you don't know where
14 Mr. Pierce got the information for Exhibit 8,
15 Deposition Exhibit 8; is that a fair statement?
16    **A.   Can you repeat the question?**
17    Q.   Okay. We talked about similar
18 Craigslist ads. And you don't know where
19 Mr. Pierce got the information for the postings
20 themselves, whether they're from MLS or he just
21 invented this stuff out of thin air? Do you know
22 one way or the other?
23    **A.   Some of the information was pulled -- I**
24 **was able to find a website which was in my**

Page 79

1 **declaration that was submitted with the TRO where I**
2 **discuss a website DN.net which contained**
3 **descriptions of properties as well as photos of**
4 **various properties in which it appeared that they**
5 **were combining elements of the descriptions and**
6 **piecing it together in one ad to make sort of like**
7 **a fake listing -- or a listing about a fake**
8 **property.**
9    **And then I also located ads on**
10 **Craigslist where the text of the property**
11 **description was pulled from other real estate**
12 **websites.**
13    Q.   All right. I would like to show you
14 what has been marked as Deposition Exhibit 9 for
15 identification and ask you, sir, if you recognize
16 that document.
17    (WHEREUPON, a certain document was
18    marked McKenney Deposition Exhibit
19    No. 9, for identification, as of
20    12/14/2017.)
21 BY THE WITNESS:
22    **A.   Yes.**
23 BY MR. COCHELL:
24    Q.   Okay. And this is DE6. What does DE

Page 80

1 stand for, if you know?
2    **A.   I don't know.**
3    Q.   Okay. At the top it says "Forward" for
4 the subject. Then is says "From: Frazier Trug,
5 fraziertrug@gmail.com."
6    Do you know who Frazier Trug was?
7    **A.   They're e-mails that were produced by**
8 **Andrew Lloyd, L-l-o-y-d.**
9    Q.   All right. So Frazier Trug is Andrew
10 Lloyd?
11    **A.   I believe it's an e-mail account that he**
12 **either set up or had control of.**
13    Q.   Okay. And this is to
14 awlprofit@outlook.com. Is that referring to
15 Andrew W. Lloyd Profit. Is that Andrew Lloyd
16 basically?
17    **A.   I believe so, yes.**
18    Q.   And then you have below that Frazier
19 Trug, October 16, 2015, at 12:26 p.m. to
20 danny@revable.com. Is that Danny Pierce?
21    **A.   Yes.**
22    Q.   Do you know why that was sent to him?
23    **A.   No, I don't.**
24    Q.   Is this a format that Mr. Lloyd was

Page 81

1 suggesting to Danny Pierce?
2    MR. WARD: Object to the form; lack of
3 firsthand knowledge.
4 BY MR. COCHELL:
5    Q.   If you know.
6    **A.   I don't know.**
7    Q.   Have you seen other e-mails like that
8 during your investigation?
9    **A.   It seems pretty similar to the ones**
10 **that were sent to me in my capacity as an**
11 **investigator, the ones that I was sent based on my**
12 **undercover work. But there are variations on the**
13 **landlord e-mail, which is what I would refer to**
14 **this as.**
15    Q.   What variations do you see here that you
16 think are important?
17    **A.   I mean, the wording would change between**
18 **the various landlord e-mails.**
19    Q.   Okay. And so there's no way to really
20 characterize how many -- strike that.
21    On its face an e-mail like this does not
22 indicate that there's a fraudulent scheme afoot; is
23 that correct? Would you agree with that?
24    MR. WARD: Objection; outside the scope of his

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 82..85

Page 82

1  testimony and role in this case.
2  BY MR. COCHELL:
3      Q.   Looking at this document -- let me
4  rephrase it a little bit.  There's nothing on its
5  face that says this isn't a legitimate -- if this
6  were done by someone other than Danny Pierce, it
7  wouldn't suggest to you that there's something --
8  there's a fraud involved in this document, fair
9  statement?
10      MR. WARD:  Same objection.
11  BY THE WITNESS:
12      A.   Are you asking --
13  BY MR. COCHELL:
14      Q.   Let me ask a different way.  Is there
15  anything illegal or is there a violation at least
16  from an investigative standpoint of referring
17  somebody to get a credit report?
18      MR. WARD:  Objection; outside the scope of his
19  testimony and role as a witness.
20  BY THE WITNESS:
21      A.   I mean, they're pretending to be the
22  landlord of the property.
23  BY MR. COCHELL:
24      Q.   Okay.  But you wouldn't know that to

Page 83

1  look at it, correct?  A consumer wouldn't know that
2  one way or the other?
3      MR. WARD:  Objection; lack of firsthand
4  knowledge.
5  BY THE WITNESS:
6      A.   They wouldn't know that this person
7  wasn't in fact the landlord?
8  BY MR. COCHELL:
9      Q.   Right.  Well, you certainly wouldn't
10  know it if you just got this e-mail as part
11  of a service; you wouldn't know one way or the
12  other whether the landlord existed or not,
13  correct?
14      A.   Correct.
15      Q.   Okay.  You're aware, of course, that
16  businesses use e-mail templates in responding to
17  consumers?
18      A.   Yes.
19      Q.   There's nothing illegal about the use of
20  a template; is that correct?
21      MR. WARD:  Objection.  It's outside the scope
22  of his testimony and role as a witness in this
23  case.
24

Page 84

1  BY MR. COCHELL:
2      Q.   Is that correct, sir?  I'm not talking
3  about the substance of it but in this country
4  people are allowed to use e-mail templates in
5  communicating with consumers, correct?
6      A.   Correct.
7      Q.   All right.  Now, if somebody responds to
8  a Craigslist ad and attempts to contact a
9  landlord -- in this case for example, there's a lot
10  of complaints that landlords didn't respond to
11  e-mails, correct?
12      MR. WARD:  Objection; assumes facts not in
13  evidence.
14  BY THE WITNESS:
15      A.   A lot of the complaints say that when
16  the consumer -- after going to the website, when
17  they tried to reply back to the landlord to let
18  them know that they had got a copy of their credit
19  report and credit score and they were trying to set
20  up to schedule a tour they did not receive a
21  response back from the landlord.
22  BY MR. COCHELL:
23      Q.   Let me show you what has been marked as
24  Exhibit 9 for identification.

Page 85

1          (WHEREUPON, a certain document was
2           marked McKenney Deposition Exhibit
3           No. 10, for identification, as of
4           12/14/2017.)
5  BY MR. COCHELL:
6      Q.   I ask you, sir, if you recognize that
7  document.
8      A.   I haven't seen this before.
9      Q.   Okay.  Have you seen e-mails like this?
10  Well, let me say, this is addressed to Guy Ward; is
11  that correct?
12      A.   Yes.
13      Q.   And I guess maybe I should be asking
14  Mr. Ward these questions as opposed to you.
15      With respect to -- all right.  You can
16  put that to the side.
17      I guess Mr. Ward was involved in the
18  investigation in this case?
19      MR. WARD:  Objection; work product.
20  BY MR. COCHELL:
21      Q.   We'll strike that question.
22      Let's just talk about the interplay --
23  or let's just talk about consumers who were
24  complaining that a landlord didn't respond to their

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 86..89

Page 86

1  phone calls.  You saw complaints about that,
2  correct?
3      MR. WARD:  Objection; assumes facts not in
4  evidence.
5  BY THE WITNESS:
6      **A.   Not phone calls.  E-mails.  There was no**
7  **phone number provided for the landlord for a**
8  **consumer to call.**
9  BY MR. COCHELL:
10     Q.   Fair enough.  Okay.  And so you did see
11  complaints about people that didn't get a response
12  from a landlord by e-mail to their inquiries,
13  right?
14     **A.    To clarify, they received the initial**
15  **response from -- they received the initial landlord**
16  **e-mail.  But when they then followed up to let the**
17  **landlord know that they had got a copy of their**
18  **credit report, they did not receive a response**
19  **back.**
20     Q.   Okay.  Thank you.  Would it be -- is it
21  unusual for landlords not to respond to applicants
22  when they get an e-mail from --
23     MR. WARD:  Objection; lack of foundation.
24     MR. COCHELL:  I've not finished my question.

Page 87

1      MR. WARD:  I'm sorry.
2  BY MR. COCHELL:
3      Q.   Let me rephrase it.  Did you in your
4  investigation ever contact a property owner of a
5  property that was listed in any of the Craigslist
6  ads by Mr. Pierce?
7      **A.   I spoke with the consumer who wasn't the**
8  **property owner but was renting a house in**
9  **Baton Rouge, Louisiana, whose address was -- the**
10  **property that they were renting was listed in an**
11  **ad, a Danny Pierce ad.**
12     MR. COCHELL:  Move to strike as unresponsive.
13  BY MR. COCHELL:
14     Q.   My question to you, sir, was, did you
15  talk to any property owners on any of the
16  Craigslist ads used by Mr. Pierce?
17     **A.   No.**
18     Q.   Did you attempt to do so?
19     **A.   Most of the ads did not contain an**
20  **actual -- a physical address.  So it would be**
21  **impossible to contact those property owners.**
22     Q.   Right.  And it would have been equally
23  impossible for Mr. Brown to do that as well as you?
24     MR. WARD:  Objection; lack of foundation;

Page 88

1  assumes facts not in evidence.
2  BY MR. COCHELL:
3      Q.   If you found it impossible to contact a
4  property owner based on the ads that -- Craigslist
5  ads posted by Mr. Pierce, if you found it
6  impossible, wouldn't Mr. Brown have found it
7  impossible to do so on the same information that
8  you had available, correct?
9      **A.   Correct.**
10     MR. COCHELL:  Okay.  Why don't we take a
11  break.  I guess we're getting close to lunch but
12  let me do a few more documents before we break.
13     MR. WARD:  You mean break and then --
14     MR. COCHELL:  Continue for another half hour
15  or so.
16          (WHEREUPON, a recess was had
17           from 11:45 a.m. to 11:52 a.m.)
18          (WHEREUPON, a certain document was
19           marked McKenney Deposition Exhibit
20           No. 11, for identification, as of
21           12/14/2017.)
22  BY MR. COCHELL:
23     Q.   I show you what has been marked as
24  Deposition Exhibit 11.

Page 89

1          By the way, Mr. Levine, I apologize for
2  not having more copies but this is almost more
3  copies of stuff that I can handle solo on a trip
4  away from my own office.
5      MR. LEVINE:  No problem.
6  BY MR. COCHELL:
7      Q.   I show you what has been marked as
8  Deposition Exhibit 11.  Do you recognize that
9  document?
10         I'll represent to you that we got this
11  in discovery.  And as I think you know and the
12  lawyers know, a lot of documents were not Bates
13  stamped with FTC stamps because of the need to get
14  the documents to us and the amount of data that was
15  being provided to us.
16         But subject to that, I mean, if you
17  subsequently have a concern as to the authentic
18  nature of this, then we can deal with it then.  But
19  let me represent to you that that's where we got
20  this stuff.
21         Are you familiar with a guy named George
22  Barcelo?
23     **A.   Yes.**
24     Q.   Do you know who he is?

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 90..93

Page 90

1    A.    I know that he resides in Washington
2   state and I know that Andrew Lloyd paid George
3   Barcelo some money.  And as to what service he was
4   actually providing to Mr. Lloyd I don't know.
5    Q.    Okay.  So do you know if he was -- did
6   you ever talk to Mr. Barcelo?
7    A.    Me personally, no.
8    Q.    Did anyone from the FTC to your
9   knowledge talk to Mr. Barcelo?
10   A.    I don't know.
11   Q.    Okay.  And do you know how much money
12  Mr. Barcelo was paid by Andrew Lloyd?
13   A.    Not specifically.  I know that it was
14  over $100,000 but I don't know beyond that how
15  much.
16   Q.    Okay.  I'll show you some documents to
17  refresh your memory.
18        Now, No. 11 talks about unique leads.
19  Did you see that?  That's what he was being paid
20  for, unique leads?
21   A.    Yes.
22   Q.    How does this business work with leads?
23       MR. WARD:  Objection; lack of foundation,
24  ambiguous.

Page 91

BY MR. COCHELL:
2    Q.    If someone provides leads, do you know
3   how the industry works, or how it worked in this
4   case?
5    A.    I think the invoice is vague in saying
6   unique leads.  And I don't know specifically what
7   Mr. Barcelo is invoicing Andrew Lloyd for.
8    Q.    Okay.  And with respect -- did you ever
9   talk personally to Mr. Lloyd?
10   A.    No.
11   Q.    Have you ever asked to talk to Mr. Lloyd
12  pursuant to his cooperation clause in the consent
13  order?
14   A.    No.
15   Q.    Okay.  Do you know if anyone else has?
16   A.    I don't know.
17   Q.    Okay.  Let me show you what has been
18  marked as Exhibit -- do you know if Mr. Barcelo is
19  related to something called Gutierrez Enterprise,
20  Inc.?
21   A.    I mean, the invoice -- I believe George
22  Barcelo is related to Gutierrez Enterprises -- or
23  Enterprise, Inc., but I believe his name isn't on
24  the corporate paper for that company.

Page 92

1        (WHEREUPON, a certain document was
2             marked McKenney Deposition Exhibit
3             No. 12, for identification, as of
4             12/14/2017.)
5   BY MR. COCHELL:
6    Q.    Let me show you Exhibit 12.  Let me
7   represent to you this is a document pulled from
8   discovery provided by the FTC.
9        And it says subject "To:
10  Owner@profitsuccess.com."  Do you know who owns
11  that or who owns that e-mail?
12   A.    I believe it's Andrew Lloyd.
13   Q.    Okay.  So it says Gutierrez Enterprise,
14  Inc., $118,882.25, correct?
15   A.    Correct.
16   Q.    It says Christopher Lloyd, 19,950.  Do
17  you know who Christopher Lloyd is?
18   A.    Yes.  I believe he's Andrew Lloyd's
19  brother.
20   Q.    I see.  Do you have any facts that
21  suggest that Andrew Lloyd was part of -- if
22  Christopher Lloyd was working in tandem with Andrew
23  Lloyd in posting the fake Craigslist ads?
24   A.    I don't know.

Page 93

1    Q.    Did you ever make an attempt to figure
2   that out?
3    A.    I never spoke to Christopher Lloyd.
4    Q.    Okay.  Fair enough.  I would like to
5   show you another document.
6        (WHEREUPON, a certain document was
7             marked McKenney Deposition Exhibit
8             No. 13, for identification, as of
9             12/14/2017.)
10  BY MR. COCHELL:
11   Q.    I show you what has been marked as
12  Deposition Exhibit 13 and ask you, sir, if you
13  recognize that document.
14   A.    I don't recognize this specific
15  document.
16   Q.    Okay.  Let me represent to you that this
17  is discovery we got from the FTC.  Would it be fair
18  to say that you may have this document in your
19  possession, you're just not aware of it?
20   A.    Yes.
21   Q.    So would it surprise you to know that
22  Mr. Barcelo received $636,704.25 from Mr. Lloyd
23  either directly or through Gutierrez Enterprises?
24   A.    I'm not certain as to the precise total.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 94..97

Page 94

1 There was Eric Barcelo, George Barcelo, and then
2 Gutierrez Enterprises that all received wire
3 transfers from Andrew Lloyd.
4     Q.   Okay.  And sitting here today you don't
5 know exactly why $600,000-plus were paid by
6 Mr. Lloyd to Mr. Barcelo or Gutierrez Enterprises;
7 is that correct?
8     A.   Yeah, I don't know the exact reason for
9 why they were paying.  I have assumptions but I
10 don't have the exact sort of reason for like why
11 Andrew Lloyd was paying all that money to him.
12     Q.   Do you know or -- sitting here today,
13 would it be fair to say that you're surprised at
14 the amount of money that was transferred to
15 Mr. Barcelo and Gutierrez Enterprises from
16 Mr. Lloyd?
17     A.   As I said before, I know that they
18 received over a hundred thousand from Andrew Lloyd,
19 which is a lot of money.
20     Q.   And this is like six times more than a
21 hundred thousand dollars, right?
22     A.   Like I said, I know they received more
23 than a hundred thousand dollars from Andrew Lloyd.
24     Q.   Okay.  But you didn't know how much one

Page 95

1 way or the other, right?
2     A.   No.  I calculated it at one time.  As I
3 sit here today, I don't know the number off the top
4 of my head how much money they received.
5     Q.   Okay.  That's fine.  But if it was
6 $600,000, that would be a surprise to you if you
7 calculated it, looked at the invoices?  600,000 is
8 a lot more than 100 or 150,000, right?
9     A.   What's the question?
10     Q.   If you can't answer it, that's fine.
11         All right.  Let's go to this.
12             (WHEREUPON, a certain document was
13             marked McKenney Deposition Exhibit
14             No. 14, for identification, as of
15             12/14/2017.)
16 BY MR. COCHELL:
17     Q.   Do you know who Andy Dexter is?
18     A.   I believe that's Andrew Lloyd.  The
19 e-mail address is one that we -- or that I know to
20 be associated with Andrew Lloyd.
21     Q.   Okay.  Now, do you recall Mr. Pierce
22 testified at the preliminary injunction hearing
23 that he believed there was only one affiliate using
24 the ID 35?

Page 96

1         MR. WARD:  I'm going to object based on
2 accuracy with respect to whatever it was that
3 Mr. Pierce testified.  I have -- actually, I don't
4 have that part of the transcript but if you've got
5 it --
6         MR. COCHELL:  I've got it.
7 BY MR. COCHELL:
8     Q.   Let me sort of refresh your testimony
9 and maybe my question was inartful.
10     A.   Are you going to mark this as an
11 exhibit?
12     Q.   Yeah, I'm happy to.  It's already a
13 matter of record.  We can do it.
14             (WHEREUPON, a certain document was
15             marked McKenney Deposition Exhibit
16             No. 15, for identification, as of
17             12/14/2017.)
18 BY MR. COCHELL:
19     Q.   I don't have copies for myself so I may
20 have to ask you about it.
21         Have you had a chance to refresh your
22 memory?
23     A.   Yes.
24     Q.   Okay.  Now, basically Mr. Pierce

Page 97

1 testified that there was only one affiliate for him
2 and that was Andrew Lloyd.  Am I correct?
3         MR. WARD:  Objection; mischaracterizes the
4 testimony.
5 BY MR. COCHELL:
6     Q.   Just tell me what your thought -- what
7 your understanding was from the testimony.
8     A.   That there was only one affiliate named
9 Andrew Lloyd.
10     Q.   Okay.  So sitting here today, isn't it
11 true that there may have been sub-affiliates of
12 Mr. Lloyd based on some of the testimony you've
13 seen today, some of the documents you've seen
14 today?
15     A.   No.
16     Q.   You don't think so?
17     A.   No.
18     Q.   Tell me why.
19     A.   Because an affiliate would be paid based
20 on sales, conversions, of the website.
21             (WHEREUPON, there was a short
22             interruption.)
23         MR. COCHELL:  Mike apparently missed his plane
24 so he's going to attend part of this.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 98..101

Page 98

1  Okay. I don't think that there's any
2  AEO documents in my batch here but --
3  MR. WARD: AEO?
4  MR. COCHELL: Attorneys' eyes only.
5  MR. WARD: I don't know.
6  MR. COCHELL: Unfortunately, they're not
7  marked. I mean, it kind of hampers things a little
8  bit. But I'll show it to the witness first and if
9  you think there's an issue with Mike seeing it --
10  there's nothing involving consumers or anything
11  like that. It's all these sorts of documents. So
12  I don't think it'll be an issue.
13  (WHEREUPON, Mr. Michael Brown
14  entered the deposition
15  proceedings.)
16  MR. COCHELL: Where was I? I was in the
17  middle of an incredibly important question.
18  What was my last question?
19  (WHEREUPON, the record was read
20  by the reporter as requested.)
21  BY MR. COCHELL:
22  Q. Okay. So they could have been
23  contractors compensated on something other than an
24  affiliate basis, correct?

Page 99

1  **A. They could have been providing a service**
2  **to Andrew Lloyd or a contractor, yes, for Andrew**
3  **Lloyd.**
4  Q. Okay. And so sitting here today, you
5  don't know exactly what that service may have been,
6  but we do know that Gutierrez Enterprises, George
7  Barcelo, and possibly Eric Barcelo were receiving
8  funds from Andrew Lloyd, correct?
9  **A. Correct. They were receiving funds from**
10  **Andrew Lloyd.**
11  Q. And you don't know how much or for what
12  service, correct?
13  **A. He showed me an invoice that said it was**
14  **for unique leads, but I don't know exactly -- leads**
15  **is such a generic term. It could be either leads**
16  **like posts to Craigslist, so they're being**
17  **compensated for the number of posts to Craigslist.**
18  **It could be for the number of consumers who**
19  **responded to the landlord e-mail.**
20  Q. Okay. All right. Do you know if
21  Mr. Pierce was involved in any other enterprises
22  that violated the law?
23  MR. WARD: Objection; outside the scope of his
24  testimony and role as a witness in this case.

Page 100

1  BY MR. COCHELL:
2  Q. Can you answer that?
3  **A. I don't know.**
4  Q. Do you know if Mr. Pierce has any
5  history of misleading consumers in other businesses
6  or enterprises that he operated?
7  **A. I don't know.**
8  Q. Okay. Did you conduct any investigation
9  to determine whether they had previously engaged in
10  any activities that may have violated FTC
11  regulations or laws?
12  **A. I searched his name and his company's**
13  **name to see if there were other cases brought**
14  **against him and I did not see anything.**
15  Q. All right. As I understand it, you've
16  never met personally with Mr. Lloyd; is that
17  correct?
18  **A. Correct. I've never seen him in person,**
19  **I've never talked with him over the phone.**
20  Q. Okay. With respect to --
21  Do we have the exhibit for this or do I
22  have it? So this needs to come back to the witness
23  for the record so I don't walk away with it.
24  This probably should have been attached.

Page 101

1  It's just the next page. Why don't we go ahead and
2  staple it. I don't think it affects your testimony
3  but I'll leave that to you to chime in if there's
4  an issue.
5  Do you need to change or amend your
6  testimony as a result of that third page I just
7  gave you to Exhibit 15?
8  **A. No.**
9  Q. Okay. Let me hand you what has been
10  previously marked as Exhibit 16 for identification.
11  (WHEREUPON, a certain document was
12  marked McKenney Deposition Exhibit
13  No. 16, for identification, as of
14  12/14/2017.)
15  BY MR. COCHELL:
16  Q. Take a look at that document. I'll
17  represent to you that this is part of the FTC
18  discovery that we've received.
19  Have you ever reviewed that document,
20  Exhibit 16?
21  **A. No.**
22  Q. Let me ask you a question here. Did you
23  ever review any documents that identified the
24  existence of white label partners or co-branding

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                              Pages 102..105

Page 102

1  partners with CBC?
2      MR. WARD:  Objection; lack of foundation.
3  BY THE WITNESS:
4      **A.  Can you repeat the question?**
5  BY MR. COCHELL:
6      Q.  Did you look for documents that -- as
7  part of your investigation to see if there were any
8  white label partners or co-branding partners with
9  CBC?
10     MR. WARD:  Same objection.
11 BY THE WITNESS:
12     **A.  During the investigation is your**
13 **question, right?**
14 BY MR. COCHELL:
15     Q.  Yeah.
16     **A.  Okay.  So that would assume before the**
17 **filing?**
18     Q.  Yes.
19     **A.  Before the TRO filing?**
20     Q.  Correct.
21     **A.  Okay.  I did not -- I don't believe I**
22 **reviewed any documents before supposed white label**
23 **business before the TRO filing.**
24     Q.  Now, you have been the one who has had

Page 103

1  custody of the -- at times, of course, the CBC
2  database and documents that were turned over to the
3  receiver and in turn provided to the FTC??
4      Obviously you can only speak to what you
5  have, but you have the CBC database, you have some
6  of the other sets of documents, the CRM database?
7  I might be imprecise so correct me if I'm wrong.
8  You're the one who has primary custody of it for
9  the FTC?
10     **A.  Which -- because that was a compound --**
11 **there was multiple things.  The CVC database, the**
12 **CRM database, was -- I received it from the**
13 **receiver.**
14     Q.  Right.
15     **A.  Okay.  Then I sent that database to our**
16 **Washington office, litigation support team there,**
17 **and they have custody of the database in**
18 **Washington, D.C.**
19     Q.  I see.  Okay.  And you've had an
20 opportunity to review the data seized or taken or
21 provided by CBC, correct?
22     **A.  I have had a chance to review documents**
23 **that were sent to us by CBC and the receiver.**
24     Q.  All right.  Now, with respect -- I mean,

Page 104

1  you're basically the most knowledgeable person who
2  is not a lawyer for the FTC participating in this
3  case, is that a fair statement, about the
4  allegations in the complaint?
5      MR. WARD:  Object to the form, ambiguous.
6  BY THE WITNESS:
7      **A.  I feel like -- I've been on this case**
8  **since the investigation began so I feel like, you**
9  **know, I've reviewed a lot of documents related to**
10 **it and did a lot of the work on the case.**
11 BY MR. COCHELL:
12     Q.  Right.  Okay.  Sitting here as basically
13 the investigator on this case, do you know how many
14 white label partners that CBC had?
15     **A.  No.**
16     Q.  Do you know whether it's more than 50
17 white label partners?
18     **A.  I don't know.**
19     Q.  Would it be fair to say that you've
20 never focused on that as an issue important to you
21 as an investigator in this case?
22     MR. WARD:  Object to the -- assumes facts not
23 in evidence.
24 BY THE WITNESS:

Page 105

1      **A.  Can you repeat the question?**
2      MR. COCHELL:  Please read it back.
3          (WHEREUPON, the record was read
4          by the reporter as requested.)
5      MR. WARD:  Same objection.
6  BY THE WITNESS:
7      **A.  Given that I wasn't aware of the white**
8  **label business until after the TRO filing, you**
9  **know, it's hard for me to say whether or not it was**
10 **an area that I focused on considering that the**
11 **investigation led up to the filing of the temporary**
12 **restraining -- or the investigation led up to the**
13 **TRO filing.**
14 BY MR. COCHELL:
15     Q.  Okay.  Based on your review of the
16 documents as of this point, do you have any facts
17 that reveal how many white label partners that CBC
18 had?
19     MR. WARD:  Objection; asked and answered.
20 BY THE WITNESS:
21     **A.  I've seen white label agreements in the**
22 **documents that were produced to us.**
23 BY MR. COCHELL:
24     Q.  And you don't know how much revenue is

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                              Pages 106..109

Page 106

1  represented as a result of those white label
2  partners; is that correct, sir?
3     **A.   Correct.**
4     Q.   Okay.  With respect to co-branding
5  partners, based on your review of documents to this
6  date, do you have any idea of how much revenue was
7  generated by CBC as a result of co-branding
8  activities -- its co-branding activities?
9     **A.   I don't know.**
10    Q.   Okay.  And sitting here today you don't
11 know if either the white label or co-branding
12 activities were profitable from -- as a business
13 activity for CBC; is that correct?
14    **A.   I don't know.**
15    MR. COCHELL:  Okay.  This might be a good time
16 for lunch.
17          (WHEREUPON, at 12:25 p.m. the
18          deposition was recessed until
19          1:30 p.m., this date.)
20
21
22
23
24

Page 107

1       IN THE UNITED STATES DISTRICT COURT
2          NORTHERN DISTRICT OF ILLINOIS
3              EASTERN DIVISION
4  FEDERAL TRADE COMMISSION,   )
5          Plaintiff,    )
6     -vs-          ) No. 17-cv-00194
7  CREDIT BUREAU CENTER,      )
8  LLC, a limited liability    )
9  company, formerly known    )
10 as MYSCORE LLC, also       )
11 doing business as          )
12 EFREESCORE.COM,          )
13 CREDITUPDATES.COM, and     )
14 FREECREDITNATION.COM,      )
15 et al.,             )
16        Defendants.  )
17        December 14, 2017
18            1:27 p.m.
19
20    The deposition of DOUGLAS M. McKENNEY
21 resumed pursuant to recess at Suite 2800, 111 East
22 Wacker Drive, Chicago, Illinois.
23
24

Page 108

1  PRESENT:
2     UNITED STATES FEDERAL TRADE COMMISSION,
3     (230 South Dearborn Street, Room 3030,
4     Chicago, Illinois  60604-1505,
5     312-960-5612), by:
6     MR. GUY G. WARD,
7     gward@ftc.gov,
8     MR. SAMUEL A.A. LEVINE,
9     slevine1@ftc.gov,
10       appeared on behalf of the Plaintiff;
11
12    COCHELL PC,
13    (216 South Loop W, Suite 470,
14    Houston, Texas  77054,
15    346-800-3500), by:
16    MR. STEPHEN R. COCHELL,
17    srcochell@gmail.com,
18       appeared on behalf of the Defendants.
19
20 ALSO PRESENT:
21    MR. MICHAEL BROWN.
22
23 REPORTED BY:  SUSAN K. TODAY, C.S.R., R.P.R.
24       License No. 84-2212.

