UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION<br>Plaintiff, | § § § | Case No. 17-cv-194 |
| v. | § § § | Judge Kennelly |
| CREDIT BUREAU CENTER, LLC, *et al.*, | § § § | |
| Defendants. | § | Magistrate Judge Valdez |

## SUPPLEMENTAL DECLARATION OF JONATHAN SLOTTER IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**JONATHAN SLOTTER,** under the penalty of perjury and in accordance with 28 U.S.C. §1746, states and declares that the following is true and correct:

1. I am a licensed attorney in the State of Texas and work with Steve Cochell on this case at the Cochell Law Firm, P.C. Because Michael Brown is prohibited from access to customer information and data from Credit Bureau Center, I have reviewed and become familiar with the database as well as the MY SQL application that retrieves the information from the database.

2. Mr. Brown has also been denied access to customer recordings because they have been classified "Attorneys Eyes Only" by the FTC due to confidential customer information.

3. A question has been raised about the calculations previously disclosed to the FTC in discovery. This is to more fully explain the process by which the calculations were made. It is important to note that each calculation required substantial time to discuss and determine the formulas and time required for computing due to the size of the data base and relative capability of my laptop computer. I will address each calculation which is supported by data provided to the FTC in discovery to replicate our calculations. The discovery represented by "CBC/BRO" standing for CBC and Brown followed by the control number.

1

a. **Number of Customers.** Brown provided a formula to input to determine the number of customers retained by Revable consumers. The best way to calculate this number was to first find the number of Revable consumers who asked for a refund, 21,816, and then find the number of Revable consumers (narrowed by source code 35) who had either obtained a reduction in membership price changed, renewal date extended, or had a call note indicating "retained." CBC/BRO296 is a control number for the document disclosed to the FTC with the formula run to determine the above. For 2015 and 2016, CBC retained 13,400 Revable consumers. CBC/BRO 2205-2206.

b. **Percentage Of CBC Customers Who Cancelled During The Trial Period.** Brown provided a formula to determine the numbers from the data base. This number was calculated by taking the entire number of CBC members (296,415) and subtracting the number of users billed (165,165) from it. CBC/BRO 406-407. That number calculates to 131,290 members who signed up for CBC services, but never received a bill, i.e. indicating these people cancelled before they were billed. Dividing 131,290 into 296,415 shows that 43% of people who signed up for CBC services cancelled during the trial period.

c. **Not All Revable Consumers Were Refunded.** Notes were taken by Customer Service Representatives in order to show which customers did not receive refunds within the database. A search formula provided by Brown was conducted to determine the amount of money refunded based on the number of notes for "no refund" or "no refund requested" or "no refund asked" or "no refund was asked" and associate those notes with source code 35, in which it outputs $45,183.45. The database was able to reconcile this information and obtain the total amount spent over the lifetime of the membership of these customers. Exhibit 15, Brown Declaration, Docket 206-1.

d. **Percentage of Consumers who Received Refunds.** Brown had previously given me a formula to find the consumers who did not receive refunds through the call notes in the database. The formula was given to the CBC in discovery and has the control number of CBC/BRO 397. However, this screenshot does not show the number of rows that the database returned. Each row indicates a consumer. I ran the formula again and captured via a screen shot the formula and the row output. **Exhibit 1.** It is identical to that of CBC/BRO 397.

4. Additionally, I had to search through Lloyd's email "frasertrug@gmail.com" in order to determine what domain names Lloyd was using to send emails to consumers. Brown was unable to search himself because he is unable to view anything with customer data. I downloaded the "Thunderbird" application and transferred the frasertrug@gmail.com ".mbox" data to Thunderbird. Once downloaded, I searched the following domain names to see how many emails were associated with each:

2

    a. Brown investigated Lloyd's real estate website via the domain name in an email he received from the BBB or another source. Because Mike cannot access Andrew Lloyd emails due to the Court's protective order, I had to search the domain name "tourshoppeb.site" in Lloyd's sent emails via a software application known as Thunderbird, which reconstructed Lloyd's email box. The domain name "tourshoppeb.site" was a domain name of the emails sent by Lloyd to consumers regarding their inquiries into Craigslist real estate ads. I determined that 81mails were sent by Lloyd with the domain name "tourshoppeb.site" during the relevant time period of this lawsuit.

    b. The FTC questioned whether or not Lloyd sent emails from "RentFind." A search of "RentFind" in the Thunderbird search bar reveals that 2,482 emails were sent from the "RentFind" domain.

5. A question has been raised by the FTC regarding the "pre-existing" websites for CBC. An oversight by the defense counsel led to these websites not being attached to Michael Brown's Declaration. These websites are now attached to Brown's Supplemental Declaration. **Ex. G, Michael Brown Supp. Declaration, April 20, 2018 Ex. 1, at 1.**

6. This is a summary of my testimony. I reserve the right to supplement or clarify my testimony if called as a witness at hearing or trial.

Executed on April 20, 2018

                                                  Jonathan L. Slotter

3

