UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
| Plaintiff, | ) Case No. 17-cv-194 |
| v. | ) Judge Kennelly |
| CREDIT BUREAU CENTER, LLC, *et al.*, | ) Magistrate Judge Valdez |
| Defendants. | ) |

**FEDERAL TRADE COMMISSION'S REPLY IN SUPPORT
OF MOTION FOR AMENDED JUDGMENT AND OTHER RELIEF**

The FTC brought this motion to get relief for Defendants' victims, the agency's consistent objective since filing this case in January 2017. As explained there, because Defendants violated the Restore Online Shoppers' Confidence Act ("ROSCA"), as confirmed by the Court of Appeals, consumers are entitled to get their money back, or what's left of it—about $1.1 million out of the $5.2 million Defendants pocketed from their use of fake apartment rental ads, bogus landlord emails, and deceptive negative-option websites. Defendants have responded to the FTC's motion with a raft of arguments we discuss below, but the bottom line is Defendants simply want to keep consumers' money. As shown below, none of Defendants' arguments withstand scrutiny. The remaining funds should go back to the injured consumers, not back in the scammers' pockets.

**I.   The Court should amend its judgment under Federal Rules of Civil Procedure 59(e) and 54(c) to provide consumer redress based on Defendants' ROSCA violations.**

The FTC won this case on the merits, but after entry of judgment in its favor, and Defendants' appeal, the law on the Commission's ability to obtain monetary relief changed

1

dramatically. Both the Seventh Circuit in this case and the Supreme Court in a separate case held that Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), which courts for over 30 years had universally recognized as authorizing monetary relief, did not actually do so. *FTC v. Credit Bur. Cen.*, 937 F.3d 764, 767 (7th Cir. 2019); *AMG Cap. Mgmt. v. FTC*, 141 S. Ct. 1341, 1344 (2021). Yet despite that, Section 5 of ROSCA, 15 U.S.C. § 8404(a), and Section 19 of the FTC Act, 15 U.S.C. § 57b, provide an independent statutory basis for refunding consumers who were swindled by Defendants here. Accordingly, as explained in the FTC's motion and below, this Court should amend its judgment to grant consumers the relief to which they are legally entitled under those provisions of law, as authorized by Federal Rules of Civil Procedure 59(e) and 54(c).

      A.      **The FTC's motion is not barred by "unclean hands."**

Defendants concede in their response that their ROSCA violations are fully established and that ROSCA and Section 19 provide consumer redress for such violations. Defendants nonetheless argue that they should get to keep the money they bilked from consumers because the FTC purportedly has "unclean hands" from relying on decades of uniform caselaw to obtain monetary relief for defrauded consumers under Section 13(b). Defendants are simply wrong.

This Court's summary judgment order and its original judgment properly followed binding circuit precedent that monetary relief was available under Section 13(b). At the time, there was no contrary authority in any circuit. It has been axiomatic since *Marbury v. Madison* that federal courts determine the meaning of federal laws, 1 Cranch 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is."), and their decisions must be followed unless and until they are overturned. Making successful arguments

2

that federal courts consistently accepted about the scope of Section 13(b) does not somehow give the FTC "unclean hands."[1]

Nor did the questions and comments of Justices at the *AMG* oral argument that Defendants quote in their brief suggest that the FTC had unclean hands in making arguments based solidly in existing law. First, as this Court observed earlier in this case, questions at oral argument have no precedential significance. Dkt. 183 at 3, Order Denying Mot. To Modify Prelim. Inj. In *AMG*, moreover, the Justices were questioning counsel in order to decide a single narrow issue: "whether [Section 13(b)] authorizes the Commission to seek, and a court to award, equitable monetary relief such as restitution or disgorgement." 141 S. Ct. at 1344. The Supreme Court decided "that § 13(b) as currently written does not grant the Commission authority to obtain equitable monetary relief," but added that, "Nothing we say today … prohibits the Commission from using its authority under § 5 and § 19 to obtain restitution on behalf of consumers." *Id.* at 1352.

