**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| FEDERAL TRADE COMMISSION, ) | |
| ) | |
| Plaintiff, ) | Case No. 17-cv-194 |
| ) | |
| v. ) | Judge Kennelly |
| ) | |
| CREDIT BUREAU CENTER, LLC, ) | |
| a limited liability company, formerly known as ) | |
| MYSCORE LLC, also doing business as ) | |
| EFREESCORE.COM, CREDITUPDATES.COM, ) | |
| and FREECREDITNATION.COM, ) | |
| ) | |
| MICHAEL BROWN, ) | |
| individually and as owner and manager of ) | |
| CREDIT BUREAU CENTER, LLC, ) | |
| ) | |
| DANNY PIERCE, individually, and ) | |
| ) | |
| ANDREW LLOYD, individually, ) | |
| ) | |
| Defendants. ) | |

**MODIFIED FINAL JUDGMENT AND ORDER**
**FOR PERMANENT INJUNCTION AND OTHER**
**EQUITABLE RELIEF AGAINST DEFENDANTS**
**CREDIT BUREAU CENTER, LLC AND MICHAEL BROWN**

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint

for Permanent Injunction and Other Equitable Relief ("Complaint"), pursuant to Section 13(b) of

the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b); Section 5 of the Restore

Online Shoppers' Confidence Act ("ROSCA"), 15 U.S.C. § 8404; and Section 621(a)(1) of the

Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s(a)(1). The FTC now having filed its

Motion for Summary Judgment Against Defendants Credit Bureau Center, LLC and Michael

Brown ("Defendants"), and the Court having considered the FTC's motion, and supporting

exhibits, and the entire record in this matter, the FTC's motion is hereby granted, and **IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** as follows:

**FINDINGS**

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive and illegal acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45; Section 4 of ROSCA, 15 U.S.C. § 8403; Section 612(g) of the FCRA, 15 U.S.C. § 1681j(g); and the Free Annual File Disclosures Rule, 16 C.F.R. Part 610 ("Free Reports Rule"), recodified at 12 C.F.R. §§ 1022.130-1022.138, in the advertising, marketing, promoting, offering for sale, or sale of credit monitoring services.

3.      The Court now finds that Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by falsely representing to consumers, expressly or by implication, that a residential property described in an online ad is currently available for rent from someone consumers can contact through that ad, and the property will be shown to consumers who obtain their credit reports and scores through Defendants' website.

4.      The Court further finds that Defendants have violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by representing to consumers, expressly or by implication, that they are offering consumers their credit scores and reports for free, while failing to disclose or disclose adequately to consumers, material terms and conditions of the offer, including: (a) that Defendants will automatically enroll consumers in a negative option continuity plan with additional charges; (b) that consumers must affirmatively cancel the negative option continuity plan before the end of a trial period to avoid additional charges; (c) that Defendants will use consumers' credit or debit card information to charge consumers monthly for the negative option

continuity plan; (d) the costs associated with the negative option continuity plan; and (e) the means consumers must use to cancel the negative option continuity plan to avoid additional charges.

5.      The Court further finds that Defendants have violated Section 4(1) of ROSCA, 15 U.S.C. § 8403(1), by charging or attempting to charge consumers for Defendants' credit monitoring service through a negative option feature while failing to clearly and conspicuously disclose all material terms of the transaction before obtaining consumers' billing information.

6.      The Court further finds that Defendants have violated Section 4(2) of ROSCA, 15 U.S.C. § 8403(2), by charging or attempting to charge consumers for Defendants' credit monitoring service through a negative option feature while failing to obtain consumers' express informed consent before charging their credit card, debit card, bank account, or other financial account.

7.      The Court further finds that Defendants have violated Section 612(g)(1) of the FCRA, 15 U.S.C. § 1681j(g)(1), and the Free Reports Rule, 12 C.F.R. § 1022.138, by failing to prominently disclose in advertisements for free credit reports that free credit reports are available under federal law from AnnualCreditReport.com or (877) 322–8228, and by operating websites offering free credit reports, including eFreeScore.com and CreditUpdates.com, without displaying across the top of each page that mentions free credit reports, and across the top of each page of the ordering process, the prominent disclosure required by the Free Reports Rule, 12 C.F.R. § 1022.138, to inform consumers of their right to obtain a free credit report from AnnualCreditReport.com or (877) 322–8228.

