CERTIFIED COPY
A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals

## for the Seventh Circuit

_____

No. 21-2945

FEDERAL TRADE COMMISSION,

                                                                          *Plaintiff-Appellee,*

*v.*

CREDIT BUREAU CENTER, LLC,
and MICHAEL BROWN,

                                                                          *Defendants-Appellants.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 17-cv-194 — **Matthew F. Kennelly**, *Judge*.

_____

ARGUED JUNE 3, 2022 — DECIDED AUGUST 30, 2023

_____

Before SYKES, *Chief Judge*, and FLAUM and BRENNAN, *Circuit Judges*.

SYKES, *Chief Judge*. This appeal is the latest chapter in a complicated case that has had a long and winding journey through the federal courts, including a trip to the Supreme Court and back. Michael Brown owns and operates Credit Bureau Center, a credit-monitoring business. His company used an online marketing device known as a "negative

option feature" on its websites. The websites offered visitors a free credit report but automatically enrolled them in a $29.94 monthly membership subscription when they applied for the free report; the information about the monthly membership was scant and buried in much smaller text. *FTC v. Credit Bureau Ctr.*, 937 F.3d 764, 766 (7th Cir. 2019). Brown's contractors ginned up website traffic by posting Craigslist advertisements for fake rental properties and directing applicants to the company's websites for a "free" credit score. *Id.*

This activity soon attracted the attention of the Federal Trade Commission, which sued Brown and Credit Bureau Center (collectively "Brown") alleging violations of several consumer-protection statutes. The litigation centered on section 13(b) of the Federal Trade Commission Act ("FTCA" or "the Act"), which authorizes the Commission to seek restraining orders and permanent injunctions to enjoin conduct that violates the Act's prohibition of unfair or deceptive trade practices. On its face, section 13(b) authorizes only injunctive relief. But the Commission had long interpreted it to also permit restitution awards—an interpretation adopted in this circuit, *see FTC v. Amy Travel Service, Inc.*, 875 F.2d 564, 571 (7th Cir. 1989), and in others as well.

The district court entered a permanent injunction and ordered Brown to pay more than $5 million in restitution. We affirmed the judgment in all respects but one: we held that section 13(b) does not authorize restitution awards. We therefore overruled *Amy Travel* and broke with the consensus in other circuits adopting the Commission's reading of section 13(b).

Case: 1:17-cv-00194 Document #: 300 Filed: 11/13/23 Page 3 of 14 PageID #:7119
Case: 21-2945      Document: 00714289911      Filed: 11/13/2023      Pages: 14

No. 21-2945                                                                 3

To resolve the circuit split, the Supreme Court granted certiorari in this case and one from the Ninth Circuit, *FTC v. AMG Capital Management, LLC*, 910 F.3d 417 (9th Cir. 2018). Ruling in the Ninth Circuit's case, the Court held that section 13(b) does not authorize equitable monetary relief such as restitution and disgorgement. *AMG Capital Management, LLC v. FTC*, 141 S. Ct. 1341, 1344 (2021).

Having endorsed our interpretation of the statute in *AMG Capital*, the Court returned this case to us, and we sent it back to the district court. The Commission immediately moved to amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure, arguing that the Court's decision in *AMG Capital* (and ours in this case) had significantly changed the law. The Commission asked the judge to reimpose the restitution award under the Restore Online Shoppers' Confidence Act ("ROSCA") and section 19 of the FTCA. The judge granted the motion and reinstated the $5 million restitution award.

Brown now attacks the amended judgment on multiple grounds. While numerous, his arguments are mostly meritless. The only error in the new judgment is its direction that any funds remaining after providing consumer redress shall be "deposited to the U.S. Treasury as disgorgement." That exceeds the remedial scope of section 19, which is limited to redressing consumer injuries, as the Commission conceded in oral argument. To wind up more than six years of litigation, we modify the judgment to excise that portion and affirm the judgment as modified.