Page 109

1       DOUGLAS M. McKENNEY,
2  called as a witness herein, having been previously
3  duly sworn and having testified, was examined and
4  testified further as follows:
5       EXAMINATION (Resumed)
6  BY MR. COCHELL:
7     Q.   As you know, you're still under oath,
8  right?
9     **A.   Correct.**
10    Q.   Okay.  Now, I wanted to revisit Exhibit
11 14 just briefly just to make sure that I covered
12 something.
13       I think you mentioned that Andy Dexter
14 is -- you determined that Andy Dexter is actually
15 Andrew Lloyd, that Andrew Lloyd owns that Gmail
16 account, tdmpitt1@gmail; am I correct about that?
17    **A.   I believe so.**
18    Q.   Okay.  I would like to show you the next
19 exhibit in order, which I think is 17.
20          (WHEREUPON, a certain document was
21          marked McKenney Deposition Exhibit
22          No. 17, for identification, as of
23          12/14/2017.)
24

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 110..113

1    BY MR. COCHELL:
2       Q.   Do you recognize that document, sir?
3       **A.   No, I do not.**
4       Q.   Okay.  I'll represent to you that these
5    were part of the documents produced by the FTC.
6    And it would appear that there were payments made
7    to Housingwire.  Do you know who or what
8    Housingwire is?
9       **A.   No, I do not.**
10      Q.   Okay.  Under the "Product" it says "HW
11   e-mail:  Daily update (afternoon) - Banner."
12   Apparently it's paid for on a weekly basis.  Do you
13   see that?
14      MR. WARD:  Object to the lack of foundation.
15   BY MR. COCHELL:
16      Q.   Do you see that, sir?
17      **A.   I'm sorry.  Can you say that again?**
18      Q.   Okay.  Let me just rephrase this.  Here
19   are these payments being made by ScoreApprove for
20   something but you don't know what it is; is that
21   fair?
22      MR. WARD:  Objection; lack of foundation.
23   BY THE WITNESS:
24      **A.   I see that the product says "Banner."**

1    Underneath it says "Text Banner."
2    BY MR. COCHELL:
3       Q.   So other than that you don't really know
4    what the payments were for, correct?
5       **A.   Correct.  I never saw Housingwire in the**
6    **bank records, that there were wire transfers to a**
7    **company to a Housingwire.**
8       Q.   Can you say that last again?
9       **A.   I never saw Housingwire appear in the**
10   **MyScore bank records.  So I never saw, like, wire**
11   **transfers to this company Housingwire.  So I don't**
12   **know if there were ever any payments made to**
13   **Housingwire.**
14      Q.   All right.  Okay.  But you can see that
15   this is an invoice, correct?
16      **A.   It appears to be an invoice.**
17      Q.   Okay.  And the invoice on the second
18   page of Exhibit 17, it appears that Housingwire is
19   an advertiser or is providing services for
20   advertising by ScoreApprove; is that a fair
21   statement --
22      MR. WARD:  Objection.
23   BY MR. COCHELL:
24      Q.   -- referring to Paragraph 1?

1       MR. WARD:  Objection; lack of foundation.
2    Objection; lack of firsthand knowledge.
3    BY THE WITNESS:
4       **A.   I mean, to me -- I don't necessarily**
5    **know if this is an invoice.  It looks more like an**
6    **insertion order to me.**
7    BY MR. COCHELL:
8       Q.   A what?
9       **A.   An insertion order.**
10      Q.   Okay.  All right.  Other than that you
11   really can't say anything about the document,
12   right?
13      **A.   Correct.**
14      Q.   Fair enough.  Let me show you what has
15   been marked as Exhibit 18.
16          (WHEREUPON, a certain document was
17          marked McKenney Deposition Exhibit
18          No. 18, for identification, as of
19          12/14/2017.)
20   BY MR. COCHELL:
21      Q.   Have you ever seen that document?  Let
22   me represent to you this is also from a production
23   by the FTC.
24      **A.   I don't believe I've seen this before.**

1       Q.   Okay.  Did you see any payments to the
2    Texas Association of Realtors on the -- I guess the
3    bank accounts of ScoreApprove?
4       **A.   There were no bank accounts under the**
5    **name ScoreApprove that I'm aware of.**
6       Q.   Did you see any payment to the Texas
7    Association from any of the bank accounts that were
8    I guess provided to the FTC by CBC?
9       **A.   I don't know.**
10      Q.   All right.  Okay.  I'm going to show you
11   what has been marked as 19 for identification.
12          (WHEREUPON, a certain document was
13          marked McKenney Deposition Exhibit
14          No. 19, for identification, as of
15          12/14/2017.)
16   BY MR. COCHELL:
17      Q.   I represent to you that this is from an
18   FTC production of documents.  Have you ever seen
19   this document?  Do you recall reviewing it?
20      **A.   I don't believe I've seen it.**
21      Q.   Let me ask you something.  When the
22   receivership was established, did you talk to any
23   business owners such as -- who wanted -- let me
24   strike that.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 114..117

Page 114

1    Do you know if -- have you ever heard of
2  DisputeSuite?
3    **A.   No.**
4    Q.   And you don't know what they do
5  obviously if you've never heard of them.  Okay.
6    And you don't know how much revenues, if
7  any, that CBC lost as a result of the receivership
8  being imposed, correct?
9    Let me rephrase it.  If DisputeSuite
10  subscribed to CBC's services, sitting here today
11  you don't know what, if any, or how much, if any,
12  revenues were lost as a result of imposition of the
13  receivership?
14    MR. WARD:  Objection; assumes facts not in
15  evidence.
16  BY MR. COCHELL:
17    Q.   Is that correct?
18    **A.   I would have no way of knowing that.**
19    Q.   Okay.  All right.  I'm just flipping
20  through spending a little time eliminating some
21  exhibits.
22    Do you have -- from your review of
23  documents did you review any documents to determine
24  any efforts by CBC to comply with FTC regulations,

Page 115

1  any compliance programs or compliance policies?
2    MR. WARD:  Objection; lack of foundation.
3  BY THE WITNESS:
4    **A.   I'm sorry.  Can you repeat the question?**
5  BY MR. COCHELL:
6    Q.   Yeah.  In your review of -- did you
7  review documents to determine if CBC had a history
8  of compliance with FTC regulations other than the
9  websites that are the subject of this lawsuit?
10    MR. WARD:  Objection; ambiguous, vague and
11  outside the scope of his testimony and role as a
12  witness.
13  BY MR. COCHELL:
14    Q.   You can answer the question.
15    **A.   I didn't see any documents that show**
16  **that the defendants were trying to comply with FTC**
17  **rules.**
18    Q.   Okay.  With respect to -- let me show
19  you some documents.  We are on Exhibit 20.
20    (WHEREUPON, a certain document was
21    marked McKenney Deposition Exhibit
22    No. 20, for identification, as of
23    12/14/2017.)
24

Page 116

1  BY MR. COCHELL:
2    Q.   Let me show you No. 20.  Unfortunately I
3  only have two copies of this.  Sorry.  Oh, here's a
4  third copy.
5    Directing your attention to the first
6  page of Exhibit 20, in the middle of the page it
7  says original message dated 14 February 2012 from
8  Michael Brown to Vlad Zamelukhin.  Do you see that?
9    **A.   I see that, yes.**
10    Q.   And underneath it there's an e-mail that
11  says, "Do you guys have any integration with
12  anti-fraud services like ScrubKit?  Or any other
13  service?  What's the best way to prevent fraud
14  using your platform?"  Do you see that?
15    **A.   Yes.**
16    Q.   This would appear to be Mr. Brown
17  expressing an interest in how he can prevent fraud
18  using their platform, fair statement?
19    MR. WARD:  Objection; lack of foundation, lack
20  of firsthand knowledge.
21  BY THE WITNESS:
22    **A.   Can I answer?**
23  BY MR. COCHELL:
24    Q.   Yes.

Page 117

1    **A.   I believe he's trying to prevent**
2  **affiliate fraud.  It says people driving --**
3  **submitting either stolen credit cards on his site**
4  **so he's not paying affiliates for sales that are**
5  **fraud-related in that sense.**
6    **Another way would be to make sure that**
7  **the traffic being driven to his site isn't coming**
8  **from like proxies or he's not paying for traffic**
9  **that's not actually real traffic, if that makes**
10  **sense.**
11    Q.   Okay.  Anything else?
12    **A.   No.**
13    Q.   Okay.
14    (WHEREUPON, a certain document was
15    marked McKenney Deposition Exhibit
16    No. 21, for identification, as of
17    12/14/2017.)
18  BY MR. COCHELL:
19    Q.   I would like to show you what has been
20  previously marked as Exhibit 21 for identification
21  and ask you, sir, if you recognize that document.
22    **A.   I don't recognize it.**
23    Q.   Okay.  I'll represent to you that this
24  is from the FTC production.  This appears to be a

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                  Job 27222
Douglas McKenney                                                 Pages 118..121

Page 118

1  document dated March 25th, 2016, from Michael Brown
2  to Diego M with a copy to David Rojas.  Is that
3  correct?
4      MR. WARD:  Objection; lack of foundation, lack
5  of firsthand knowledge.
6  BY MR. COCHELL:
7      Q.   You can answer.
8      **A.   Correct.**
9      Q.   Okay.  And this appears to be talking
10  about fraud by someone billing a customer -- or
11  generating 76 accounts linked to a customer's card?
12      MR. WARD:  Same objection.
13  BY THE WITNESS:
14      **A.   Can I -- I don't understand the format**
15  **of this and why it's in text.  It has -- at the**
16  **header it says, "Dealing with Affiliate Fraud -**
17  **Fragalia" and then a Bates number at the top.**
18  BY MR. COCHELL:
19      Q.   I don't understand either.
20      **A.   Okay.**
21      Q.   It's something that I suppose was
22  produced by Tom Fragalia possibly --
23      **A.   Okay.**
24      Q.   -- and somebody may have added it.  I

Page 119

1  don't know.
2      Unfortunately, we just -- I can't tell
3  you one way or the other.
4      All right.  Well, it says what it says,
5  right?  I mean, it appears that there was some
6  fraud on a customer and actions were taken to
7  address the fraud.  Fair statement?
8      MR. WARD:  Same objection.
9  BY THE WITNESS:
10      **A.   It says she has over 76 accounts linked**
11  **to her card on this.  That's what it says on it.**
12  BY MR. COCHELL:
13      Q.   Okay.  All right.  I would like to show
14  you what has been previously marked as 22 for
15  identification.
16      (WHEREUPON, a certain document was
17          marked McKenney Deposition Exhibit
18          No. 22, for identification, as of
19          12/14/2017.)
20  BY MR. COCHELL:
21      Q.   And ask you, sir, if you recognize that
22  document.
23      **A.   No, I do not recognize this document.**
24      Q.   All right.  So you don't know -- unless

Page 120

1  you read it here, you really wouldn't know one way
2  or the other whether this was part of a compliance
3  policy or related to a compliance policy by CBC?
4      You have no -- you can't authenticate
5  the document, you don't know what's in the
6  document, you don't know if the Skype history
7  reflects a compliance history or not, correct?
8      **A.   Correct.**
9      Q.   Okay.  We can turn to the next document.
10      Let me ask you something.  You have the
11  e-mail database, 44,000 e-mails that Mr. Brown and
12  CBC turned over?
13      **A.   Yes.**
14      Q.   Did you run searches using key words in
15  that database?
16      **A.   Yes.**
17      Q.   Did you use the words fraud?  Did you
18  run the word fraud in that database?
19      MR. WARD:  Objection.  You're getting into an
20  area that's work product.
21  BY MR. COCHELL:
22      Q.   Did you run a search for fraud in the
23  database?
24      **A.   I don't remember if I ran a search**

Page 121

1  specifically on the word fraud.
2      Q.   Did you run a search for the word
3  compliance in the 44,000 e-mails?
4      MR. WARD:  Honestly, Stephen, you're getting
5  into an area that's work product.  So I will have
6  to instruct him not to answer if you're going to
7  continue to ask him about things that he --
8      MR. COCHELL:  Okay.  If you don't want the
9  witness to answer -- it applies to both positive
10  and negative things he did.  Because if he tries to
11  testify --
12      MR. WARD:  He's already testified.
13      MR. COCHELL:  If he tries to testify at trial
14  or if he tries to put in a declaration that talks
15  about efforts to find documents, you know, and you
16  haven't allowed me to cross-examine him --
17      MR. WARD:  That's hardly true.  We've been
18  here all day.
19      MR. COCHELL:  I'm talking about a specific
20  point, and I think you know that.  And I'm asking
21  him about keyword searches that he ran.  I think
22  he's put in his declarations -- I can't point to it
23  right now, but I think in his declarations he's
24  talked about all of his efforts to find

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 122..125

Page 122

1  information. I'm simply trying to conduct a cross
2  examination to determine whether that search for
3  information in databases and otherwise was full,
4  complete and fair. I think I'm entitled to that
5  cross.
6      MR. LEVINE: Are you distinguishing between
7  investigation before the TRO and after the TRO?
8      MR. COCHELL: I mean, after he got the
9  database, after he got the 44,000 e-mails, I think
10  someone, particularly the investigator, should be
11  able to testify as to facts.
12     MR. WARD: But here's the thing, Stephen: You
13  have the same database. I mean, you've got the
14  database. You could search it if you want.
15     MR. COCHELL: All right. Okay.
16         (WHEREUPON, a certain document was
17             marked McKenney Deposition Exhibit
18             No. 23, for identification, as of
19             12/14/2017.)
20  BY MR. COCHELL:
21     Q.  I show you what has been marked as 23
22  and ask you, sir, if you can recognize that
23  document.
24     A.  Yes.

Page 123

1      Q.  Okay. You've seen this document before?
2      A.  Yes.
3      Q.  Okay. And so referring to the e-mail
4  from Mike Brown to Brent Brague, it appears that
5  Mr. Brown indicated that -- it says here, "Can we
6  reach out to 280015 and 277790 to find out how they
7  are doing sales? Let's stop all their sales and
8  this is my notice now to charge them back."
9         This is in relationship to alleged
10  fraud; is that correct, sir?
11     MR. WARD: Objection; lack of foundation, lack
12  of firsthand knowledge.
13     MR. COCHELL: He says he's seen the document.
14     MR. WARD: Seen.
15     MR. COCHELL: I've asked you to --
16     MR. WARD: Do you want him just to confirm
17  that there's a document that says that? I mean,
18  honestly, Stephen.
19     MR. COCHELL: I just read it here. I just
20  asked him if he could identify the document. He
21  said yes.
22     MR. WARD: It just means he's seen it because
23  we have it; somebody produced it to us. Probably
24  Mr. Brown. I don't know for certain.

Page 124

1         I don't understand the purpose of having
2  Mr. McKenney read back to you what these documents
3  say.
4      MR. COCHELL: No. I read it to him. And I
5  was asking him if this was an effort by Mr. Brown
6  to stop fraud by ceasing sales from a particular
7  source.
8      MR. WARD: Objection; lack of foundation,
9  of firsthand knowledge, outside the scope of his
10  testimony as a witness.
11  BY MR. COCHELL:
12     Q.  Okay. Now will you answer the question,
13  please?
14     A.  It appears that the affiliate drove
15  sales to Brown sites using -- and the customers
16  that signed up, supposed customers signed up on his
17  site using stolen credit cards.
18         So to me what this suggests is that it's
19  affiliate fraud. So Mr. Brown does not want the
20  affiliate to get compensated for those customers
21  and that those customers should be -- based on this
22  correspondence should be given their money back for
23  the sales because it was an instance where credit
24  cards -- where they didn't -- those consumers

Page 125

1  didn't actually go to the site.
2      Q.  Okay. Fair enough. And so that is an
3  instance of Mr. Brown enforcing compliance with the
4  FTC rules, right?
5      MR. WARD: Objection; lack of foundation, lack
6  of firsthand knowledge, and also outside the scope
7  of his testimony. He's not here to make legal
8  determinations. And the judge has ruled on that
9  previously.
10  BY MR. COCHELL:
11     Q.  Okay. Well, you earlier said that you
12  had no evidence or facts to support that Mr. Brown
13  attempted to comply with FTC rules and regulations
14  or words to that effect. Do you remember that?
15     MR. WARD: Objection; mischaracterizes the
16  testimony.
17  BY MR. COCHELL:
18     Q.  Do you remember that, sir? Say yes or
19  no.
20     A.  The date on this e-mail is from 2013.
21  Our case goes back to January 1st, 2014.
22     Q.  Can you say yes or no to my question,
23  sir?
24     A.  Can you repeat the question?

Page 126

1    MR. COCHELL: Read it back, please.
2         (WHEREUPON, the record was read
3         by the reporter as requested.)
4    MR. WARD: Same objection. I think we should
5 go back to that part to see exactly what was said.
6 BY MR. COCHELL:
7    Q.  I want an answer to my question. Best
8 of your recollection. Do you remember what you
9 said five minutes ago?
10   **A.  I just saw this document yesterday.**
11   Q.  I'm sorry?
12   **A.  I just saw this document yesterday.**
13   Q.  Okay.
14   **A.  Okay?**
15   Q.  All right. Fair enough. All right.
16        (WHEREUPON, a certain document was
17        marked McKenney Deposition Exhibit
18        No. 24, for identification, as of
19        12/14/2017.)
20 BY MR. COCHELL:
21   Q.  I show you No. 24. Have you ever seen
22 this document, No. 24?
23   **A.  I'm not sure if I have or not.**
24   Q.  Okay. Fair enough. You can put that to

Page 127

1 the side.
2        Let me ask you something. Have you ever
3 heard the term -- prior to this case had you ever
4 heard the term friendly fraud?
5    **A.  No.**
6    Q.  Okay. During the course of your
7 investigation did you become familiar with the term
8 friendly fraud?
9    **A.  No.**
10   Q.  When is the first time you heard the
11 term friendly fraud in connection with this case?
12   **A.  When you showed me this document and I
13 see friendly fraud in it.**
14   Q.  Okay. So sitting here today you don't
15 know what friendly fraud is?
16   **A.  I mean, I can assume or make -- I think
17 I know what it is but I don't refer to it by
18 friendly fraud.**
19   Q.  What do you think friendly fraud refers
20 to?
21   **A.  I believe it's customers who charge back
22 a sale when they placed it. If they can't get in
23 touch with the merchant or they are having problems
24 getting in touch with the merchant. And so they**

Page 128

1 **issue a chargeback rather than contacting the
2 merchant.**
3    Q.  Okay. So sitting here today you don't
4 think that perhaps customers tell less than the
5 truth when they're seeking a refund or claiming a
6 chargeback against a credit card monitoring service
7 such as CBC?
8    MR. WARD: Object to the form; assumes facts
9 not in evidence.
10 BY MR. COCHELL:
11   Q.  You can answer the question.
12   **A.  I don't know whether in every instance a
13 consumer is telling the truth in relation to filing
14 a chargeback.**
15   Q.  And you never know whether a consumer is
16 telling the truth if they make a complaint of --
17 that they were mislead by a website?
18   MR. WARD: Objection to the form of the
19 question; ambiguous.
20 BY MR. COCHELL:
21   Q.  Okay. I mean, consumers can make a lot
22 of allegations against a company, correct?
23   **A.  Correct.**
24   Q.  Okay. And some consumers may be

Page 129

1 motivated by a desire to get a refund as opposed to
2 revealing misleading or deceptive conduct by a
3 company; is that correct, sir?
4    MR. WARD: Objection; lack of foundation, lack
5 of firsthand knowledge.
6 BY MR. COCHELL:
7    Q.  Can you answer the question?
8    **A.  Can you rephrase the question?**
9    MR. COCHELL: Let's read it back.
10        (WHEREUPON, the record was read by
11        the reporter as requested.)
12   MR. WARD: Same objection.
13 BY MR. COCHELL:
14   Q.  Are you able to answer that?
15   **THE WITNESS: Can you say it again? I'm
16 sorry. One more time.**
17        (WHEREUPON, the record was read by
18        the reporter as requested.)
19   MR. WARD: Same objection.
20 BY THE WITNESS:
21   **A.  I don't know.**
22 BY MR. COCHELL:
23   Q.  With respect to the next document,
24 Exhibit 25.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 130..133

Page 130

1    (WHEREUPON, a certain document was
2    marked McKenney Deposition Exhibit
3    No. 25, for identification, as of
4    12/14/2017.)
5  BY MR. COCHELL:
6    Q.  I show you 25 and ask you, sir, if you
7  recognize that document.
8    **A.  I don't remember this specific document.**
9    Q.  Okay.  Do you know if PowerPay or EVO
10 was one of CBC's credit card processors?
11   **A.  Yes, I do know that.**
12   Q.  Okay.  And do you know if PowerPay
13 provided multiple merchant accounts or MIDs to CBC?
14   **A.  Yes, they did.**
15   Q.  Okay.  And do you know anything about
16 free trial merchant -- the term free trial merchant
17 review which is the subject matter of this
18 particular document, Exhibit 25?
19   **A.  I'm sorry.  What's the question?**
20   Q.  With respect to -- there was testimony
21 yesterday about chargebacks, right?
22   **A.  Uh-huh.**
23   Q.  And there was testimony about free trial
24 merchant reviews, okay, where merchants were

Page 131

1  concerned about the risk for companies that
2  provided a free trial.  Do you remember that
3  testimony --
4    **A.  Yes.**
5    Q.  -- just generally?
6    **A.  Yes.**
7    Q.  I'm not going to ask you specifics.
8      And so this document appears -- at least
9  on its face appears to be addressing the whole
10 issue of free trial merchant review; is that
11 correct?
12   MR. WARD:  Objection; lack of foundation, lack
13 of firsthand knowledge.
14 BY MR. COCHELL:
15   Q.  Okay.  Well, you see it on the subject
16 matter, "RE: Free Trial Merchant Review," correct?
17   **A.  I see that's what the subject line of**
18 **the e-mail says.**
19   Q.  Okay.  And you've never talked to
20 PowerPay directly about chargebacks and the free
21 trial merchant review that they or may not have
22 done?
23   **A.  Me personally, no.**
24   Q.  Do you know of anyone else that's talked

Page 132

1  to them about this case without revealing the
2  substance?
3    **A.  I'm not sure.**
4    Q.  Okay.  So sitting here today, you don't
5  know if merchant reviews were done about the free
6  trial program conducted by CBC; is that correct?
7    **A.  Generally?  I'm sorry.**
8    Q.  Do you know generally of any of the
9  merchant account providers conducting a review of
10 their risk tolerance based on CBC's free trial
11 merchant program?
12   MR. WARD:  Objection to the form, vague, and
13 also lack of firsthand knowledge.
14 BY MR. COCHELL:
15   Q.  I'm asking, sir, if you have any
16 knowledge based on review of whether any of the
17 merchants who cancelled their merchant accounts
18 with CBC to determine whether they cancelled their
19 merchant accounts based on the free trial program
20 that CBC operated?
21   MR. WARD:  Same objection.
22 BY THE WITNESS:
23   **A.  I don't know of others -- of other**
24 **merchant processors that cancelled it based on a**

Page 133

1  **free trial -- free trial merchant review.**
2  BY MR. COCHELL:
3    Q.  Okay.  Do you know whether -- what did
4  PowerPay do in terms of free trial merchant review,
5  if you know it at all?  Do you know what they did,
6  if anything?
7    **A.  As part of the review process?**
8    Q.  What, if anything, did PowerPay do to
9  conduct a free trial merchant review of CBC's
10 program, free trial program?
11   MR. WARD:  Objection: lack of foundation, lack
12 of firsthand knowledge.
13 BY THE WITNESS:
14   **A.  I don't know.**
15 BY MR. COCHELL:
16   Q.  All right.  And with respect to the
17 other merchant accounts that were cancelled, did
18 you talk to any of the individuals who managed
19 CBC's merchant accounts to determine the true cause
20 or the true reasons for cancelling CBC's merchant
21 account?
22   **A.  No, I did not talk to merchant sales**
23 **reps for CBC's accounts.**
24   Q.  Did you talk to the merchant account

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                                   Pages 134..137

Page 134

1  managers above the sales reps?
2     A.  No.
3        MR. COCHELL:  Okay.  Why don't we take a
4  break.  I think I can -- this will be a ten-minute
5  break.  I can eliminate some documents and try to
6  expedite the process and make a visit to the
7  restroom.  And maybe my client and I can have the
8  room for a few minutes.
9           (WHEREUPON, a recess was had
10             from 2:08 p.m. to 2:22 p.m.)
11 BY MR. COCHELL:
12    Q.  I will ask you a question, sir.  At Page
13 4 of the complaint -- I guess that's Exhibit 1 --
14 it says at the very bottom, "Defendants' scheme has
15 generated more than 500 consumer complaints and
16 caused millions of dollars of consumer loss."
17       Do you see that, sir?
18    A.  Yes.
19    Q.  And is that allegation true?
20    A.  Yes.
21    Q.  Tell me, how is it that you got to 500
22 complaints, consumer complaints?
23    A.  When we filed the TRO and my
24 declaration, I went on Consumer Sentinel and looked

Page 135

1  for complaints that were filed against
2  CreditUpdates, eFreeScore.  And at the time we had
3  received I believe it was 297 consumer complaints.
4  And then we also had received complaints from the
5  Better Business Bureau.
6     Q.  How many complaints did you get from the
7  Better Business Bureau?
8     A.  I don't recall this minute a declaration
9  to us.
10    Q.  Okay.  So it's in your declaration how
11 many you got from the BBB or not?
12    A.  No, I do not believe it's in my
13 declaration.  I believe it's in the BBB
14 declaration.
15    Q.  Okay.  So you don't sitting here today
16 recall exactly what the BBB said it got in terms of
17 all the complaints that they had received on
18 ConsumerUpdates (sic) and eFreeScore?
19    A.  Correct.
20    Q.  Now, when you say complaints received,
21 are these -- 297 complaints were received.  Are
22 these 297 complaints in Sentinel?
23    A.  Yes.
24    Q.  How many of those 297 complaints were

Page 136

1  actually sent to CBC?
2     A.  I think -- can I help clarify?  We do
3  not send -- the FTC does not send consumer
4  complaints out to the business but we do receive
5  complaints from other, you know, government
6  agencies, like State's Attorney General's offices,
7  other regulatory agencies who may have complaint
8  mediation departments who may have sent consumer
9  complaints that were filed with them to CBC but
10 then referred the complaint that they received to
11 the FTC.
12    Q.  So the answer is they may have been sent
13 but sitting here you don't know how many of these
14 297 complaints -- that Sentinel has in its database
15 you don't know how many of those complaints were
16 actually sent to CBC?
17    A.  Correct.
18    Q.  Okay.  And then -- I do have some
19 documents from BBB I'm going to show you so we can
20 figure out just how many BBB complaints there were,
21 at least based on the records we've got.  Okay?
22       So let me just start marking them.  And
23 the next one would be 26.
24

Page 137

1           (WHEREUPON, a certain document was
2             marked McKenney Deposition Exhibit
3             No. 26, for identification, as of
4             12/14/2017.)
5        MR. WARD:  Can we go off the record for a
6  second?
7           (WHEREUPON, discussion was had off
8             the record.)
9  BY MR. COCHELL:
10    Q.  So you don't know how many complaints
11 were actually -- BBB may or may not have sent all
12 those complaints to CBC as far as you know; is that
13 correct?
14    A.  I don't know if they sent them all to
15 CBC.
16    Q.  And they didn't provide all of them to
17 you as part of their return of documents on a civil
18 investigative demand?
19    A.  I'm sorry.  Can you repeat the question?
20    Q.  Do you know if they returned all the
21 complaints that they had received as part of their
22 response to your civil investigative demand?
23    A.  We never sent them a civil investigative
24 demand.  They voluntarily produced copies of their

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 138..141

Page 138

1 consumer complaints to us along with if they
2 received a business response to that complaint, it
3 would be within that record.
4    Q.   Okay.  And sitting here today do you
5 know how many complaints -- obviously you provided
6 all the documents that they gave you in terms of
7 complaints and responses.  Did you attach that
8 to -- or was that attached to Ms. McCool's
9 declaration?
10    A.   I'm sorry?
11    Q.   Are you having trouble understanding the
12 answer -- or the question?
13    A.   Yes.
14    Q.   Okay.  I know you're having trouble with
15 the answer.  All right.  Let me rephrase it.
16    Do you know -- like if they said there's
17 200-and-some complaints, do you know if they gave
18 you 200-and-some complaints that they received as
19 the Better Business Bureau?
20    A.   I don't know.
21    Q.   Okay.  Now, do you know how many of the
22 complaints in Sentinel were received after filing
23 of the lawsuit?
24    MR. WARD:  Objection to the form; vague.