Based on *AMG*, and all the proceedings in this case, the relief sought in the FTC's motion is fully justified. This Court previously found that Defendants violated ROSCA and "caused customers to lose millions of dollars on an unwanted service." *FTC v. Credit Bur. Cen.*, 325 F. Supp. 3d 852, 862-64, 867 (N.D. Ill. 2018). On appeal, Defendants challenged their liability

---

[1] To support their "unclean hands" argument, Defendants rely on cases denying equitable relief due to serious misconduct. *See* Dkt. 277 at 18, Def. Resp., p. 13, citing *Mercoid Corp. v. Mid-Continent Inv.*, 320 U.S. 661, 670 (1944) (holding injunction improper where it would advance "scheme" in violation of antitrust laws); *Precision Instr. Mfg. v. Auto. Maint. Mach.*, 324 U.S. 806, 816-20 (1945) (affirming dismissal of equitable claims tainted by perjury and fraud). In this case, by contrast, the Court entered, and the Court of Appeals affirmed, a permanent injunction to restrain Defendants from further violations of ROSCA and other laws. The only misconduct here is Defendants'.

3

under ROSCA and lost. *Credit Bur. Cen.*, 937 F.3d at 769-70. As a result, Defendants' victims are entitled to redress under ROSCA and Section 19, as authorized by Rules 59(e) and 54(c).

### B. Relief is appropriate under Rule 59(e).

Defendants also are wrong in asserting that because this case was not remanded after their appeal, the Court now lacks the authority under Rule 59(e) to enter an amended judgment granting monetary relief for Defendants' ROSCA violations. The Seventh Circuit has made clear that even in the absence of a remand, district courts have jurisdiction under Rule 59(e) or Rule 60(b) to address a change in controlling law. *Kathrein v. Evanston*, 752 F.3d 680, 688 & n.5 (7th Cir. 2014).[2] And as explained in our motion, it is well established that a change in controlling law is grounds for relief under Rule 59(e). *See Romo v. Gulf Stream Coach*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001); *see also Bryant v. New Jersey Dept. of Transp.*, 998 F. Supp. 438, 441-43 (D.N.J. 1998) (granting relief under Rule 59(e) based on recent Supreme Court decision); *Quinones-Ruiz v. U.S.*, 873 F. Supp. 359, 361-62 (S.D. Cal. 1995) (finding defendant was entitled to opportunity under Rule 59(e) to make argument based on change in controlling law).

Defendants insist, however, that this settled rule has no application here, where the Seventh Circuit changed the law in this very case, as opposed to some different case. See Dkt. 277 at 17, Def. Resp., p. 12 ("[T]here can be no 'intervening change in the law' because there was no intervening case 'outside' this case."). Not surprisingly, Defendants cite no authority for this curious proposition other than a treatise explaining that "[p]erhaps the most obvious justifications for departing from the law of the case arise when there has been an intervening

---

[2] As stated in *Engel Indus. v. Lockformer*, cited by Defendants, "a judgment that does not specifically provide for a remand speaks only to the issues incorporated in the mandate [and] is not necessarily incompatible with further proceedings to be undertaken in the district court." 166 F.3d 1379, 1383 (Fed. Cir. 1999).

4

change of law outside the confines of the particular case." 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.). But this does not mean the change in law must *always* occur in a separate case, or in any case at all, since the law may also change in other ways, including through legislation. *See, e.g., Grigsby v. Barnhart*, 294 F.3d 1215, 1219 & n.4 (10th Cir. 2002). What matters here is that the law applicable to monetary relief under the FTC Act changed dramatically in this circuit— after the FTC won at summary judgment and the appeal was argued—as a result of the Seventh Circuit's decision overturning over 30 years of precedent[3] and the Supreme Court's decision reaching the same conclusion in *AMG*.[4]

Accordingly, as explained in the FTC's motion, the change in the controlling law in this case justifies relief under Rule 59(e) to ensure that Defendants' victims get back what remains of their money. *See Cont. Cas. Co. v. Howard*, 775 F.2d 876, 883 (7th Cir. 1985) ("A motion to amend the judgment under [Rule] 59(e) is appropriate if the court in the original judgment has failed to give relief on a claim on which it has found that the party is entitled to relief.").