8.      It is proper to enter this Final Judgment and Order for Permanent Injunction and Other Equitable Relief Against Defendants ("Order") to prevent a recurrence of Defendants'

violations of Section 5 of the FTC Act, 15 U.S.C. § 45, Section 4 of ROSCA, 15 U.S.C. § 8403, Section 612(g) of the FCRA, 15 U.S.C. § 1681j(g), and the Free Reports Rule, 12 C.F.R. §§ 1022.130-1022.138, and to enter equitable monetary relief against Defendants.

9.      Defendants' net sales to consumers (total sales minus refunds and chargebacks) amounted to at least $6,022,671.36 from the conduct alleged in the Commission's Complaint; and the Commission has recovered $762,000 from Defendants' affiliate marketers Danny Pierce and Andrew Lloyd.

10.      Pursuant to Section 5 of ROSCA, 15 U.S.C. § 8404, and Section 19(b) of the FTC Act, 15 U.S.C. § 57b(b), the Commission is therefore entitled to equitable monetary relief against Defendants for their violations of ROSCA in the amount of $5,260,671.36, for which Defendants are jointly and severally liable.

11.      This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

12.      Nothing in this Order shall affect the compensatory sanction previously entered against Defendant Michael Brown in the civil contempt order dated July 18, 2017 (Dkt. 106).

13.      Entry of this Order is in the public interest.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "**Affiliate**" means any person, including third-party marketers, who participates in an affiliate program.

2.      "**Affiliate Network**" means any person who provides another person with affiliates for an affiliate program or whom any person contracts with as an affiliate to promote any product, service, or program.

3.      "**Affiliate Program(s)**" means (a) any arrangement under which any marketer or seller of a product, service, or program pays, offers to pay, or provides or offers to provide any form of consideration to any Defendant, either directly or indirectly, to (i) provide the marketer or seller with, or refer to the marketer or seller, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale the product or service on behalf of the marketer or seller; or (b) any arrangement under which any Defendant pays, offers to pay, or provides or offers to provide any form of consideration to any third party, either directly or indirectly, to (i) provide any Defendant with, or refer to any Defendant, potential or actual customers; or (ii) otherwise market, advertise, or offer for sale any product, service, or program on behalf of any Defendant.

4.      "**Mobile Application**" means any software application that can be installed on a mobile device.

5.      "**Billing Information**" means any data that enables any person to access a consumer's account, such as a credit card, checking, savings, share or similar account, utility bill, mortgage loan account, or debit card.

6.      "**Charge**," "**charged**," or "**charging**" means any attempt to collect money or other consideration from a consumer, including but not limited to causing billing information to be submitted for payment, including against a consumer's credit card, debit card, bank account, phone bill, or other account.

7.      "**Clear(ly) and conspicuous(ly)**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any

communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means.

b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.      An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.      In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.      The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.      The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.      The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

h.      When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

8.     "**Close Proximity**" means immediately adjacent to the triggering representation. In the case of advertisements disseminated verbally or through audible means, the disclosure shall be made as soon as practicable after the triggering representation.

9.     "**Corporate Defendant**" means Credit Bureau Center, LLC, a Delaware limited liability company, formerly known as MyScore LLC, and also doing business as eFreeScore.com, CreditUpdates.com, and FreeCreditNation.com, and its successors and assigns.

10.     "**Credit Monitoring Service**" means any service, plan, program or membership that includes, or is represented to include, alerts or monitoring of changes to consumers' credit files, credit reports, or credit scores.

11.     "**Defendants**" means Credit Bureau Center, LLC, formerly known as MyScore LLC, also doing business as eFreeScore.com, CreditUpdates.com and FreeCreditNation.com, and its successors and assigns, and Michael Brown, individually, collectively, or in any combination.

12.     "**Free Credit Report**" means a file disclosure prepared by or obtained from, directly or indirectly, a nationwide consumer reporting agency, including without limitation Equifax, Experian or TransUnion, that is represented, either expressly or impliedly, to be available to the consumer at no cost if the consumer purchases a product or service, or agrees to purchase a product or service subject to cancellation.

13.     "**Individual Defendant**" means Michael Brown, by whatever names he may be known.