## I. Background

We described the background of this case in the first appeal, *Credit Bureau Ctr.*, 937 F.3d at 767–68, so we provide an abbreviated overview of Brown's scheme here. In January 2014 Brown contracted with Danny Pierce to increase traffic to websites advertising his credit-monitoring services. These websites—with names like "eFreeScore.com" and "FreeCreditNation.com"—promised visitors a "free credit report and score." *Id.* at 767. But requesting the free report automatically enrolled applicants in a paid monthly subscription. Fine print on the websites warned visitors that ordering the free report would enroll them in an unspecified "membership" subscription that cost $29.94 each month. A letter from Brown followed, explaining to new subscribers that the fee-based subscription was for credit monitoring.

Pierce later subcontracted with Andrew Lloyd to drum up more referrals to Brown's websites. Lloyd posted Craigslist advertisements for fake rental properties at cheap prices. Posing as the landlord, he directed prospective tenants to Brown's websites to obtain a free credit report. Pierce and Lloyd's efforts paid off. They referred more than 2.7 million customers to Brown, yielding just over $6.8 million in revenue. Unsuspecting customers complained, but Brown denied any involvement with Pierce and refused to grant refunds. Ultimately, credit-card companies canceled more than 10,000 of Brown's charges.

The Commission eventually stepped in, suing Brown and his company and alleging that the websites and the Craigslist advertisements violated the FTCA, ROSCA, and two other consumer-protection statutes not relevant here. Proceeding under section 13(b) of the FTCA, 15 U.S.C.

§ 53(b), the Commission sought a permanent injunction and restitution. The remedial options listed in section 13(b) are limited to restraining orders and injunctions, but the Commission had long and frequently used this provision to win equitable monetary relief as well. *AMG Capital*, 141 S. Ct. at 1346–47. Our circuit blessed this practice in *Amy Travel*, 875 F.2d 564, holding that section 13(b) implicitly authorizes restitution in addition to injunctive relief; other circuits also endorsed this approach. *Credit Bureau Ctr.*, 937 F.3d at 779.

Ruling on cross-motions for summary judgment, the district judge found Brown liable, issued a detailed permanent injunction, and ordered Brown to pay over $5 million in restitution to the Commission. *Id.* at 768.

Brown appealed, contesting the judge's liability ruling and challenging the court's authority to award monetary relief under section 13(b). We first addressed the judge's determination that Brown had violated ROSCA, agreeing with his liability ruling and rejecting Brown's arguments to the contrary. As we explained, ROSCA specifically addresses the use of a so-called "negative option feature" to sell goods or services on the internet. *Id.* at 769. A negative-option feature is "a provision [in an offer] under which the customer's silence or failure to take an affirmative action to reject goods or services or to cancel the agreement is interpreted by the seller as acceptance of the offer." 16 C.F.R. § 310.2(w); *see also* 15 U.S.C. § 8403 (incorporating the definition by reference). As relevant here, the statute makes it unlawful for any person to use a negative-option marketing device unless he "clearly and conspicuously discloses all material terms of the transaction before obtaining the consumer's billing information." § 8403(1).

6 No. 21-2945

We had no difficulty affirming the judge's determination that Brown's websites violated this provision. And because "ROSCA violations are 'unfair or deceptive acts or practices' under the FTCA," we explained that the Commission could "use the FTCA's enforcement regime against violators." *Credit Bureau Ctr.*, 937 F.3d at 769 (quoting 15 U.S.C. § 8404). We thus had no need to consider the Commission's other theories of liability. *Id.*

Turning to the restitution award, we explained that an award of monetary relief—legal or equitable—was incompatible with the text of section 13(b), which by its terms authorizes only injunctive relief. *Id.* at 771–75. That text, and the language and structure of the FTCA's other remedial provisions—notably, section 19, which provides for monetary relief but only if specific preconditions are met—called into question the Commission's view that section 13(b) implicitly authorizes restitution awards. *Id.* We traced the doctrinal path to our decision in *Amy Travel*, which had "developed in the shadow of two [Supreme Court] decisions that took a capacious view of implied remedies." 937 F.3d at 776. "[T]he Court ha[d] [since] adhered to [a] more limited understanding of judicially implied remedies," so we revisited and overruled *Amy Travel*, concluding that "section 13(b)'s permanent-injunction provision does not authorize monetary relief." *Id.* at 781, 786.