Page 139

1 BY MR. COCHELL:
2    Q.   Do you know how many consumer complaints
3 were filed against CBC after filing of the FTC's
4 lawsuit in this case?
5    A.   My declaration says 297 complaints were
6 received at the time of our filing.  I don't know
7 how many complaints have since been received.
8    Q.   Okay.  Fair enough.  Do you know how
9 many complaints were received by BBB after filing
10 of the lawsuit of that -- of whatever number they
11 gave you?
12    A.   Again, Ms. McCool's declaration was part
13 of the temporary restraining order filing.  So her
14 number in her declaration is the number of
15 complaints received prior to the filing of the
16 case.
17    Now, did you -- at the PI hearing -- and
18 we've covered this earlier today, but at the PI
19 hearing you indicated that the first time you heard
20 of CBC's white label business was when there was a
21 response to the preliminary injunction motion, you
22 saw for the first time there was a white label
23 business, correct?
24    MR. WARD:  Objection; assumes facts not in

Page 140

1 evidence.
2 BY THE WITNESS:
3    A.   I believe it was after the TRO filing,
4 not the PI.
5 BY MR. COCHELL:
6    Q.   And with respect to the preliminary
7 injunction hearing you also testified that you
8 visited Mr. Brown's LinkedIn profile from an
9 undercover computer; is that correct?
10    A.   Yes.
11    Q.   And did you take a screen shot of his
12 LinkedIn profile?
13    A.   Yes.
14    Q.   I don't recall seeing that in the
15 discovery.  But do you recall, did you review the
16 LinkedIn profile that you took the screen shot of?
17    A.   Yes.
18    Q.   And was it -- I've seen a couple of
19 different kinds of LinkedIn profiles.  There are
20 some that are very short and to the point that just
21 say this is what I do, period, and then there's
22 some that look more like a resume.
23    Do you recall what this particular --
24 what Mr. Brown's LinkedIn profile actually looked

Page 141

1 like?
2    A.   I recall some of it contained his work
3 history, his work at Experian, and that he was also
4 owner of MyScore.
5    Q.   Was it a short kind of like squib or was
6 it a longer resume-type format?
7    A.   I believe it was short.
8    Q.   Okay.
9    (WHEREUPON, a certain document was
10    marked McKenney Deposition Exhibit
11    No. 27, for identification, as of
12    12/14/2017.)
13 BY MR. COCHELL:
14    Q.   I would like to show you 27 for
15 identification and ask you, sir, if you recognize
16 that document.  Obviously it wasn't sent to you.  I
17 see that this is part of the CSID FTC production.
18    CSID stands for what, sir?
19    A.   CS Identity Corp.
20    Q.   And this is part of the database that
21 was obtained by the FTC from CBC?
22    MR. WARD:  Objection.
23 BY MR. COCHELL:
24    Q.   If you know.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                                   Pages 142..145

Page 142

1    A.    It's from the FTC-issued subpoena to
2    CSID.
3    BY MR. COCHELL:
4    Q.    Does this refresh your memory as to what
5    you saw on LinkedIn when you accessed his LinkedIn
6    site, Mr. Brown's site?
7    A.    This does -- this isn't a LinkedIn
8    profile.
9    Q.    What's that?
10   A.    This isn't a LinkedIn profile.
11   Q.    All right.  Have you ever seen an e-mail
12   from somebody trying to connect on LinkedIn?
13   A.    No, I have not.
14   Q.    Are you on LinkedIn yourself?
15   A.    No.
16   Q.    So you don't know if LinkedIn simply
17   takes like a short description of somebody's
18   background and -- it's like a template e-mail.
19   Somebody wants to connect and it will take the
20   banner of that person's experience.  Do you know if
21   that's the way it works or not?
22   A.    Correct, I don't know.
23   Q.    Okay.  Fair enough.  Let me show you 28.
24

Page 143

1         (WHEREUPON, a certain document was
2         marked McKenney Deposition Exhibit
3         No. 28, for identification, as of
4         12/14/2017.)
5    BY MR. COCHELL:
6    Q.    Is this what you saw on LinkedIn?  This
7    is a rather lengthy profile.
8    A.    I'm not sure.
9    Q.    Okay.  So sitting here today you don't
10   know one way or the other whether that was the
11   LinkedIn site that you saw when you accessed on
12   your undercover computer?
13   MR. WARD:  Objection; asked and answered.
14   BY THE WITNESS:
15   A.    I don't know.
16   MR. COCHELL:  Fair enough.  I think I have one
17   more line of questions and I just need to get one
18   document.  I may need to print it out.  Or if it's
19   okay, it's in a pleading and I might just show the
20   witness on the computer screen, access the
21   pleading, and ask him a couple questions.
22        Why don't we take a quick break and then
23   we'll wind up.  Okay?
24   MR. WARD:  Okay.

Page 144

1         (WHEREUPON, a recess was had
2         from 2:44 p.m. to 2:57 p.m.)
3    BY MR. COCHELL:
4    Q.    I have a question for you now.  Did you
5    ever visit a site known as United Credit
6    Protection?
7    A.    I don't remember visiting that site.
8    Q.    Okay.  Would it surprise you to know
9    that you did in fact visit this white label site on
10   April 14, 2016?
11   A.    I don't remember doing it.
12   Q.    Okay.  Would it surprise you to know
13   that this is a website that's virtually identical
14   to one of the CBC sites that's the subject of this
15   lawsuit?
16   MR. WARD:  Objection; lack of foundation, lack
17   of firsthand knowledge.
18   BY MR. COCHELL:
19   Q.    Would it surprise you?
20   A.    I mean, I don't remember visiting that
21   site in April of 2016.
22   Q.    Okay.  So you don't know if that was a
23   white label site that was sponsored by CBC; is that
24   correct?  You don't know one way or the other?

Page 145

1    A.    Correct.
2    Q.    All right.  Did you ever visit
3    ScoreOutlook?
4    A.    I believe I did.
5    Q.    Okay.  Do you know if that was a white
6    label site sponsored by CBC?
7    A.    I don't know.
8    Q.    Okay.  Did you ever visit
9    ScoreApprove.com?
10   A.    I did, yes.
11   Q.    And do you know if that was a white
12   label site?
13   A.    I don't know what a white -- I don't
14   know what would differentiate a site from being a
15   white label site and just being a regular website.
16   Q.    Okay.  I think I asked this a little
17   earlier but I think I asked it only as to Pierce.
18        Are you familiar with any other
19   deceptive or misleading business activities
20   undertaken by Mr. Pierce?  Did you learn of
21   anything else that would show that he engaged --
22   routinely engaged in misleading activities with
23   consumers?
24   MR. WARD:  Objection; asked and answered.

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                                   Pages 146..149

Page 146

1  Also outside the scope of his testimony.
2  BY THE WITNESS:
3      A.   I'm sorry.  Can you repeat the question?
4           (WHEREUPON, the record was read by
5            the reporter as requested.)
6      MR. WARD:  Same objection.
7  BY THE WITNESS:
8      A.   I don't remember seeing anything else.
9  BY MR. COCHELL:
10     Q.   Were you looking?
11     A.   I've looked for information about Danny
12  Pierce and his company Revable before we filed the
13  lawsuit in the investigation stage.
14  BY MR. COCHELL:
15     Q.   So it was confined to Revable, your
16  search for information?
17     MR. WARD:  Objection; mischaracterizes the
18  testimony.
19  BY THE WITNESS:
20     A.   I believe I searched on Danny Pierce for
21  information on Danny Pierce and on his company
22  Revable.
23  BY MR. COCHELL:
24     Q.   And no other search terms; is that

Page 147

1  correct?
2      A.   I don't recall any other search terms.
3      Q.   Fair enough.  How about Mr. Lloyd; did
4  you look for other misleading or deceptive schemes
5  that Mr. Lloyd had undertaken prior to filing this
6  lawsuit?
7      MR. WARD:  Objection; outside the scope of his
8  testimony.
9  BY MR. COCHELL:
10     A.   I looked for information -- any
11  information that I could find about Andrew Lloyd
12  prior to us filing the lawsuit.
13  BY MR. COCHELL:
14     Q.   And the only information you came up
15  with was his connection to Mr. Pierce?
16     A.   I mean, I located his address, located
17  information about, you know, some of his relatives.
18     Q.   Okay.  Do you know if Mr. Pierce sent
19  traffic from his Craigslist website or activities
20  to other websites?
21     MR. WARD:  Objection; vague.
22  BY MR. COCHELL:
23     Q.   Did they send traffic to other
24  websites --

Page 148

1      MR. WARD:  Same objection.
2  BY MR. COCHELL:
3      Q.   -- using Craigslist?
4      A.   I didn't come across any.
5      Q.   Okay.  Doesn't mean it doesn't exist,
6  you just didn't see it; is that correct?
7      A.   Correct, I didn't see it.
8      Q.   Okay.  And do you know what other
9  creditor -- what credit monitoring sites Pierce and
10  Lloyd sent referrals to?
11     MR. WARD:  Objection; asked and answered.
12  BY THE WITNESS:
13     A.   I don't know.
14  BY MR. COCHELL:
15     Q.   Do you know if Pierce or Lloyd sent
16  customers or visitors to their website to other
17  credit report or score offers?
18     A.   No, I don't know.
19     Q.   You started investigating in March 2015.
20  Do you know how many customers were allegedly
21  misled from the time you started your investigation
22  until the time the lawsuit was filed?
23     MR. WARD:  Objection; mischaracterizes the
24  testimony.

Page 149

1  BY THE WITNESS:
2      A.   We began our investigation in March
3  2016, not March 2015.
4  BY MR. COCHELL:
5      Q.   I'm sorry.  March 2016.  Do you know how
6  many consumers were allegedly misled from the point
7  where you started your investigation until the
8  lawsuit was filed?
9      MR. WARD:  Objection; outside the scope of his
10  testimony.
11  BY MR. COCHELL:
12     Q.   Do you know?
13     A.   Not as we sit here today, but it is
14  contained in the Offerit database I believe with my
15  declaration that I filed with the TRO.  It went
16  back to January 2014 when Pierce began as an
17  affiliate.  And the number of sales are represented
18  within the Offerit database.
19     MR. COCHELL:  Move to strike as unresponsive.
20  BY MR. COCHELL:
21     Q.   All right.  So while you have records
22  that go back before March of 2016 you don't know
23  how many consumers were allegedly misled from the
24  point where you started the investigation on

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                                   Pages 150..153

Page 150

1  March -- in March of 2016 until filing of the
2  lawsuit; is that correct, sir?
3      MR. WARD:  Objection; mischaracterizes the
4  testimony.
5  BY THE WITNESS:
6      **A.   We have complaints going back to January**
7  **2014.**
8  BY MR. COCHELL:
9      Q.   You've made no effort to determine how
10 many consumers were allegedly misled from the point
11 of starting your investigation to the point of
12 filing the lawsuit, correct?
13     MR. WARD:  Objection; mischaracterizes the
14 testimony, outside the scope of his testimony as a
15 witness.
16 BY MR. COCHELL:
17     Q.   Let me ask you some questions.
18         (WHEREUPON, a certain document was
19          marked McKenney Deposition Exhibit
20          No. 29, for identification, as of
21          12/14/2017.)
22 BY MR. COCHELL:
23     Q.   I show you 29 for identification.  Do
24 you recognize that document?

Page 151

1      **A.   I don't recognize it but it appears to**
2  **have been printed on December 12, 2017.**
3      Q.   Okay.
4      **A.   I didn't do that on December 12, 2017.**
5      Q.   Okay.  So this says that -- does this
6  indicate -- I think it's on the -- what page is it
7  on?  One moment.
8          To date, up through this date indicated
9  on the letter itself, which I think -- what was the
10 date that you saw it?  I'm having trouble reading
11 it.
12     **A.   Top left corner it says December 12,**
13 **2017.**
14     Q.   That's the date of the printout.
15     **A.   There's also a copyright on Page 2 of**
16 **2017.**
17     Q.   Do you recognize this as a printout of
18 the BBB's website -- it's a company profile on the
19 BBB site?
20     MR. WARD:  Objection; asked and answered, lack
21 of foundation.
22 BY MR. COCHELL:
23     Q.   Do you know one way or the other?
24     **A.   I mean, it appears to be a printout from**

Page 152

1  the BBB's website for FreeCreditNation.
2      Q.   Okay.  All right.  And it says it has an
3  A+ rating.
4      MR. WARD:  Objection; lack of foundation.
5  BY MR. COCHELL:
6      Q.   That's what the document says, right?
7      **A.   The document says A+ rating.**
8      Q.   I would like to show you the next
9  document in order.
10         (WHEREUPON, a certain document was
11          marked McKenney Deposition Exhibit
12          No. 30, for identification, as of
13          12/14/2017.)
14 BY MR. COCHELL:
15     Q.   I'd like to show you what has been
16 marked as Exhibit 30 for identification and ask
17 you, sir, if you recognize that document.
18     **A.   I don't recognize this document.**
19     Q.   Okay.  Are you familiar with Reputation
20 Update, the site called Reputation Update?
21     **A.   No.**
22     Q.   Do you see here that there is a citation
23 to the BBB.org site?
24     MR. WARD:  Objection; lack of foundation, lack

Page 153

1  of firsthand knowledge.
2  BY MR. COCHELL:
3      Q.   Do you see it?
4      **A.   I'm sorry.  See what?**
5      Q.   Do you recognize this as a -- the blue,
6  I guess, Google URL that refers to BBB.org?
7      **A.   There is a URL contained in this e-mail**
8  **that says BBB.org.**
9      Q.   All right.  Let me go to the next one.
10         (WHEREUPON, a certain document was
11          marked McKenney Deposition Exhibit
12          No. 31, for identification, as of
13          12/14/2017.)
14 BY MR. COCHELL:
15     Q.   Do you recognize this document, sir?
16     **A.   No, I do not.**
17     Q.   It appears to be a BBB letter; is that
18 correct?
19     MR. WARD:  Objection; lack of foundation, lack
20 of firsthand knowledge.
21 BY MR. COCHELL:
22     Q.   You can answer the question.
23     **A.   I see at the top of the page it has**
24 **BBB's header on it.**

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER

Job 27222

Douglas McKenney

Pages 154..157

Page 154

1    Q.    Have you seen letters like this in the
2  CRM obtained by the FTC, that CBC CRM?
3    MR. WARD:  Objection; vague.
4  BY THE WITNESS:
5    **A.    I have not seen this type of document in**
6  **the CBC's CRM database.**
7  BY MR. COCHELL:
8    Q.    Have you seen it from Erin McCool and
9  the BBB?
10    **A.    I just said I haven't -- I don't**
11  **recognize this document.**
12    Q.    Have you seen documents similar to this
13  in the documents that were voluntarily produced by
14  the BBB, Erin McCool?
15    MR. WARD:  Objection; vague.
16  BY THE WITNESS:
17    **A.    The BBB complaints when they send them**
18  **to us --**
19  BY MR. COCHELL:
20    Q.    Can you answer my question, sir?
21    **A.    No, I don't see this type of letter in**
22  **the complaints that came to us from the BBB.**
23    Q.    Okay.  All right.  That's the answer to
24  my question.  Thank you.

Page 155

1    All right.  With respect to the BBB
2  complaints that were attached to your declaration,
3  do you know how many of those complaints involve
4  people who had already received refunds from CBC?
5    MR. WARD:  Objection; mischaracterizes his
6  declaration.
7  BY THE WITNESS:
8    **A.    There weren't any BBB complaints**
9  **attached to my declaration.**
10  BY MR. COCHELL:
11    Q.    Okay.  Fair enough.  Of the BBB
12  complaints that were provided to you by Erin McCool
13  do you know if any of the consumers who purportedly
14  authored those complaints had received refunds
15  prior to filing of this lawsuit?
16    MR. WARD:  Objection; lack of firsthand
17  knowledge.
18  BY THE WITNESS:
19    **A.    I don't know.**
20  BY MR. COCHELL:
21    Q.    Let's take a look at 26 because I don't
22  recall asking you questions about it.  Do you
23  recall ever seeing this document, Exhibit 26?
24    **A.    I mean, I didn't do this.  So...**

Page 156

1    Q.    Do you recall ever seeing this document?
2    **A.    This specific document?**
3    Q.    I'm asking you, sir, if you have ever
4  seen this specific document.
5    **A.    No.**
6    Q.    Okay.  Do you recognize this as a
7  printout of BBB's website?
8    MR. WARD:  Objection; lack of foundation, lack
9  of firsthand knowledge.
10  BY THE WITNESS:
11    **A.    Again, I did not do this.  I didn't**
12  **print out this document.**
13  BY MR. COCHELL:
14    Q.    So you've never seen a business profile
15  like this from the Better Business Bureau?
16    MR. WARD:  Objection; vague.
17  BY THE WITNESS:
18    **A.    I've been on the Better Business Bureau**
19  **website before.  I printed off business profile**
20  **reports.**
21  BY MR. COCHELL:
22    Q.    Can you answer it yes or no, sir?
23    **A.    You're just asking me have I been to the**
24  **Better Business Bureau website and looked at a**

Page 157

1  **business profile report before?**
2    Q.    Yes.
3    **A.    Yes, I have done that.**
4    Q.    Did they look like this one?
5    **A.    Yes.**
6    Q.    Okay.  And they typically show just how
7  many complaints were received about a business on
8  the business profile; is that correct?
9    **A.    Yes.  And I did it for CreditUpdates.com**
10  **and I did it for eFreeScore.com and I did it for**
11  **FreeCreditNation.**
12    Q.    Okay.
13    **A.    I didn't do it on this specific date of**
14  **this printout that you're showing me.  This isn't**
15  **my work product.**
16    Q.    Okay.  And this shows 81 complaints
17  against the business?
18    MR. WARD:  Objection; vague.
19  BY MR. COCHELL:
20    Q.    Under "BBB Reason for Ratings" it says
21  "BBB rating is based on 13 factors" and then, you
22  know, "Factors that affect the rating for
23  CreditUpdates.com include 81 complaints filed
24  against business," right?

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER | Job 27222
Douglas McKenney | Pages 158..161

Page 158

1    MR. WARD: I'm sorry. Just for my benefit
2  where does it say that?
3    **THE WITNESS: On Page 1.**
4    MR. COCHELL: Page 1.
5    **THE WITNESS: Here (indicating).**
6  BY THE WITNESS:
7    **A.  I see --**
8    MR. WARD: Objection; lack of foundation, lack
9  of firsthand knowledge.
10  BY MR. COCHELL:
11   Q.  That's what it says. It just says 81
12  complaints. That's one of the factors that go into
13  the rating, right?
14   MR. WARD: And it has a link to go to the
15  factors as well.
16  BY MR. COCHELL:
17   Q.  Is that correct, sir?
18   **A.  Yes, it says 81 complaints filed against**
19  **the business.**
20   MR. COCHELL: Okay. What's the next one? 32.
21      (WHEREUPON, a certain document was
22      marked McKenney Deposition Exhibit
23      No. 32, for identification, as of
24      12/14/2017.)

Page 159

1  BY MR. COCHELL:
2   Q.  Here's 32. Have you ever seen this
3  document, sir?
4   **A.  This specific one, no.**
5   Q.  You mentioned a little earlier that you
6  had printed out -- or maybe I'm wrong so correct me
7  if I'm wrong.
8      Did you do your own search for
9  CreditUpdates or eFreeScore with the business
10  profile? Did you do your own business profile
11  search?
12   **A.  Yes.**
13   Q.  Is that in the document production made
14  by the FTC to CBC and Mr. Brown?
15   **A.  I'm not sure.**
16   Q.  Okay. Could you just check when you
17  have an opportunity because I don't recall seeing
18  it. It doesn't mean that it's not there.
19   **A.  Okay.**
20   Q.  Just like you don't recall --
21   MR. WARD: We will look for it and let you
22  know.
23   MR. COCHELL: Okay. Thank you.
24

Page 160

1  BY MR. COCHELL:
2   Q.  This would indicate -- like the other
3  one, it indicates the number of complaints as of
4  this date in this record. You don't have personal
5  knowledge, you didn't run the report, but it says
6  what it says, fair enough?
7   **A.  Can I say, I do know from past**
8  **experience reviewing Better Business Bureau**
9  **business profiles that the number of complaints**
10  **that they list often will just be complaints that**
11  **have been filed in the last like 36 months.**
12   Q.  Okay. All right. And so you think
13  that's the practice, but sitting here you're not
14  sure or are you saying you know that's their
15  practice?
16   **A.  No. I know that I've seen that on other**
17  **business profile reports where they list how many**
18  **complaints have been filed or recorded by a**
19  **business for a certain duration of time. I believe**
20  **it's the last 36 months.**
21   Q.  Okay. Why don't you look at the second
22  page of Exhibit 32. And there's like four, you
23  know, URLs. Then the fifth one on the far
24  left-hand side says "63 total customer complaints"

Page 161

1  and it goes through for eFreeScore in Walnut, CA.
2  Do you see that?
3   **A.  Yes.**
4   Q.  And so that would be 63 complaints for
5  the prior 36 months prior to 12/12/2017, which is
6  the date on the first page of Exhibit 32; is that
7  correct?
8   MR. WARD: Objection; lack of firsthand
9  knowledge, lack of foundation, mischaracterizes his
10  previous testimony.
11  BY MR. COCHELL:
12   Q.  Okay. Can you answer my question, sir?
13   **A.  It says 63 total consumer complaints on**
14  **Page 2.**
15   Q.  And the way you interpret that is that
16  it would be for the prior 36 months, right?
17   MR. WARD: Same objection.
18  BY MR. COCHELL:
19   Q.  Of the date of the document.
20   MR. WARD: Same objection.
21  BY THE WITNESS:
22   **A.  It doesn't specifically say in the last**
23  **36 months.**
24  BY MR. COCHELL:

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                    Job 27222
Douglas McKenney                                                  Pages 162..165

Page 162

1    Q.   Okay.  I would like you to look at 29,
2  Page 2.
3      MR. WARD:  We're going back to 29?
4      MR. COCHELL:  Yeah.  You know what?  I don't
5  think it's necessary.  It says what it says.
6  BY MR. COCHELL:
7    Q.   I would like to show you on the
8  screen -- we can pull it up real quick.  I'm going
9  to show you Docket 51 that was a sealed declaration
10  from Mike Brown with exhibits.  And one of the
11  exhibits was Exhibit G that lists a number of real
12  estate lender and broker companies.
13      Do you remember -- this purports to be
14  the white label sites that were identified by
15  Mr. Brown in his declaration.
16      MR. WARD:  Have you asked a question?
17      MR. COCHELL:  Yeah.  I invited his attention
18  to 51, Exhibit G.  He's looking at it right now.
19  BY MR. COCHELL:
20    Q.   Have you had a fair opportunity to look
21  at it, sir?
22      MR. WARD:  I believe this document is multiple
23  pages long if I recall.
24      MR. COCHELL:  It is.

Page 163

1      MR. WARD:  Do you actually want him to sit
2  here --
3      MR. COCHELL:  No.  I don't care.
4      MR. WARD:  Well, we care.
5  BY MR. COCHELL:
6    Q.   Are you satisfied that you understand
7  what you're looking at, sir?
8      MR. WARD:  How on earth could he understand a
9  voluminous document that was filed by another
10  witness; namely, Mr. Brown, at the PI hearing?
11      MR. COCHELL:  Well, I understand that you may
12  not want me to ask questions about it.
13      MR. WARD:  Ask your question but don't ask him
14  to --
15      MR. COCHELL:  I have.  I have.  Don't
16  interrupt me with speaking objections.  I'm just
17  asking a question.
18  BY MR. COCHELL:
19    Q.   Do you recognize this as a list of -- do
20  you recognize any of these companies as white label
21  companies that were related to CBC?
22      MR. WARD:  Objection; lack of foundation, lack
23  of firsthand knowledge, outside the scope of his
24  testimony as a witness.

Page 164

1      MR. COCHELL:  It's a question that is clearly
2  designed for foundation.
3      MR. WARD:  He hasn't even had a chance to
4  scroll through this entire --
5      MR. COCHELL:  You objected to him scrolling
6  through it.
7      MR. WARD:  Because it would take forever.
8      MR. COCHELL:  Then take whatever time he
9  needs.
10      MR. WARD:  Why didn't you bring a printout?
11      MR. COCHELL:  Look, I'm showing him the
12  screen.  If he doesn't want to look at it --
13      MR. WARD:  How many pages are on that?
14      MR. LEVINE:  Why isn't there a file stamp on
15  it?
16      MR. COCHELL:  I think it's at the front of the
17  document.  Maybe there isn't a file stamp on it.  I
18  don't know.
19      MR. LEVINE:  If this had actually been filed,
20  there would be a stamp on each page.
21      MR. COCHELL:  I don't know.  I don't know what
22  they do at the --
23      MR. WARD:  Well, then you've misrepresented
24  what this is.

Page 165

1      MR. COCHELL:  Oh, come on.  Get off it.
2      MR. WARD:  No, I won't come on.
3      MR. BROWN:  Can we go off the record?
4      MR. COCHELL:  No, we're not off the record.
5      MR. LEVINE:  I'm not accusing you of anything,
6  Steve, but you said it was filed and there's no
7  indication from ECF that --
8      MR. COCHELL:  I think that's an appropriate
9  observation.  And under the circumstances of this
10  case I got certain filings.  It may or may not have
11  been the actual filed copy.  So to me it's because
12  it was filed under seal.  It was provided to me by
13  prior counsel.
14      So that's why it's been presented in
15  this light.  And we can present the document, you
16  know, with that observation.  And if it's different
17  from the real sealed document, then so be it.
18      MR. WARD:  But you -- if you have a question
19  for Mr. McKenney, that's fine.  But you can't ask
20  him to authenticate this or tell you what it is.
21  It's already been put in the record by Mr. Brown.
22      If you have a question, we're here for
23  you to ask your question.
24      MR. COCHELL:  Okay.  Well, I've asked my

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER                     Job 27222
Douglas McKenney                                                 Pages 166..169

Page 166

1 question.
2 BY MR. COCHELL:
3    Q.    And do you know if any of the names on
4 that are white label businesses identified by
5 Mr. Brown in Filing 51, which was a sealed exhibit?
6       Did you ever see 51, the sealed exhibit?
7    **A.    Yes, I've seen it.**
8    Q.    Okay.  And it's a list of real estate
9 agents, lenders, real estate companies, brokers,
10 that are purportedly part of a white label
11 business; is that correct, sir?
12    MR. WARD:  Objection; lack of foundation,
13 lack of firsthand knowledge, outside his
14 testimony, outside the scope of his testimony in
15 this case.
16 BY THE WITNESS:
17    **A.    I see a list of -- I see domains, site**
18 **names, site version names, logo, phone number.  And**
19 **there's another column that's cut off.**
20       **In domain section I see**
21 **CreditUpdates.com.  The site name, I see**
22 **CreditUpdates.com.  I've also seen that appear for**
23 **eFreeScore.com in the domain column and in the site**
24 **name column.**

Page 167

1 BY MR. COCHELL:
2    Q.    Okay.  Does that appear similar to what
3 you saw on the filed document that I guess your
4 lawyers may have shown you, the 51, that was filed
5 with the court, his declaration with the list?  Do
6 you recall that being the same or similar?
7    **A.    I don't recall that.**
8    Q.    Fair enough.  Okay.  Now, my question
9 to you, sir, is do you know whether those
10 businesses generated profit for CBC as white label
11 companies?
12    MR. WARD:  Objection; lack of foundation, lack
13 of firsthand knowledge, outside the scope of his
14 testimony.  Also vague.
15 BY MR. COCHELL:
16    Q.    Do you have any facts or knowledge as to
17 how much revenue was generated from the 300 or so
18 names or URLs on that list?
19    MR. WARD:  Objection; mischaracterizes the
20 document.  And my other objections.
21 BY THE WITNESS:
22    **A.    I mean, again, I see CreditUpdates.com,**
23 **eFreeScore.com on this.  What is the business?**
24 **What are the other businesses?**

Page 168

1 BY MR. COCHELL:
2    Q.    Okay.  So you don't know?
3    **A.    I don't know what I'm actually looking**
4 **at here with this filing.**
5    Q.    Okay.  That's because you never really
6 looked into the white label businesses and tried to
7 figure out what they do, what their relationship is
8 to CBC; isn't that correct?
9    MR. WARD:  Objection; mischaracterizes his
10 testimony and it's argumentative.
11    MR. COCHELL:  Closing down a business is
12 pretty argumentative, too, without knowing what the
13 business is.
14    MR. WARD:  That's got nothing to do with this
15 deposition.  Those arguments could be made in
16 court.
17    MR. COCHELL:  They will be.
18       That's all the questions we have for
19 this witness.  Thank you.
20    MR. WARD:  Thank you.  We reserve signature.
21    THE COURT REPORTER:  Would you like this
22 transcript written up?
23    MR. COCHELL:  Yes.  I'd like an E-tran,
24 condensed, and an original version of whatever

Page 169

1 you typically do.  I don't really pay attention
2 too much.  Could I have a paper copy with the
3 exhibits?
4    THE COURT REPORTER:  Yes.
5    MR. WARD:  Yes, we would.  E-tran.
6       (Time Noted:  3:34 p.m.)
7    FURTHER DEPONENT SAITH NAUGHT.
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Pages 170..173