      **C.**     **Relief is appropriate under Rule 54(c).**

In contesting the application of Rule 54(c) here, Defendants rely on cases indicating that the rule may not be used to advance new legal theories, *e.g., Old Rep. Ins. v. Emp. Reins.*, 144

---

[3] As the Seventh Circuit explained in *Kathrein*, a change in the law may come "from this very court sitting *en Banc*," because "the full court has the power to change general rules stated in previous cases." 752 F.3d at 685-86 (cleaned up). Circuit panels also have the power, as exercised in this case, to overrule circuit precedent without *en banc* review by circulating their decision under Circuit Rule 40(e). *Credit Bur. Cen.*, 937 F.3d at 767 n.1.

[4] If an intervening decision in a separate case were somehow required, which it is not, *AMG* is that separate case here, as it really is the decision that changed the law while the FTC's cert. petition in this case was pending.

F.3d 1077, 1080 (7th Cir. 1998),[5] but the FTC is not advancing a new legal theory in the instant motion. Indeed, the FTC has already proven Defendants' ROSCA violations, and the Seventh Circuit has affirmed that aspect of the Court's judgment. *Credit Bur. Cen.*, 937 F.3d at 769-70. The type of relief under the amended judgment would remain the same: restitution to Defendants' victims. *Id.* at 771, 774-75 (citing Section 19, 15 U.S.C. § 57b). Defendants had every opportunity to develop evidence contesting that relief throughout this litigation and fully opposed it at summary judgment.

In particular, the FTC's complaint sought consumer redress for Defendants' violations of ROSCA not just pursuant to Section 13(b), but also pursuant to Section 5 of ROSCA, which specifies that violations of ROSCA are rule violations and incorporates the full text of Section 19. *See* Dkt. 1 at 22, Prayer for Relief; 15 U.S.C. § 8404(a).[6] Section 19 authorizes consumer redress for rule violations. 15 U.S.C. § 57b(a)(1) & (b); *Credit Bur. Cen.*, 937 F.3d at 773. Indeed, the FTC's prayer for relief used specific language (*e.g.*, rescission or reformation of contracts, the refund of money) from Section 19(b) in describing the relief sought. Dkt. 1 at 22.

---

[5] Defendants' reliance on *Pearson v. Fair*, 935 F.2d 401, 414 (1st Cir. 1991), is wholly misplaced. In *Pearson*, the First Circuit affirmed denial of relief to the plaintiffs under Rule 54(c) because they lost on the merits and "were not entitled to *any* relief." *Id.* (emphasis in original). The opposite occurred here. The FTC fully prevailed on the merits in the district court and on appeal and is therefore entitled to relief under Rule 54(c).

[6] Section 5(a) of ROSCA states in full: "Violation of this chapter or any regulation prescribed under this chapter shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act (15 U.S.C. 57a) regarding unfair or deceptive acts or practices. The Federal Trade Commission shall enforce this chapter in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act (15 U.S.C. 41 et seq.) were incorporated into and made a part of this chapter." 15 U.S.C. § 8404(a).

The FTC's motion seeks the proper relief for Defendants' ROSCA violations, precisely what Rule 54(c) provides.

Defendants cite authority that relief under Rule 54(c) should not be granted if it would prejudice the opposing party, *e.g.*, by substantially increasing their liability. *See Kraszuk v. Bakery & Confect. Union*, 791 F.2d 548, 559 (7th Cir. 1986); *see, e.g., Stewart v. Furton*, 774 F.2d 706, 708, 710 (6th Cir. 1985) (affirming denial of damages under Rule 54(c) where defendant went to trial without an attorney because complaint sought only injunctive relief). But these cases are inapposite because the FTC is seeking the <u>same</u> amount of monetary relief as before, which was fully litigated. *Credit Bur. Cen.*, 325 F. Supp. 3d at 869-70.