14.     "**Negative Option Feature**" means, in an offer or agreement to sell or provide any good or service, a provision under which the consumer's silence or failure to take affirmative

action to reject a good or service or to cancel the agreement is interpreted by the seller or provider as acceptance or continuing acceptance of the offer.

15.    "**Preliminary Injunction**" means the Preliminary Injunction as to Defendants Credit Bureau Center, LLC and Michael Brown entered on February 21, 2017 (Dkt. No. 59).

16.    "**Receiver**" means Robb Evans & Associates LLC, appointed as Receiver pursuant to Section VII of the Preliminary Injunction, and any deputy receivers named by the Receiver.

17.    "**Receivership Defendant**" means Credit Bureau Center, LLC, a Delaware limited liability company, formerly known as MyScore LLC, and also doing business as eFreeScore.com, CreditUpdates.com, and FreeCreditNation.com, and its successors and assigns, as well as any subsidiaries, affiliates, divisions, or sales or customer service operations, and any fictitious business entities or business names created or used by these entities.

18.    "**Telemarketing**" means any plan, program, or campaign which is conducted to induce the purchase of any product, service, plan, or program by use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

19.    "**TRO**" means the *Ex Parte* Temporary Restraining Order With Asset Freeze, Appointment of a Receiver, Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue, entered in this matter on January 11, 2017 (Dkt. No. 16).

## I.    BAN ON NEGATIVE-OPTION CREDIT MONITORING SERVICES

**IT IS ORDERED** that Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from advertising, marketing, promoting, offering for sale, or

selling, or assisting in the advertising, marketing, promoting, offering for sale, or sale of any Credit Monitoring Service with a Negative Option Feature.

## II.   PROHIBITION AGAINST MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or sale of any good or service, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, expressly or by implication, any material fact, including, but not limited to:

A.    That a residential property described in an online ad is currently available for rent from someone consumers can contact through that ad;

B.    That a residential property will be shown to consumers who obtain their credit reports or scores from any particular source;

C.    The purpose of any communication with consumers; or

D.    Any other fact material to consumers concerning any good or service, such as: the total costs; any material restrictions, limitations, or conditions; or any material aspect of its performance, efficacy, nature, or central characteristics.

## III.   PROHIBITED AFFILIATE PROGRAM ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the advertising, marketing, promoting, offering for sale, or sale of any good or service through an Affiliate Network or Program that a Defendant owns, operates, or controls, or through an

Affiliate or Affiliate Network to which a Defendant provides or offers to provide any payment or other form of consideration, are permanently restrained and enjoined from failing to:

       A.      Require each Affiliate and/or Affiliate Network to provide the following identifying information:

             1.      In the case of a natural person, the Affiliate's or Affiliate Network's first and last name, physical address, country, telephone number, email address, and complete bank account information as to where payments are to be made to that person;

             2.      In the case of a business entity, the Affiliate's or Affiliate Network's name and any and all names under which it does business, state of incorporation, registered agent, and the first and last name, physical address, country, telephone number, and email address for at least one natural person who owns, manages, or controls the Affiliate or Affiliate Network, and the complete bank account information as to where payments are to be made to the Affiliate or Affiliate Network;

             3.      If Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require each Affiliate Network to obtain and maintain from those Affiliates the identifying information set forth in Subsections A.1 and A.2 of this Section prior to the Affiliate's or Affiliate Network's participation in any Defendant's Affiliate Program.

       B.      As a condition of doing business with any Affiliate or Affiliate Network or such Affiliate or Affiliate Network's acceptance into any Defendant's Affiliate Program: (a) provide each such Affiliate or Affiliate Network a copy of this Order; (b) obtain from each such Affiliate or Affiliate Network a signed and dated statement acknowledging receipt of this Order and expressly agreeing to comply with this Order; and (c) clearly and conspicuously disclose in

writing that engaging in acts or practices prohibited by this Order will result in immediate

termination of any Affiliate or Affiliate Network and forfeiture of all monies owed to such

Affiliate or Affiliate Network; *provided, however*, that if Defendants have access to certain

Affiliates only through an Affiliate Network, then Defendants shall contractually require that the

Affiliate Network provide the information required by this Subsection to each of those Affiliates

and retain proof of the same prior to any such Affiliate being used in any Defendant's Affiliate

Program; and if any Defendant should acquire an entity that has an existing program of selling

through Affiliates, the entity must complete all steps in this Subsection prior to Defendant's

acquisition of the entity.