The Commission petitioned for certiorari, so we stayed the issuance of our mandate pending the disposition of the petition. The Supreme Court ultimately granted certiorari in two cases—this one and *AMG Capital*, 910 F.3d 417, a case from the Ninth Circuit—to resolve the circuit split over the remedial scope of section 13(b). The Court initially consoli-

dated the two cases for decision but later reversed course and separated them. The Court then proceeded to the merits in the Ninth Circuit's case, concluding in a unanimous opinion that section 13(b) "does not grant the Commission authority to obtain equitable monetary relief" such as restitution or disgorgement. *AMG Capital*, 141 S. Ct. at 1352. The Court's analysis followed the same path as ours in this case. The decision in *AMG Capital* rests on the plain text of section 13(b), the language and structure of the other remedial provisions in the FTCA, and the Court's recent caselaw cautioning against judicially implied remedies. *Id.* at 1347–51.

After issuing its decision in *AMG Capital*, the Court vacated its order granting certiorari in this case and returned it to us. We lifted the stay, issued our mandate, and sent the case back to the district court. The Commission immediately moved to amend the judgment, arguing that our decision on appeal and the Supreme Court's decision in *AMG Capital* worked an intervening change in the controlling law, justifying relief under Rule 59(e). *See Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001). The Commission asked the judge to reimpose the restitution award under ROSCA and section 19 of the FTCA. Brown's liability for violating ROSCA had already been established earlier in the litigation; the Commission now pointed to section 5 of ROSCA, which treats a statutory violation as a rule violation under the FTCA and permits the Commission to seek relief under section 19 of the Act. That section, in turn, permits the court to "grant such relief as the court finds necessary to redress injury to consumers," including "the refund of money" and "the payment of damages." 15 U.S.C. §§ 57b(a)–(b), 8404(a).

Brown lodged a host of objections. He argued that the Commission had knowingly "misused" section 13(b) and should be barred by the doctrine of "unclean hands" from seeking relief under ROSCA and section 19. He argued that awarding monetary relief would defy the mandate rule and the law-of-the-case doctrine. He insisted that no intervening change in the law justified an amended judgment and that the Commission had waived reliance on section 19. Still more, he argued that the judgment covered websites that had not been proved to violate ROSCA, that any award must be limited to net profits, and that the Commission must trace the funds to the underlying fraud. The judge rejected each argument, reimposed the restitution award under section 5 of ROSCA and section 19 of the FTCA, and entered the requested amended judgment.

## II. Discussion

Brown's appeal rehashes the litany of objections we've just described. Some are frivolous and the rest are meritless, with one exception.

We begin with Brown's claim that the amended judgment violates the mandate rule and runs counter to the law of the case. "The mandate rule requires a lower court to adhere to the commands of a higher court on remand." *United States v. Polland*, 56 F.3d 776, 777 (7th Cir. 1995). The law-of-the-case doctrine "is a corollary to the mandate rule and prohibits a lower court from reconsidering on remand an issue expressly or impliedly decided by a higher court." *Id.* at 779. In Brown's first appeal, we held that section 13(b) does not authorize equitable monetary relief. He casts our decision more broadly, claiming that by vacating the monetary award, we necessarily concluded that the Commission could

Case: 1:17-cv-00194 Document #: 300 Filed: 11/13/23 Page 9 of 14 PageID #:7125
Case: 21-2945     Document: 00714289911     Filed: 11/13/2023     Pages: 14

No. 21-2945 9

not obtain *any* monetary award. This argument plucks our mandate from its context. We addressed only the availability of restitution under section 13(b); we did not consider (let alone decide) whether the Commission could obtain monetary relief under any other statutory provision. The amended judgment relies on ROSCA and section 19—not section 13(b)—so it does not exceed the scope of the mandate or disregard the law of the case.