Page 170

```
 1   STATE OF ILLINOIS )
 2                     ) SS:
 3   COUNTY OF DU PAGE )
 4          I, SUSAN K. TODAY, C.S.R. No. 84-2212, a
 5   Notary Public within and for the County of DuPage,
 6   State of Illinois, and a Certified Shorthand
 7   Reporter of said state, do hereby certify:
 8          That previous to the commencement of the
 9   examination of the witness, the witness was duly
10   sworn to testify the whole truth concerning the
11   matters herein;
12          That the foregoing deposition transcript
13   was reported stenographically by me, was thereafter
14   reduced to typewriting under my personal direction
15   and constitutes a true record of the testimony
16   given and the proceedings had;
17          That the said deposition was taken
18   before me at the time and place specified;
19          That the reading and signing by the
20   witness of the deposition transcript was agreed
21   upon as stated herein, that the witness has
22   requested a review pursuant to Rule 30(e)(2).
23          That I am not a relative or employee or
24   attorney or counsel, nor a relative or employee of
```

Page 171

```
 1   such attorney or counsel for any of the parties
 2   hereto, nor interested directly or indirectly in
 3   the outcome of this action.
 4          IN WITNESS WHEREOF, I do hereunto set my
 5   hand of office at Chicago, Illinois, this 27th day
 6   of December, 2017.
 7
 8                    Susan K. Today
 9
10          SUSAN K. TODAY, C.S.R. No. 84-2212.
11          Notary Public, DuPage County, Illinois.
12          My commission expires April 6, 2020.
13
14
15
16
17
18
19
20
21
22
23
24
```

Page 172

```
 1              DEPOSITION ERRATA SHEET
 2
 3   EcoScribe Assignment No. 27222
 4   Federal Trade v. Credit Bureau
 5   Case No. 17-cv-00194
 6
 7         DECLARATION UNDER PENALTY OF PERJURY
 8
 9          I declare under penalty of perjury that I
10   have read the entire transcript of my Deposition
11   taken in the captioned matter or the same has been
12   read to me, and the same is true and accurate, save
13   and except for changes and/or corrections, if any,
14   as indicated by me on the DEPOSITION ERRATA SHEET
15   hereof, with the understanding that I offer these
16   changes as if still under oath.
17
18                    Signed on the _____ day of
19          _____, 20___.
20          _____
21              DOUGLAS M. McKENNEY
22
23
24
```

Page 173

```
 1            DEPOSITION ERRATA SHEET
 2   Page No._____Line No._____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No._____Line No._____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No._____Line No._____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No._____Line No._____Change to:_____
12   _____
13   Reason for change:_____
14   Page No._____Line No._____Change to:_____
15   _____
16   Reason for change:_____
17   Page No._____Line No._____Change to:_____
18   _____
19   Reason for change:_____
20   Page No._____Line No._____Change to:_____
21   _____
22   Reason for change:_____
23   SIGNATURE:_____DATE:_____
24              DOUGLAS M. McKENNEY
```

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

```
                              Page 174
1              DEPOSITION ERRATA SHEET
2     Page No._____Line No._____Change to:_____
3     _____
4     Reason for change:_____
5     Page No._____Line No._____Change to:_____
6     _____
7     Reason for change:_____
8     Page No._____Line No._____Change to:_____
9     _____
10    Reason for change:_____
11    Page No._____Line No._____Change to:_____
12    _____
13    Reason for change:_____
14    Page No._____Line No._____Change to:_____
15    _____
16    Reason for change:_____
17    Page No._____Line No._____Change to:_____
18    _____
19    Reason for change:_____
20    Page No._____Line No._____Change to:_____
21    _____
22    Reason for change:_____
23    SIGNATURE:_____DATE:_____
24             DOUGLAS M. McKENNEY
```

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: $100,000..25

**Exhibits**

**Exhibit 1** 4:12,13 41:11,12 61:4,14,
18,19,23 62:8,9,15,18,19,24 63:1,4,5,
7,8,20 134:13

**Exhibit 2** 50:11,15,16 51:17 52:19
54:11 62:14,15

**Exhibit 3** 54:18,19,21,22

**Exhibit 4** 55:10,11,14

**Exhibit 5** 57:16,18,19

**Exhibit 6** 59:20 60:2,3 61:11,17 62:6,
20,23 63:17,18 64:12 66:6 67:3,21
69:7,16

**Exhibit 7** 69:21,22 70:5 71:16 72:1
74:8

**Exhibit 8** 75:20,21 77:18 78:14,15

**Exhibit 9** 79:14,18,19 84:24

**Exhibit 10** 85:2,3

**Exhibit 11** 88:19,20,24 89:8

**Exhibit 12** 92:2,3,6

**Exhibit 13** 5:4,5 93:7,8,12

**Exhibit 14** 95:13,14 109:10,11

**Exhibit 15** 96:15,16 101:7

**Exhibit 16** 101:10,12,13,20

**Exhibit 17** 109:21,22 111:18

**Exhibit 18** 112:15,17,18

**Exhibit 19** 113:13,14

**Exhibit 20** 115:19,21,22 116:6

**Exhibit 21** 117:15,16,20

**Exhibit 22** 119:17,18

**Exhibit 23** 122:17,18

**Exhibit 24** 126:17,18

**Exhibit 25** 129:24 130:2,3,18

**Exhibit 26** 137:2,3 155:23

**Exhibit 27** 141:10,11

**Exhibit 28** 143:2,3

**Exhibit 29** 150:19,20

**Exhibit 30** 152:11,12,16

**Exhibit 31** 153:11,12

**Exhibit 32** 158:22,23 160:22 161:6

**$**

**$100,000** 90:14

**$118,882.25** 92:14

**$600,000** 95:6

**$600,000-plus** 94:5

**$636,704.25** 93:22

**-**

**-vs-** 107:6

**1**

**1** 39:10 41:12 56:18,21 61:4,14,18,19,
23 62:8,9,15,18,19,24 63:1,4,5,7,8,20
111:24 134:13 158:3,4

**10** 85:3

**100** 48:10,13 64:3,6,7 66:23 95:8

**10:32** 50:8

**10:41** 50:8

**11** 7:5 41:16 88:20,24 89:8 90:18

**111** 107:21

**11:45** 88:17

**11:52** 88:17

**12** 92:3,6 151:2,4,12

**12/12/2017** 161:5

**12/14/2017** 41:13 50:17 54:23 55:12
57:20 60:4 69:23 75:22 79:20 85:4
88:21 92:4 93:9 95:15 96:17 101:14
109:23 112:19 113:15 115:23 117:17
119:19 122:19 126:19 130:4 137:4
141:12 143:4 150:21 152:13 153:13
158:24

**12:25** 106:17

**12:26** 80:19

**13** 93:8,12 157:21

**14** 71:13 95:14 107:17 109:11 116:7
144:10

**14-day** 62:1 64:12 65:21

**15** 96:16 101:7

**150,000** 95:8

**16** 80:19 101:10,13,20

**17** 109:19,22 111:18

**17-cv-00194** 107:6

**18** 60:11 66:4 112:15,18

**18th** 65:15

**19** 113:11,14

**19,950** 92:16

**1:27** 107:18

**1:30** 106:19

**1st** 39:20 64:13 125:21

**2**

**2** 50:11,16 51:2,17 52:19 54:11 62:14,
15 67:21 151:15 161:14 162:2

**20** 115:19,22 116:2,6

**200** 64:4

**200-and-some** 138:17,18

**2004** 8:20

**2006** 9:7

**2012** 30:23 116:7

**2013** 125:20

**2014** 125:21 149:16 150:7

**2015** 39:18,20 40:2 80:19 148:19
149:3

**2016** 29:6 39:10,18 40:2,14,17 42:12
44:12 118:1 144:10,21 149:3,5,22
150:1

**2017** 60:11 64:13 65:15 66:4 107:17
151:2,4,13,16

**21** 41:16,21,22 42:1 117:16,20

**216** 108:13

**22** 119:14,18

**23** 42:4,21 43:8,9 122:18,21

**230** 6:12 108:3

**24** 126:18,21,22

**25** 129:24 130:3,6,18

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: 25th..ad

**25th** 118:1

**26** 136:23 137:3 155:21,23

**27** 141:11,14

**277790** 123:6

**28** 142:23 143:3

**2800** 107:21

**280015** 123:6

**29** 150:20,23 162:1,3

**29.94** 64:17

**29.95** 68:13

**297** 135:3,21,22,24 136:14 139:5

**2:08** 134:10

**2:22** 134:10

**2:44** 144:2

**2:57** 144:2

---

**3**

**3** 54:19,22 55:6

**30** 152:12,16

**300** 167:17

**3030** 108:3

**31** 153:12

**312-960-5612** 108:5

**32** 158:20,23 159:2 160:22 161:6

**346-800-3500** 108:15

**35** 8:1 95:24

**36** 160:11,20 161:5,16,23

**3:34** 169:6

---

**4**

**4** 55:8,11,14 134:13

**44,000** 120:11 121:3 122:9

**470** 108:13

---

**5**

**5** 34:5 57:16,19

---

**50** 48:9,11,13 104:16

**500** 134:15,21

**51** 162:9,18 166:5,6 167:4

**55** 46:14

---

**6**

**6** 59:20 60:3 61:11,17 62:6,20,23 63:18 64:12 66:6 67:3,21 69:7,16

**600,000** 95:7

**60604** 6:13

**60604-1505** 108:4

**63** 160:24 161:4,13

---

**7**

**7** 69:18,22 70:5 71:13,16 72:1 74:8

**76** 118:11 119:10

**77054** 108:14

---

**8**

**8** 42:1 75:16,21 77:18 78:14,15

**800 720-6627** 68:15

**800-720-6627** 64:21

**81** 157:16,23 158:11,18

**84-2212** 108:24

---

**9**

**9** 79:14,19 84:24

---

**A**

**A+** 152:3,7

**A.A.** 108:8

**a.m.** 50:8 88:17

**able** 35:11 37:10 54:9 60:14 67:12 78:24 122:11 129:14

**about** 7:5 9:8 10:9,23 12:3 13:24 15:10,19 17:14 19:15 25:24 29:17,20 32:3 34:19 37:19 42:21 48:6 49:1 50:6 55:19 63:17 64:12,16 66:22 71:21

**72:6 73:23** 77:2 78:17 79:7 83:19 84:3 85:22,23 86:1,11 90:18 96:20 104:3 109:16 112:11 118:10 121:7,15,19,21, 24 130:15,21,23 131:1,20 132:1,5 146:11 147:3,11,17 155:22 157:7 163:12

**above** 134:1

**accept** 58:21

**access** 47:22 52:4 53:16 64:24 67:5 72:15 143:20

**accessed** 142:5 143:11

**accessing** 22:23

**accomplish** 12:9

**account** 80:11 109:16 132:9 133:21, 24

**accounts** 113:3,4,7 118:11 119:10 130:13 132:17,19 133:17,19,23

**accuracy** 96:2

**accurate** 46:19,23

**accusing** 165:5

**acquiring** 22:21 23:9 24:7

**Acrobat** 12:22 13:2

**acronym** 15:6

**across** 30:15 148:4

**act** 7:22 16:22 56:7 74:23 75:4

**action** 32:18 35:13

**actions** 119:6

**activated** 39:10,20 40:5,7,19 41:4 42:7

**activation** 44:24 45:5,11

**active** 40:19 42:15 43:16 44:15

**activities** 27:24 31:2 46:16 100:10 106:8,12 145:19,22 147:19

**activity** 106:13

**acts** 27:13

**actual** 52:4 87:20 165:11

**actually** 15:15 24:10 30:8 35:9 40:19 42:15 45:12 49:19 53:5 59:13 72:7 90:4 96:3 109:14 117:9 125:1 136:1, 16 137:11 140:24 163:1 164:19 168:3

**ad** 42:7 76:3,8,16,19 79:6 84:8 87:11

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: added..are

**added** 118:24

**additional** 61:2

**address** 6:10,12 14:23 34:22 87:9,20 95:19 119:7 147:16

**addressed** 85:10

**addressing** 131:9

**adhere** 33:16

**Adobe** 12:15,18,20,22 13:2

**ads** 34:21 52:11,14 75:15 76:21 77:1, 18 78:4,8,18 79:9 87:6,16,19 88:4,5 92:23

**advance** 16:22

**advertiser** 111:19

**advertising** 111:20

**advised** 71:4 72:12

**AEO** 98:2,3

**affect** 58:18 157:22

**affects** 101:2

**affiliate** 16:21 47:16,17 95:23 97:1,8, 19 98:24 117:2 118:16 124:14,19,20 149:17

**affiliates** 25:8,16,19 47:19 48:1,7 117:4

**afoot** 81:22

**after** 8:8 45:23 47:21 60:12 64:18 65:15 71:6 84:16 105:8 122:7,8,9 138:22 139:3,9 140:3

**afternoon** 110:11

**again** 21:9 26:14 72:6 110:17 111:8 129:15 139:12 156:11 167:22

**against** 28:7 30:16 100:14 128:6,22 135:1 139:3 157:17,24 158:18

**agencies** 14:8 136:6,7

**agency** 10:14 11:13 34:4

**agents** 166:9

**ago** 126:9

**agree** 26:5 27:1 40:4 61:9 65:9 81:23

**agreements** 105:21

**ahead** 45:22 49:16 50:2 101:1

**air** 78:21

**alert** 73:23

**alerts** 72:13

**allegation** 55:23 134:19

**allegations** 56:6 104:4 128:22

**alleged** 27:19 123:9

**allegedly** 41:19 148:20 149:6,23 150:10

**allow** 49:17

**allowed** 84:4 121:16

**almost** 89:2

**along** 61:3 138:1

**already** 17:20 96:12 121:12 155:4 165:21

**also** 7:11 11:5 12:6,16 13:21 14:7,9 49:7 52:15 53:19 78:9 79:9 107:10 108:20 112:22 125:6 132:13 135:4 140:7 141:3 146:1 151:15 166:22 167:14

**although** 62:7

**always** 12:8 17:2

**ambiguous** 22:9 31:13 33:20 43:18 44:18 46:4 51:7 54:13 62:12,21 66:17 70:7 73:15 90:24 104:5 115:10 128:19

**amend** 101:5

**amount** 25:15 89:14 94:14

**analyst** 24:20 25:15

**analyze** 11:1,6 24:12 25:7,18 26:10, 17

**analyzing** 10:11,22

**Andrew** 80:8,9,15 90:2,12 91:7 92:12, 18,21,22 94:3,11,18,23 95:18,20 97:2, 9 99:2,8,10 109:15 147:11

**Andy** 95:17 109:13,14

**annual** 9:16,24 11:4 16:2,18 36:5

**another** 49:17 88:14 93:5 117:6 163:9 166:19

**answer** 21:16 22:3 23:15,16 25:13 29:15,24 32:14 36:3 37:4 38:2,3,4,11 43:20 44:7 47:5,6,7 53:2,10 54:15 70:9 73:19 74:24 95:10 100:2 115:14 116:22 118:7 121:6,9 124:12 126:7 128:11 129:7,14 136:12 138:12,15 153:22 154:20,23 156:22 161:12

**answered** 74:23 105:19 143:13 145:24 148:11 151:20

**answering** 38:14

**anti-fraud** 116:12

**any** 8:8,22 9:13,22,24 10:6 17:21 18:1,4,17 19:11 26:8 28:24 33:15,16 34:16 35:10 46:22 48:6,24 52:2,5 55:19 60:19 65:20 69:14 72:23 74:22 75:2,8 78:5 87:5,15 92:20 98:1 99:21 100:4,8,10 101:23 102:7,22 105:16 106:6 111:12 113:1,6,7,22 114:7,11, 23,24 115:1,15 116:11,12 132:8,15,16 133:18 145:18 147:2,10 148:4 155:8, 13 163:20 166:3 167:16

**anybody** 48:24

**anyone** 48:19,23 90:8 91:15 131:24

**anything** 10:19 35:4 46:1,8,18 82:15 98:10 100:14 112:11 117:11 130:15 133:6,8 145:21 146:8 165:5

**apologize** 77:23 89:1

**apparently** 57:11 97:23 110:12

**appear** 110:6 111:9 116:16 166:22 167:2

**appeared** 34:21 77:18 79:4 108:10, 18

**appears** 60:15 61:8 62:19 63:12 67:19 111:16,18 117:24 118:9 119:5 123:4 124:14 131:8,9 151:1,24 153:17

**applicants** 86:21

**application** 11:22 57:7

**applications** 12:13 56:5

**applied** 18:4

**applies** 121:9

**applying** 36:8

**approach** 28:11,16,19

**appropriate** 165:8

**April** 144:10,21

**are** 7:18,24 10:3 12:17 13:8,10 14:3, 14,19 15:19 16:17 18:11,14,18,20 19:3,4,11,18,19,22 20:2,11,15 27:11 29:14 31:19 33:16,22 34:12,13 37:5 38:17,18,20 40:8 41:3,19 42:22,24 43:1 45:6 46:16 47:5 49:19 50:21 52:4,9,11 53:14 54:9 56:4 57:11 58:8, 9 59:12 60:14 61:10 66:23 67:1 71:4

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: area..believe

76:15 77:15,17 81:12,16 82:12 84:4 89:21 96:10 110:19 115:9,19 117:4 122:6 123:7 127:23 129:14 135:21 138:11 140:19,20 142:14 145:18 149:17 152:19 160:14 163:6 164:13 166:4,10 167:24

**area** 23:13 29:12,23 47:3 76:4,6 105:10 120:20 121:5

**areas** 16:17

**argumentative** 168:10,12

**arguments** 168:15

**around** 27:3

**ask** 7:7 12:12 19:9 29:20 38:8 43:6 50:12 51:16 54:6 55:2,15 59:21 60:13 65:19 68:9 72:22 75:16 79:15 82:14 85:6 93:12 96:20 101:22 113:21 117:21 119:21 120:10 121:7 122:22 127:2 130:6 131:7 134:12 141:15 143:21 150:17 152:16 163:12,13 165:19,23

**asked** 32:8 35:19 43:11 74:21 91:11 105:19 123:15,20 143:13 145:16,17, 24 148:11 151:20 162:16 165:24

**asking** 25:24 26:2 37:21 38:2 82:12 85:13 121:20 124:5 132:15 155:22 156:3,23 163:17

**assigned** 18:21 19:3,10,12

**assist** 22:22 23:8 24:7 28:5

**assistant** 20:9

**associated** 12:5 95:20

**Association** 113:2,7

**assume** 15:24 28:19 63:14 102:16 127:16

**assumes** 25:11 37:16 39:22 40:20 42:9 45:20 53:19 56:15 61:21 62:11 65:2 77:5 84:12 86:3 88:1 104:22 114:14 128:8 139:24

**assuming** 69:18

**assumptions** 94:9

**attach** 38:22 138:7

**attached** 38:17,18 39:9 61:19 100:24 138:8 155:2,9

**attempt** 87:18 93:1

**attempted** 125:13

**attempts** 84:8

**attend** 8:8 9:23 97:24

**attendance** 7:14

**attention** 58:6 116:5 162:17 169:1

**attorney** 31:21,23 136:6

**Attorney's** 33:23

**attorneys** 20:11,12

**Attorneys'** 98:4

**attributable** 47:19,24

**Austin** 76:4,6

**authentic** 89:17

**authenticate** 120:4 165:20

**authored** 155:14

**automatically** 64:17

**available** 41:4 44:16 53:16 76:5 88:8

**average** 22:7

**aware** 37:5 83:15 93:19 105:7 113:5

**away** 89:4 100:23

**awlprofit@outlook.com.** 80:14

**B**

**B-R-I-C-K** 49:6

**Bachelor's** 8:4

**back** 14:13 17:11 34:24 37:13,23 39:2 50:6 63:20 64:11 84:17,21 86:19 100:22 105:2 123:8 124:2,22 125:21 126:1,5 127:21 129:9 149:16,22 150:6 162:3

**back-end** 49:20 50:4

**background** 15:21 142:18

**backtrack** 17:11

**bank** 10:12 111:6,10 113:3,4,7

**banner** 52:11,14 66:3,8 110:11,24 111:1 142:20

**bar** 8:7 53:8

**Barcelo** 89:22 90:3,6,9,12 91:7,18,22 93:22 94:1,6,15 99:7

**based** 30:12 37:6 47:1 60:15 73:19 78:13 81:11 88:4 96:1 97:12,19 105:15 106:5 124:21 132:10,16,19,24

**136:21 157:21**

**basically** 28:6 80:16 96:24 104:1,12

**basis** 9:24 98:24 110:12

**batch** 98:2

**Bates** 89:12 118:17

**Baton** 87:9

**BBB** 135:11,13,16 136:19,20 137:11 139:9 151:19 153:17 154:9,14,17,22 155:1,8,11 157:20,21

**BBB's** 151:18 152:1 153:24 156:7

**BBB.ORG** 152:23 153:6

**Bbb.org.** 153:8

**became** 42:15 44:15 76:16

**because** 15:16 23:12 28:20 35:19 43:24 56:23 65:14 72:7 89:13 97:19 103:10 121:10 123:22 124:23 155:21 159:17 164:7 165:11 168:5

**become** 12:1 127:7

**been** 6:5 10:5 11:3,13 17:17,22 19:11, 22,23 22:24 23:21 24:18 26:15,21 28:17 29:19 30:15,19,21,22 32:6,17 39:5 50:11 53:4 57:15 59:20 79:14 84:23 87:22 88:23 89:7 91:17 93:11 97:11 98:22 99:1,5 100:24 101:9 102:24 104:7 109:2 112:15 113:11 117:19 119:14 121:17 122:21 136:12 139:7 151:2 152:15 156:18,23 160:11, 18 164:19 165:11,14,21

**before** 28:24 67:19 85:8 88:12 94:17 102:16,19,22,23 112:24 122:7 123:1 146:12 149:22 156:19 157:1

**began** 40:13 104:8 149:2,16

**begin** 68:12

**behalf** 108:10,18

**being** 16:9 28:20 30:10 32:22 89:15 90:19 99:16 110:19 114:8 117:7 145:14,15 167:6

**believe** 6:23 12:17 13:1,7 18:9 24:17 29:6 31:4,18 35:15 39:7 40:14 41:16 45:23 48:9,12,15 49:4,5,7 50:3 61:4 69:19 71:9 80:11,17 91:21,23 92:12, 18 95:18 102:21 109:17 112:24 113:20 117:1 127:21 135:3,12,13 140:3 141:7 145:4 146:20 149:14 160:19 162:22

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: believed..CBC

**believed** 95:23

**below** 61:2 80:18

**benefit** 158:1

**benefitted** 27:18

**best** 116:13 126:7

**better** 14:9 64:9 135:5,7 138:19 156:15,18,24 160:8

**between** 18:19 44:22 56:4,8 81:17 122:6

**beyond** 90:14

**billed** 68:13

**billing** 118:10

**bit** 15:16 17:13 82:4 98:8

**blown** 64:5

**blue** 153:5

**border** 16:24

**born** 8:15

**both** 35:6 121:9

**bottom** 59:16,17 60:20,22 61:5 68:10 134:14

**bought** 17:3

**Brague** 123:4

**breach** 37:6

**break** 50:5 88:11,12,13 134:4,5 143:22

**Brent** 123:4

**Brick** 49:6

**briefly** 109:11

**bring** 14:17 164:10

**broad** 16:10 17:1

**broker** 162:12

**brokers** 166:9

**brother** 92:19

**brought** 19:23 22:14 26:12 100:13

**Brown** 7:15 15:2,4 39:8 46:14 87:23 88:6 98:13 108:21 116:8,16 118:1 120:11 123:4,5,24 124:5,15,19 125:3, 12 159:14 162:10,15 163:10 165:3,21 166:5

**Brown's** 49:3 77:14,16 140:8,24 142:6

**browser** 13:9 63:14 64:3

**browsers** 13:5,14

**built** 13:8

**bullet** 58:16

**Bureau** 15:7,9 36:11 41:17 70:14 107:7 135:5,7 138:19 156:15,18,24 160:8

**Bureaus** 14:9

**business** 6:10,12 7:21 14:9 45:18 46:2,15 70:14,20 74:5,9 90:22 102:23 105:8 106:12 107:11 113:23 135:5,7 136:4 138:2,19 139:20,23 145:19 156:14,15,18,19,24 157:1,7,8,17,24 158:19 159:9,10 160:8,9,17,19 166:11 167:23 168:11,13

**businesses** 83:16 100:5 166:4 167:10,24 168:6

**button** 67:9

### C

**C-A-M-T-A-S-I-A** 12:16

**C.S.R.** 108:23

**CA** 161:1

**calculated** 95:2,7

**call** 16:19,20 64:21 68:14 86:8

**called** 6:5,24 14:1 24:8 45:17 48:3 91:19 109:2 152:20

**calls** 72:3 86:1,6

**came** 30:15 45:14 77:1 147:14 154:22

**Camtasia** 12:16,18

**can** 7:17 9:3 10:22 12:9 13:8,9,23 14:17,21,23 15:11 16:19,20,22 21:16 22:3,12 23:3,15,16,18 24:10 25:13 26:13 32:14,15 34:9,11,14 36:3,20 37:4,12 38:3 40:23 43:21 44:7 45:4 47:7,9 53:2,10,11 54:15 55:15 58:17 61:15 63:22 64:8 67:1,13,14,16 69:18 70:9 71:21 72:6 73:2 74:12,13 76:13 78:16 85:15 89:3,18 96:13 100:2 102:4 103:4 105:1 110:17 111:8,14 115:4,14 116:17,22 118:7,14 120:9 122:22 123:5 125:22,24 126:24 127:16 128:11,21 129:7,8,15 134:4,5,

7 136:2,19 137:5,19 146:3 153:22 154:20 156:22 160:7 161:12 162:8 165:3,15

**can't** 33:4 38:4,11 43:6 55:19 57:2 60:21 63:23 64:9 65:13 75:11 95:10 112:11 119:2 120:4 121:22 127:22 165:19

**CAN-SPAM** 16:22

**cancel** 64:20 68:14

**cancelled** 132:17,18,24 133:17

**cancelling** 133:20

**cannot** 25:15 59:2,3

**capacity** 7:4 30:22 75:1,3 81:10

**capture** 10:13,14 11:15,20 12:14 35:6 37:10 55:17 63:2,21 64:6

**captured** 63:1

**captures** 56:19

**capturing** 11:7

**card** 36:8 118:11 119:11 128:6 130:10

**cards** 117:3 124:17,24

**care** 163:3,4

**career** 9:19 19:13

**carry** 20:1

**case** 7:10 12:13 13:4,14 14:11 15:1, 11 16:13 19:3 22:21 23:7 24:19 25:24 26:9,12,21,22,24 27:5,15 28:2,6,14 29:4,5,19 30:5,8,24 32:7,12,17,24 33:8 34:5,17 35:24 37:2,8 39:5,10 41:15 49:14 51:17 53:21 65:16 72:10 73:17,20 74:4 75:7,15 82:1 83:23 84:9 85:18 91:4 99:24 104:3,7,10,13,21 125:21 127:3,11 132:1 139:4,16 165:10 166:15

**cases** 16:11,14,21,22,23,24 17:2,3,7 18:18,20 19:3,4,10,11,18,20 20:1,19, 21 21:7,10,19,21 22:5 28:16 31:3 33:18 100:13

**casket** 17:5

**caskets** 17:4

**categories** 17:7

**cause** 133:19

**caused** 134:16

**CBC** 7:14 15:2,3,6 23:10,22 35:5

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: Cbc's..comply

45:18 48:22 70:20 73:14 74:6,7,22
75:3,10 76:16 102:1,9 103:1,5,21,23
104:14 105:17 106:7,13 113:8 114:7,
24 115:7 120:3,12 128:7 130:13
132:6,18,20 136:1,9,16 137:12,15
139:3 141:21 144:14,23 145:6 154:2
155:4 159:14 163:21 167:10 168:8

**CBC's** 46:15 75:7 77:11,18 114:10
130:10 132:10 133:9,19,20,23 139:20
154:6

**cease** 31:1

**cease-and-desist** 30:24 31:3

**ceasing** 124:6

**cell** 13:22

**Center** 15:7,9 36:11 41:17 70:15
107:7

**certain** 15:13 16:7 29:22,23 33:18
34:8 41:10 50:14 54:20 55:9 57:17
60:1 69:20 75:19 79:17 85:1 88:18
92:1 93:6,24 95:12 96:14 101:11
109:20 112:16 113:12 115:20 117:14
119:16 122:16 123:24 126:16 130:1
137:1 141:9 143:1 150:18 152:10
153:10 158:21 160:19 165:10