Defendants argue that they were "lulled" by the absence of any citation to Section 19 and thereby deprived of the opportunity to make a realistic appraisal of their case, but they fail to identify anything they were "lulled" into doing or not doing, and do not show any actual prejudice. Defendants admit they knew early in these proceedings (in 2017) that consumer redress was available under Section 19, and that the FTC was seeking to recover the full amount consumers lost to their scheme. Dkt. 277 at 13, Def. Resp., p. 8; Dkt. 277-1 at 158, 161-62 (FTC's initial and supplemental disclosures). Defendants do not claim there is some factual basis they could have developed to oppose the FTC's request for monetary relief had the agency focused solely on ROSCA or Section 19 as opposed to Section 13(b). Nor do Defendants deny they had a full opportunity to oppose, and did oppose, the same monetary relief under Section 13(b) at summary judgment, and under ROSCA and Section 19 in opposing this motion.

Defendants also claim they were entitled to administrative adjudication, but this is wrong. *See U.S. v. JS & A Grp.*, 716 F.2d 451, 456-57 (7th Cir. 1983) (holding that Section 13(b)'s

7

"permanent injunction" proviso creates a direct action in federal court in lieu of administrative proceedings); *FTC v. U.S. Oil & Gas*, 748 F.2d 1431, 1434-35 (11th Cir. 1984) (same); *FTC v. H.N. Singer*, 668 F.2d 1107, 1110-11 (9th Cir. 1982) (same). Indeed, the argument is foreclosed by prior proceedings in this very case, as the Court of Appeals affirmed the permanent injunction under Section 13(b) despite the absence of administrative proceedings, *Credit Bur. Cen.*, 937 F.3d at 767, 771, 786, and Defendants' petition for certiorari seeking to overturn circuit precedent on this issue was denied. *See Credit Bur. Cen. v. FTC*, No. 19-914 (petition for certiorari filed Jan. 20, 2020; order denying petition dated July 9, 2020).

### D. Alternatively, the Court has discretion to deem the complaint amended to cite Section 19.

As the FTC explained in its motion, while formal amendment of the complaint is unnecessary because the FTC sought monetary relief under ROSCA, the Court also has discretion to deem the complaint amended to cite Section 19 because the issue of monetary relief was fully litigated. Dkt. 275 at 11, Mot., p.11.[7] Defendants respond to this point only by arguing, without citing any support, that "nothing in the legislative history" suggests ROSCA incorporates Section 19. Dkt. 277 at 23, Def. Resp., p. 18. But ROSCA does so explicitly in its text, and Defendants do not claim otherwise. *See* 15 U.S.C. § 8404(a).

### E. The relief sought in the FTC's motion is fully consistent with the law of the case and the Seventh Circuit's mandate.

As explained in *Moore v. Anderson*, cited by Defendants, the law of the case doctrine, and the closely related "mandate rule," require the district court "to comply with the express or

---

[7] Formal amendment of the complaint also is not necessary for relief under Rule 54(c). *See, e.g., Frank v. Walker*, 819 F.3d 384, 387-88 (7th Cir. 2016); *Engel v. Teleprompter*, 732 F.2d 1238, 1242 (5th Cir. 1984).

implied rulings of the appellate court." 222 F.3d 280, 283 (7th Cir. 2000) (cleaned up). The mandate, however, "is only controlling as to matters within its compass," and determining "what issues were actually decided by the mandate … require[s] a careful reading of the reviewing court's opinion." *Id.* (cleaned up). "Put simply, the law of the case does not extend to issues an appellate court did not address." *Id.* at 284 (cleaned up); *see also* 18B Fed. Prac. & Proc. Juris. § 4478 (2d ed.) ("Actual decision of an issue is required to establish the law of the case."). In *Moore*, in fact, the court of appeals held that the trial court had read its mandate from a prior appeal too broadly and should have addressed a change in controlling law. 222 F.3d at 283-84.