   C.  Require that each Affiliate or Affiliate Network, prior to the public use or

dissemination to consumers of any marketing materials, including, but not limited to,

advertisements, websites, emails, and pop-ups used by any Affiliate or Affiliate Network to

advertise, promote, market, offer for sale, or sell any goods or services, provide Defendants with

the following information: (a) copies of all marketing materials to be used by the Affiliate or

Affiliate Network, including text, graphics, video, audio, and photographs; (b) each location the

Affiliate or Affiliate Network maintains, or directly or indirectly controls, where the marketing

materials will appear, including the URL of any website; and (c) for hyperlinks contained within

the marketing materials, each location to which a consumer will be transferred by clicking on the

hyperlink, including the URL of any website.  Defendants shall also require each Affiliate or

Affiliate Network to maintain and provide to Defendants upon request records of the dates when

the marketing materials are publicly used or disseminated to consumers.  *Provided, however*, that

if Defendants have access to certain Affiliates only through an Affiliate Network, then

Defendants shall contractually require that the Affiliate Network obtain and maintain the same

information set forth above from each of those Affiliates who are part of any Defendant's Affiliate Program prior to the public use or dissemination to consumers of any such marketing materials, and provide proof to such Defendant of having obtained the same.

D.     Promptly review the marketing materials specified in Subsection C of this Section as necessary to ensure compliance with this Order.  Defendants shall also promptly take steps as necessary to ensure that the marketing materials provided to Defendants under Subsection C of this Section are the marketing materials publicly used or disseminated to consumers by the Affiliate or Affiliate Network.  If a Defendant determines that use of any marketing materials does not comply with this Order, such Defendant shall inform the Affiliate or Affiliate Network in writing that approval to use such marketing materials is denied and shall not pay any amounts to the Affiliate or Affiliate Network for such marketing, including any payments for leads, "click-throughs," or sales resulting therefrom.  *Provided, however*, that if Defendants have access to certain Affiliates only through an Affiliate Network, then Defendants shall contractually require that the Affiliate Network comply with the procedures set forth in this Subsection as to those Affiliates.

E.     Promptly investigate any complaints that any Defendant receives through any source to determine whether any Affiliate or Affiliate Network is engaging in acts or practices prohibited by this Order, either directly or through any Affiliate that is part of any Defendant's Affiliate Program.

F.     Upon determining that any Affiliate or Affiliate Network has engaged in, or is engaging in, acts or practices prohibited by this Order, either directly or through any Affiliate that is part of any Defendant's Affiliate Program, immediately:

1.      Disable any connection between the Defendant's Affiliate Program and the marketing materials used by the Affiliate or Affiliate Network to engage in such acts or practices prohibited by this Order;

2.      Halt all payments to the Affiliate or Affiliate Network resulting from such acts or practices prohibited by this Order; and

3.      Terminate the Affiliate or Affiliate Network; *provided, however*, Defendants shall not be in violation of this Subsection if Defendants fail to terminate an Affiliate Network in a case where Defendants' only access to an Affiliate who has engaged in acts or practices prohibited by this Order is through an Affiliate Network and Defendants receive notice that the Affiliate Network immediately terminated the Affiliate violating this Order from any Defendant's Affiliate Program.

### IV.     PROHIBITION AGAINST MISREPRESENTATIONS RELATING TO NEGATIVE OPTION FEATURES

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      Any cost to the consumer to purchase, receive, use, or return the initial good or service;

B.      That a consumer will not be Charged for any good or service;

C.      That a good or service is offered on a "free," "trial," "sample," "bonus," "gift," "no obligation," "discounted" basis, or words of similar import, denoting or implying the

absence of an obligation on the part of the recipient of the offer to affirmatively act in order to avoid Charges, including where a Charge will be assessed pursuant to the offer unless the consumer takes affirmative steps to prevent or stop such a Charge;

        D.      That consumers can obtain a good or service for a processing, service, shipping, handling, or administrative fee with no further obligation;

        E.      The purpose(s) for which a consumer's Billing Information will be used;

        F.      The date by which a consumer will incur any obligation or be Charged unless the consumer takes an affirmative action on the Negative Option Feature;

        G.      That a transaction has been authorized by a consumer;

        H.      Any material aspect of the nature or terms of a refund, cancellation, exchange, or repurchase policy for the good or service; or

        I.      Any other material fact.

Compliance with this Section is separate from, and in addition to, the disclosures required by Sections V and VI of this Order.