Brown's next argument targets the judge's authority to grant the Rule 59(e) motion. An "intervening change in the controlling law" may justify a motion to amend the judgment. *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998). Brown insists that our decision in the first appeal and the Supreme Court's decision in *AMG Capital* do not fit the bill. This argument ignores the widespread consensus that had developed before these decisions. *Amy Travel* was controlling law in our circuit for over 30 years. Six other circuits had similarly concluded that section 13(b) authorizes equitable monetary relief. Our decision in Brown's first appeal and the Supreme Court's in *AMG Capital* overturned a longstanding—but mistaken—consensus among the circuits. In other words, the decisions worked a radical change in the law that supports the Commission's Rule 59(e) motion.

Section 19 is the focus of Brown's next cluster of arguments. He claims that the Commission waived reliance on section 19 by not raising it in the first round of litigation. But the Commission's original complaint alleged that Brown violated section 5 of ROSCA. That provision incorporates section 19 of the FTCA by reference, treating a statutory violation under ROSCA as a rule violation under section 18 of the FTCA, which the Commission can redress under

section 19.[1] Still, Brown suggests that because the Commission chose to rely on section 13(b) of the FTCA over ROSCA and section 19 earlier in the litigation, it cannot shift course now. But as we've explained several times over, the Commission relied on its established interpretation of section 13(b), long endorsed by the appellate courts. Pursuing the same monetary relief under ROSCA and section 19 was unnecessary and redundant. That route became relevant only after our decision in the first appeal and the Supreme Court's decision in *AMG Capital*. The ROSCA violation was established in the first judgment, and we affirmed that liability finding in the first appeal. The Commission moved to amend the judgment—to reflect a permissible alternative basis for the monetary award—on the same day the case returned to the district court. That is not waiver.

Brown suggests that we should penalize the Commission for "circumventing" congressional limits on its authority by originally seeking restitution under section 13(b). Once again, this argument fails to contend with the widespread consensus among the circuits prior to our first decision in this case.

Brown next seizes on language in our earlier opinion to argue that the Commission did not comply with the statutory requirements for relief under section 19. This argument is a nonstarter. We explained that the Commission's practice of

---

[1] Moreover, section 5 of ROSCA generally provides: "The Federal Trade Commission shall enforce this chapter in the same manner, by the same means, and with the same jurisdiction, powers, and duties as though all applicable terms and provisions of the Federal Trade Commission Act … were incorporated into and made a part of this chapter." 15 U.S.C. § 8404(a).

No. 21-2945 11

seeking restitution awards under section 13(b) threatened to undermine the conditions precedent for monetary relief outlined in section 19. *Credit Bureau Ctr.*, 937 F.3d at 774. But ROSCA expressly bypasses these procedural requirements, authorizing the Commission to go directly to court to seek relief under section 19 to enforce its provisions. So permitting the Commission to enforce ROSCA through section 19—unlike section 13(b)—does not undermine the remedial structure that Congress created in the FTCA. To the contrary, it ensures that we respect Congress's decision to use the Act's enforcement mechanisms to implement ROSCA.[2]

Brown's last set of arguments challenge the amount of the restitution award. The judge reinstated the original award—a total of $5,260,671.36, which equals the revenue Brown obtained through traffic that Pierce directed to the websites minus refunds already paid, chargebacks customers obtained, and a settlement paid by Pierce and Lloyd.

---

[2] Two related arguments merit less attention. Brown suggests that ROSCA does not actually incorporate section 19. But the plain text of the statute defeats that argument. *See* § 8404(a) ("Violation of this chapter or any regulation prescribed under this chapter shall be treated as a violation of a rule under section 18 of the Federal Trade Commission Act … ."); 15 U.S.C. § 57b (identifying a rule violation under the Act as the basis for a civil action).