**certainly** 83:9

**certainty** 55:20 60:21

**chain** 20:6

**chance** 96:21 103:22 164:3

**change** 81:17 101:5

**characterize** 81:20

**charge** 123:8 127:21

**chargeback** 128:1,6,14

**chargebacks** 130:21 131:20

**charged** 64:17

**check** 159:16

**Chicago** 6:12 8:18 17:16 18:12,15
20:20 107:22 108:4

**chime** 101:3

**Christopher** 92:16,17,22 93:3

**Chrome** 13:16,21

**circumstances** 165:9

**citation** 152:22

**civil** 137:17,22,23

**claiming** 128:5

**claims** 76:24

**clarify** 22:12 23:18 62:6 63:4 76:13
86:14 136:2

**clause** 91:12

**clear** 46:23

**clearly** 164:1

**client** 134:7

**close** 22:5,11,13 88:11

**Closing** 168:11

**cluttering** 54:3

**co-branding** 25:8,20 49:10,12
101:24 102:8 106:4,7,8,11

**coaching** 42:24

**COCHELL** 6:1,8 19:1,8 21:3,15 22:2,
10 23:14,20 25:12,23 26:5,7 27:8
28:3,10 29:14 30:1 31:14 32:13 33:3,
14,21 36:2,19 37:3,7,13,21 38:2,5
39:12,16 40:3,11 41:1,14 42:13,24
43:4,9,11,13,19 44:21 45:21 46:7,12,
21 47:4,11 48:2 49:15 50:1,5,9,18
51:8 53:1,7,9,22 54:2,4,8,14 55:1,13
56:22 57:21 59:10 60:5 62:2,17 63:10,
16 65:8,17 66:7,9,18 68:7 69:3,4 70:1,
8,18 71:11,19 72:9,19 73:10,18 74:2
76:1 77:6 79:23 81:4 82:2,13,23 83:8
84:1,22 85:5,20 86:9,24 87:2,12,13
88:2,10,14,22 89:6 91:1 92:5 93:10
95:16 96:6,7,18 97:5,23 98:4,6,16,21
100:1 101:15 102:5,14 104:11 105:2,
14,23 106:15 108:12,16 109:6 110:1,
15 111:2,23 112:7,20 113:16 114:16
115:5,13 116:1,23 117:18 118:6,18
119:12,20 120:21 121:8,13,19 122:8,
15,20 123:13,15,19 124:4,11 125:10,
17 126:1,6,20 128:10,20 129:6,9,13,
22 130:5 131:14 132:14 133:2,15
134:3,11 137:9 139:1 140:5 141:13,23
142:3 143:5,16 144:3,18 146:9,14,23
147:13,22 148:2,14 149:4,11,19,20
150:8,16,22 151:22 152:5,14 153:2,
14,21 154:7,19 155:10,20 156:13,21
157:19 158:4,10,16,20 159:1,23 160:1
161:11,18,24 162:4,6,17,19,24 163:3,
5,11,15,18 164:1,5,8,11,16,21 165:1,
4,8,24 166:2 167:1,15 168:1,11,17,23

**colleagues** 20:11,15

**college** 8:21

**color** 66:2,5,7,12,13,14 70:23

**column** 166:19,23,24

**columns** 24:24

**combining** 79:5

**come** 8:18 14:13 17:2 32:2 51:1 65:5
100:22 148:4 165:1,2

**comes** 11:21

**coming** 117:7

**command** 20:6

**comments** 30:18

**Commission** 6:16 8:20 107:4 108:2

**communicating** 84:5

**companies** 7:20 21:11,22 26:23
27:11 36:11 49:9 131:1 162:12
163:20,21 166:9 167:11

**company** 14:21 31:1 49:18,20 50:4
78:1 91:24 107:9 111:7,11 128:22
129:3 146:12,21 151:18

**company's** 100:12

**comparison** 61:12

**compensated** 98:23 99:17 124:20

**compensation** 27:23

**complaining** 77:2 85:24

**complaint** 10:16 13:23 14:2,6 28:17,
20 30:6 39:9 40:7,8 41:3,8,9,15 42:22
43:15 55:23 56:1,4 61:5,14,19 62:14,
16 63:6,8 104:4 128:16 134:13 136:7,
10 138:2

**complaints** 14:2,7,9,19 15:12 30:6,
14,15,17,20 84:10,15 86:1,11 134:15,
22 135:1,3,4,6,17,20,21,22,24 136:4,
5,9,14,15,20 137:10,12,21 138:1,5,7,
17,18,22 139:2,5,7,9,15 150:6 154:17,
22 155:2,3,8,12,14 157:7,16,23
158:12,18 160:3,9,10,18,24 161:4,13

**complete** 69:10 122:4

**completed** 8:4 10:10 67:24

**completing** 68:8

**compliance** 115:1,8 120:2,3,7 121:3
125:3

**comply** 114:24 115:16 125:13

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: compound..cross

**compound** 23:12 103:10

**computer** 13:11 24:10 140:9 143:12, 20

**computers** 22:23

**concern** 89:17

**concerned** 72:11 131:1

**concerns** 47:2

**conclude** 70:19

**concluded** 20:2

**conclusion** 22:14 70:21 78:6

**conclusions** 28:24

**condensed** 168:24

**conduct** 10:17,18 15:22 16:2,7,19 17:10 34:9,14 100:8 122:1 129:2 133:9

**conducted** 45:18 52:8 132:6

**conducting** 34:6 132:9

**conference** 16:9

**confined** 146:15

**confirm** 123:16

**confused** 42:2

**conjecture** 72:4

**connect** 142:12,19

**connection** 127:11 147:15

**consent** 22:15 91:12

**considering** 105:10

**consistent** 68:21

**consult** 23:2

**consumer** 14:1,10 30:7,13 59:8 63:22 66:21 67:7,12 71:9,15,22 72:7, 8,11 73:22 76:18 83:1 84:16 86:8 87:7 128:13,15 134:15,16,22,24 135:3 136:3,8 138:1 139:2 161:13

**consumers** 14:4 27:24 30:12,19 41:5 42:16 44:16 53:14 54:7 59:12 64:24 70:12 73:24 74:7 76:12,15 83:17 84:5 85:23 98:10 99:18 100:5 124:24 128:21,24 145:23 149:6,23 150:10 155:13

**Consumerupdates** 135:18

**contact** 84:8 87:4,21 88:3

**contacted** 34:22

**contacting** 128:1

**contain** 37:9 52:14 56:13,19 60:19 87:19

**contained** 24:22,23 47:17,20 48:1 53:15 65:7 79:2 141:2 149:14 153:7

**contains** 61:5

**contempt** 35:13

**content** 64:5

**contention** 46:14,16

**continue** 43:12 68:13,19 88:14 121:7

**contractor** 99:2

**contractors** 98:23

**control** 57:24 80:12

**conversations** 34:15

**conversions** 97:20

**cookies** 13:10

**cooperation** 91:12

**copied** 78:4

**copies** 89:2,3 96:19 116:3 137:24

**copy** 84:18 86:17 116:4 118:2 165:11 169:2

**copyright** 151:15

**corner** 151:12

**Corp** 141:19

**corporate** 91:24

**correct** 7:1,2,15,16 14:22 18:12,13 25:9 27:20 28:21,22 29:1,2 33:6 36:18 42:17,19 48:4,18 52:6 53:17 56:5 59:4,14 64:18,21,22 65:1 66:10,19,24 67:13,22,23 68:2,17,22 69:8,9,11 72:20 74:10,11,14,15 75:9 76:21 77:3, 11 78:1,2 81:23 83:1,13,14,20 84:2,5, 6,11 85:11 86:2 88:8,9 92:14,15 94:7 97:2 98:24 99:8,9,12 100:17,18 102:20 103:7,21 106:2,3,13 109:9,16 111:4,5,15 112:13 114:8,17 118:3,8 120:7,8 123:10 128:22,23 129:3 131:11,16 132:6 135:19 136:17 137:13 139:23 140:9 142:22 144:24 145:1 147:1 148:6,7 150:2,12 153:18 157:8 158:17 159:6 161:7 166:11 168:8

**correctly** 24:15 25:4 37:9

**correspondence** 74:22 75:2 124:22

**cost** 56:20

**could** 25:2 29:17 35:17 52:14 59:17 60:8 62:6 64:4 72:13 98:22 99:1,15,18 122:14 123:20 147:11 159:16 163:8 168:15 169:2

**counsel** 165:13

**country** 84:3

**couple** 36:21 70:12 140:18 143:21

**coupons** 72:16

**course** 7:13 10:23,24 11:5 45:7 83:15 103:1 127:6

**court** 32:8,19 38:1 65:15 107:1 167:5 168:16,21 169:4

**cover** 10:11 16:6,19,21,22

**covered** 10:11 53:4 109:11 139:18

**Craigslist** 30:11,15 34:20,23 76:3,19, 21 77:19,20 78:8,18 79:10 84:8 87:5, 16 88:4 92:23 99:16,17 147:19 148:3

**create** 67:20

**credit** 15:7,9 26:22 27:3 35:9,15,21 36:4,6,8,11,12,13 41:17 50:23,24 51:1,13,21 58:17,19 59:3 66:2,3,12 70:14 72:13,14,15 73:1,4 74:1,22 75:4 82:17 84:18,19 86:18 107:7 117:3 124:17,23 128:6 130:10 144:5 148:9, 17

**creditor** 148:9

**Creditreport.com** 36:5

**Creditscores123.com** 35:12

**Creditupdates** 30:16 35:18 37:11 38:23 60:9,16 70:24 135:2 159:9

**Creditupdates'** 60:9

**Creditupdates.com** 41:19 42:19 43:14 45:9 65:1 70:11 77:15 107:13 157:9,23 167:22

**Creditupdates.com.** 44:3,5 68:12 166:21,22

**criminal** 17:23

**CRM** 23:24 24:8 103:6,12 154:2,6

**cross** 16:23 122:1,5

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: cross-examine..disagree

**cross-examine** 121:16

**CS** 141:19

**CSID** 141:17,18 142:2

**culpable** 27:12

**currently** 18:11

**custody** 103:1,8,17

**customer** 24:2,12,22 118:10 119:6 160:24

**customer's** 118:11

**customers** 57:6,13 58:3 59:1 124:15, 16,20,21 127:21 128:4 148:16,20

**cut** 56:24 166:19

**CVC** 103:11

**D**

**D.C.** 9:17 23:8 25:18 103:18

**daily** 72:12 110:11

**damages** 32:20

**Danny** 47:17 80:20 81:1 82:6 87:11 146:11,20,21

**danny@revable.com.** 80:20

**dark** 66:12

**data** 22:21,23 23:9 24:7,24 25:1 26:10 35:15 89:14 103:20

**database** 10:17 13:23 14:2 23:6,10, 18,23 24:2,13,14,22 26:11,17 30:14 47:15,17,20,22,23 48:1,4,8,21 49:2,5, 7 103:2,5,6,11,12,15,17 120:11,15,18, 23 122:9,13,14 136:14 141:20 149:14, 18 154:6

**databases** 122:3

**date** 44:24 45:5,11 55:18 66:15 69:6 106:6,19 125:20 151:8,10,14 157:13 160:4 161:6,19

**dated** 116:7 118:1

**dates** 62:8,20

**David** 118:2

**day** 71:5,10,16,24 121:18

**days** 9:21 10:24 71:13

**DE** 58:1 79:24

**DE3** 57:24

**DE6** 79:24

**deal** 53:14 89:18

**Dealing** 118:16

**Dearborn** 6:12 108:3

**December** 39:10,20 40:2 107:17 151:2,4,12

**deceptive** 7:21 16:12 27:19 32:9,19 52:3,14 129:2 145:19 147:4

**declaration** 37:17,19,24 38:18,21 79:1 121:14 134:24 135:8,10,13,14 138:9 139:5,12,14 149:15 155:2,6,9 162:9,15 167:5

**declarations** 7:9,10 29:19 37:9 121:22,23

**decree** 22:15

**defendants** 107:16 108:18 115:16

**defendants'** 41:17 134:14

**degree** 8:4

**demand** 137:18,22,24

**departments** 136:8

**dependent** 63:23 64:1,2

**depending** 71:12

**depends** 63:22

**DEPONENT** 169:7

**deposition** 7:8,14 18:8 41:11 50:15 54:21 55:10 57:18 60:2 61:18 62:6,8, 15,18,20 63:5,17 67:3,21 69:7,16,21 70:5 71:16 74:8 75:20 78:15 79:14,18 85:2 88:19,24 89:8 92:2 93:7,12 95:13 96:15 98:14 101:12 106:18 107:20 109:21 112:17 113:13 115:21 117:15 119:17 122:17 126:17 130:2 137:2 141:10 143:2 150:19 152:11 153:11 158:22 168:15

**depositions** 17:12 38:7

**describe** 15:11

**description** 78:9 79:11 142:17

**descriptions** 78:10 79:3,5

**designed** 164:2

**desire** 129:1

**desk** 34:3

**desktop** 44:1,9,10 45:2 56:5,9 57:4

**determinations** 125:8

**determine** 40:18 41:2 42:6 43:16 44:15,24 45:4,15 46:2,19,22 48:21 51:18 52:5 70:13 100:9 114:23 115:7 122:2 132:18 133:19 150:9

**determined** 109:14

**developed** 27:2

**developer** 13:6

**devices** 13:20

**devoted** 16:1

**Dexter** 95:17 109:13,14

**did** 7:7 8:3,8,10,11,18,22 9:6,13 11:5, 10,11 12:13 13:4 14:12 15:1,9,10 21:10 25:17,24 29:4 30:3,7,8 32:20 34:16,19 35:9 38:21 41:2 42:6 43:10, 15 44:13,14 45:16 46:1,8 48:19,23 49:6 55:17,20 56:13,19 63:1,13 70:13, 19,21 73:4,12 74:21,23 75:2 77:22 78:7 84:20 86:10,18 87:3,14,18,19 90:5,8,19 91:8 93:1 100:8,14 101:22 102:6,21 104:10 113:1,6,22 114:23 115:6 120:14,17,22 121:2,10 127:7 130:14 133:3,5,8,17,22,24 135:6 138:7 139:17 140:11,15 144:4,9 145:2,4,8,10,20 147:3,23 156:11 157:4,9,10 159:8,10 166:6

**didn't** 43:9 57:1 72:24 84:10 85:24 86:11 94:24 115:15 124:24 125:1 137:16 148:4,6,7 151:4 155:24 156:11 157:13 160:5 164:10

**Diego** 118:2

**difference** 44:22,23

**different** 9:24 11:2,3,14 12:22 13:11 14:17,18 19:9 25:19 43:5 53:12 61:24 66:14 77:11 82:14 140:19 165:16

**differentiate** 145:14

**differently** 57:3

**direct** 29:24

**directed** 29:22

**directing** 29:14 47:5 116:5

**directly** 14:3,5 93:23 131:20

**director** 20:10 31:24

**disagree** 25:23 26:6 40:4

**disclosure** 52:20 54:10 56:14 68:22

**discount** 72:16

**Discover** 51:21

**discovered** 28:24

**discovery** 24:18 25:6 89:11 92:8
93:17 101:18 140:15

**discuss** 79:2

**discussed** 17:15 49:4,7

**discussing** 62:16

**discussion** 137:7

**discussions** 18:23 29:21

**disgorgement** 21:11,22 32:20

**dismissal** 22:15

**Disputesuite** 114:2,9

**distinctions** 56:3,4,8,12

**distinctive** 66:14

**distinguishing** 122:6

**DISTRICT** 107:1,2

**DIVISION** 107:3

**DN.NET** 79:2

**Docket** 162:9

**document** 38:13 41:10 50:13,14,20
51:2,17 52:18 54:20 55:3,9,16 57:17,
22 58:7 59:2,22 60:1 62:5 67:4 69:15,
20 70:2 71:3 75:17,18,19 79:16,17
82:3,8 85:1,7 88:18 89:9 92:1,7 93:5,
6,13,15,18 95:12 96:14 101:11,16,19
109:20 110:2 112:11,16,21 113:12,19
115:20 117:14,21 118:1 119:16,22,23
120:5,6,9 122:16,23 123:1,13,17,20
126:10,12,16,22 127:12 129:23 130:1,
7,8,18 131:8 137:1 141:9,16 143:1,18
150:18,24 152:6,7,9,10,17,18 153:10,
15 154:5,11 155:23 156:1,2,4,12
158:21 159:3,13 161:19 162:22 163:9
164:17 165:15,17 167:3,20

**documents** 10:12 34:3 70:4 88:12
89:12,14 90:16 97:13 98:2,11 101:23
102:6,22 103:2,6,22 104:9 105:16,22
106:5 110:5 113:18 114:23 115:7,15,
19 121:15 124:2 134:5 136:19 137:17
138:6 154:12,13

**dollars** 94:21,23 134:16

**domain** 45:9,10,12 166:20,23

**domains** 166:17

**Douglas** 6:4,11 107:20 109:1

**down** 58:14 168:11

**draft** 59:18

**draw** 28:24

**Drive** 107:22

**driven** 117:7

**driving** 117:2

**drove** 124:14

**duly** 6:2,5 109:3

**duration** 11:13 160:19

**during** 10:5 20:12,13 45:7 70:5 81:8
102:12 127:6

**duties** 7:18,19 19:6

---

## E

**e-mail** 34:22 35:3,8 58:4 59:14,15
65:6,7 67:8 72:13,21 73:23 80:11
81:13,21 83:10,16 84:4 86:12,16,22
92:11 95:19 99:19 110:11 116:10
120:11 123:3 125:20 131:18 142:11,
18 153:7

**e-mails** 57:11 70:11 80:7 81:7,18
84:11 85:9 86:6 120:11 121:3 122:9

**E-TRAN** 168:23 169:5

**earlier** 125:11 139:18 145:17 159:5

**early** 29:7

**earmarked** 19:4

**earth** 163:8

**easier** 12:8 67:14

**easily** 67:15

**East** 107:21

**EASTERN** 107:3

**ECF** 165:7

**education** 8:9

**educational** 8:3 15:21

**effect** 34:7 125:14

**efficient** 12:1

**effort** 124:5 150:9

**efforts** 114:24 121:15,24

**efreescore** 30:16 35:18 37:11 38:23
42:4 61:16 135:2,18 159:9 161:1

**efreescore.com** 41:18 42:5 44:2
45:9 55:18 70:11 77:15 107:12 157:10
166:23 167:23

**efreescore/creditupdates** 40:16

**eight** 18:19 19:10 24:17

**either** 10:14 11:3 14:3 23:4 25:19
27:17 36:7 75:3 80:12 93:23 99:15
106:11 117:3 118:19

**elements** 79:5

**eliminate** 134:5

**eliminating** 114:20

**else** 10:19 33:9 35:4 91:15 117:11
131:24 145:21 146:8

**elsewhere** 22:22

**employed** 10:5

**employment** 6:14

**end** 24:16 40:17 42:12 49:18

**ends** 64:13

**enforcement** 10:7 16:20 17:21,23
29:12

**enforces** 7:23 27:13

**enforcing** 125:3

**engaged** 100:9 145:21,22

**engaging** 7:20

**enjoin** 32:8,19

**enlarge** 67:12,14,17

**enough** 55:22 59:19 69:3,14 71:23
75:14 86:10 93:4 112:14 125:2
126:15,24 139:8 142:23 143:16 147:3
155:11 160:6 167:8

**entered** 65:23 98:14

**Enterprise** 91:19,23 92:13

**enterprises** 91:22 93:23 94:2,6,15
99:6,21 100:6

**entire** 11:12 164:4

**entirety** 16:5

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: entitled..flipping

**entitled** 122:4

**equally** 87:22

**Eric** 94:1 99:7

**Erin** 154:8,14 155:12

**essentially** 24:13 31:5

**established** 113:22

**estate** 78:10 79:11 162:12 166:8,9

**et al** 107:15

**even** 164:3

**event** 26:8

**ever** 26:9,15,21 30:21,22 32:6,17 33:24 35:20 41:2 48:19 54:9,16 59:15 74:21 75:2 87:4 90:6 91:8,11 93:1 101:19,23 111:12 112:21 113:18 114:1 126:21 127:2,3 142:11 144:5 145:2,8 155:23 156:1,3 159:2 166:6

**every** 68:13 128:12

**everything** 16:15

**evidence** 25:11 26:4 37:17 39:23 40:21 42:9 45:20 53:19 56:16 61:21 62:11 65:3 77:5 84:13 86:4 88:1 104:23 114:15 125:12 128:9 140:1

**EVO** 130:9

**evolving** 11:18

**exact** 94:8,10

**exactly** 94:5 99:5,14 126:5 135:16

**examination** 6:7 109:5 122:2

**examined** 6:6 109:3

**example** 78:7 84:9

**examples** 74:13

**Excel** 25:1

**exhibit** 41:11 50:11,15 51:17 52:19 54:11,18,21 55:10,14 57:16,18 59:20 60:2 61:4,11,14,17,18,19,23 62:6,8, 14,15,18,19,20,23,24 63:1,4,5,7,8,17, 20 64:12 66:6 67:3,21 69:7,16,21 70:5 71:16 72:1 74:8 75:20 77:18 78:14,15 79:14,18 84:24 85:2 88:19,24 89:8 91:18 92:2,6 93:7,12 95:13 96:11,15 100:21 101:7,10,12,20 109:10,19,21 111:18 112:15,17 113:13 115:19,21 116:6 117:15,20 119:17 122:17 126:17 129:24 130:2,18 134:13 137:2 141:10 143:2 150:19 152:11,16

153:11 155:23 158:22 160:22 161:6 162:11,18 166:5,6

**exhibits** 114:21 162:10,11 169:3

**exist** 148:5

**existed** 83:12

**existence** 101:24

**expect** 54:7 59:9

**expecting** 52:20

**expedite** 134:6

**Experian** 36:11 141:3

**experience** 14:15 17:14 142:20 160:8

**expert** 69:2

**expertise** 26:17

**Explorer** 13:15,17

**expressing** 116:17

**eyes** 98:4

---

**F**

**F12** 13:7

**face** 76:7 81:21 82:5 131:9

**fact** 62:6 83:7 144:9

**factors** 72:14 157:21,22 158:12,15

**facts** 25:11 28:6,14,23 30:3 37:16 39:22 40:21 42:9 45:20 53:19 56:15 61:21 62:11 65:2 72:23,24 73:11 77:5 78:5 84:12 86:3 88:1 92:20 104:22 105:16 114:14 122:11 125:12 128:8 139:24 167:16

**fair** 12:2 16:4 17:8 20:16,22 26:1 27:9 28:12 36:23 42:16 48:11 52:21 55:22 59:19 61:9 69:3,14 71:20,23 74:22 75:4,14 78:15 82:8 86:10 93:4,17 94:13 104:3,19 110:21 111:20 112:14 116:18 119:7 122:4 125:2 126:15,24 139:8 142:23 143:16 147:3 155:11 160:6 162:20 167:8

**fairly** 27:2 37:5

**fake** 76:8 79:7 92:23

**familiar** 14:14 33:22 46:16 49:8 89:21 127:7 145:18 152:19

**fan** 8:13

**February** 64:13 116:7

**federal** 6:15 8:19 32:18,19 107:4 108:2

**fee** 16:22

**feed** 14:9

**feel** 104:7,8

**fifth** 160:23

**figure** 30:2 93:1 136:20 168:7

**file** 24:21 55:19 164:14,17

**filed** 29:19 30:6,16,19 32:18 37:24 39:5 60:12 134:23 135:1 136:9 139:3 146:12 148:22 149:8,15 157:23 158:18 160:11,18 163:9 164:19 165:6, 11,12 167:3,4

**files** 24:11

**filing** 45:24 47:21 65:16 102:17,19,23 105:8,11,13 128:13 138:22 139:3,6,9, 13,15 140:3 147:5,12 150:1,12 155:15 166:5 168:4

**filings** 165:10

**filling** 67:13

**financial** 10:11,22 11:2,6 27:23 36:7

**find** 17:13 28:6,14 32:16 58:17 69:18 78:8,24 121:15,24 123:6 147:11

**fine** 95:5,10 165:19

**fingers** 67:17

**finished** 86:24

**Firefox** 13:16,18

**firm** 26:10,16

**first** 6:5 26:24 30:8 40:15 42:11 44:11 45:16 64:23 65:5,10 98:8 116:5 127:10 139:19,22 161:6

**firsthand** 40:10 70:16 72:17 73:6 74:15 81:3 83:3 112:2 116:20 118:5 123:12 124:9 125:6 129:5 131:13 132:13 133:12 144:17 153:1,20 155:16 156:9 158:9 161:8 163:23 166:13 167:13

**fit** 15:16

**five** 19:15 20:19 21:9,20 22:6,19 30:23 31:17 32:7,17 50:6 126:9

**flipping** 114:19

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: focused..her

**focused** 104:20 105:10

**focusing** 16:17

**folks** 23:8

**follow** 34:5

**follow-up** 12:4

**followed** 86:16

**following** 58:10

**follows** 6:6 109:4

**font** 65:19,20,23

**forever** 164:7

**form** 20:23 22:8 23:11 25:10 31:12 33:10,19 36:15 40:9,20 42:8,20 43:17 44:17 45:19 46:3 51:6 52:22 53:18,23 54:12 59:5 61:20 62:10,21 66:16 67:13,21 68:16 70:7 71:7 72:3 73:14 77:4 81:2 104:5 128:8,18 132:12 138:24

**formal** 9:13

**format** 17:12 23:9 24:7 62:7 80:24 118:14 141:6

**formerly** 107:9

**Forward** 80:3

**found** 38:22 88:3,5,6

**foundation** 68:3 86:23 87:24 90:23 102:2 110:14,22 112:1 115:2 116:19 118:4 123:11 124:8 125:5 129:4 131:12 133:11 144:16 151:21 152:4, 24 153:19 156:8 158:8 161:9 163:22 164:2 166:12 167:12

**four** 9:4 18:19 19:10 51:19 160:22

**fourth** 58:13

**Fragalia** 118:17,22

**fraud** 16:8,23,24 82:8 116:13,17 117:2 118:10,16 119:6,7 120:17,18,22 121:1 123:10 124:6,19 127:4,8,11,13, 15,18,19

**fraud-related** 117:5

**fraudulent** 81:22

**Frazier** 80:4,6,9,18

**fraziertrug@gmail.com.** 80:5

**free** 36:5 50:24 51:12 58:21 59:3 66:1, 3,11 130:16,23 131:2,10,16,20 132:5, 10,19 133:1,4,9,10

**Freecreditnation** 152:1 157:11

**FREECREDITNATION.COM** 107:14

**friendly** 127:4,8,11,13,15,18,19

**front** 37:20 49:18 164:16

**FTC** 7:1,22 9:15 10:6 11:13 13:23 14:3 17:17,22 18:11,14 19:14,19 22:24 26:3,9,12,16 27:13 28:5 29:21 30:22,24 32:7,18 40:6 41:3,15 50:20 89:13 90:8 92:8 93:17 100:10 101:17 103:3,9 104:2 110:5 112:23 113:8,18 114:24 115:8,16 117:24 125:4,13 136:3,11 141:17,21 154:2 159:14

**FTC's** 10:16 14:5 39:9 41:8 42:22 139:3

**FTC-ISSUED** 142:1

**full** 6:9 53:14,16 54:10 122:3

**functions** 12:23

**funds** 99:8,9

**funeral** 17:3,4

**further** 8:9 30:18 109:4 169:7

## G

**Galaxy** 13:22

**game** 26:1

**gave** 101:7 138:6,17 139:11

**general** 10:18 16:23 17:7

**General's** 136:6

**generally** 49:9 76:23 131:5 132:7,8

**generated** 106:7 134:15 167:10,17

**generating** 118:11

**generic** 99:15

**George** 89:21 90:2 91:21 94:1 99:6

**get alerts** 36:13

**give** 14:18 45:11 53:7 55:24 73:18

**given** 36:6 63:15 105:7 124:22

**Gmail** 109:15

**goal** 12:8

**goals** 27:10 28:4

**good** 71:2 106:15

**Google** 13:16,21 51:12,14,18 52:3,8, 16 54:11 153:6

**govern** 34:8

**government** 14:8 136:5

**graduated** 8:21

**guess** 22:12 26:5 30:2 61:13 63:21 85:13,17 88:11 113:2,8 134:13 153:6 167:3

**guilty** 28:20

**Gutierrez** 91:19,22 92:13 93:23 94:2, 6,15 99:6

**guy** 85:10 89:21 108:6

**guys** 116:11

**gward@ftc.gov** 108:7

## H

**half** 9:8 60:18,20,22 61:6 62:4 88:14

**half-day** 10:24

**hampers** 98:7

**hand** 101:9

**handle** 89:3

**happy** 74:19 96:12

**hard** 105:9

**hardly** 121:17

**he** 25:24 38:3,4 49:4 69:1 73:19 76:11 77:10 78:20 80:11 89:24 90:1,3,5,19 95:23 99:13 100:6 116:17 121:7,10, 13,14,21 122:8,9 123:13,20 141:3 145:21 163:8 164:3,8,12