Applying these principles here, it is clear that the relief sought in the FTC's motion complies with the mandate rule. The mandate here is what the Court of Appeals decided, *i.e.*, that monetary relief is unavailable under Section 13(b). The court did not decide, expressly or by implication, that relief under Section 19 for Defendants' ROSCA violations is unavailable in this case. On the contrary, the court expressly acknowledged that monetary relief is available for rule violations under Section 19, *see Credit Bur. Cen.*, 937 F.3d at 773 ("[W]hen someone engages in conduct prohibited by a rule, the FTCA authorizes 'such relief as the court finds necessary …, [including] *the refund of money or return of property*.' § 57b(b).") (emphasis in original), as did the Supreme Court in *AMG*. 141 S. Ct. at 1352 ("Nothing we say today … prohibits the Commission from using its authority under § 5 and § 19 to obtain restitution on behalf of consumers."). Thus, granting the appropriate relief for Defendants' ROSCA violations under Section 19, as this Court is authorized to do under Rules 59(e) and 54(c), is fully consistent with and effectuates the Seventh Circuit's mandate.[8]

---

[8] *See, e.g., Penn. Chiro. v. Blue Cross*, 188 F. Supp. 3d 776, 788 (N.D. Ill. 2016) (Kennelly, J.) (appellate court's opinion and mandate on ERISA plan did not preclude consideration of discovery

9

After first overreading the scope of the Seventh Circuit's mandate, Defendants next assert that the "mandate rule" extends even to issues not decided by the court of appeals if those issues could have been raised during the appeal. Again, Defendants are wrong. To begin with, any such broader version of the mandate rule is inapplicable here because the FTC was the appellee before the Seventh Circuit, defending a judgment supported by decades of precedent, and was not required to raise every possible ground for affirmance. As the Seventh Circuit has explained, "the failure of an appellee to have raised all possible alternative grounds for affirming the district court's original decision, unlike an appellant's failure to raise all possible grounds for reversal, should not operate as a waiver [because] urging … alternative grounds for affirmance is a privilege rather than a duty." *Schering Corp. v. Illinois Antib.*, 89 F.3d 357, 358 (7th Cir. 1996); *accord Walker*, 819 F.3d at 387; *Thayer v. Chiczewski*, 705 F.3d 237, 247 (7th Cir. 2012).[9]

Additionally, the mandate rule is not "hard and fast," and has well-recognized exceptions, including "an intervening change in the law" like the change that occurred here. *Kathrein*, 752

---

sanctions); *Frank v. Walker*, 819 F.3d 384, 385-87 (7th Cir. 2016) (appellate court's opinion and mandate on statewide challenge to voter ID law did not preclude consideration of law's impact on particular voters). By contrast, cases cited by Defendants are inapposite because the relief requested in those cases was inconsistent with the court of appeals' decision or express instructions on remand. *See, e.g., Kovacs v. U.S.*, 739 F.3d 1020, 1024-25 (7th Cir. 2014) (district court could not reinstate damages the court of appeals had ruled were time-barred); *Barrow v. Falk*, 11 F.3d 729, 730 (7th Cir. 1993) (district court improperly awarded fees at $135 per hour despite remand directing lower rate); *JTH Tax v. Aime*, 984 F.3d 284, 291-92 (4th Cir. 2021) (district court could not consider disgorgement theory contradicting facts determined by court of appeals); *U.S. v. Rivera-Martinez*, 931 F.2d 148, 150-52 (1st Cir. 1991) (district court should not have reopened plea hearing after appellate court ruled defendant could not retract guilty plea).

9     *See also Indep. Park Apts. v. U.S.*, 449 F.3d 1235, 1240 (Fed. Cir. 2006) ("As appellee, the government was not required to raise all possible alternative grounds for affirmance in order to avoid waiving any of those grounds."); *Yesudian v. Howard Univ.*, 270 F.3d 969, 971 (D.C. Cir. 2001) ("[A]ny forfeiture from failure to raise an issue in an initial appeal is far from absolute, especially where, as here, the party failing to present the issue was the appellee, defending on a field of battle defined by the appellant.").