## V.      REQUIRED DISCLOSURES RELATING TO NEGATIVE OPTION FEATURES

        **IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from:

        A.      Representing directly or indirectly, expressly or by implication, that any good or service that includes a Negative Option Feature is being offered on a free, trial, no obligation,

reduced, or discounted basis, without disclosing Clearly and Conspicuously, and in Close Proximity to, any such representation:

       1.     The extent to which a consumer must take affirmative action(s) to avoid any Charges: a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

       2.     The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes steps to prevent or stop such Charges; and

       3.     The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

       B.     Obtaining Billing Information from a consumer for any transaction involving a good or service that includes a Negative Option Feature, without first disclosing Clearly and Conspicuously, and in Close Proximity to where a consumer provides Billing Information:

       1.     The extent to which a consumer must take affirmative action(s) to avoid any Charges: a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

       2.     The total cost (or range of costs) the consumer will be Charged, the date the initial Charge will be submitted for payment, and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges;

       3.     The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges;

4.      The name of the seller or provider of the good or service and, if the name of the seller or provider will not appear on billing statements, the billing descriptor that will appear on such statements;

5.      A description of the good or service;

6.      Any Charge or cost for which the consumer is responsible in connection with the cancellation of an order or the return of a good; and

7.      The simple cancellation mechanism to stop any recurring Charges, as required by Section VII of this Order.

C.      Failing to send the consumer:

1.      Immediately after the consumer's submission of an online order, written confirmation of the transaction by email. The email must Clearly and Conspicuously disclose all the information required by Subsection B of this Section, and contain a subject line reading "Order Confirmation" along with the name of the product or service, and no additional information; or

2.      Within 2 days after receipt of the consumer's order by mail or telephone, a written confirmation of the transaction, either by email or first class mail. The email or letter must Clearly and Conspicuously disclose all the information required by Subsection B of this Section. The subject line of the email must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and nothing else. The outside of the envelope must Clearly and Conspicuously state "Order Confirmation" along with the name of the product or service, and no additional information other than the consumer's address, the Defendant's return address, and postage.

## VI.    OBTAINING EXPRESS INFORMED CONSENT

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service with a Negative Option Feature, are permanently restrained and enjoined from using or assisting others in using Billing Information to obtain payment from a consumer, unless Defendant first obtains the express informed consent of the consumer to do so.  To obtain express informed consent, Defendants must:

A.    For all written offers (including over the Internet or other web-based applications or services), obtain consent through a check box, signature, or other substantially similar method, which the consumer must affirmatively select or sign to accept the Negative Option Feature, and no other portion of the offer.  Defendant shall disclose Clearly and Conspicuously, and in Close Proximity to such check box, signature, or substantially similar method of affirmative consent, only the following, with no additional information:

1.    The extent to which a consumer must take affirmative action(s) to avoid any Charges:  a) for the offered good or service, b) of an increased amount after the trial or promotional period ends, and c) on a recurring basis;

2.    The total cost (or range of costs) the consumer will be Charged and, if applicable, the frequency of such Charges unless the consumer timely takes affirmative steps to prevent or stop such Charges; and

3.    The deadline(s) (by date or frequency) by which the consumer must affirmatively act in order to stop all recurring Charges.

B.    For all oral offers, prior to obtaining any Billing Information from the consumer:

1.      Clearly and Conspicuously disclose the information contained in Section
V.B of this Order; and

2.      Obtain affirmative unambiguous express oral confirmation that the
consumer a) consents to being Charged for any goods or services, including providing, at a
minimum, the last four (4) digits of the consumer's account number to be Charged,
b) understands that the transaction includes a Negative Option Feature, and c) understands the
specific affirmative steps the consumer must take to prevent or stop further Charges.
For transactions conducted through telemarketing, Defendants shall maintain for 3 years from
the date of each transaction an unedited voice recording of the entire transaction, including the
prescribed statements set out in Subsection B of this Section.  Each recording must be retrievable
by date and by the consumer's name, telephone number, or Billing Information, and must be
provided upon request to the consumer, the consumer's bank, or any law enforcement entity.