Brown also suggests that the Commission has not complied with the requirement to notify the Attorney General of its litigation. He cites no evidence to support his claim that the Commission has not communicated with the Attorney General; he does not explain why his allegation, if true, would require reversal; and he does not recognize that the statute provides—for actions both under sections 13(b) and 19—that "the Commission shall have exclusive authority to commence or defend … such action." 15 U.S.C. § 56(a)(2), (a)(2)(A)–(B).

Brown contends that the Supreme Court's decision in *Liu v. SEC*, 140 S. Ct. 1936 (2020), requires us to vacate the award and remand for recalculation of the amount. In *Liu* the Court considered the scope of equitable relief available in an SEC civil-enforcement action and concluded that a disgorgement award could not exceed a firm's "net profits from wrongdoing." *Id.* at 1946. In *CFPB v. Consumer First Legal Group, LLC*, we recognized that *Liu*'s holding extends to equitable remedies authorized in other statutes. 6 F.4th 694, 710–11 (7th Cir. 2021) (extending *Liu* to a restitution award granted in favor of the CFPB). Relying on *Liu*, Brown argues that a monetary award under ROSCA and section 19 must be limited to net profits that can be traced to the underlying fraud.

One commonality stands out between *Liu* and our decision in *Consumer First*: equity. The statute at issue in *Liu* authorizes "equitable relief," so the Court analyzed "those categories of relief that were *typically* available in equity." *Liu*, 140 S. Ct. at 1942 (quotation marks omitted). And although the statute at issue in *Consumer First* authorized legal and equitable relief, the district court had granted only equitable relief. In both cases, respecting Congress's remedial decision required cabining relief to the traditional scope of the remedies available in equity.

Section 19 is not so limited; it permits all forms of redress to make consumers whole, including "the refund of money." Accordingly, the amended monetary award appropriately refunds to customers the amount that has not yet been returned by Brown or his coconspirators. Brown's argument ignores Congress's choice in section 19 to authorize the court to "grant such relief as the court finds necessary to redress injury to consumers," including "the refund of money" and

"the payment of damages." § 57b(b) Because the monetary award consists of direct consumer redress in the form of refunds—a form of relief expressly permitted by the statute—it need not be measured by net profits and tracing is not required.

Brown's final argument challenges the temporal scope of the award. He draws a line between websites activated before and after December 1, 2015, arguing that the Commission's complaint focused on the websites that were specific to the Craigslist scam and that were activated on December 1, 2015. He contends that the award should be limited to the 14-month period in which the December 2015 websites were active and that his websites before that date did not violate ROSCA.

But Brown has a problem: this argument was both "underdeveloped" and raised too late (in his reply brief) in the first round of this litigation in the district court, so the judge declined to consider it in his original decision. *FTC v. Credit Bureau Ctr., LLC*, 325 F. Supp. 3d 852, 869 n.5 (N.D. Ill. 2018) (finding the argument forfeited for both reasons). Based on our review of the record, that ruling was sound. Brown's summary-judgment brief did not explain why the websites in place before December 2015 differed in a way that would affect his liability under ROSCA, and he has offered us no reason to excuse his failure to develop this argument at an appropriate time in the district court or here. We decline to disturb the judge's forfeiture ruling.

\*　\*　\*

The amended judgment contains one error that requires correction. As we've explained, section 19 is limited to "such

14 No. 21-2945

relief as the court finds necessary to redress injury to consumers." § 57b(b). The judgment directs the Commission to deposit any excess money not used for consumer redress and administrative expenses "to the U.S. Treasury as disgorgement." The Commission acknowledged at oral argument that this part of the judgment sweeps beyond the statute. We therefore modify part IX.D of the amended judgment to remove this sentence: "Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement." As modified, the judgment is

AFFIRMED.