**he's** 19:6 53:3 92:18 97:24 117:1,4,8 121:12,22,23 123:13,22 125:7 162:18

**head** 34:12 95:4

**header** 118:16 153:24

**heard** 33:24 39:3 114:1,5 127:3,4,10 139:19

**hearing** 7:12 49:4 53:5 74:17,18 95:22 139:17,19 140:7 163:10

**held** 16:9

**help** 136:2

**her** 72:13,14 119:11 139:13,14

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: here..investigation

**here** 20:2,19,20 33:4 38:6 58:18
63:12,15 68:11 73:11,19 74:4 81:15
94:4,12 95:3 97:10 98:2 99:4 101:22
104:12 106:10 110:18 114:10 120:1
121:18 123:5,19 125:7 127:14 128:3
132:4 135:15 136:13 138:4 143:9
149:13 152:22 158:5 160:13 163:2
165:22 168:4

**here's** 116:3 122:12 159:2

**herein** 6:5 109:2

**hey** 34:4

**high** 21:6,18,21

**him** 25:24 26:2 29:24 37:18,20,23
38:2 47:5,19 54:6 73:16,18 80:22
94:11 97:1 100:14,18,19 121:6,7,16,
21 123:16,20 124:4,5 143:21 163:1,13
164:5,11 165:20

**hired** 8:19

**his** 19:6 21:13,24 27:4 28:1 29:18
32:11,23 35:23 37:17,19,24 49:13,23
52:23 53:20 69:1 71:18 73:16,23
76:12 78:1 81:24 82:18 83:22 91:12,
23 97:23 99:23 100:12 115:11 117:3,7
121:22,23,24 124:9,16 125:7 140:11
141:2,3 142:5 146:1,12,21 147:7,15,
16,17,19 149:9 150:14 155:5 161:9
162:15,17 163:23 166:13,14 167:5,13
168:9

**history** 19:13 100:5 115:7 120:6,7
141:3

**hit** 51:20 52:4

**hits** 14:14 51:2 52:19

**hold** 18:1

**holds** 14:2

**home** 17:3

**honestly** 19:16 43:2 121:4 123:18

**hour** 11:23 12:3,6 16:1 88:14

**hours** 16:1

**house** 76:4 87:8

**Housingwire** 110:7,8 111:5,7,9,11,
13,18

**Houston** 108:14

**hundred** 94:18,21,23

**Huskers** 8:13

**HW** 110:10

**I**

**ID** 47:17 95:24

**idea** 106:6

**identical** 61:8,15,17 144:13

**identification** 41:12 50:12,16 54:19,
22 55:11,14 57:19 59:21 60:3 69:22
75:16,21 79:15,19 84:24 85:3 88:20
92:3 93:8 95:14 96:16 101:10,13
109:22 112:18 113:11,14 115:22
117:16,20 119:15,18 122:18 126:18
130:3 137:3 141:11,15 143:3 150:20,
23 152:12,16 153:12 158:23

**identified** 24:23 101:23 162:14 166:4

**identify** 27:10 55:15 123:20

**Identity** 141:19

**II** 6:21

**III** 6:22

**illegal** 82:15 83:19

**Illinois** 6:13 107:2,22 108:4

**illustrating** 50:20

**immediately** 71:4

**impartial** 28:13

**important** 81:16 98:17 104:20

**imposed** 114:8

**imposition** 114:12

**impossible** 87:21,23 88:3,6,7

**imprecise** 103:7

**inaccurate** 46:19,23

**inartful** 96:9

**include** 7:19 10:12 157:23

**including** 41:18

**increase** 67:16

**incredibly** 98:17

**indicate** 81:22 151:6 160:2

**indicated** 123:5 139:19 151:8

**indicates** 160:3

**indicating** 61:16 63:12 71:1 158:5

**indication** 165:7

**individual** 31:1,19

**individuals** 21:12,23 27:11 28:7
133:18

**industry** 27:2 91:3

**information** 13:10 25:5 44:8 47:23
48:6,24 52:3,6 55:19 68:10 69:6
78:14,19,23 88:7 122:1,3 146:11,16,
21 147:10,11,14,17

**initial** 86:14,15

**initially** 30:3

**injunction** 33:9 53:5 74:18 95:22
139:21 140:7

**injured** 27:24

**inquire** 29:17

**inquiries** 86:12

**insertion** 112:6,9

**instance** 124:23 125:3 128:12

**instruct** 121:6

**integration** 116:11

**interest** 75:6 116:17

**interested** 26:3 36:22 67:5

**internal** 18:23 29:21

**Internet** 13:5,14,15,17 14:15 16:13,
16,21 41:4 42:7,15 44:16 49:10 51:3,
10

**interplay** 85:22

**interpret** 161:15

**interrupt** 163:16

**interruption** 97:22

**introduced** 11:16

**invented** 78:21

**investigate** 28:5 30:4,5,9 51:17

**investigated** 20:20 21:20 76:24

**investigating** 7:19 18:18 26:21 52:1
148:19

**investigation** 10:7 16:3,6,7,20 17:10
20:13 28:12 29:4,10 34:7 40:14 45:7
60:15 70:6 78:13 81:8 85:18 87:4
100:8 102:7,12 104:8 105:11,12 122:7
127:7 146:13 148:21 149:2,7,24

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: investigations..legal

150:11

**investigations** 10:18 15:22 19:20 34:9 52:7

**investigative** 15:20 33:17 75:3 82:16 137:18,22,23

**investigator** 6:15,18,20,21 7:1,17 9:5 11:4 18:2,5 19:6,19 20:5 27:10 28:5 30:22 32:6 70:19 71:15 73:20 74:4 75:1 81:11 104:13,21 122:10

**investigator-in-training** 9:1

**investigators** 9:16 10:1,3 18:14

**invite** 32:2

**invited** 162:17

**inviting** 58:6

**invoice** 91:5,21 99:13 111:15,16,17 112:5

**invoices** 95:7

**invoicing** 91:7

**involve** 155:3

**involved** 26:21 30:23 76:15 82:8 85:17 99:21

**involves** 22:21

**involving** 16:11,21 26:22 30:14 34:10 37:11 98:10

**iphone** 13:20

**issue** 13:14 26:11 36:1 38:14 98:9,12 101:4 104:20 128:1 131:10

**issues** 34:4 53:4,6

─────────────────

**J**

**January** 40:2 60:11 65:15 66:4 125:21 149:16 150:6

**job** 9:14 28:12

**jobs** 12:8

**judge** 53:5 125:8

**junior** 6:21

─────────────────

**K**

**K-A-N-E** 49:6

**Kane** 49:6

**keep** 34:3

**kept** 47:16

**key** 52:10 120:14

**keyboard** 13:8

**keyword** 121:21

**kind** 26:20 98:7 141:5

**kinds** 16:15 140:19

**know** 9:18,19 12:22 15:8,14 16:13 19:16 21:2,4,5,17 22:4 23:5 24:24 26:15 27:7,12 29:8 31:6,7 33:2,13 34:4,5,11,12,13 40:12,13 43:4 45:3,4, 14 46:6 48:16 54:2,17 55:5 56:24 57:5,8 58:1,3 59:2,8,11,15 61:13 64:10 65:22 69:12,13 71:4,10,14,21, 24 72:23 73:9,24 74:5,7,9 75:12 76:10,14,15,17,18 78:4,13,18,21 80:1, 2,6,22 81:5,6 82:24 83:1,6,10,11 84:18 86:17 89:11,12,24 90:1,2,4,5, 10,11,13,14 91:2,6,15,16,18 92:10,17, 24 93:21 94:5,8,12,17,22,24 95:3,17, 19 98:5 99:5,6,11,14,20 100:3,4,7 104:9,13,16,18 105:9,24 106:9,11,14 109:7 110:7,20 111:3,12 112:5 113:9 114:1,4,6,11 119:1,24 120:1,5,6 121:15,20 123:24 127:15,17 128:12, 15 129:21 130:9,11,12,15 131:24 132:5,8,23 133:3,5,14 136:5,13,15 137:10,12,14,20 138:5,14,16,17,20,21 139:2,6,8 141:24 142:16,20,22 143:10,15 144:8,12,22,24 145:5,7,11, 13,14 147:17,18 148:8,13,15,18,20 149:5,12,22 151:23 155:3,13,19 157:22 159:22 160:7,14,16,23 162:4 164:18,21 165:16 166:3 167:9 168:2,3

**knowing** 114:18 168:12

**knowledge** 26:10,18 40:10 48:20 59:6 70:17 72:18 73:7 74:16 81:3 83:4 90:9 112:2 116:20 118:5 123:12 124:9 125:6 129:5 131:13 132:13,16 133:12 144:17 153:1,20 155:17 156:9 158:9 160:5 161:9 163:23 166:13 167:13,16

**knowledgeable** 104:1

**known** 107:9 144:5

**knows** 73:19

─────────────────

**L**

**L-L-O-Y-D** 80:8

**label** 45:17 46:2 49:22 50:3 101:24 102:8,22 104:14,17 105:8,17,21 106:1,11 139:20,22 144:9,23 145:6, 12,15 162:14 163:20 166:4,10 167:10 168:6

**lack** 40:9 59:5 68:3 70:16 72:17 73:6 81:2 83:3 86:23 87:24 90:23 102:2 110:14,22 112:1,2 115:2 116:19 118:4 123:11 124:8 125:5 129:4 131:12 132:13 133:11 144:16 151:20 152:4, 24 153:19 155:16 156:8 158:8 161:8,9 163:22 166:12,13 167:12

**landing** 35:7 42:5 45:6 56:14,18,21

**landlord** 34:24 35:3,8 65:6,7 81:13, 18 82:22 83:7,12 84:9,17,21 85:24 86:7,12,15,17 99:19

**landlords** 84:10 86:21

**language** 31:9

**larger** 62:24 64:5,8

**last** 9:3,20 11:11 16:18 19:15 20:18 21:9,20 22:6 30:23 31:17 32:7,17 36:21 98:18 111:8 160:11,20 161:22

**late** 29:7 44:12

**later** 15:16

**law** 10:7 17:21,23 29:12 99:22

**laws** 7:22 100:11

**lawsuit** 49:8 115:9 138:23 139:4,10 144:15 146:13 147:6,12 148:22 149:8 150:2,12 155:15

**lawyer** 104:2

**lawyers** 8:6 20:7 89:12 167:4

**lead** 78:6

**leads** 90:18,20,22 91:2,6 99:14,15

**learn** 45:16 145:20

**learned** 30:10

**learning** 11:19

**least** 24:14 72:10 82:15 131:8 136:21

**leave** 101:3

**led** 105:11,12

**left** 151:12

**left-hand** 160:24

**legal** 53:3 69:2 125:7

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: legitimate..Mccool

**legitimate** 82:5

**lender** 162:12

**lenders** 166:9

**lengthy** 143:7

**less** 48:10,14 128:4

**letter** 30:24 31:11 151:9 153:17
154:21

**letters** 31:4,5,20,22 32:1 57:11 74:8
154:1

**level** 8:3

**Levine** 89:1,5 108:8 122:6 164:14,19
165:5

**liability** 107:8

**license** 13:2 108:24

**licenses** 18:1,4

**life** 36:1

**light** 165:15

**lighter** 66:2,7

**like** 6:17,20 8:6 9:1,23 10:15,17,23
11:2,18 12:21 14:5,8,12,14 15:14,24
16:17,23 17:2,4,13,22 31:23 34:2,3,8,
10,13 36:10,11,12 38:10 45:13 47:4
50:10 51:13,20,22 52:10,11 54:18
55:8 59:19 60:8,20 61:6 66:12 74:8
75:16 77:18 78:10 79:6,13 81:7,21
85:9 93:4 94:10,20,22 98:11 99:16
104:7,8 109:18 111:10 112:5 116:12
117:8,19 119:13 136:6 138:16 140:22
141:1,5,14 142:17,18 152:8,15 154:1
156:15 157:4 159:20 160:2,11,22
162:1,7 168:21,23

**limited** 107:8

**Lincoln** 8:12

**line** 45:14 131:17 143:17

**lines** 51:19,22 53:15

**link** 35:3 65:6 158:14

**linked** 118:11 119:10

**Linkedin** 140:8,12,16,19,24 142:5,7,
10,12,14,16 143:6,11

**Linktrust** 47:22,23 48:4,7,20 49:1,5,7

**list** 14:13,18 24:21,23 160:10,17
163:19 166:8,17 167:5,18

**listed** 48:7 77:1 87:5,10

**listing** 76:10 79:7

**listings** 78:5

**lists** 162:11

**litigation** 19:4,12,23,24 20:3,21 21:7,
10,19 23:1 24:11 32:4 103:16

**little** 9:10 15:16 17:13 62:5 82:4 98:7
114:20 145:16 159:5

**LLC** 107:8,10

**Lloyd** 80:8,10,15,24 90:2,4,12 91:7,9,
11 92:12,16,17,21,22,23 93:3,22 94:3,
6,11,16,18,23 95:18,20 97:2,9,12
99:2,3,8,10 100:16 109:15 147:3,5,11
148:10,15

**Lloyd's** 92:18

**loan** 16:22

**locally** 25:2

**located** 76:3 79:9 147:16

**logo** 166:18

**long** 7:3 9:20 11:10 162:23

**longer** 71:13 141:6

**look** 30:18 41:7 55:24 61:7 76:8 83:1
101:16 102:6 140:22 147:4 155:21
157:4 159:21 160:21 162:1,20 164:11,
12

**looked** 29:18 30:14 31:5 34:20 45:8
52:8,9 95:7 134:24 140:24 146:11
147:10 156:24 168:6

**looking** 12:9 26:3 27:16 38:12 51:18
52:2,4 53:13,14,15 61:13 67:1 82:3
146:10 162:18 163:7 168:3

**looks** 51:13 60:8,14,17 61:6,14 112:5

**Loop** 108:13

**loss** 134:16

**lost** 114:7,12

**lot** 23:3 84:9,15 89:12 94:19 95:8
104:9,10 128:21

**Louisiana** 87:9

**lunch** 88:11 106:16

---

**M**

---

**machines** 25:3

**made** 24:6 25:16 27:17,18 28:17,20
56:3 110:6,19 111:12 150:9 159:13
168:15

**mail** 14:4

**main** 35:6

**make** 12:8 24:13 70:21 79:6 93:1
109:11 117:6 125:7 127:16 128:16,21
134:6

**makes** 117:9

**making** 43:1 53:24 54:2

**managed** 133:18

**managers** 134:1

**manual** 33:23 34:2

**many** 18:7,14,18 22:5 31:10 48:7,17
58:3 59:11 81:20 104:13 105:17
135:6,11,24 136:13,15,20 137:10
138:5,21 139:2,7,9 148:20 149:6,23
150:10 155:3 157:7 160:17 164:13

**March** 29:6,7 40:14,17 42:12 44:12
118:1 148:19 149:2,3,5,22 150:1

**mark** 96:10

**marked** 41:11 50:11,15 54:21 55:19
57:16,18 59:20 60:2 69:21 75:20
79:14,18 84:23 85:2 88:19,23 89:7
91:18 92:2 93:7,11 95:13 96:15 98:7
101:10,12 109:21 112:15,17 113:11,
13 115:21 117:15,20 119:14,17
122:17,21 126:17 130:2 137:2 141:10
143:2 150:19 152:11,16 153:11
158:22

**marketing** 16:21

**marking** 136:22

**match** 14:19

**matched** 78:9

**material** 17:5

**materially** 41:19

**matter** 16:17 58:20 96:13 130:17
131:16

**Matthew** 6:11

**maybe** 11:23 15:24 16:1 22:19 31:6,
16 34:10 37:19 61:8 64:10 77:22
85:13 96:9 134:7 159:6 164:17

**Mccool** 154:8,14 155:12

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: Mccool's..noticed

**Mccool's**  138:8 139:12

**Mckenney**  6:4,11 18:23 29:18,22 41:11 50:10,15 54:21 55:10 57:18 60:2 69:21 75:20 79:18 85:2 88:19 92:2 93:7 95:13 96:15 101:12 107:20 109:1,21 112:17 113:13 115:21 117:15 119:17 122:17 124:2 126:17 130:2 137:2 141:10 143:2 150:19 152:11 153:11 158:22 165:19

**Mckenney's**  35:24 37:1

**me**  7:18 10:9,22 12:12 13:24 15:15 17:11 19:9 24:14 27:1 30:18 34:19 38:9,10,11 39:2 44:14 45:11 47:2 50:22 51:16 53:7,12 57:15 60:8,13 61:15 65:9,18 68:9 69:17 72:22 73:18 74:3,19 75:15 81:10 82:3,14 84:23 85:10 87:3 88:12 89:19 90:7 91:17 92:6 93:16 96:8 97:6,18 99:13 101:9, 22 103:7 105:9 110:18 112:4,6,14,22 113:21,23 114:9 115:18 116:2 120:10 121:16 124:18 127:2,12 131:23 134:21 136:22 138:15 142:23 150:17 153:9 156:23 157:14 159:6 163:12,16 165:11,12

**mean**  17:6 19:6 22:12 28:19 30:7 38:6,21 60:17 61:23 62:23 63:21 65:22 67:16 72:23 76:23 77:8 81:17 82:21 88:13 89:16 91:21 98:7 103:24 112:4 119:5 122:8,13 123:17 127:16 128:21 144:20 147:16 148:5 151:24 155:24 159:18 167:22

**meaning**  20:6 22:15

**means**  123:22

**media**  34:10

**mediation**  136:8

**medium**  30:11

**members**  76:16

**membership**  56:20 57:6 64:17 65:22 67:6 68:12,14,15 74:7

**memory**  90:17 96:22 142:4

**mentioned**  17:20 109:13 159:5

**merchant**  127:23,24 128:2 130:13, 16,24 131:10,16,21 132:5,9,11,17,19, 24 133:1,4,9,17,19,20,22,24

**merchants**  130:24 132:17

**message**  116:7

**met**  100:16

**Michael**  7:15 15:2,3 77:14,16 98:13 108:21 116:8 118:1

**middle**  58:13 98:17 116:6

**MIDS**  130:13

**might**  16:12,13,14 36:21 51:1 55:17 103:7 106:15 143:19

**Mike**  97:23 98:9 123:4 162:10

**millions**  134:16

**mind**  15:17 57:9

**minute**  41:16 135:8

**minutes**  50:6 126:9 134:8

**mirrors**  12:10

**mischaracterizes**  97:3 125:15 146:17 148:23 150:3,13 155:5 161:9 167:19 168:9

**mislead**  128:17

**misleading**  16:12 27:19 32:9,19 43:6 52:2,6 100:5 129:2 145:19,22 147:4

**misled**  148:21 149:6,23 150:10

**misrepresented**  164:23

**misrepresents**  20:23 33:11 36:16 39:15 65:3 71:18

**missed**  97:23

**missing**  60:23,24

**mission**  27:22

**MLS**  78:5,20

**mobile**  13:19 42:22 44:1,24 45:1 55:23 56:4,9,13,19,23 57:2,6 67:11

**moment**  151:7

**money**  25:16 27:17 90:3,11 94:11,14, 19 95:4 124:22

**monitoring**  26:22 27:3 35:10,21 36:13,22 72:12 128:6 148:9

**month**  68:13 69:6

**monthly**  56:20 64:16 65:21

**months**  160:11,20 161:5,16,23

**more**  10:22 12:1 16:5 17:14 18:16 48:9,10,12,14,15,17 63:15 67:15 88:12 89:2 94:20,22 95:8 104:16 112:5 129:16 134:15 140:22 143:17

**mortgage**  36:9

**most**  8:6 87:19 104:1

**motion**  139:21

**motivated**  129:1

**Move**  87:12 149:19

**Mozilla**  13:15,17

**multiple**  10:24 103:11 130:13 162:22

**Myscore**  35:5,17 107:10 111:10 141:4

---

## N

**name**  6:10 14:21,23 49:18 59:16 67:7, 20 91:23 100:12,13 113:5 166:21,24

**named**  89:21 97:8

**namely**  163:10

**names**  45:9,12 166:3,18 167:18

**nature**  34:15 56:6 89:18

**NAUGHT**  169:7

**Nebraska**  8:12,16

**necessarily**  45:14 112:4

**necessary**  162:5

**need**  89:13 101:5 143:17,18

**needs**  100:22 164:9

**negative**  39:2 52:20 54:10 56:13 121:10

**negotiable**  58:21

**never**  28:19 33:7 36:10,14,18 40:18 42:14 57:9 75:7 93:3 100:16,18,19 104:20 111:5,9,10 114:5 128:15 131:19 137:23 156:14 168:5

**new**  11:15,16,21

**next**  66:22 67:4 68:1 69:5,7,17 101:1 109:18 120:9 129:23 136:23 152:8 153:9 158:20

**NORTHERN**  107:2

**note**  66:1

**Noted**  169:6

**nothing**  33:9 82:4 83:19 98:10 168:14

**notice**  31:5,11,20 32:1 70:22 71:15 123:8

**noticed**  31:6

---

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: number..participating

**number** 11:14 14:24 30:17 35:19
47:18,24 86:7 95:3 99:17,18 118:17
139:10,14 149:17 160:3,9 162:11
166:18

**numbers** 57:24

---

## O

**oath** 109:7

**object** 20:23 22:8 23:11 25:10,21
70:7 71:7,17 72:3 73:14 81:2 96:1
104:5,22 110:14 128:8

**objected** 164:5

**objection** 18:22 19:5 21:13,24 27:4
28:1,9 29:11 31:12 32:11,22 33:10,19
35:23 36:15,24 37:16 39:11,14,22
40:9,20 42:8,20 43:1,17 44:17 45:19
46:3,9,20 47:1 49:13,23 51:6 52:22
53:8,18,23 54:12 56:15 59:5 61:20
62:10,21 65:2,11 66:5,16 68:3,24
70:16 72:17 73:6 77:4 81:24 82:10,18
83:3,21 84:12 85:19 86:3,23 87:24
90:23 97:3 99:23 102:2,10 105:5,19
110:22 111:22 112:1,2 114:14 115:2,
10 116:19 118:4,12 119:8 120:19
123:11 124:8 125:5,15 126:4 128:18
129:4,12,19 131:12 132:12,21 133:11
138:24 139:24 141:22 143:13 144:16
145:24 146:6,17 147:7,21 148:1,11,23
149:9 150:3,13 151:20 152:4,24
153:19 154:3,15 155:5,16 156:8,16
157:18 158:8 161:8,17,20 163:22
166:12 167:12,19 168:9

**objections** 54:1 163:16 167:20

**objective** 28:13

**observation** 165:9,16

**obtain** 27:23

**obtained** 47:23 141:21 154:2

**obviously** 103:4 114:5 138:5 141:16

**occasion** 33:8

**occur** 9:6

**October** 80:19

**Offerit** 47:15,20 149:14,18

**offers** 148:17

**office** 20:2 23:8,22 24:10 31:24 33:23
89:4 103:16

**offices** 19:20,22 136:6

**official** 6:17 50:19

**once** 68:8

**one** 6:24 12:15 23:21 27:10,12 28:4
33:5 34:11 40:15 42:22 47:7 54:16
56:12,24 61:8,10,24 69:17 70:23 74:5,
9,12 75:12 76:11,14,17 78:6,22 79:6
83:2,11 94:24 95:2,19,23 97:1,8
102:24 103:8 119:3 120:1 129:16
130:10 136:23 143:10,16,17 144:14,
24 151:7,23 153:9 157:4 158:12,20
160:3,23 162:10

**one-day** 10:23

**ones** 11:15 19:21 24:23 25:14 40:7
60:18 81:9,11

**online** 11:5

**only** 17:16 60:18 62:4 95:23 97:1,8
98:4 103:4 116:3 145:17 147:14

**operated** 100:6 132:20

**OPM.GOV** 37:6

**opportunity** 153:20 159:17 162:20

**opposed** 85:14 129:1

**option** 39:2 52:20 54:10 56:13

**orange** 66:12,13

**order** 14:17 68:11 69:18 91:13 109:19
112:6,9 139:13 152:9

**organization** 18:11 57:12

**original** 24:4 116:7 168:24

**other** 7:22 10:4,6 14:7,22 15:4,17
16:15 17:21 19:19,22 29:13 32:10
33:5 34:12 47:19 50:24 52:7 57:1
60:19 69:14 70:4,12 74:5,10 75:12
76:17 78:6,8,9,10,22 79:11 81:7 82:6
83:2,12 95:1 98:23 99:21 100:5,13
103:6 111:3 112:10 115:8 116:12
119:3 120:2 132:23 133:17 136:5,7
143:10 144:24 145:18 146:24 147:2,4,
20,23 148:8,16 151:23 160:2,16
167:20,24

**others** 18:16 36:6 132:23

**otherwise** 122:3

**our** 12:8 25:2 30:13 31:24 40:13
103:15 125:21 139:6 149:2

**out** 9:17 11:21 14:17 17:4,13 20:21
30:3,12 32:16 37:6 67:13 78:21 93:2

123:6 136:4,20 143:18 156:12 159:6
168:7

**outside** 19:5 21:13,24 26:10,16 27:4
28:1 32:11,23 35:23 37:1 49:13,23
52:23 53:20 68:24 81:24 82:18 83:21
99:23 115:11 124:9 125:6 146:1 147:7
149:9 150:14 163:23 166:13,14
167:13

**over** 9:10 12:1 22:5,24 23:10 24:18
25:6 31:17 90:14 94:18 100:19 103:2
119:10 120:12

**own** 72:24 89:4 159:8,10

**owner** 87:4,8 88:4 141:4

**Owner@profitsuccess.com.**
92:10

**owners** 87:15,21 113:23

**owns** 92:10,11 109:15

---

## P

**p.m.** 80:19 106:17,19 107:18 134:10
144:2 169:6

**page** 41:22 42:1,5 51:14,18 52:10,16
53:13 56:18,21 58:13 60:19,20,23
61:6 63:3 64:23 65:5,14 66:22 67:3,4,
9,18,21,24 68:1,5,9,18,20 69:5,7
77:14 101:1,6 111:18 116:6 134:12
151:6,15 153:23 158:3,4 160:22
161:6,14 162:2 164:20

**pages** 35:7,18 45:6 52:8,12 56:14
63:15 69:14 77:16 162:23 164:13

**paid** 90:2,12,19 94:5 97:19 110:12

**paper** 91:24 169:2

**paragraph** 41:16,21 42:1,4,21 43:8,9
55:24 58:7,14 111:24

**paralegal** 8:20,22,24 9:10,12 11:4

**paralegals** 9:17,23 10:1,2

**pardon** 75:15

**part** 11:3 26:11 27:22 35:12 83:10
92:21 96:4 97:24 101:17 102:7 110:5
120:2 126:5 133:7 137:17,21 139:12
141:17,20 166:10

**partially** 56:24

**participated** 31:10

**participating** 104:2

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: particular..product

**particular** 12:21 18:17 25:8,16 29:3 33:16 34:6 42:6 45:5,10 52:15 59:13 63:21 67:21 69:15 71:3,9,22 72:6 76:19 77:17 78:4,7 124:6 130:18 140:23

**particularly** 36:21 122:10

**partners** 25:8,20 35:16 101:24 102:1, 8 104:14,17 105:17 106:2,5

**parts** 65:21

**password** 67:20

**past** 160:7

**pay** 169:1

**paying** 94:9,11 117:4,8

**payment** 68:10 113:6

**payments** 110:6,19 111:4,12 113:1

**PC** 108:12

**people** 17:3 25:17 27:16 32:2 36:21 71:3 72:24 73:12 77:2 84:4 86:11 117:2 155:4

**percent** 46:14 64:4,6,8 66:23

**percentage** 21:7,18,21 57:5

**perform** 9:14 34:16

**perhaps** 29:16 128:4

**period** 15:13 61:23 71:13 140:21

**permission** 36:6

**permit** 25:7

**perplexed** 62:5

**person** 83:6 100:18 104:1

**person's** 142:20

**personal** 17:14 36:1 48:20 59:6 75:3, 6 160:4

**personally** 35:21 48:23 74:23 75:10 90:7 91:9 100:16 131:23

**persons** 7:20

**phone** 13:22 14:4,23 34:15 86:1,6,7 100:19 166:18

**photos** 79:3

**phrased** 38:15 43:5

**physical** 87:20

**PI** 7:12 49:4 74:17 139:17,18 140:4 163:10

**picture** 61:3 62:4

**piecing** 79:6

**Pierce** 76:11,17 77:24 78:4,14,19 80:20 81:1 82:6 87:6,11,16 88:5 95:21 96:3,24 99:21 100:4 145:17,20 146:12,20,21 147:15,18 148:9,15 149:16