F.3d at 685; *see EEOC v. Sears*, 417 F.3d 789, 796 (7th Cir. 2005). None of the cases on which Defendants rely involved such a change in controlling law, except for *Moore*, which reversed an overbroad reading of the mandate. 222 F.3d at 283-84. Similarly, here, given the change in the law, the mandate rule does not bar the Court from exercising its discretion under Rules 59(e) and 54(c) to grant the relief to which consumers are entitled under ROSCA and Section 19.

      **F.**     **Defendants' waiver arguments also fail.**

For two independent reasons, Defendants also are wrong in asserting that the waiver doctrine entitles them to keep their victims' money in these circumstances. First, Rule 54(c) prevents the waiver or forfeiture of appropriate relief. "[Rule] 54(c) requires courts to award the relief to which the prevailing party is entitled, even if that party did not request the relief or relied on the wrong statute." *Travis v. Gary Com. Men. Health*, 921 F.2d 108, 112 (7th Cir. 1990).[10]

Second, the legal standards for waiver and forfeiture are not met here. Waiver is an intentional relinquishment or abandonment of a known right. *Bourgeois v. Watson*, 977 F.3d 620, 629 (7th Cir. 2020). "Only if a [party] chooses, as a matter of strategy, not to present an argument will that argument be deemed waived." *U.S. v. Anderson*, 866 F.3d 761, 764 (7th Cir. 2017) (cleaned up). The FTC did not intentionally relinquish or abandon its right to consumer redress for Defendants' violations of ROSCA. As discussed above, *see supra,* I.C, the FTC's complaint sought consumer redress for Defendants' ROSCA violations pursuant to Section 13(b)

---

[10]    *See also Williamson v. Handy Button,* 817 F.2d 1290, 1298 (7th Cir. 1987) ("Rule 54(c) was designed to divorce the decision what relief to award from the pleadings and arguments of counsel; the court is to determine, and award, the right relief in each case even if the complaint is silent on the question."); *see also Rocket Jewelry v. Quality Int'l*, 90 Fed.Appx. 543, 547 (Fed. Cir. 2004) (prejudgment interest and permanent injunction not waived under Rule 54(c)); *Robinson v. Lorillard*, 444 F.2d 791, 802-03 (4th Cir. 1971) (back pay award not waived under Rule 54(c)).

<u>and</u> Section 5 of ROSCA, which incorporates Section 19. Cross-referencing Section 19 in the complaint was unnecessary because, under decades of settled precedent in this and every other circuit to consider the issue, consumer redress was available under Section 13(b) for violation of "any provision of law enforced by the [FTC]," including ROSCA.[11] The FTC, moreover, gained no strategic advantage by not citing Section 19, which provides precisely the same monetary relief that the FTC sought in its complaint and the Court awarded to the FTC at summary judgment. *See, e.g., AMG*, 141 S. Ct. at 1351-52 (finding that Section 19(b) authorizes restitution); *Credit Bur. Cen.*, 937 F.3d at 771, 774-75 (same).[12]

In the absence of any waiver, the related doctrine of forfeiture also does not block this Court from granting redress to Defendants' victims. Forfeiture is the failure to raise a timely argument due to inadvertence, neglect or oversight. *Watson*, 977 F.3d at 629. The FTC did not forfeit its right to consumer redress under ROSCA by not citing Section 19 because ROSCA incorporates Section 19. A forfeiture, in any event, may be excused when asserted against an appellee like the FTC here, *Yesudian*, 270 F.3d at 971, or when the forfeiture would adversely affect innocent third parties. *Watson*, 977 F.3d at 631. In this case, barring recovery under