## VII.    SIMPLE MECHANISM TO CANCEL NEGATIVE OPTION FEATURE

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees,
attorneys, and all other persons in active concert or participation with any of them, who receive
actual notice of this Order, whether acting directly or indirectly, in connection with promoting or
offering for sale any good or service with a Negative Option Feature, are permanently restrained
and enjoined from failing to provide a simple mechanism for the consumer to: (1) avoid being
Charged, or Charged an increased amount, for the good or service; and (2) immediately stop any
recurring Charges.  Such mechanism must not be difficult, costly, confusing, or time consuming,
and must be at least as simple as the mechanism the consumer used to initiate the Charge(s).  In
addition:

A.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature over the Internet or through other web-based applications or services, Defendants must provide a mechanism, accessible over the Internet or through such other web-based application or service that consumers can easily use to cancel the product or service and to immediately stop all further Charges.

B.     For consumers who entered into the agreement to purchase a good or service including a Negative Option Feature through an oral offer and acceptance, Defendants must maintain a telephone number and a postal address that consumers can easily use to cancel the product or service and to immediately stop all further Charges.  Defendants must assure that all calls to this telephone number shall be answered during normal business hours and that mail to the postal address is retrieved regularly.

## VIII.   REQUIRED DISCLOSURES RELATING TO FREE CREDIT REPORTS

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with offering Free Credit Reports, are permanently restrained and enjoined from failing to include disclosures that meet all of the following requirements:

A.     General requirements for disclosures: The disclosures covered by Subsection B of this Section shall contain only the prescribed content and comply with the following requirements:

1.     All disclosures shall be Clear and Conspicuous;

2.     All visual disclosures must be parallel to the base of the advertisement or screen;

3.      Program-length television, radio, or Internet-hosted multimedia advertisement disclosures shall be made at the beginning, near the middle, and at the end of the advertisement; and

4.      If the locator address AnnualCreditReport.com or toll-free telephone number (877) 322-8228 authorized under federal law changes in the future, the new address or telephone number shall be substituted in the disclosures required by this Section within a reasonable time.

B.      Medium-specific disclosures: All offers of Free Credit Reports shall include the disclosures required by this Section:

1.      Television advertisements: All advertisements for Free Credit Reports broadcast on television shall include the following disclosure in Close Proximity to the first mention of a free credit report: "This is not the free credit report provided for by Federal law." The visual disclosure shall be at least four percent of the vertical picture height and appear for a minimum of four seconds.

2.      Radio advertisements: All advertisements for Free Credit Reports broadcast on radio shall include the following disclosure in Close Proximity to the first mention of a free credit report: "This is not the free credit report provided for by Federal law."

3.      Print advertisements: All advertisements for Free Credit Reports in print shall include the following disclosure in the form specified below and in Close Proximity to the first mention of a free credit report.  The first line of the disclosure shall be centered and contain only the following language: "THIS NOTICE IS REQUIRED BY LAW."  Immediately below the first line of the disclosure the following language shall appear: "You have the right to a free credit report from AnnualCreditReport.com or (877) 322-8228, the ONLY authorized source

under Federal law." Each letter of the disclosure text shall be, at minimum, one-half the size of the largest character used in the advertisement.

    4.    Websites: Any website offering Free Credit Reports must display the disclosure set forth in Subsections B.4.a, B.4.b, and B.4.e of this Section on each page that mentions a free credit report and on each page of the ordering process. This disclosure shall be visible across the top of each page where the disclosure is required to appear; shall appear inside a box; and shall appear in the form specified below:

    a.    The first element of the disclosure shall be a header that is centered and shall consist of the following text: "THIS NOTICE IS REQUIRED BY LAW. Read more at consumerfinance.gov/learnmore." Each letter of the header shall be one-half the size of the largest character of the disclosure text required by Subsection B.4.b of this Section. The reference to consumerfinance.gov/learnmore shall be an operational hyperlink, underlined, and in a color that is a high degree of contrast from the color of the other disclosure text and background color of the box.