**Pierce's** 46:15 47:17 57:12 77:1,9,12

**place** 17:17 34:13 68:11

**placed** 13:10 127:22

**plainly** 27:17

**Plaintiff** 107:5 108:10

**plane** 97:23

**platform** 116:14,18

**pleading** 143:19,21

**pleadings** 39:5

**please** 6:9 43:20 53:7 58:9 105:2 124:13 126:1

**point** 105:16 121:20,22 140:20 149:6, 24 150:10,11

**policies** 33:17 34:6 115:1

**policy** 120:3

**political** 8:5

**portion** 58:7 60:20

**position** 6:24 8:24 9:2,4

**positive** 121:9

**possession** 93:19

**possibly** 52:10 99:7 118:22

**post** 34:23

**posted** 76:5 77:24 88:5

**posting** 92:23

**postings** 76:11 78:19

**posts** 99:16,17

**potential** 16:11 19:4 31:7,8 57:12

**potentially** 23:12 27:12

**Powerpay** 130:9,12 131:20 133:4,8

**practice** 49:9 70:14,20 74:6,9 160:13, 15

**practices** 7:21 16:12 27:19 32:9,20 34:10

**precise** 93:24

**predisposition** 28:17

**preliminary** 53:4 74:18 95:22 139:21 140:6

**preparation** 7:8

**present** 12:10 108:1,20 165:15

**presented** 35:3 52:9 62:24 165:14

**press** 13:7

**pretending** 82:21

**pretty** 61:15 81:9 168:12

**prevent** 116:13,17 117:1

**previous** 161:10

**previously** 100:9 101:10 109:2 117:20 119:14 125:9

**primary** 103:8

**principles** 10:6 16:3

**print** 63:13 67:12 143:18 156:12

**printed** 151:2 156:19 159:6

**printout** 60:8 151:14,17,24 156:7 157:14 164:10

**prior** 49:8 65:3 127:3 139:15 147:5,12 155:15 161:5,16 165:13

**privacy** 66:22

**privilege** 29:12

**privileged** 29:24

**privileges** 29:13

**Pro** 12:22

**probably** 8:6 33:7 39:4 63:15 100:24 123:23

**problem** 22:20 63:10 89:5

**problems** 31:8 127:23

**procedures** 33:17 34:6

**proceedings** 98:15

**process** 11:18 69:11 133:7 134:6

**processors** 130:10 132:24

**produced** 25:1 80:7 105:22 110:5 118:22 123:23 137:24 154:13

**product** 12:5 23:13 25:22 26:4 29:12 46:20 47:2,3 85:19 110:10,24 120:20 121:5 157:15

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: production..referred

**production** 112:22 113:18 117:24 141:17 159:13

**professional** 13:2

**profile** 140:8,12,16,24 142:8,10 143:7 151:18 156:14,19 157:1,8 159:10 160:17

**profiles** 140:19 160:9

**profit** 80:15 167:10

**profitable** 106:12

**profits** 21:11,22

**program** 11:22 12:21 13:1 26:11 49:22 63:2 132:6,11,19 133:10

**programs** 11:15,19 12:2,7,9 22:23 115:1

**promoted** 9:5

**prompted** 29:9 30:4,18

**promptly** 71:24

**properties** 79:3,4

**property** 78:9,10 79:8,10 82:22 87:4, 5,8,10,15,21 88:4

**protected** 66:23

**Protection** 144:6

**provide** 137:16

**provided** 24:21 49:19 86:7 89:15 92:8 103:3,21 113:8 130:13 131:2 138:5 155:12 165:12

**providers** 132:9

**provides** 91:2

**providing** 90:4 99:1 111:19

**proxies** 117:8

**pull** 36:6 58:18 162:8

**pulled** 78:23 79:11 92:7

**purportedly** 155:13 166:10

**purports** 162:13

**purpose** 49:1 124:1

**pursuant** 91:12 107:21

**pursuing** 67:5

**put** 14:23 24:11 27:16 37:19 42:7 49:18 50:23 51:3 53:12 85:16 121:14, 22 126:24 165:21

**puts** 67:7

**Q**

**question** 22:8 23:11,16 24:5,6 25:10 26:13 31:15 32:14,15,22 33:20 36:3, 24 37:12 38:3,8,11,15 39:14 40:23 42:9,21 43:3,4,18,20 44:7,13,18 45:20 46:4 47:5,10,11 51:7 52:23 53:2,10, 11,19 54:13,15 61:21 62:11 66:17 71:17 73:2,14 74:21,24 76:13 77:5,7 78:16 85:21 86:24 87:14 95:9 96:9 98:17,18 101:22 102:4,13 105:1 115:4,14 124:12 125:22,24 126:7 128:11,19 129:7,8 130:19 134:12 137:19 138:12 144:4 146:3 153:22 154:20,24 161:12 162:16 163:13,17 164:1 165:18,22,23 166:1 167:8

**questions** 15:17 43:7 64:20 65:22 85:14 143:17,21 150:17 155:22 163:12 168:18

**quick** 143:22 162:8

**R**

**R.P.R.** 108:23

**raised** 8:15

**ran** 120:24 121:21

**range** 48:13

**rank** 6:21

**rating** 152:3,7 157:21,22 158:13

**Ratings** 157:20

**reach** 123:6

**reaching** 30:12

**read** 37:13,14 47:12 67:14 98:19 105:2,3 120:1 123:19 124:2,4 126:1,2 129:9,10,17 146:4

**reading** 151:10

**ready** 58:8

**real** 78:10 79:11 117:9 162:8,11 165:17 166:8,9

**really** 53:22 81:19 111:3 112:11 120:1 168:5 169:1

**Realtors** 113:2

**reason** 94:8,10 157:20

**reasons** 133:20

**recall** 13:13 33:5 39:13,17 57:13 95:21 113:19 135:8,16 140:14,15,23 141:2 147:2 155:22,23 156:1 159:17, 20 162:23 167:6,7

**recap** 74:3

**receive** 14:7 73:12 84:20 86:18 136:4

**received** 25:6,14 34:23 47:22 58:3 72:7 73:22,24 86:14,15 93:22 94:2,18, 22 95:4 101:18 103:12 135:3,4,17,20, 21 136:10 137:21 138:2,18,22 139:6, 7,9,15 155:4,14 157:7

**receiver** 49:6 103:3,13,23

**receivership** 32:21 113:22 114:7,13

**receiving** 99:7,9

**recent** 58:19

**recently** 11:5

**recess** 50:7 88:16 107:21 134:9 144:1

**recessed** 106:18

**recite** 37:23

**recognize** 50:12 51:5,9 55:2,4 57:22 59:21 60:6,7 70:2 75:17,24 76:2 79:15 85:6 89:8 93:13,14 110:2 117:21,22 119:21,23 122:22 130:7 141:15 150:24 151:1,17 152:17,18 153:5,15 154:11 156:6 163:19,20

**recollection** 37:22 126:8

**record** 6:10 37:14 46:24 47:12 54:3 96:13 98:19 100:23 105:3 126:2 129:10,17 137:5,8 138:3 146:4 160:4 165:3,4,21

**recorded** 160:18

**recording** 34:14

**records** 10:11,22 11:2,6 111:6,10 136:21 149:21

**redress** 27:23

**refer** 23:22 43:9 81:13 127:17

**referenced** 39:9

**references** 50:4

**referrals** 148:10

**referred** 19:19,22 20:20 31:4 40:6 41:3 52:11 65:6 136:10

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: referring..role

**referring** 23:19 43:22 45:6 61:10,18 62:3 80:14 82:16 111:24 123:3

**refers** 41:17 127:19 153:6

**reflects** 120:7

**refresh** 90:17 96:8,21 142:4

**refund** 128:5 129:1

**refunds** 155:4,14

**regarding** 33:17 74:22 75:4

**regional** 20:9,10 31:24

**registered** 45:10,12

**registrar** 45:10

**Registration** 51:21

**regular** 70:20 74:9 145:15

**regulations** 100:11 114:24 115:8 125:13

**regulatory** 14:8 136:7

**related** 16:15 34:21 35:13 91:19,22 104:9 120:3 163:21

**relating** 36:7

**relation** 128:13

**relationship** 123:9 168:7

**relatives** 75:8,11 147:17

**relevant** 16:8

**relief** 32:10

**remember** 31:23 32:5 44:20 46:11 120:24 125:14,18 126:8 130:8 131:2 144:7,11,20 146:8 162:13

**remove** 50:3

**rendered** 57:3

**renewed** 9:3

**rent** 76:5

**renting** 87:8,10

**repeat** 26:13 32:15 37:12 38:9 47:9, 11 53:11 67:2 73:2 76:13 78:16 102:4 105:1 115:4 125:24 137:19 146:3

**rephrase** 38:10 40:23 82:4 87:3 110:18 114:9 129:8 138:15

**reply** 34:23 84:17

**report** 14:6 20:9 50:24 58:17,20 59:3 66:4,15 72:13,15 73:1,4,23 74:1 82:17

84:19 86:18 148:17 157:1 160:5

**reported** 14:3 108:23

**reporter** 37:15 47:13 98:20 105:4 126:3 129:11,18 146:5 168:21 169:4

**reporting** 26:22 27:3 74:23 75:4

**reports** 36:4,14 156:20 160:17

**represent** 50:22 89:10,19 92:7 93:16 101:17 110:4 112:22 113:17 117:23

**represented** 106:1 149:17

**reps** 133:23 134:1

**Reputation** 152:19,20

**request** 23:7 24:6,11 25:17

**requested** 36:4 37:15 47:13 73:5,13 98:20 105:4 126:3 129:11,18 146:5

**requests** 72:24

**require** 58:19

**required** 33:16

**requirements** 68:22

**reserve** 168:20

**resides** 90:1

**resolve** 32:3

**resources** 22:22

**respect** 8:2 10:21 11:7 12:13,20 13:3, 19 14:11 17:19 18:10 19:2 20:18 22:20 23:6 26:8,20 28:11 29:3 37:8 39:1 43:14 46:13 55:22 60:14 65:18 74:6 75:14 78:3,12 85:15 91:8 96:2 100:20 103:24 106:4 115:18 129:23 130:20 133:16 140:6 155:1

**respectfully** 25:23

**respond** 84:10 85:24 86:21

**responded** 76:12 99:19

**responding** 83:16

**responds** 84:7

**response** 84:21 86:11,15,18 137:22 138:2 139:21

**responses** 138:7

**responsible** 58:9

**rest** 66:2,8

**restate** 44:14

**restraining** 105:12 139:13

**restroom** 134:7

**result** 24:16 51:14 52:8 101:6 106:1,7 114:7,12

**results** 14:18 51:9 52:12,16

**resume** 140:22

**resume-type** 141:6

**resumed** 107:21 109:5

**return** 137:17

**returned** 137:20

**Revable** 146:12,15,22

**reveal** 26:2 105:17

**revealing** 129:2 132:1

**revenue** 25:7,18 105:24 106:6 167:17

**revenues** 114:6,12

**review** 52:17 72:14 73:16 101:23 103:20,22 105:15 106:5 114:22,23 115:6,7 130:17 131:10,16,21 132:9,16 133:1,4,7,9 140:15

**reviewed** 7:9,11 24:20 39:4 44:11 47:15 60:18 61:4,5 101:19 102:22 104:9

**reviewing** 28:14 59:1 113:19 160:8

**reviews** 130:24 132:5

**revisit** 109:10

**right** 9:12 11:10 17:5 33:15 34:16 38:14,19 39:1,19 51:5 55:5 63:24 64:11 65:9 66:21 70:22 72:22 74:3,17 77:20,21 78:12 79:13 80:9 83:9 84:7 85:15 86:13 87:22 94:21 95:1,8,11 99:20 100:15 102:13 103:14,24 104:12 109:8 111:14 112:10,12 113:10 114:19 119:4,5,13,24 121:23 122:15 125:4 126:15 130:21 133:16 138:15 142:11 145:2 149:21 152:2,6 153:9 154:23 155:1 157:24 158:13 160:12 161:16 162:18

**risk** 131:1 132:10

**robo** 16:19

**Rojas** 118:2

**role** 27:5 28:2,13 32:12,23 35:24 37:2 49:24 53:20 82:1,19 83:22 99:24 115:11

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: room..services

**room** 108:3 134:8

**ROSCA** 68:22

**Rouge** 87:9

**routine** 70:14

**routinely** 145:22

**rows** 24:24

**ruled** 53:5 125:8

**rules** 7:22 34:8,12 38:7 115:17 125:4, 13

**run** 14:16 120:14,18,22 121:2 160:5

---

**S**

**S-N-A-G-I-T** 12:15

**Safari** 13:21

**said** 11:8 15:21 21:2 36:12 94:17,22 99:13 123:21 125:11 126:5,9 135:16 138:16 154:10 165:6

**SAITH** 169:7

**sale** 127:22

**sales** 47:16,18,24 97:20 117:4 123:7 124:6,15,23 133:22 134:1 149:17

**salesperson** 11:24

**same** 10:2 12:5 28:9 46:9 62:7,8 65:11 71:5 82:10 88:7 102:10 105:5 118:12 119:8 122:13 126:4 129:12,19 132:21 146:6 148:1 161:17,20 167:6

**Samsung** 13:22

**SAMUEL** 108:8

**sat** 49:3

**satisfied** 163:6

**save** 15:15

**saw** 76:16,18,21,24 86:1 111:5,9,10 126:10,12 139:22 142:5 143:6,11 151:10 167:3

**say** 16:5,17 17:8 18:19 21:6,18,20 27:9 28:12 34:22 42:16 51:13 54:9 55:20 57:2 60:15,21 65:13 74:12 84:15 85:10 93:18 94:13 104:19 105:9 110:17 111:8 112:11 124:3 125:18,22 129:15 135:20 140:21 158:2 160:7 161:22

**saying** 31:5 38:17,20 39:21 50:19

62:4 64:7 66:3 77:17 91:5 160:14

**says** 34:4 37:17,18 51:20 59:16 60:11 61:24 68:9,16,18,19,20 72:21 80:3,4 82:5 92:9,13,16 110:10,24 111:1 116:7,11 117:2 118:16 119:4,10,11 123:5,13,17 131:18 134:14 139:5 151:5,12 152:2,6,7 153:8 157:20 158:11,18 160:5,6,24 161:13 162:5

**scams** 30:10

**schedule** 58:8 84:20

**scheme** 34:21 81:22 134:14

**schemes** 147:4

**school** 8:3,11

**science** 8:5

**scope** 16:11 19:6 21:13,24 27:4 28:1 32:11,23 35:23 37:1 49:13,23 52:23 53:20 69:1 81:24 82:18 83:21 99:23 115:11 124:9 125:6 146:1 147:7 149:9 150:14 163:23 166:14 167:3

**score** 35:21 36:6 50:23 51:13 58:19 66:2,3,12 67:8 72:14 73:1,4 74:1 84:19 148:17

**Scoreapprove** 110:19 111:20 113:3, 5

**Scoreapprove.com** 145:9

**Scorecard** 51:21

**Scoreoutlook** 145:3

**Scorepull.com** 55:6

**scores** 51:1

**screen** 12:11 63:2,21,24 64:2,5,8 67:14 140:11,16 143:20 162:8 164:12

**scroll** 164:4

**scrolling** 164:5

**Scrubkit** 116:12

**seal** 165:12

**sealed** 162:9 165:17 166:5,6

**search** 14:12,13,16,21,22 15:1 50:23 51:3,11,14,18 52:8,11,16 54:11 120:22,24 121:2 122:2,14 146:16,24 147:2 159:8,11

**searched** 14:20 15:12 30:13 100:12 146:20

**searches** 50:21 120:14 121:21

**searching** 14:15

**second** 18:9 67:3 111:17 137:6 160:21

**section** 34:5 64:14 166:20

**security** 35:19 66:23 69:6

**see** 17:1 41:21,22 42:15,16 45:8 51:23 52:2,20 53:16 58:11,14,23 61:15 63:3, 22,23 64:9,13,24 65:10 74:20 81:15 86:10 90:19 92:20 100:13,14 102:7 103:19 110:13,16,24 111:14 113:1,6 115:15 116:8,9,14 126:5 127:13 131:15,17 134:17 141:17 148:6,7 152:22 153:3,4,23 154:21 158:7 161:2 166:6,17,20,21 167:22

**seeing** 98:9 140:14 146:8 155:23 156:1 159:17

**seek** 21:11,21 32:20 33:8

**seeking** 32:9 128:5

**seems** 81:9

**seen** 33:24 46:13 54:10,16 70:4,10 81:7 85:8,9 97:13 100:18 105:21 112:21,24 113:18,20 123:1,13,14,22 126:21 140:18 142:11 154:1,5,8,12 156:4,14 159:2 160:16 166:7,22

**seized** 103:20

**selected** 67:8

**seminar** 16:18

**send** 74:21 75:2 136:3 147:23 154:17

**senior** 6:20

**sense** 24:13 65:20 117:5,10

**sent** 23:21 30:24 57:12 59:16 71:5,6, 10,24 74:8 80:22 81:10,11 103:15,23 136:1,8,12,16 137:11,14,23 141:16 147:18 148:10,15

**Sentinel** 14:1,10,11,16 15:2,10 30:13 134:24 135:22 136:14 138:22

**separate** 20:6

**series** 16:14 30:6 53:24

**served** 7:3 9:8

**service** 35:22 36:13 59:13 73:4,5,13 83:11 90:3 99:1,5,12 116:13 128:6

**services** 27:3 35:10 36:23 37:5 49:19 75:8,11 111:19 114:10 116:12

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: session..stamp

**session** 9:16 16:2

**set** 34:2 80:12 84:19

**sets** 103:6

**setting** 64:2

**seven-day** 56:19 61:24

**several** 24:24

**she** 72:12,13 119:10

**sheets** 24:17 25:1,5

**short** 32:4 97:21 140:20 141:5,7 142:17

**shot** 140:11,16

**should** 34:5,9 37:19 85:13 100:24 122:10 124:21,22 126:4

**shouldn't** 27:17

**show** 11:24 50:10 54:18 55:8,14 57:15 59:20 69:17 74:19 75:16 79:13 84:23 88:23 89:7 90:16 91:17 92:6 93:5,11 98:8 109:18 112:14 113:10 115:15,18 116:2 117:19 119:13 122:21 126:21 130:6 136:19 141:14 142:23 143:19 145:21 150:23 152:8, 15 157:6 162:7,9

**showed** 99:13 127:12

**showing** 157:14 164:11

**shown** 167:4

**shows** 42:3,4 157:16

**sic** 135:18

**side** 53:8 85:16 127:1 160:24

**sign** 31:22 35:9,11,17

**signature** 168:20

**signed** 35:20 57:6 59:12 73:3 75:7,8, 10 124:16

**significant** 30:17

**signing** 36:22 69:11 71:16 72:1

**signs** 31:20

**signup** 71:6

**similar** 41:20 60:17 61:8 62:19 67:10 68:5 70:5 72:2 76:20,24 78:17 81:9 154:12 167:2,6

**simply** 23:4 32:8 122:1 142:16

**since** 30:23 104:8 139:7

**sir** 7:7,24 22:18 25:9 27:20 42:19 43:20 48:4 50:12 52:6 54:5 55:2,15 56:5 59:21 60:6 66:19 68:2,23 69:8 72:20 75:17 79:15 84:2 85:6 87:14 93:12 106:2 110:2,16 117:21 119:21 122:22 123:10 125:18,23 129:3 130:6 132:15 134:12,17 141:15,18 150:2 152:17 153:15 154:20 156:3,22 158:17 159:3 161:12 162:21 163:7 166:11 167:9

**sit** 95:3 149:13 163:1

**site** 43:16 44:11 56:23 59:3 65:1 67:11 117:3,7 124:17 125:1 142:6 143:11 144:5,7,9,21,23 145:6,12,14, 15 151:19 152:20,23 166:17,18,21,23

**sites** 13:4 42:22 49:10 55:23 58:22 124:15 144:14 148:9 162:14

**sitting** 20:19 33:4 73:11,19 94:4,12 97:10 99:4 104:12 106:10 114:10 127:14 128:3 132:4 135:15 136:13 138:4 143:9 160:13

**situation** 26:16 32:4 58:20

**six** 94:20

**size** 62:23 63:23 64:1 65:19,20,23 67:16

**Skype** 120:6

**slevine1@ftc.gov** 108:9

**smaller** 64:5

**Snagit** 12:15,18

**so-called** 38:7

**social** 34:10 35:19 69:6

**soft** 58:18

**software** 10:13 11:15,19,22 12:13 24:9

**solo** 89:3

**some** 15:17,21 19:18,20 22:15 24:16 50:24 53:6 57:24 62:7 75:15 78:23 90:3,16 97:12,13 103:5 114:20 115:19 119:5 128:24 134:5 136:18 140:20,22 141:2 147:17 150:17

**somebody** 28:19 72:1 73:3 82:17 84:7 118:24 123:23 142:12,19

**somebody's** 142:17

**somehow** 27:18

**someone** 23:7 50:23 82:6 91:2

**something** 12:23 28:18 43:7 45:17 48:3 55:20 65:19 72:1 82:7 91:19 98:23 109:12 110:20 113:21 118:21 120:10 127:2

**sometime** 71:6

**sorry** 9:3 14:4 15:13 24:4 26:13 37:12 41:24 43:24 45:8 47:9 63:4,7,9 67:1 73:2 87:1 110:17 115:4 116:3 126:11 129:16 130:19 132:7 137:19 138:10 146:3 149:5 153:4 158:1

**sort** 6:22 9:1 11:2,18 17:11 22:16 31:11 51:1,9 52:18,19 53:13 54:10 55:19 60:17 74:3 79:6 94:10 96:8

**sorts** 17:7 98:11

**source** 124:7

**sources** 25:19

**South** 6:12 108:3,13

**speak** 11:23 51:3,20 52:19 71:21 72:6 75:11 103:4

**speaking** 76:23 163:16

**specialist** 8:20 9:11,13

**specialized** 12:21

**specific** 12:23 16:1,8,16 30:5 55:24 60:7 93:14 121:19 130:8 156:2,4 157:13 159:4

**specifically** 24:17 26:3 65:14 90:13 91:6 121:1 161:22

**specifics** 131:7

**specify** 43:21

**spectrum** 17:1

**spending** 114:20

**spoke** 72:8 73:22 87:7 93:3

**sponsored** 144:23 145:6

**spread** 24:16,17 25:1,5

**SQL** 24:10,20

**squib** 141:5

**srcochell@gmail.com** 108:17

**staff** 20:7,11,12 31:21,23

**stage** 146:13

**stamp** 164:14,17,20

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: stamped..think

stamped 89:13

stamps 89:13

stand 80:1

standpoint 82:16

stands 58:1 141:18

staple 101:2

start 15:5 29:4,9 30:3 50:6 136:22

started 77:2 148:19,21 149:7,24

starting 58:8 150:11

state 6:9 90:2

State's 136:6

statement 12:2 16:4 20:16,22 36:23 48:11 52:21 78:15 82:9 104:3 111:21 116:18 119:7

states 68:11 107:1 108:2

stationed 17:17 18:12

Stephen 108:16 121:4 122:12 123:18

steps 42:14 46:22

Steve 165:6

still 109:7

stolen 117:3 124:17

stop 68:15 123:7 124:6

streams 25:7,18

Street 108:3

strike 81:20 85:21 87:12 113:24 149:19

stuff 17:3 78:21 89:3,20

sub-affiliates 97:11

subject 16:16 40:8 43:15 80:4 89:16 92:9 115:9 130:17 131:15,17 144:14

submit 59:3 68:19

submitted 7:10 79:1

submitting 117:3

subpoena 142:1

subscribed 114:10

subsequently 89:17

substance 84:3 132:2

substantial 27:2

such 34:14 36:7 99:15 113:23 128:7

suggest 43:7 82:7 92:21

suggested 73:12

suggesting 81:1

suggests 59:17 124:18

Suite 107:21 108:13

support 23:2 24:12 28:6 103:16 125:12

suppose 118:21

supposed 76:4 102:22 124:16

sure 12:12 16:10 19:21 20:1 36:10 41:2 51:15 52:13 73:23 109:11 117:6 126:23 132:3 143:8 159:15 160:14

surprise 71:23 93:21 95:6 144:8,12, 19

surprised 94:13

SUSAN 108:23

suspected 7:20

Swear 6:1

sworn 6:3,6 109:3

system 14:19

systems 11:8

**T**

tables 24:21,23

take 11:22 23:4 41:7 50:5 61:7 88:10 101:16 134:3 140:11 142:19 143:22 155:21 164:7,8

taken 18:8 38:7 42:14 46:22 67:9 103:20 119:6

takes 142:17

talk 19:15 30:7 32:2 48:19,23 85:22, 23 87:15 90:6,9 91:9,11 113:22 133:18,22,24

talked 78:17 100:19 121:24 131:19,24

talking 15:19 42:21 63:17 84:2 118:9 121:19

talks 64:12,16 66:22 90:18 121:14

tandem 92:22

task 12:9

tasks 23:3

tdmpitt1@gmail 109:16

team 23:2 24:12 103:16

technical 23:3

technique 33:18

techniques 15:20

telemarketing 16:23

tell 7:17 10:9,22 13:23 24:14 34:19 38:11 97:6,18 119:2 128:4 134:21 165:20

telling 128:13,16

template 83:20 142:18

templates 83:16 84:4

temporary 9:2 105:11 139:13

ten-minute 134:4

term 22:11 44:4 49:22 99:15 127:3,4, 7,11 130:16

terms 14:22 15:3,4,5 50:23,24 51:3 133:4 135:16 138:6 146:24 147:2

testified 6:6 39:8 74:19 95:22 96:3 97:1 109:3,4 121:12 140:7

testify 37:19 74:13 121:11,13 122:11

testifying 53:3 69:1

testimony 7:12 20:24 21:14 22:1 27:5 28:2 32:12,23 33:11 35:24 36:16 37:1 39:3,7,15,17 40:1 49:3,14,24 52:23 53:20 57:10,13 65:3 69:1 71:18 73:17 74:20 82:1,19 83:22 96:8 97:4, 7,12 99:24 101:2,6 115:11 124:10 125:7,16 130:20,23 131:3 146:1,18 147:8 148:24 149:10 150:4,14 161:10 163:24 166:14 167:14 168:10

Texas 76:4,6 108:14 113:2,6

text 61:2 67:17,19 78:8 79:10 111:1 118:15

thin 78:21

thing 6:22 30:8 42:23 65:10 122:12

things 16:15 29:17,22,23 34:15 98:7 103:11 121:7,10

think 11:8,12 15:16 17:2 25:24 29:16 33:7 34:11 35:11 37:18 39:4 44:4 48:14 60:23,24 62:23 81:16 89:11 91:5 97:16 98:1,9,12 101:2 109:13,19

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: third..vague

121:20,21,23 122:4,9 126:4 127:16,19
128:4 134:4 136:2 143:16 145:16,17
151:6,9 160:12 162:5 164:16 165:8

**third** 101:6 116:4

**thought** 24:1 97:6

**thousand** 94:18,21,23

**three** 7:9 9:21 12:17 22:6,19 31:16
51:19,22 53:15 65:21

**through** 13:11 57:6 93:23 114:20
151:8 161:1 164:4,6

**throughout** 9:19 11:12

**tie** 15:19

**time** 10:5 15:13 16:1,8 18:17 23:4
40:15 42:11 44:11 45:17 95:2 106:15
114:20 127:10 129:16 135:2 139:6,19,
22 148:21,22 160:19 164:8 169:6

**times** 11:3 18:7 23:22 31:10,16 94:20
103:1

**timing** 71:5

**title** 6:17

**today** 7:8 17:20 20:19 33:4 73:11,19
94:4,12 95:3 97:10,13,14 99:4 106:10
108:23 114:10 127:14 128:3 132:4
135:15 138:4 139:18 143:9 149:13

**together** 10:3 79:6

**tolerance** 132:10

**Tom** 118:22

**tool** 11:21

**tools** 10:13 11:17 13:6,8

**top** 34:11 51:20,22 60:18 63:3 80:3
95:3 118:17 151:12 153:23

**topics** 16:7

**total** 25:15 93:24 160:24 161:13

**touch** 127:23,24

**tour** 58:8 84:20

**track** 10:15 47:16

**tracking** 13:4,9

**Trade** 6:16 8:19 107:4 108:2

**traffic** 10:15 117:7,8,9 147:19,23

**train** 16:14

**trained** 17:22

**training** 8:23 9:13,16,23,24 10:4,6,12,
15,16,17 11:4,11,16,23 13:3 15:22
16:10 17:6,15,21

**trainings** 9:18 10:10,18,21 12:3,5
16:6 17:19

**transactions** 36:7

**transcript** 7:11 96:4 168:22

**transferred** 94:14

**transfers** 94:3 111:6,11

**trial** 56:20 61:23,24 62:1 64:12,18
65:21 71:12 121:13 130:16,23 131:2,
10,16,21 132:6,10,19 133:1,4,9,10

**trip** 89:3

**TRO** 45:24 47:21 60:12 65:16 79:1
102:19,23 105:8,13 122:7 134:23
140:3 149:15

**trouble** 138:11,14 151:10

**true** 42:18 97:11 121:17 133:19,20
134:19

**Trug** 80:4,6,9,19

**truth** 128:5,13,16

**turn** 103:3 120:9

**turned** 22:24 23:10 24:18 25:6 103:2
120:12

**turns** 17:4

**two** 7:6 9:10,21 11:23 12:4,6 16:1
18:16 23:22 31:16 51:19 53:15 74:12
116:3

**type** 29:17 75:18 154:5,21

**typed** 51:12

**typical** 51:15

**typically** 9:15 13:17 17:12 20:3 32:2
157:6 169:1

## U

**U.S.** 33:22,23

**Uh-huh** 15:23 130:22

**ultimately** 19:22

**under** 109:7 110:10 113:4 157:20
165:9,12

**undercover** 34:14,17 81:12 140:9
143:12

**underneath** 51:22 58:16 111:1
116:10

**understand** 22:11 24:15 25:4 31:15
36:20 37:9 38:6,8 47:4 77:7,8 100:15
118:14,19 124:1 163:6,8,11

**understanding** 49:21 97:7 138:11

**undertaken** 145:20 147:5

**unfortunately** 8:14 98:6 116:2 119:2

**unique** 90:18,20 91:6 99:14

**United** 107:1 108:2 144:5

**University** 8:12

**unless** 119:24

**unrelated** 46:15

**unresponsive** 87:12 149:19

**until** 9:4 105:8 106:18 148:22 149:7
150:1

**unusual** 86:21

**up** 9:3,9 15:19 17:2 23:4 35:9,11,17,
20 36:22 39:2 50:6 51:1 54:3 57:6
59:12 64:5 69:11 71:16 72:1 73:3
75:7,8 80:12 84:20 86:16 105:11,12
124:16 143:23 147:14 151:8 162:8
168:22