---

[11] 15 U.S.C. § 53(b). Indeed, both the Seventh Circuit and Supreme Court stressed this point in overruling circuit precedent on Section 13(b). *See Credit Bur. Cen.*, 937 F.3d at 774 ("Reading an implied restitution remedy into section 13(b) makes [Section 19] largely *pointless*.") (emphasis added); *id.* at 775 ("As we've explained, the Commission's reading of section 13(b) effectively *nullifies* [Section 19].") (emphasis added); *AMG*, 141 S. Ct. at 1347 (use of Section 13(b) to obtain monetary relief was "effectively bypassing the process set forth in § 5 and § 19"); *id.* at 1349 ("[T]he Commission's broad reading would allow it to use § 13(b) as a substitute for § 5 and § 19").

[12] Defendants cannot and do not contend that the 3-year statute of limitations under Section 19, *see* 15 U.S.C. § 57b(d), posed any issue in this case given that Defendants' law violations go back less than 3 years. As the record shows, the FTC filed this case on January 10, 2017 (Dkt. 1) and calculated monetary relief based on Defendants' revenue from traffic Defendant Pierce drove to their websites beginning on January 16, 2014 when Pierce started working with Defendants. Dkt. 11-3 at 53, McKenney Dec. ¶ 33(d).

ROSCA and Section 19 would block refunds to innocent victims and leave their money in the hands of proven fraudsters. Any forfeiture that may be found here should therefore be excused.

### G. The FTC's calculation of redress is correct.

The proper amount of consumer redress was fully litigated. *Credit Bur. Cen.*, 325 F. Supp. 3d at 869-70. Defendants argue that their websites did not violate ROSCA prior to December 1, 2015, but they made the same argument at summary judgment, and the Court found it was forfeited. *Id.* at 869 n.5. Defendants argue further that what they deem the proper amount of redress, measured from December 1, 2015, cannot be determined from the record. But Defendants know this is wrong because they provided such undisputed evidence themselves.

Specifically, Defendants filed financial records showing that their revenue from the traffic Danny Pierce and Andrew Lloyd sent to their websites, less refunds and chargebacks, for the period from December 1, 2015 until entry of the TRO, was $3,544,381.05. Dkt. 206-1 at 122, 132, 144. Thus, even accepting Defendants' previously forfeited argument about the December 1, 2015 starting point, the amount of redress here would be $3,544,381.05, minus the $762,000 recovered from Pierce and Lloyd, which equals $2,782,381.05. The Commission would not object to the entry of an amended judgment on the ROSCA counts in that undisputed amount, despite the fact that entry of the previous judgment amount would be entirely justified.

### H. Defendants' arguments based on the Supreme Court's decision in *Liu v. SEC* are incorrect.

In *Liu v. SEC*, 140 S. Ct. 1936 (2020), the Supreme Court decided that disgorgement under the securities laws may be limited to net profits, with certain exceptions, but the FTC in this case is not seeking disgorgement. Rather, the FTC is seeking restitution under Section 19, which expressly authorizes the Court "to grant such relief as the court finds necessary to redress

13

injury to consumers," including without limitation "the refund of money or return of property." 15 U.S.C. § 57b(b); *AMG*, 141 S. Ct. at 1351-52; *Credit Bur. Cen.*, 937 F.3d at 771, 774-75. Section 19 nowhere mentions "net profits," and such a restriction would be entirely inconsistent with the plain meaning of the statute's text. *Id.; see, e.g.*, *FTC v. On Point Global LLC*, No. 19-25046-Civ-Scola, 2020 WL 5819809, at *4 (S.D. Fla. Sep. 30, 2020) ("While the Defendants argue that *Liu* may impact this proceeding, this Court cannot extrapolate that fact when the Supreme Court's holding in *Liu* dealt with the wrong agency, the wrong statute, and the wrong remedy.") (cleaned up). The Supreme Court also recognized in *Liu* that "when the entire profit of a business or undertaking results from the wrongdoing, a defendant may be denied inequitable deductions." *Liu*, 140 S. Ct. at 1950 (cleaned up). Indeed, one court in this district recently reaffirmed that after *Liu*, when "fraud permeate[s a business, it] is not entitled to offset [its] expenses." *SEC v. Slowinksi*, No. 1:19-CV-03552, 2020 WL 7027639, at *4 (N.D. Ill. Nov. 29, 2020).