    b.    The second element of the disclosure shall appear below the header required by Subsection B.4.a of this Section and shall consist of the following text: "You have the right to a free credit report from AnnualCreditReport.com or (877) 322–8228, the ONLY authorized source under Federal law." The reference to AnnualCreditReport.com shall be an operational hyperlink to the centralized source, underlined, and in the same color as the hyperlink to consumerfinance.gov/learnmore required in Subsection B.4.a of this Section;

    c.    The color of the text required by Subsections B.4.a and B.4.b of this Section shall be in a high degree of contrast with the background color of the box;

    d.  The background of the box shall be a solid color in a high degree of contrast from the background of the page and the color shall not appear elsewhere on the page;

    e.  The third element of the disclosure shall appear below the text required by Subsection B.4.b of this Section and shall be an operational hyperlink to AnnualCreditReport.com that appears as a centered button containing the following language: "Take me to the authorized source." The background of this button shall be the same color as the hyperlinks required by Subsections B.4.a and B.4.b of this Section and the text shall be in a high degree of contrast to the background of the button;

    f.  Each character of the text required in Subsections B.4.b and B.4.e of this Section shall be, at minimum, the same size as the largest character on the page, including characters in an image or graphic banner;

    g.  Each character of the disclosure shall be displayed as plain text and in a sans serif font, such as Arial; and

    h.  The space between each element of the disclosure required in Subsections B.4.a, B.4.b, and B.4.e of this Section shall be, at minimum, the same size as the largest character on the page, including characters in an image or graphic banner. The space between the boundaries of the box and the text or button required in Subsections B.4.a, B.4.b, and B.4.e of this Section shall be, at minimum, twice the size of the vertical height of the largest character on the page, including characters in an image or graphic banner.

    5.  Mobile Applications: Any Mobile Application offering Free Credit Reports must comply with the requirements set forth in Subsection B.6 of this Section.

6.      Internet-hosted multimedia advertising: All advertisements for Free Credit Reports disseminated through Internet-hosted multimedia in both audio and visual formats shall include the following disclosure in the form specified below and in Close Proximity to the first mention of a free credit report.  The first line of the disclosure shall be centered and contain only the following language: "THIS NOTICE IS REQUIRED BY LAW."  Immediately below the first line of the disclosure the following language shall appear: "You have the right to a free credit report from AnnualCreditReport.com or (877) 322–8228, the ONLY authorized source under Federal law."  If the advertisement contains characters, the visual disclosure shall be, at minimum, the same size as the largest character on the advertisement.

7.      Telephone requests: When consumers call any telephone number, other than the number of the centralized source, appearing in an advertisement that represents Free Credit Reports are available at the number, consumers must receive the following audio disclosure at the first mention of a free credit report: "The following notice is required by law. You have the right to a free credit report from AnnualCreditReport.com or (877) 322–8228, the only authorized source under Federal law."

8.      Telemarketing solicitations: When telemarketing sales calls are made that include offers of Free Credit Reports, the call must include at the first mention of a free credit report the following disclosure: "The following notice is required by law.  You have the right to a free credit report from AnnualCreditReport.com or (877) 322–8228, the only authorized source under Federal law."

## IX.    MONETARY JUDGMENT

**IT IS FURTHER ORDERED** that:

A.    Judgment in the amount of Five Million, Two Hundred Sixty Thousand, Six Hundred Seventy-One and Thirty-Six Cents ($5,260,671.36) is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

B.    Defendants are ordered to pay to the Commission Five Million, Two Hundred Sixty Thousand, Six Hundred Seventy-One and Thirty-Six Cents ($5,260,671.36).  Such payment must be made within 7 days of entry of this Order by electronic funds transfer in accordance with instructions provided by a representative of the Commission.

C.    Within 7 days of entry of this Order:

1.    Defendant Michael Brown is ordered to pay to the Commission all funds in the Bank of America, N.A. account ending "2356" held by Michael Brown;

2.    Defendant Michael Brown is ordered to pay to the Commission all funds in the FirstBank Puerto Rico account ending "9599" held by Michael Brown; and

3.    Defendant Michael Brown is ordered to liquidate and pay to the Commission the entire balance of Michael Brown's Merrill Lynch SEP IRA account ending "6422," less any fees owed to Merrill Lynch on that account or any amount Merrill Lynch is legally required to withhold.

To effect such payments, the Court directs that the entities holding the funds shall, immediately upon receiving notice of this Order, remit the funds to the Commission by electronic funds transfer or otherwise in accordance with directions provided by a representative of the Commission.

D.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, with the Court's prior approval, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## X.      PROHIBITION ON COLLECTING ON ACCOUNTS

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, are permanently restrained and enjoined from Charging or attempting to Charge consumers for any Credit Monitoring Services marketed or sold prior to entry of this Order, and from selling, assigning, or otherwise transferring any right to Charge for any Credit Monitoring Services marketed or sold prior to entry of this Order.

## XI.      CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants, their officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly:

A.    Failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress. Defendants represent that they have provided this redress information to the Commission.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.    Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, social security number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account), that any Defendant obtained prior to entry of this Order in connection with the advertising, marketing, promoting, offering for sale, or sale of Credit Monitoring Services; and

C.    Failing to destroy such customer information in all forms in their possession, custody, or control within 30 days after receipt of written direction to do so from a representative of the Commission.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## XII.    COMPLETION OF RECEIVERSHIP

**IT IS FURTHER ORDERED** that the appointment of the Receiver pursuant to the Preliminary Injunction is hereby continued in full force and effect as modified by this Section.

A.    The Receiver is directed and authorized to accomplish the following within 90 days after entry of this Order, but any party or the Receiver may request that the Court extend the Receiver's term for good cause:

1.      Take any and all steps that the Receiver concludes are appropriate to wind down the affairs of the Receivership Defendant;

2.      Complete the process of taking custody, control and possession of all assets of the Receivership Defendant, including without limitation any funds in bank accounts or payment processing reserve accounts;

3.      Complete, as necessary, the liquidation of all assets of the Receivership Defendant;

4.      Prepare and submit a report describing the Receiver's activities pursuant to this Order, and a final application for compensation and expenses; and

5.      Distribute to the Commission all remaining liquid assets at the conclusion of the Receiver's duties, in partial satisfaction of the monetary judgment set forth in this Order.

B.      Upon completion of the above tasks, the duties of the Receiver shall terminate, and the Receiver shall be discharged.

## XIII.   ORDER ACKNOWLEDGEMENTS

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.      Each Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 5 years after entry of this Order, Individual Defendant for any business that such Defendant, individually or collectively with any other Defendant, is the majority owner or controls directly or indirectly, and Corporate Defendant, must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order, and all agents

and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting. Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.   COMPLIANCE REPORTING

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.      One year after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury.

1.      Each Defendant must: (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendant must describe if he knows or should know due to his own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.      Additionally, Individual Defendant must: (a) identify all telephone

numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which Individual Defendant performs services whether as an employee or otherwise and any entity in which Individual Defendant has any ownership interest; and (c) describe in detail Individual Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership;

B.    For 20 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.    Each Defendant must report any change in: (a) any designated point of contact; or (b) the structure of Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.    Additionally, Individual Defendant must report any change in: (a) name, including aliases or fictitious name, or residence address; or (b) title or role in any business activity, including any business for which Individual Defendant performs services whether as an employee or otherwise and any entity in which Individual Defendant has any ownership interest, and identify the name, physical address, and any Internet address of the business or entity.

C.    Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.    Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by

concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: *FTC v. Credit Bureau Center, LLC, et al.*, FTC Matter No. X170014.

## XV.     RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 20 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant and Individual Defendant for any business that Individual Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

A.     Accounting records showing the revenues from all goods or services sold;

B.     Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

C.     Records relating to Affiliates or Affiliate Networks, including all names, addresses, and telephone numbers; dollar amounts paid or received; and information used in calculating such payments;

D.     Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

E.     All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission;

F.     Copies of all marketing materials, documents, and information received pursuant to Subsection III.C of this Order; and all written approvals or denials of marketing materials made pursuant to Subsection III.D of this Order; and

G.     A copy of each unique advertisement or other marketing material.

## XVI.   COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order, including any failure to transfer any assets as required by this Order:

A.     Within 14 days of receipt of a written request from a representative of the Commission, each Defendant must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any

individual or entity affiliated with Defendants, without the necessity of identification or prior notice. Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

D. Upon written request from a representative of the Commission, any consumer reporting agency must furnish consumer reports concerning Individual Defendant, pursuant to Section 604(1) of the Fair Credit Reporting Act, 15 U.S.C. § 1681b(a)(1).

## XVII. RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED** this 13th day of September, 2021.

Honorable Matthew F. Kennelly
United States District Judge