**update** 110:11 152:20

**updated** 58:17 72:15 73:1

**URL** 63:3 153:6,7

**URLS** 160:23 167:18

**usable** 23:9 24:7

**use** 10:14 11:19 12:14 13:4,17 14:17
48:20 49:1 83:16,19 84:4 120:17

**used** 11:14 12:15,16,17,18,24 13:5,6,
15,16,21 15:20 44:4 48:21 87:16

**user** 67:20

**uses** 10:14

**using** 15:2,10 30:11 63:2 67:17 95:23
116:14,18 120:14 124:15,17 148:3

**usually** 13:7

## V

**vague** 71:7 91:5 115:10 132:12
138:24 147:21 154:3,15 156:16
157:18 167:14

FEDERAL TRADE COMMISSION vs CREDIT BUREAU CENTER
Douglas McKenney

Job 27222
Index: variations..zoomed

**variations** 81:12,15

**various** 10:13 35:5 79:4 81:18

**version** 12:21 44:1,2 45:2 57:2 58:4 59:13 65:13 166:18 168:24

**versus** 10:1 45:1,2

**view** 13:6,9 24:10 25:2

**viewed** 12:11 66:11

**viewing** 13:19

**violated** 27:12 99:22 100:10

**violation** 7:21 82:15

**violations** 31:7,8 56:6

**virtually** 61:17 144:13

**visit** 134:6 144:5,9 145:2,8

**visited** 42:11 140:8

**visiting** 144:7,20

**visitors** 148:16

**Vlad** 116:8

**voluminous** 163:9

**voluntarily** 137:24 154:13

---

### W

**Wacker** 107:22

**wait** 28:23 41:16

**walk** 100:23

**Walnut** 161:1

**wanted** 109:10 113:23

**Ward** 18:22 19:5 20:23 21:13,24 22:8 23:11,16 25:10,21 26:2 27:4 28:1,9 29:11,16 31:12 32:11,22 33:10,19 35:23 36:15,24 37:16,23 39:11,14,22 40:9,20 42:8,20 43:2,6,10,17 44:17 45:19 46:3,9,20 47:1,7 49:13,23 51:6 52:22 53:3,18,24 54:6,12 56:15 59:5 61:20 62:10,21 63:6,9 65:2,11 66:5,16 68:3,24 70:7,16 71:7,17 72:3,17 73:6, 14 77:4 81:2,24 82:10,18 83:3,21 84:12 85:10,14,17,19 86:3,23 87:1,24 88:13 90:23 96:1 97:3 98:3,5 99:23 102:2,10 104:5,22 105:5,19 108:6 110:14,22 111:22 112:1 114:14 115:2, 10 116:19 118:4,12 119:8 120:19 121:4,12,17 122:12 123:11,14,16,22 124:8 125:5,15 126:4 128:8,18 129:4,

12,19 131:12 132:12,21 133:11 137:5 138:24 139:24 141:22 143:13,24 144:16 145:24 146:6,17 147:7,21 148:1,11,23 149:9 150:3,13 151:20 152:4,24 153:19 154:3,15 155:5,16 156:8,16 157:18 158:1,8,14 159:21 161:8,17,20 162:3,16,22 163:1,4,8,13, 22 164:3,7,10,13,23 165:2,18 166:12 167:12,19 168:9,14,20 169:5

**Washington** 9:17 11:5 22:22 23:2,8 24:12 90:1 103:16,18

**web** 11:7 13:6 43:16

**website** 10:15 11:9,10 14:5 31:6,8,9 35:2,16 36:5 40:16 42:11,19 43:15,21 44:15,23,24 45:1,2,5 49:19 52:5,16 53:17 55:17,18 56:13 57:3 60:9,16 63:1 76:12,17 77:2,10,11,12,18 78:24 79:2 84:16 97:20 128:17 144:13 145:15 147:19 148:16 151:18 152:1 156:7,19,24

**websites** 10:13,15 11:15,20 12:10,14 13:6,12 32:3 35:6,7,10 37:10 38:18,22 39:8,19 40:5,19 41:3,6,18 45:13 56:9 66:11 77:9 78:11 79:12 115:9 147:20, 24

**week** 7:5

**weekly** 110:12

**welcome** 70:10

**welcoming** 74:6

**well** 9:16 14:8,22 16:24 17:11,14 19:2 23:16 26:5 29:16 35:7 37:23 43:6,23 47:18,19 49:5 52:17,18 53:24 61:7 65:13 68:9 77:10 79:3 83:9 85:10 87:23 119:4 125:11 131:15 158:15 163:4,11 164:23 165:24

**went** 20:21 21:7,10 32:8 34:20 35:2,5 40:15 51:12 63:13 72:14 134:24 149:15

**white** 45:17 46:2 49:22 50:3 101:24 102:8,22 104:14,17 105:7,17,21 106:1,11 139:20,22 144:9,23 145:5, 11,13,15 162:14 163:20 166:4,10 167:10 168:6

**whole** 131:9

**wind** 143:23

**wire** 94:2 111:6,10

**witness'** 37:21

**woman** 61:3

**word** 12:16 120:18 121:1,2

**wording** 81:17

**words** 14:17 34:7 52:9,10,15 120:14, 17 125:14

**work** 19:18,21 20:7,12 23:13 25:21 26:4 29:12 34:14,17 46:20 47:1,3 81:12 85:19 90:22 104:10 120:20 121:5 141:2,3 157:15

**worked** 91:3

**working** 92:22

**works** 91:3 142:21

**written** 168:22

**wrong** 28:18 77:22 103:7 159:6,7

---

### Y

**year** 9:8 22:5,17 69:7

**years** 7:5 9:4,10 11:14 12:1 19:15 20:19 21:9,20 22:6 30:23 31:17 32:7, 18 36:21

**yesterday** 39:3 40:1 57:10 126:10,12 130:21

**yesterday's** 7:14 39:7

**Your"..."and** 66:15

---

### Z

**Zamelukhin** 116:8

**Zini** 74:21

**ZIP** 67:8

**zoomed** 64:3

---

```
                    3 - Talk about Anti Fraud Systems - 022812
Delivered-To: rob.lawrence@toomuchmedia.com
Received: by 10.27.7.145 with SMTP id 139csp2119924wlh;
        Tue, 24 Feb 2015 11:29:33 -0800 (PST)
X-Received: by 10.50.85.18 with SMTP id d18mr17572470igz.3.1424802500688;
        Tue, 24 Feb 2015 10:28:20 -0800 (PST)
X-Mozilla-Keys:

Return-Path: <vlad.zamelukhin@toomuchmedia.com>
X-Original-To: rob@toomuchmedia.com
Delivered-To: rob.lawrence@toomuchmedia.com
Received: from vlad-zamelukhins-mac-pro.local (unknown [75.99.182.234])
        by roxy.isprime.com (Postfix) with ESMTPA id D02C57C4BA2
        for <rob@toomuchmedia.com>; Tue, 28 Feb 2012 11:10:04 -0500 (EST)
Message-ID: <4F4CFC5C.1000407@toomuchmedia.com>
Date: Tue, 28 Feb 2012 11:10:04 -0500
From: Vlad Zamelukhin <vlad.zamelukhin@toomuchmedia.com>
User-Agent: Thunderbird 2.0.0.19 (Macintosh/20081209)
MIME-Version: 1.0
To: rob@toomuchmedia.com
Subject: [Fwd: Re: Promo Code]
Content-Type: text/plain; charset=ISO-8859-1; format=flowed
Content-Transfer-Encoding: 7bit




-------- Original Message --------
Subject:        Re: Promo Code
Date:   Tue, 14 Feb 2012 00:25:21 -0800
From:   Mike Brown <m.brown@zoomcreditscore.com>
To:     Vlad Zamelukhin <vlad.zamelukhin@toomuchmedia.com>
References:      <4F1F2DE2.6030900@toomuchmedia.com>
<615AAF1D-9783-49E5-A196-A25503EAE4E1@zoomcreditscore.com>
<4F218C2A.50804@toomuchmedia.com>
<B1E9DFCC-A9A0-4720-A3CC-D9DF0CC82F25@zoomcreditscore.com>
<4F317090.1020706@toomuchmedia.com>


Do you guys have any integration with anti fraud services like scrubkit? Or any
other service? Whats the best way to prevent fraud using your platform?

Thanks,
Mike

On Feb 7, 2012, at 10:42 AM, Vlad Zamelukhin wrote:

> Hi Mike,
>
> Just wanted to get in touch with you to see how everything is going. Please let me
know if you have any questions.
>
> Thanks and I look forward to your response!
>
> Best regards,
> --
>
> Vlad Zamelukhin
>
> Too Much Media
>
> http://toomuchmedia.com
>
> 732-385-1536 XT 1123
```

EXHIBIT
Mc Kenne-1
20
12/14/17

Page 1

```
                   3 - Talk about Anti Fraud Systems - 022812
>
> ICQ - 452583619
>
> AIM - TMMVlad
>
> Skype - TMMVlad
>
>
>
> Mike Brown wrote:
>> Hey Vlad,
>>
>> I will get around to signing online and working on some of the integration more
probably on Monday. Thanks again for all your help.
>>
>> Mike
>>
>> On Jan 26, 2012, at 9:23 AM, Vlad Zamelukhin wrote:
>>
>>
>>> Hey Mike,
>>>
>>> Just checking in with you to see if you needed any more info from myself or our
developers.
>>>
>>> Thanks again and I look forward to your reply!
>>>
>>> Best regards,
>>> --
>>>
>>> Vlad Zamelukhin
>>>
>>> Too Much Media
>>>
>>> http://toomuchmedia.com
>>>
>>> 732-385-1536 XT 1123
>>>
>>> ICQ - 452583619
>>>
>>> AIM - TMMVlad
>>>
>>> Skype - TMMVlad
>>>
>>>
>>>
>>> Mike Brown wrote:
>>>
>>>> Thanks!
>>>>
>>>> On Jan 24, 2012, at 2:17 PM, Vlad Zamelukhin wrote:
>>>>
>>>>
>>>>> Mike,
>>>>>
>>>>> Was able to get you the 3 month free code approved. :)
>>>>>
>>>>> Go to https://secure.offerit.com/account.html and create a new account. The
2nd page will ask you for a code, enter: QJB9XIF2
>>>>>
>>>>> Please let me know if you have any questions.
>>>>>
>>>>> Thanks and look forward to working with you!
                                    Page 2
```

```
                    3 - Talk about Anti Fraud Systems - 022812
>>>>>
>>>>> Best regards,
>>>>> --
>>>>>
>>>>> Vlad Zamelukhin
>>>>>
>>>>> Too Much Media
>>>>>
>>>>> http://toomuchmedia.com
>>>>>
>>>>> 732-385-1536 XT 1123
>>>>>
>>>>> ICQ - 452583619
>>>>>
>>>>> AIM - TMMVlad
>>>>>
>>>>> Skype - TMMVlad
>>>>>
>>>>>
>>>>
>>
>>


--

Vlad Zamelukhin

Too Much Media

http://toomuchmedia.com

732-385-1536 XT 1123

ICQ - 452583619

AIM - TMMVlad

Skype - TMMVlad
```

```
                   1 - Dealing with Affiliate Fraud - Fragalia00000503
From:  Mike Brown <mike@myscore360.com>
Sent:  Friday, March 25, 2016 11:10 PM
To:  Diego M <diego@myscore360.com>
Cc:  David Rojas <darb714@gmail.com>; Mike Brown <M.Brown@myscore360.com>; Tom
Fragala <tom@myscore360.com>
Subject:  Re: Client Charged 76 times-Fraud- important
```

Diego, Please cancel all and refund.

Tom, reach out to Sv 235 Complete credit plus over this fraud. Partners
blocked from signing up with same card more than twice now so this happened
before this change

On Friday, March 25, 2016, Diego M <diego@myscore360.com> wrote:

> Hello Mike,
>
> This account holder claims we are charging her and there is no reason for
> it, since its not a business card.
> Full Name Ariel McCullough
> Credit Card 4342-56 XX-XXXX-7000
> <https://admin.myscore360.com/admin/search/credit_card/434256-7000>
> (Visa)
> exp. 3/2019
> Address 162 Howard Ave
> Denver , CO 80236
> US
>
> Agent:
> This cust has over 76 accounts linked to her card, she claims she is not a
> business and has no idea why she keeps getting billed from us.
>
> Billing Info
>
> <https://admin.myscore360.com/admin/account/update_billing_info/2354176>
>
> Full Name Ariel McCullough
> Credit Card 4342-56 XX-XXXX-7000
> <https://admin.myscore360.com/admin/search/credit_card/434256-7000>
> (Visa)
> exp. 3/2019
> Address 162 Howard Ave
> Denver , CO 80236
> US
> Phone
> This is the card that has several accounts linked.
>



Mir Ali LiveConnectGlobal / MediaBeep - Skype chat history

**Subject:** Mir Ali LiveConnectGlobal / MediaBeep – Skype chat history
**From:** Tom Fragala <tom@mytruston.com>
**Date:** 5/22/14, 4:33 PM
**To:** "mike@myscore360.com" <mike@myscore360.com>

Mike,

So you have a transcript of the chat with Mir Ali:

[5/15/2014 11:15:18 AM] *** Tom Fragala added Mike Brown ***
[5/15/2014 11:16:44 AM] Mike Brown: Hello
[5/15/2014 11:16:49 AM] mediabeepmir: Hello MIKE
[5/15/2014 11:18:09 AM] Mike Brown: Tell me more about the type of traffic you are doing. What data you dialing? What offers you pushing? How many reads per call? What type of incent you doing?
[5/15/2014 11:18:29 AM] mediabeepmir: SEARCH, PPV, CALL
[5/15/2014 11:18:49 AM] mediabeepmir: we are dialing tax and payday data
[5/15/2014 11:23:41 AM] Mike Brown: Ok. Everyone we have worked with that has done Payday data had the campaign back out really bad. Those customers don't typically have the fund on their card after the trial is over.

We do have a new product called PaydayBureau.com which I think will be a great fit though
[5/15/2014 11:24:34 AM] mediabeepmir: yea interested on it aswell
[5/15/2014 11:24:47 AM] mediabeepmir: WE DONT DIAL ON DECLINED PAYDAY DATA
[5/15/2014 11:24:57 AM] mediabeepmir: WE DIAL ON DATA THAT HAS ATLEAST $100 with them and are near to payday
[5/15/2014 11:25:21 AM] mediabeepmir: and can cover charges of $100+ for the service charge or upfront for any loan company might asked
[5/15/2014 11:25:30 AM] mediabeepmir: thats is why we are still in business for long.
[5/15/2014 11:27:59 AM] Mike Brown: brb
[5/15/2014 11:28:10 AM] mediabeepmir: also, paydaybureau looks a good fit aswell
[5/15/2014 12:57:07 PM] mediabeepmir: Im not sure if you forgot but i am still waiting
[5/15/2014 12:57:53 PM] Tom Fragala: mike was pulled into something. not sure when he'll be back.
[5/15/2014 12:58:10 PM] mediabeepmir: oh ok
[5/15/2014 12:58:23 PM] mediabeepmir: so what do you wthink how we can move forward
[5/15/2014 12:58:51 PM] Tom Fragala: let's continue the chat with mike to find out.
[5/15/2014 12:59:02 PM] mediabeepmir: ok
[5/15/2014 1:15:57 PM | Edited 1:17:15 PM] Mike Brown: Do you guys dial the new TCPA complaint data? Can you show me an example of the optin for the data?
[5/15/2014 1:25:25 PM] mediabeepmir: sure
[5/15/2014 1:25:29 PM] mediabeepmir: give me a moment
[5/15/2014 1:25:42 PM] mediabeepmir: 5/12/2014 6:33 198.96.90.35 Inez Fordham p.o. box 4633 inglewood CA 90309 inezfordham@yahoo.com 4242233716 4242333716 Anytime $1,000.00 180522340 6/30/1961 c1970086 CA Rent 1 10 52 No Employment No employee $1;751–2;000 0 6 5555555555 Bi-Weekly 5/22/2014 6/22/2014 Paper Check edd Checking bancorp 31101169 9.62E+14 1 6
[5/15/2014 1:26:06 PM] Mike Brown: can you give me an example of the site where the consumer does the optin to be called?

1 of 2

EXHIBIT
McKelvey
22
12/14/17 &

12/11/17, 11:19 AM

Mir Ali LiveConnectGlobal / MediaBeep - Skype chat history

[5/15/2014 1:31:42 PM] mediabeepmir: paydaytotal.com
[5/15/2014 1:32:29 PM] Mike Brown: I don't see any optin or disclosure on this page?
[5/15/2014 1:32:42 PM] Mike Brown: Are you dialing by hand or autodialer?
[5/15/2014 1:32:48 PM] mediabeepmir: hand
[5/15/2014 1:49:03 PM] Mike Brown: hand dial and then they speak directly to a human right? No press 1 style campaign?
[5/15/2014 1:51:12 PM | Edited 1:51:33 PM] Mike Brown: If we did something together we would at least need you up update the disclosures. You have no optin for the consumer to be dialed for telemarketing purposes. Unless you also do your own in-house payday lending you may get around that requirements by having an existing business relationship but you don't do the payday lending do you?
[5/15/2014 1:54:56 PM] mediabeepmir: i can update those for you
[5/15/2014 1:55:09 PM] mediabeepmir: also i buy data from different vendor
[5/15/2014 1:56:33 PM] Mike Brown: ok the vendor you buy data from do they disclose your business name in the telemarketing disclosure? Need to make sure its there too. TCPA and FTC are very strict...
[5/15/2014 1:57:32 PM] mediabeepmir: I guess not since im buying old aged data not realtime
[5/15/2014 2:02:42 PM] Mike Brown: what % of the calls are on old aged data without the optin? We can only work on the optin data with the proper disclosure
[5/15/2014 2:06:29 PM] mediabeepmir: ok if that is the case we can setup that way
[5/15/2014 2:06:34 PM] mediabeepmir: so we are compliant
[5/15/2014 2:19:04 PM] mediabeepmir: I can add the disclosure and optin
[5/15/2014 4:48:12 PM] Tom Fragala: mike?
[5/16/2014 7:23:37 AM] mediabeepmir: Hi mike and TOM
[5/16/2014 8:07:50 AM] mediabeepmir: im anxious to know if there's any possibilities for us to work toghether on paydaybureau
[5/16/2014 11:42:56 AM] Mike Brown: Once you add the proper disclosures we can work together on the PaydayBureau offer. I should also tell you we are in the middle of switching the offer from credit card to ACH so we won't be ready to start with the offer till the changes are completed which could be a few weeks
[5/16/2014 11:43:34 AM] mediabeepmir: should work

12/11/17, 11:19 AM

Re: Suspicious activity.

**Subject:** Re: Suspicious activity.
**From:** Brent Brague <brent@boostnetworks.com>
**Date:** 8/27/13, 10:38 AM
**To:** Mike Brown <mike@myscore360.com>

Let's have a call later today to review everything.  Then I will go to the pubs and correct any issues and sources of Fraud.

Brent Brague

Office –801-252-5017
Skype - MojoBrent
Email – brent@boostnetworks.com
http://www.linkedin.com/in/brentbrague


Sign up link : http://boost.affiliate-reporting.com


**From:** Mike Brown <mike@myscore360.com>
**Date:** Monday, August 26, 2013 10:50 PM
**To:** Brent Brague <brent@boostnetworks.com>
**Subject:** Re: Suspicious activity.

Same fraudster just ordered on 279423


On Mon, Aug 26, 2013 at 5:33 PM, Mike Brown <mike@myscore360.com> wrote:
    Sorry I mean only sales on or after 8/22. The 3 before that date for 277790 are legit


    On Mon, Aug 26, 2013 at 5:14 PM, Mike Brown <mike@myscore360.com> wrote:
    Can we reach out to 280015 and 277790 to find out how they are doing sales? Lets stop all their sales and this is my notice now to charge them back.

    I just got two fraud alerts (real time fraud chargeback alert) from this affiliate and after further inspection I can say with very high confidence these are all stolen credit cards.

    After seeing the fraud alerts I then see some sales thru known proxies and all credit card AVS mis-match plus the caps. Both these affiliates appear to be the same exact type and maybe even the same person trying to hide under subid's

    Thanks,
    Mike


── B460E796-BE77-443F-B23E-82365D16579A[235].png ──────────────────────────



12/1/17, 8:57 PM

Re: Suspicious activity.

# BOOSTNETWORKS

— Attachments: ——————————————————————————————

B460E796-BE77-443F-B23E-82365D16579A[235].png                    4.8 KB

New integration going live

**Subject:** New integration going live
**From:** Mike Brown <mike@myscore360.com>
**Date:** 4/7/16, 2:21 AM
**To:** Diego Munoz <diego@myscore360.com>, David Rojas <darb714@gmail.com>

We are excited to announce we have a new integration going live next week with a select few major banks. Now when a customer calls their bank to question or dispute a charge the supporting banks can see the users account detail in CST to confirm the customers charge is valid and not "friendly fraud". This works both ways and allows banks to easily and correctly identify actual true fraud.

Please note we will be sharing with the bank all the account details going forward including CST notes so please make sure our notes are professional. Agents should be aware their the notes can be reviewed by other companies and we want to make sure our company always always looks positive. Following correct process and procedures and always helping the customers.

As always we never want to prevent customers from calling their banks so de-escalating and resolving the call is a priority even if the customer may not beable to get the result they want.

We will frequently be adjusting the refund procedures and chargeback processing procedures the next few months as we optimize these new integrations so appreciate the teams ability to quickly adapt to new polices! Keep up the great work you guys are doing a great job

Thanks
Mike



| **From:** | Michele Evans |
|---|---|
| **Sent:** | Wednesday, May 20, 2015 1:32 PM |
| **To:** | Eric Babcock; Shayna Cavalieri |
| **Cc:** | James Rohman |
| **Subject:** | RE: Reporting - Free Trial Merchant Review |
| **Attachments:** | Free Trial Merchant Review 05202015.xlsx |

Hi Eric,
Please find attached the Free Trail Merchant Review Report.
When you get a chance please look over the information and let me know if you have any questions or concerns.
Thank you
Michele



**Michele Evans** | Data Analyst, Data Management
320 Cumberland Ave | Portland, ME 04101
t: 207.228.6000 x1665 | tf: 877.877.3737
mevans@powerpay.biz | www.powerpay.biz

**Notice of Confidentiality** - This electronic mail message originates from PowerPay, LLC. This message and any files or attachments transmitted with it are CONFIDENTIAL and intended only for the named recipient. Both the email message and any attachments have been transmitted based on a reasonable expectation of privacy. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this in error, please advise the sender by immediate reply and delete the original message and any attachments immediately.

---

**From:** Michele Evans
**Sent:** Wednesday, May 20, 2015 12:03 PM
**To:** Eric Babcock; Shayna Cavalieri
**Cc:** James Rohman
**Subject:** RE: Reporting - Free Trial Merchant Review

Hi Eric,
Thank you for the update.
I just located the information from the prior report and should be able to get you the information later today.
However I will for sure reach out if I need anything at all.
Thank you
Michele



**Michele Evans** | Data Analyst, Data Management
320 Cumberland Ave | Portland, ME 04101
t: 207.228.6000 x1665 | tf: 877.877.3737
mevans@powerpay.biz | www.powerpay.biz

**Notice of Confidentiality** - This electronic mail message originates from PowerPay, LLC. This message and any files or attachments transmitted with it are CONFIDENTIAL and intended only for the named recipient. Both the email message and any attachments have been transmitted based on a reasonable expectation of privacy. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this in error, please advise the sender by immediate reply and delete the original message and any attachments immediately.

---

**From:** Eric Babcock
**Sent:** Wednesday, May 20, 2015 12:02 PM
**To:** Shayna Cavalieri
**Cc:** Michele Evans; James Rohman
**Subject:** RE: Reporting - Free Trial Merchant Review

Michele,

This is a report you've run previously. I attached to the ticket but let me know if there are questions. Thanks.


**EXHIBIT**
McKelvey
25
12/14/17 sct



**Eric Babcock** | Vice President of Credit Services
320 Cumberland Ave | Portland, ME 04101
t: 207.228.6000 x 1128 | tf: 877.877.3737 x 1128 | f: 207.228.6052
ebabcock@powerpay.biz | www.powerpay.biz

**Notice of Confidentiality** - This electronic mail message originates from PowerPay, LLC. This message and any files or attachments transmitted with it are CONFIDENTIAL and intended only for the named recipient. Both the email message and any attachments have been transmitted based on a reasonable expectation of privacy. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this in error, please advise the sender by immediate reply and delete the original message and any attachments immediately.

**From:** Shayna Cavalieri
**Sent:** Wednesday, May 20, 2015 11:58 AM
**To:** Eric Babcock
**Cc:** Michele Evans; James Rohman
**Subject:** RE: Reporting - Free Trial Merchant Review

Thanks Eric. Okay.

Michele, do you have time to review and see if we have questions for Eric?

Shayna



**Shayna Cavalieri** | Project Manager
320 Cumberland Ave | Portland, ME 04101
t: 207.228.6000 x 1771 | tf: 877.877.3737 x 1771
scavalieri@powerpay.biz | www.powerpay.biz

**Notice of Confidentiality** - This electronic mail message originates from PowerPay, LLC. This message and any files or attachments transmitted with it are CONFIDENTIAL and intended only for the named recipient. Both the email message and any attachments have been transmitted based on a reasonable expectation of privacy. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this in error, please advise the sender by immediate reply and delete the original message and any attachments immediately.

**From:** Eric Babcock
**Sent:** Wednesday, May 20, 2015 11:53 AM
**To:** Shayna Cavalieri
**Cc:** Michele Evans; James Rohman
**Subject:** RE: Reporting - Free Trial Merchant Review

Thanks. Ideally within the next day or two if possible.



**Eric Babcock** | Vice President of Credit Services
320 Cumberland Ave | Portland, ME 04101
t: 207.228.6000 x 1128 | tf: 877.877.3737 x 1128 | f: 207.228.6052
ebabcock@powerpay.biz | www.powerpay.biz

**Notice of Confidentiality** - This electronic mail message originates from PowerPay, LLC. This message and any files or attachments transmitted with it are CONFIDENTIAL and intended only for the named recipient. Both the email message and any attachments have been transmitted based on a reasonable expectation of privacy. Any disclosure, distribution, copying, or use of this information by anyone other than the intended recipient, regardless of address or routing, is strictly prohibited. If you receive this in error, please advise the sender by immediate reply and delete the original message and any attachments immediately.

**From:** Shayna Cavalieri
**Sent:** Wednesday, May 20, 2015 11:42 AM
**To:** Eric Babcock
**Cc:** Michele Evans; James Rohman
**Subject:** FW: Reporting - Free Trial Merchant Review

Hi Eric,

Thanks for your reporting request. We have received it and will review.

I see you marked this as priority 4 (relatively high). Any date in particular you were hoping to have this report by?

Thank you,
Shayna

**From:** Project Management [mailto:sharepoint@powerpay.biz]
**Sent:** Wednesday, May 20, 2015 11:36 AM
**To:** Shayna Cavalieri
**Subject:** Reporting - Free Trial Merchant Review

Project Management

# *Free Trial Merchant Review* has been added

Modify my alert settings   View Free Trial Merchant Review   View Reporting

| | |
|---|---|
| **Title:** | Free Trial Merchant Review |
| **Requested By:** | Eric Babcock |
| **Report Recipients:** | Eric Babcock |
| **Report Description & Specifications:** | Need to replicate a previous report showing all open accounts with the free trial indicator checked in Mercury on the Business Overview tab. The previous ticket # was 15194 and attached is a copy of the report. |
| **Business Case:** | Risk is investigating existing merchants who have a free trial business model. |
| **Where should the report be displayed?:** | Excel |
| **Frequency:** | One Time |
| **Priority:** | 4 |
| **Status:** | Requested |
| **Update Notes:** | |