Defendants also attempt to revive their previously rejected argument that the FTC must trace particular funds in their accounts back to consumers' payments, but nothing in *Liu* impacts this Court's previous decision on that point. *Credit Bur. Cen.,* 325 F. Supp. 2d at 868-69.[13] And as Defendants are well aware, tracing particular funds to their illegal scheme appears to be impossible here because they commingled the funds. They <u>admit</u> they did so—indeed, they emphasize it as a point in their favor because they apparently believe it defeats recovery in this case. *See, e.g.,* Dkt. 205 at 31, Def. Br. Opp. Sum. J., p. 27. It does not. What Defendants

---

[13] In *Liu,* tracing is mentioned only in the dissent. 140 S. Ct. at 1953-54. Defendants also claim *AMG* requires tracing, but tracing was neither at issue nor mentioned anywhere in that case.

14

overlook is that the risk of uncertainty falls on the wrongdoer. *FTC v. Febre*, 128 F.3d 530, 535 (7th Cir. 1997) (citing *SEC v. First City Fin.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989)). Having commingled the funds, Defendants, as proven wrongdoers—not their victims—must bear the consequences. A tracing requirement would be inconsistent with the broad consumer redress remedy authorized by the plain text of Section 19.[14]

## II. Defendants' Counter-Motion should be denied.

Finally, Defendants include in their response brief a purported "counter-motion to enforce mandate," but it lacks any substance. The "motion" simply inverts the relief sought in the FTC's motion, which Defendants already have opposed. It adds nothing but an apparent pretext to ignore the Court's 15-page limit for briefs. More importantly, the mandate needs no enforcement. The Seventh Circuit already vacated monetary relief under Section 13(b) while making clear that such relief is available under Section 19. As discussed above, granting the FTC's motion is fully consistent with the Seventh Circuit's mandate and this Court's authority under Rules 59(e) and 54(c). Defendants' counter-motion should therefore be denied.

## III. Conclusion

For the foregoing reasons, this Court should grant the FTC's motion and enter an amended judgment on the ROSCA claims in the amount of $5,260,671.36 (or, as discussed in I.G above, $2,782,381.05) under ROSCA and Section 19, deny Defendants' counter-motion to enforce the mandate, and enter the FTC's proposed order (submitted by email).

---

[14] Even if the rules of tracing applied here, the outcome would be the same, for the same reason, *i.e.*, because Defendants commingled the funds. *See FTC v. Bronson Partners*, 654 F.3d 359, 373 n.8 (2nd Cir. 2011) (explaining that courts apply an irrebuttable presumption that funds in commingled accounts belong to the victims of wrongdoing, not to the wrongdoers).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: June 11, 2021 | /s/ Guy G. Ward<br>Guy G. Ward<br>Elizabeth C. Scott<br>Federal Trade Commission<br>230 S. Dearborn Street, Suite 3030<br>Chicago, Illinois 60604<br>(312) 960-5612 or 5609 [telephone]<br>(312) 960-5600 [facsimile]<br>gward@ftc.gov<br>escott@ftc.gov<br><br>Attorneys for Plaintiff<br>FEDERAL TRADE COMMISSION |

16

**CERTIFICATE OF SERVICE**

      I, Guy G. Ward, an attorney, hereby certify that, on June 11, 2021, I caused to be served true copies of the foregoing FTC's Reply in Support of Motion for Amended Judgment and Other Relief through the CM/ECF System on all counsel of record.

/s/ Guy G. Ward
Guy G. Ward
Federal Trade Commission
230 S. Dearborn Street, Suite 3030
Chicago, Illinois 60604
(312) 960-5612
gward@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION